**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTHEW SCHAEFFER, Individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>SIGNATURE BANK, JOSEPH DEPAOLO, STEPHEN WYREMSKI, and ERIC HOWELL,<br><br>    Defendants. | **Case No:**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Matthew Schaeffer ("Plaintiff"), individually and on behalf of all other persons similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants (defined below), alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, among other things, the investigation conducted by and through his attorneys, which included, among other things, a review of the Defendants' public documents, public filings, wire and press releases published by and regarding Signature Bank ("Signature Bank" or the "Company"), and information readily obtainable on the Internet. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

1

**NATURE OF THE ACTION**

1.      This is a class action on behalf of persons or entities who purchased or otherwise acquired publicly traded Signature Bank securities between March 2, 2023 and March 12, 2023, inclusive (the "Class Period"), including those who purchase the Signature Bank call options and/or sold put options during the Class Period. Plaintiff seeks to recover compensable damages caused by Defendant's violations of the federal securities laws under the Securities Exchange Act of 1934 (the "Exchange Act").

**JURISDICTION AND VENUE**

2.      The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

3.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, and Section 27 of the Exchange Act (15 U.S.C. §78aa).

4.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)) as the alleged misstatements entered and the subsequent damages took place in this judicial district.

5.      In connection with the acts, conduct and other wrongs alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mails, interstate telephone communications and the facilities of the national securities exchange.

**PARTIES**

6.      Plaintiff Matthew Schaeffer, as set forth in the accompanying certification, incorporated by reference herein, purchased Signature Bank securities during the Class Period and was economically damaged thereby.

7.      Defendant Signature Bank purported to be a "New York-based full-service commercial bank with 40 private client offices located throughout the metropolitan New York area, as well as those in Connecticut, California, Nevada and North Carolina. Through its single-point-of-contact approach, the Bank's private client banking teams serves the needs of privately owned businesses, their owners and senior managers. Through our Signature Financial subsidiary, a specialty finance company based in Melville, Long Island, we offer a variety of financing and leasing products, including equipment, transportation, commercial marine, sustainable energy, and national franchise financing and/or leasing. Signature Financial's clients are located throughout the United States."

8.      Signature Bank was incorporated in New York and its head office was located at 565 Fifth Avenue, New York, N.Y. Signature Bank common stock trades on the NASDAQ Exchange ("NASDAQ") under the ticker symbol "SBNY", and its common stock traded under the ticker symbol SBNYP.

9.      Defendant Joseph DePaolo ("DePaolo") served as the Company's Chief Executive Officer from 2001 until March 12, 2023.

10.     Defendant Stephen Wyremski ("Wyremski") served as the Company's Chief Financial Officer and Senior Vice President from June 2021 until March 12, 2023.

11.     Defendant Eric Howell ("Howell") served as the Company's President and Chief Operating Officer from June 2021 until March 12, 2023.

12.     Defendants DePaolo, Howell, and Wyremski are collectively referred to herein as the "Individual Defendants."

13.     Each of the Individual Defendants:

(a)     directly participated in the management of the Company;

(b)     was directly involved in the day-to-day operations of the Company at the highest levels;

(c)     was privy to confidential proprietary information concerning the Company and its business and operations;

(d)     was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;

(e)     was directly or indirectly involved in the oversight or implementation of the Company's internal controls;

(f)     was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or

(g)     approved or ratified these statements in violation of the federal securities laws.

14.     Signature Bank is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency because all of the wrongful acts complained of herein were carried out within the scope of their employment.

15.     The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to the Company under *respondeat superior* and agency principles.

16.     Signature Bank and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements
### Issued During the Class Period

17.     On March 2, 2023, the Company issued a press release linking to a presentation that gave a Mid-Quarter Financial Update (the "March 2 Update"). The March 2 Update was uploaded to the Company's website. In pertinent part, this presentation stated that "[t]he average

4

balance quarter-to-date is $88.79 billion, which is higher than the December 31, 2022 balance of $88.59 billion, and lower than the fourth quarter 2022 quarter-to-date average balance of $98.6 billion."

18.     Further, the presentation stated that "[d]eposits have increased $682 million thus far this quarter, excluding digital asset client related balances" and "[t]he decrease in deposit balances this quarter has been driven by the deliberate decline in digital asset client related deposits of $1.51 billion, as the Bank continues to reduce the size of deposit relationships in this space."

19.     Then, on March 9, 2023, the Company issued a Press Release entitled "Signature Bank Issues Updated Financial Figures as of March 8, 2023; Reiterates Strong Financial Position and Limited Digital-Asset Related Deposit Balances in Wake of Industry Developments." (the "March 9 Update"). The March 9 Update was intended to calm investors and depositors in the wake of chaos in the banking sector, such as the collapse of Silicon Valley Bank.

