**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq. (PK 9384)
Laurence M. Rosen, Esq. (LR 5733)
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Movant and Class*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MATTHEW SCHAEFFER, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SIGNATURE BANK, JOSEPH DEPAOLO, STEPHEN WYREMSKI, and ERIC HOWELL,<br><br>Defendants. | CASE No.: 1:23-cv-01921-FB-JRC<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF ARADHANA CHOPRA TO: (1) CONSOLIDATE RELATED ACTIONS; (2) APPOINT LEAD PLAINTIFF; AND (3) APPROVE LEAD PLAINTIFF'S SELECTION OF COUNSEL**<br><br>**CLASS ACTION** |
| PIRTHI PAL SINGH, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SIGNATURE BANK, SCOTT A. SHAY, JOSEPH DEPAOLO, VITO SUSCA, MARK SIGONA, STEPHEN WYREMSKI, and ERIC HOWELL,<br><br>Defendants. | CASE No.: 1:23-cv-02501-ENV-VMS<br><br>**CLASS ACTION** |

**TABLE OF CONTENTS**

INTRODUCTION AND BACKGROUND ................................................................... 1

ARGUMENT ............................................................................................................. 5

I.  THE RELATED ACTIONS SHOULD BE CONSOLIDATED ............................................. 5

II.  MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF .............................................. 6

    A.  Movant Is Willing to Serve as Class Representative ....................................... 6

    B.  Movant Has the Largest Financial Interest in the Action ................................ 6

    C.  Movant Satisfies the Requirements of Rule 23 of the Federal Rules of Civil
       Procedure ....................................................................................................... 7

        1.  Movant's Claims are Typical .................................................................. 8

        2.  Movant Is Adequate ................................................................................. 8

    D.  Movant Is Presumptively the Most Adequate Plaintiff .................................... 9

III.  MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED ......................... 10

CONCLUSION ......................................................................................................... 10

i

Movant Aradhana Chopra ("Movant") respectfully submits this memorandum of law in support of her motion for an Order, pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"):

(a)     consolidating the above-captioned actions;

(b)     appointing Movant as Lead Plaintiff for the class of all purchasers or acquirers of Signature Bank ("Signature Bank" or the "Company") securities between March 2, 2023 and March 12, 2023[1], both dates inclusive (the "Class Period"); and

(c)     approving Movant's selection of The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel for the Class.

## INTRODUCTION AND BACKGROUND

On March 14, 2023, the first-filed action was commenced, styled as *Schaeffer v. Signature Bank et al.,* case no. 1:23-cv-01921-FB-JRC, against the Company and certain of its current and former officers, for violations under the Exchange Act by Rosen Law. That same day, Rosen Law issued an early notice pursuant to the PSLRA advising class members of, inter alia, the allegations and claims in the complaint, the Class Period, and advising class members of their option to seek appointment as Lead Plaintiff was issued. *See* Ex. 1 hereto.

The related action was filed on March 31, 2023, styled as *Singh v. Signature Bank et al.*, case no. 1:23-cv-02501-ENV-VMS, (the "*Singh* Action"), alleging the same Exchange Act

---

[1] The action *Schaeffer v. Signature Bank et al.,* case no. 1:23-cv-01921-FB-JRC, has a class period of March 2, 2023 through March 12, 2023, inclusive. The action *Singh v. Signature Bank et al.*, case no. 1:23-cv-02501-ENV-VMS, has a class period of April 23, 2020 through March 12, 2023, inclusive. A more inclusive class period is favored at the lead plaintiff stage. *Deering v. Galena Biopharma, Inc.*, 2014 WL 4954398, at *10 (D. Or. Oct. 3, 2014) (recognizing that courts commonly select "most inclusive class period" at lead plaintiff stage); *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 113-114 (E.D.N.Y. 2012) (court favoring a broader class which "encompasses more potential class members" early in the litigation at the lead plaintiff stage).

allegations against the same defendants, adding Defendants Scott A. Shay, Vito Susca, and Mark Sigona.