20.     The March 9 Update overstated the Company's market position, given that just a few days later, it was shut down by the New York Department of Financial Services ("DFS"). In pertinent part, the March 9 Update stated that Signature Bank had the following attributes:

- "A proven, stable commercial banking business model with in excess of $100 billion in well-diversified assets across nine national business lines and nearly 130 commercial banking teams spanning its metropolitan New York area and West Coast footprint;"
- "A diversified deposit mix, with more than 80 percent of deposits coming from middle market businesses, such as law firms, accounting practices, healthcare companies, manufacturing companies and real estate management firms;"
- "A high level of capital as evidenced by a common equity tier 1 risk-based capital ratio of 10.42 percent, which is well in excess of regulatory requirements, as of year-end 2022;"

(Emphasis added.)

21.     Defendant DePaolo was also quoted in the March 9 Update. In pertinent part, he stated:

"We want to make it clear again that Signature Bank is a well-diversified, full-service commercial bank with more than two decades of history and solid performance serving middle market businesses. ***We have built a strong reputation serving commercial clients through nine business lines and reached in excess of $100 billion in assets by continually executing our single-point-of-contact, relationship-based model where banking teams are capable of meeting all client needs***,"

"As a reminder, Signature Bank does not invest in, does not trade, does not hold, does not custody and does not lend against or make loans collateralized by digital assets,".

22.     Defendant Howell was also quoted in the March 9 Update. In pertinent part, he stated:

"We have repeatedly communicated that our relationships in the digital asset space are limited to U.S. dollar deposits only, and we remain fully committed to executing on our plan to deliberately reduce these deposits further. Since we opened our doors, we have been a 'deposit-first' institution and have always been committed to our depositors' safety, first and foremost. ***As shown by our current metrics, we intentionally maintain a high level of capital, strong liquidity profile and solid earnings, which continues to differentiate us from competitors, especially during challenging times***,"

(Emphasis added).

23.     The statements contained in ¶¶ 17-22 were materially false and/or misleading because they misrepresented and failed to disclose the following adverse facts pertaining to the Company's business, operations, and prospects, which were known to Defendants or recklessly disregarded by them. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (1) Signature Bank did not have the strong fundamentals that it represented itself as having in the days immediately prior to its takeover, or otherwise took action that left it susceptible to a takeover by the New York Department of Financial Services ("DFS"); (2) as a result, it became a target for regulatory action by the DFS, and (3) as a result, Defendants' public statements were materially false and/or misleading at all relevant times.

## THE TRUTH BEGINS TO EMERGE

24.     On Sunday March 12, 2023, the DFS announced that, in order to protect depositors and pursuant to Section 606 of New York Banking Law, DFS had taken possession of Signature Bank. DFS further stated that it was "in close contact with all regulated entities in light of market events, monitoring market trends, and collaborating closely with other state and federal regulators to protect consumers, ensure the health of the entities we regulate, and preserve the stability of the global financial system."

25.     Section 606 of New York Banking Law states, in pertinent part, "[t]he Superintendent may, in his discretion, forthwith take possession of the business and property of any banking organization whenever it shall appear that such banking organization:

(a) has violated any law;
(b) is conducting its business in an unauthorized or unsafe manner;
(c) *is in an unsound or unsafe condition to transact its business;*
(d) *Cannot with safety and expediency continue business*;
(e) *Has an impairment of its capital; or, in the case of a mutual savings and loan association or credit union, has assets insufficient to pay its debts and the amount due members upon their shares*;
(f) Has suspended payment of its obligations; or, in the case of a mutual savings and loan association, has failed for sixty days after a withdrawal application has been filed with it by any shareholder to pay such withdrawal application in full;
(g) Has neglected or refused to comply with the terms of a duly issued order of the superintendent;
 (h) Has refused, upon proper demand, to submit its records and affairs for inspection to an examiner of the department;
(i) Has refused to be examined upon oath regarding its affairs; (j) Has neglected, refused or failed to take or continue proceedings for voluntary liquidation in accordance with any of the provisions of this chapter."

 (Emphasis added).

26.     As a result of the specific circumstances in which the DFS Superintendent may, in his or her discretion, take possession of a bank, the March 2 and March 9 Updates did not provide investors with a full picture of the risks facing Signature Bank, or hint that it might be taken over by DFS.