Signature Bank purports to be a New York-based full-service commercial bank with 40 private client offices located throughout the metropolitan New York area, as well as those in Connecticut, California, Nevada and North Carolina. Through its single-point-of-contact approach, the Company's private client banking teams serves the needs of privately owned businesses, their owners and senior managers. The complaints allege that during the Class Period, Defendants made materially false and/or misleading statements and/or failed to disclose that: (1) Signature Bank did not have the strong fundamentals that it represented itself as having in the days immediately prior to its takeover, or otherwise took action that left it susceptible to a takeover by the New York Department of Financial Services ("DFS"); (2) as a result, it became a target for regulatory action by the DFS, and (3) as a result, Defendants' public statements were materially false and/or misleading at all relevant times.

On March 2, 2023, the Company issued a press release linking to a presentation that gave a Mid-Quarter Financial Update (the "March 2 Update"). The March 2 Update was uploaded to the Company's website. In pertinent part, this presentation stated that "[t]he average balance quarter-to-date is $88.79 billion, which is higher than the December 31, 2022 balance of $88.59 billion, and lower than the fourth quarter 2022 quarter-to-date average balance of $98.6 billion."

Further, the presentation stated that "[d]eposits have increased $682 million thus far this quarter, excluding digital asset client related balances" and "[t]he decrease in deposit balances this quarter has been driven by the deliberate decline in digital asset client related deposits of $1.51 billion, as the Bank continues to reduce the size of deposit relationships in this space."

Then, on March 9, 2023, the Company issued a Press Release entitled "Signature Bank Issues Updated Financial Figures as of March 8, 2023; Reiterates Strong Financial Position and

Limited Digital-Asset Related Deposit Balances in Wake of Industry Developments." (the

"March 9 Update"). The March 9 Update was intended to calm investors and depositors in the

wake of chaos in the banking sector, such as the collapse of Silicon Valley Bank.

The March 9 Update overstated the Company's market position, given that just a few

days later, it was shut down by the New York Department of Financial Services ("DFS"). In

pertinent part, the March 9 Update stated that Signature Bank had the following attributes:

- "A proven, stable commercial banking business model with in excess of $100 billion in well-diversified assets across nine national business lines and nearly 130 commercial banking teams spanning its metropolitan New York area and West Coast footprint;"
- "A diversified deposit mix, with more than 80 percent of deposits coming from middle market businesses, such as law firms, accounting practices, healthcare companies, manufacturing companies and real estate management firms;"
- "A high level of capital as evidenced by a common equity tier 1 risk-based capital ratio of 10.42 percent, which is well in excess of regulatory requirements, as of year-end 2022;"

Defendant DePaolo was also quoted in the March 9 Update. In pertinent part, he stated:

"We want to make it clear again that Signature Bank is a well-diversified, full-service commercial bank with more than two decades of history and solid performance serving middle market businesses. *We have built a strong reputation serving commercial clients through nine business lines and reached in excess of $100 billion in assets by continually executing our single-point-of-contact, relationship-based model where banking teams are capable of meeting all client needs."*

"As a reminder, Signature Bank does not invest in, does not trade, does not hold, does not custody and does not lend against or make loans collateralized by digital assets."

(Emphasis added.)

Defendant Howell was also quoted in the March 9 Update. In pertinent part, he stated:

"We have repeatedly communicated that our relationships in the digital asset space are limited to U.S. dollar deposits only, and we remain fully committed to executing on our plan to deliberately reduce these deposits further. Since we opened our doors, we have been a 'deposit-first' institution and have always been committed to our depositors' safety, first and foremost. *As shown by our current*

*metrics, we intentionally maintain a high level of capital, strong liquidity profile and solid earnings, which continues to differentiate us from competitors, especially during challenging times."*

(Emphasis added).

Then, on March 12, 2023, the DFS announced that, in order to protect depositors and pursuant to Section 606 of New York Banking Law, DFS had taken possession of Signature Bank. DFS further stated that it was "in close contact with all regulated entities in light of market events, monitoring market trends, and collaborating closely with other state and federal regulators to protect consumers, ensure the health of the entities we regulate, and preserve the stability of the global financial system."

As a result of the specific circumstances in which the DFS Superintendent may, in his or her discretion, take possession of a bank, the March 2 and March 9 Updates did not provide investors with a full picture of the risks facing Signature Bank, or hint that it might be taken over by DFS.