27.     In a Joint Statement on March 12, 2023 (the "Joint Statement"), Federal Reserve Chair Jerome ("Jay") Powell, Treasury Secretary Janet Yellen, and Federal Deposit Insurance

7

Corporation ("FDIC") Chair Martin Gruenberg, followed up on DFS's announcement. In pertinent part, the Joint Statement provided the following:

> "[In addition to providing a systemic risk exception for SBV Financial Group], [w]e are also announcing a similar systemic risk exception for Signature Bank, New York, New York, which was closed today by its state chartering authority. All depositors of this institution will be made whole. As with the resolution of Silicon Valley Bank, no losses will be borne by the taxpayer. ***Shareholders and certain unsecured debtholders will not be protected. Senior management has also been removed. Any losses to the Deposit Insurance Fund to support uninsured depositors will be recovered by a special assessment on banks, as required by law***."

(Emphasis added).

28.     On March 12, 2023, trading in the Company's shares were halted and remain halted as of the filing of this action, essentially rendering the Company's shares illiquid and valueless- given the bank's failure.

29.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and the other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

30.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons other than defendants who acquired Signature Bank securities publicly traded on the NASDAQ during the Class Period, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, members of the Individual Defendants' immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

31.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, the Company's securities were actively traded on the

NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds, if not thousands of members in the proposed Class.

32.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

33.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

34.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

- whether the Exchange Act was violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of the Company;

- whether Defendants' public statements to the investing public during the Class Period omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

- whether the Defendants caused the Company to issue false and misleading filings during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false filings;

- whether the prices of the Company's securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

35. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

36. Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- the Company's securities met the requirements for listing, and were listed and actively traded on the NASDAQ, an efficient market;

- as a public issuer, the Company filed public reports;

- the Company communicated with public investors via established market communication mechanisms, including through the regular dissemination of press releases via major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

- the Company's securities were liquid and traded with moderate to heavy volume during the Class Period; and

- the Company was followed by a number of securities analysts employed by major brokerage firms who wrote reports that were widely distributed and publicly available.

37.     Based on the foregoing, the market for the Company securities promptly digested current information regarding the Company from all publicly available sources and reflected such information in the prices of the common units, and Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

38.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information as detailed above.

### COUNT I
### For Violations of Section 10(b) And Rule 10b-5 Promulgated Thereunder
### Against All Defendants

39.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

40.     This Count asserted against Defendants is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

41.      During the Class Period, Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

42.     Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in that they:

- employed devices, schemes and artifices to defraud;

- made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

- engaged in acts, practices and a course of business that operated as a fraud or deceit upon plaintiff and others similarly situated in connection with their purchases of the Company's securities during the Class Period.

43.     Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated, or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the securities laws. These defendants by virtue of their receipt of information reflecting the true facts of the Company, their control over, and/or receipt and/or modification of the Company's allegedly materially misleading statements, and/or their associations with the Company which made them privy to confidential proprietary information concerning the Company, participated in the fraudulent scheme alleged herein.

44.     Individual Defendants, who are or were senior executives and/or directors of the Company, had actual knowledge of the material omissions and/or the falsity of the material statements set forth above, and intended to deceive Plaintiff and the other members of the Class, or, in the alternative, acted with reckless disregard for the truth when they failed to ascertain and disclose the true facts in the statements made by them or other Company's personnel to members of the investing public, including Plaintiff and the Class.

45.    As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period. In ignorance of the falsity of Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of the Company's securities during the Class Period in purchasing the Company's securities at prices that were artificially inflated as a result of Defendants' false and misleading statements.

46.    Had Plaintiff and the other members of the Class been aware that the market price of the Company's securities had been artificially and falsely inflated by Defendants' misleading statements and by the material adverse information which Defendants did not disclose, they would not have purchased the Company's securities at the artificially inflated prices that they did, or at all.

47.    As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

48.    By reason of the foregoing, Defendants have violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder and are liable to the plaintiff and the other members of the Class for substantial damages which they suffered in connection with their purchase of the Company's securities during the Class Period.

**COUNT II**
**Violations of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

49.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

50.    During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the

conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about the Company's misstatement of revenue and profit and false financial statements.

51.     As officers of a public business, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

52.      Because of their positions of control and authority as senior executives and/or directors, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period concerning the Company's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Company securities.

53.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

### PRAYER FOR RELIEF

**WHEREFORE**, plaintiff, on behalf of himself and the Class, prays for judgment and relief as follows:

14

(a)     declaring this action to be a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and designating plaintiff's counsel as Lead Counsel;

(b)     awarding damages in favor of plaintiff and the other Class members against all defendants, jointly and severally, together with interest thereon;

(c)     awarding plaintiff and the Class reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     awarding plaintiff and other members of the Class such other and further relief as the Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.

Dated:   3/14/2023                          **THE ROSEN LAW FIRM, P.A.**

/s/ Phillip Kim
_____
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*Counsel for Plaintiff*