In a Joint Statement on March 12, 2023 (the "Joint Statement"), Federal Reserve Chair Jerome ("Jay") Powell, Treasury Secretary Janet Yellen, and Federal Deposit Insurance Corporation ("FDIC") Chair Martin Gruenberg, followed up on DFS's announcement. In pertinent part, the Joint Statement provided the following:

> "[In addition to providing a systemic risk exception for SBV Financial Group], [w]e are also announcing a similar systemic risk exception for Signature Bank, New York, New York, which was closed today by its state chartering authority. All depositors of this institution will be made whole. As with the resolution of Silicon Valley Bank, no losses will be borne by the taxpayer. **Shareholders and certain unsecured debtholders will not be protected. Senior management has also been removed. Any losses to the Deposit Insurance Fund to support uninsured depositors will be recovered by a special assessment on banks, as required by law."**

(Emphasis added).

4

On March 12, 2023, trading in the Company's shares were halted and remain halted as of the filing of this action, essentially rendering the Company's shares illiquid and valueless- given the bank's failure. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and other Class members have suffered significant losses and damages.

**ARGUMENT**

**I.  THE RELATED ACTIONS SHOULD BE CONSOLIDATED**

Consolidation of related cases is proper where, as here, the actions involve common questions of law and fact such that consolidation would prevent unnecessary cost or delay in adjudication. When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay. Fed. R. Civ. P. 42(a).

The PSLRA contemplates consolidation where "more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter has been filed." 15 U.S.C. §78u-4(a)(3)(A)(ii). As such, the PSLRA does not displace the traditional legal standards for consolidation under Fed. R. Civ. P. 42(a).

The above-captioned related actions have been filed in this District alleging similar factual and legal grounds to support allegations of violations of the Exchange Act by Defendants arising from the public dissemination of false and misleading information to investors. Accordingly, the above-captioned cases should be consolidated pursuant to Fed. R. Civ. P. 42(a) for all purposes.

5

## II.   MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of: (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff" to serve as lead plaintiff is the person or group that:

(aa) has either filed the complaint or made a motion in response to a notice…;

(bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

As set forth below, Movant satisfies all three of these criteria, and thus is entitled to the presumption of being the "most adequate plaintiff" for the Class.

### A.   Movant Is Willing to Serve as Class Representative

Movant has filed herewith a PSLRA certification attesting that she is willing to serve as representative of the class and remains willing to provide testimony at deposition and trial, if necessary. *See* Ex. 2 hereto. Accordingly, Movant satisfies the first requirement to serve as Lead Plaintiff for the Class.

### B.   Movant Has the Largest Financial Interest in the Action

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff…is the person or group of persons that…has the largest financial interest in the relief

6

sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). "While the PSLRA does not specify how we should decide which plaintiff group has the 'largest financial interest' in the relief sought, most courts simply determine which potential lead plaintiff has suffered the greatest total losses." *Takara Trust v. Molex*, 229 F.R.D. 577, 579 (N.D. Ill. 2005). Of the *Lax*/*Olsten*-styled[2] factors in determining the largest financial interest, the financial loss is the most significant factor. *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008). Indeed, "the best yardstick by which to judge 'largest financial interest' is the amount of loss, period." *In re Bally Total Fitness*, *Sec. Litig.*, 2005 WL 627960 * 4 (N.D. Ill. Mar. 15, 2005). To calculate financial loss, the last-in-first-out ("LIFO") methodology is the preferred method. *Bo Young Cha v. Kinross Gold Corp.*, 2012 WL 2025850, at *3 (S.D.N.Y. May 31, 2012) ("the overwhelming trend both in this district and nationwide has been to use LIFO to calculate such losses."); *City of Monroe Employees' Ret. Sys. v. Hartford Fin. Servs. Grp., Inc.*, 269 F.R.D. 291, 295 (S.D.N.Y. 2010) ("courts in this district and others have stated a preference for LIFO over FIFO in assessing loss for purposes of the appointment of lead plaintiff.").

Movant lost approximately $934,772.09 in connection with her transactions in Signature Bank securities. *See* Ex. 3 hereto. Movant is not aware of any other movant that has suffered greater losses in Signature Bank securities during the Class Period. Accordingly, Movant satisfies the largest financial interest requirement to be appointed as Lead Plaintiff for the class.

C. **Movant Satisfies the Requirements of Rule 23 of the Federal Rules**
   **of Civil Procedure**

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule

---

[2] *Lax v. Merch. Acceptance Corp.*, 1997 WL 461036 *5 (N.D. Ill. Aug. 11, 1997); *In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286, 295 (E.D.N.Y. 1998).

23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that the Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification—a *prima facie* showing that Movant will satisfy the requirements of Rule 23 is sufficient. *Fuwei Films*, 247 F.R.D. at 439 (only a *prima facie* showing is required). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.,* 182 F.R.D. 42, 49 (S.D.N.Y. 1998).

### 1.      Movant's Claims are Typical

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims and plaintiff's claims are based on the same legal theory. *See In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 516 (S.D.N.Y. 2002). Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Id*.

Here, Movant's claims are typical of the claims asserted by the Class. Movant, like all members of the Class, alleges that Defendants violated the Exchange Act by issuing false and misleading statements about the Company's business. Movant's interests are closely aligned with the other Class members' and Movant's interests are, therefore, typical of the other members of the Class.

### 2.      Movant Is Adequate

8

The adequacy of representation of Rule 23 is satisfied where it is established that a representative party has the ability to represent the claims of the class vigorously, has obtained adequate counsel, and there is no conflict between a potential representative's claim and those asserted on behalf of the class. *In re Cendant Corp. Litigation*, 264 F.3d. 201, 265 (3d Cir. 2001).

Here, Movant has communicated with competent, experienced counsel concerning this case, and made this motion to be appointed as Lead Plaintiff. Movant is not aware that any conflict exists between her claims and those asserted on behalf of the Class. Movant also sustained financial losses from investments in Signature Bank securities and is therefore, extremely motivated to pursue claims in this action.

### D. Movant Is Presumptively the Most Adequate Plaintiff

The presumption in favor of appointing Movant as Lead Plaintiff may be rebutted only upon proof "by a purported member of the Plaintiffs' class" that the presumptively most adequate plaintiff:

(aa) will not fairly and adequately protect the interests of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

The presumption that Movant is the most adequate Lead Plaintiff is not, therefore subject to rebuttal. Movant has suffered financial losses and has the largest financial interest in this case of any timely lead plaintiff.

Movant is a sophisticated businessperson. Movant lives in Seattle, Washington and has earned an MBA. Movant has been investing for a number of years.

The ability of Movant to represent the Class fairly and adequately is discussed above. Movant is not aware of any unique defenses Defendants could raise against her that would render Movant inadequate to represent the Class.

### III.     MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with Lead Plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected The Rosen Law Firm, P.A. as Lead Counsel. The firm has been actively researching Movant's and the Class' claims including commencing the first-filed action as well as reviewing publicly available financial and other documents while gathering information in support of the claims against Defendants. Furthermore, the firm has an extensive history bringing significant recoveries to investors and is experienced in the area of securities litigation and class actions, having been appointed as lead counsel in securities class actions in this District and in other courts throughout the nation. *See* Ex. 4 hereto. The firm has prosecuted numerous securities fraud class actions and other complex litigation and obtained substantial recoveries on behalf of investors.

As a result of the firm's experience in litigation involving issues similar to those raised in this action, Movant's counsel has the skill and knowledge to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving the Movant's selection of Lead Counsel, the members of the class will receive the best legal representation available.

### CONCLUSION

For the foregoing reasons, Movant respectfully requests the Court issue an Order: (1) consolidating the related actions; (2) appointing Movant as Lead Plaintiff of the Class; (3)

10

approving the Movant's selection of The Rosen Law Firm, P.A. as Lead Counsel; and (4)

granting such other relief as the Court may deem to be just and proper.

Dated: May 15, 2023                           Respectfully submitted,

                                              **THE ROSEN LAW FIRM, P.A.**

                                              /s/ Phillip Kim
                                              Phillip Kim, Esq. (PK 9384)
                                              Laurence M. Rosen, Esq. (LR 5733)
                                              275 Madison Avenue, 40th Floor
                                              New York, New York 10016
                                              Telephone: (212) 686-1060
                                              Fax: (212) 202-3827
                                              Email: pkim@rosenlegal.com
                                              Email: lrosen@rosenlegal.com

                                              *[Proposed] Lead Counsel for Movant and Class*

## CERTIFICATE OF SERVICE

      I hereby certify that on May 15, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

<u>/s/Phillip Kim</u>