# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTHEW SCHAEFFER, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SIGNATURE BANK, JOSEPH DEPAOLO, STEPHEN WYREMSKI, and ERIC HOWELL,<br><br>Defendants. | Case No.: 1:23-cv-01921-FB-JRC<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF BRIAN ANDREW PERGAMENT AND JOHN ROMANO TO APPOINT CO-LEAD PLAINTIFFS AND APPROVE CO-LEAD COUNSEL** |
| PIRTHI PAL SINGH, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SIGNATURE BANK, SCOTT A. SHAY, JOSEPH DEPAOLO, VITO SUSCA, MARK SIGONA, STEPHEN WYREMSKI, and ERIC HOWELL,<br><br>Defendants. | Case No. 1:23-cv-02501-ENV-VMS |

Brian Andrew Pergament and John Romano ("Movants") respectfully submit this Memorandum of Law in support of their motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934, 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for the entry of an Order: (1) appointing Movants as Co-Lead Plaintiffs on behalf of persons or entities who purchased or otherwise acquired Signature Bank ("Signature" or "the Company") securities between April 23, 2020, and March 12, 2023, inclusive (the "Class Period"), (the "Class"); and (2) approving proposed Co-Lead Plaintiffs' selection of Weiss Law ("WeissLaw") and Glancy Prongay and Murray LLP ("GPM") as Co-Lead Counsel for the Class.

## I.   PRELIMINARY STATEMENT

The two captioned complaints allege that Signature and certain of its officers defrauded investors in violation of the Exchange Act.  Signature investors, including Movants, incurred significant losses following the disclosure of the alleged fraud, which caused the price of Signature securities to fall sharply, damaging Movants and other Signature investors.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant or group of movants that possesses the largest financial interest in the outcome of the action and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). In connection with their transactions in Signature securities during the Class Period, Movants suffered losses of $862,638.30.  *See* Ex. A to the accompanying Declaration of Mark D. Smilow ("Smilow Decl."). Accordingly, Movants believe that they have the largest financial interest in the relief sought in the Action.

Beyond their considerable financial interest, Movants also meet the applicable requirements of Rule 23 because their claims are typical of absent Class members and because they will fairly and adequately represent the interests of the Class.

To fulfill their obligations as Lead Plaintiffs and vigorously prosecute the Action on behalf of the Class, Movants selected WeissLaw and GPM as Co-Lead Counsel for the Class. WeissLaw and GPM are highly experienced in the area of securities litigation and class actions and have successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firms' resumes attached as Ex. E to the Smilow Decl.

Accordingly, Movants respectfully request that the Court enter an order appointing Movants as Co-Lead Plaintiffs and approving their selection of Weiss Law and GPM as Co-Lead Counsel for the Class.

## II.     STATEMENT OF FACTS

As alleged in the complaints in the captioned actions, Defendant Signature was a New York-based full-service commercial bank with 40 private client offices located throughout the metropolitan New York area, as well as Connecticut, California, Nevada, and North Carolina.  In addition, through a subsidiary specialty finance company, Signature offered a variety of financing and leasing products, including equipment, transportation, commercial marine, sustainable energy, and national franchise financing and/or leasing.

Commencing on April 23, 2020, the beginning of the Class Period, the Company issued a series of press releases and other communications reporting in sum and substance that Signature "maintained extraordinarily high cash levels," had a solid balance sheet, had plenty of funds available whenever needed by customers, remained "single-mindedly focus[ed] on being the safest

bank," and reporting very strong financial results, emphasizing the strength of Signature's balance sheet and the steady increase in funds deposited with the bank.

Furthermore, throughout the Class Period, while continuing to report stellar financial metrics regarding its solid balance sheet and increasing deposits, Signature reported that it was a "safe bank." Even after it launched a blockchain-based payments platform for transacting in digital assets and cryptocurrency called Signet, Signature continued to represent that it still paid "close attention to technological advances," that it was "at the forefront" of banks recognizing "the emergence of and massive changes in the digital payments economy," that it maintained "its focus on leading and experimenting with the newest technologies in a disciplined yet vigorous manner," and that in "an era of rapid technological change in the financial and payments world, we are on the cutting-edge of adoption and expansion of our digital assets business." In fact, Signature reported that it worked very well with its government regulators, including the New York Department of Financial Services ("DFS").

Later in the Class Period, when digital currency values suffered price drops that shook the market for digital currency and cryptocurrency exchanges collapsed, Signature continued to reiterate to investors that it maintained a strong financial position and remained committed to its support and investment in the digital asset industry, with little exposure to the troubled participants in the industry.

Later still, when other banks offering digital asset services were taken over by regulators and shut down or determined to voluntarily shut down, Signature continued to represent that it was still a solid bank, with solid financial metrics, and that it remained capable of meeting all client needs, emphasizing that it did "not invest in, does not trade, does not hold, does not custody and does not lend against or make loans collateralized by digital assets."

3

But Signature's reassurances did not stop the withdrawal by its customers of more than $10 billion in deposits on March 10, 2023.

In truth, however, throughout the Class Period, Signature misrepresented that: (1) it had strong fundamentals; (2) it overstated the stability and/or sustainability of its deposit base; (3) its concentration in the cryptocurrency industry significantly undermined the health of its balance sheet; (4) as a result of the foregoing, Signature was exceptionally vulnerable to a bank run and/or a liquidity crisis; and (5) the foregoing placed Signature at a heightened risk of failure and/or regulatory takeover.

Finally, on March 12, 2023, the truth of Signature's precarious existence became public when DFS closed Signature and appointed the Federal Deposit Insurance Corporation ("FDIC") as the Bank's Receiver. As a result of that appointment, the FDIC-Receiver succeeded by operation of law to all the rights, titles, powers, and privileges of Signature, virtually wiping out all shareholders and their investments in the Company.

In a Joint Statement on March 12, 2023 (the "Joint Statement"), Federal Reserve Chair Jerome ("Jay") Powell, Treasury Secretary Janet Yellen, and FDIC Chair Martin Gruenberg followed up on DFS's announcement. In pertinent part, the Joint Statement provided the following:

> [In addition to providing a systemic risk exception for SBV Financial Group], [w]e are also announcing a similar systemic risk exception for Signature Bank, New York, New York, which was closed today by its state chartering authority. All depositors of this institution will be made whole. As with the resolution of Silicon Valley Bank, no losses will be borne by the taxpayer. ***Shareholders and certain unsecured debtholders will not be protected***. Senior management has also been removed. Any losses to the Deposit Insurance Fund to support uninsured depositors will be recovered by a special assessment on banks, as required by law. (Emphasis added).

On March 12, 2023, trading in the Company's shares were halted, essentially rendering the Company's shares illiquid and valueless given the bank's failure. Since then, the Company's

4

shares have been trading on the OTC market at pennies per share. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common shares, Plaintiff and the other Class members have suffered significant losses.

## III.    ARGUMENT

### A.    Movants Should Be Appointed Co-Lead Plaintiffs

Movants should be appointed Co-Lead Plaintiffs because, to their knowledge, they have the largest financial interest in the captioned actions and otherwise meet the requirements of Rule 23.  Section 21D(a)(3)(B) of the PSLRA sets forth procedures for the selection of lead plaintiffs in class actions brought under the Exchange Act.  The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members within 60 days of a published notice of the class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) &(ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice.  Under this section, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Movants satisfy all three of these criteria and thus are entitled to the presumption that they are the most adequate plaintiffs of the Class and, therefore, should be appointed Co-Lead Plaintiffs for the Class.

### 1. Movants Are Willing to Serve as Class Representatives

On March 14, 2023, counsel for plaintiff in the first-filed captioned action caused a notice to be published over *Business Wire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA (the "Notice"). The Notice announced that a securities class action was filed against Defendants, and advised investors in Signature securities that they had until May 15, 2023—*i.e.,* 60 days from the date of the Notice—to file a motion to be appointed Lead Plaintiff. Smilow Decl., Ex. B.

Movants file the instant motion pursuant to the Notice and have attached sworn certifications attesting that they are willing to serve as representatives for the Class and to provide testimony at deposition and trial, if necessary. Smilow Decl. Ex. C. Accordingly, Movants satisfy the first requirement to serve as Lead Plaintiffs of the Class.

### 2. Movants Have the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . in the determination of the court, has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

To the best of their knowledge, Movants have the largest financial interest of any Signature investor seeking to serve as Lead Plaintiff based on the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased; (2) the number of net shares purchased (also referred to as "retained shares"); (3) the total net funds expended; and (4) the approximate losses suffered. *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715 et al., 1997 U.S. Dist. LEXIS 11866, at *17-*18 (N.D. Ill. Aug. 6, 1997). In accord with courts

nationwide, these so-called *Lax* factors have been adopted by courts, including in this District. *See*, *e.g.*, *Silverberg v. Dryships Inc.*, No. 17-CV-4547 (SJF)(ARL), 2018 U.S. Dist. LEXIS 225563, at *13 (E.D.N.Y. Aug. 21, 2018). Of the *Lax* factors, courts in this Circuit tend to emphasize approximate loss in assessing a lead plaintiff movant's financial interest within the meaning of the PSLRA. *Id*.

During the Class Period, Movants (1) purchased 12,500 shares[1] of Signature securities; (2) expended $862,638.30 on their purchases of Signature securities; (3) retained all of their shares of Signature securities until the shares were de-listed; and (4) as a result of the disclosures of the fraud, suffered a loss of more than $862,000.00 in connection with their purchases of Signature securities. Smilow Decl. Ex. A. Because Movants possess the largest financial interest in the outcome of this litigation, they may be presumed to be the "most adequate" plaintiffs. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 3. Movants Otherwise Satisfy the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

---

[1] Movant Romano sold put options during the Class Period as reflected in his certification. Some of these options were put to him after the Class Period, resulting in his purchase of 5,000 shares valued as of the date of the put option. *See* Smilow Decl. Exhibits A and C.

7

In making its determination that the Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead, a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient. *Silverberg,* 2018 U.S. Dist. LEXIS 225563, at *25.

"The typicality requirement is met where each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability. . . . [A] lead plaintiff's claims need not be identical to the claims of the class." *Id.*

The claims of Movants are typical of those of the Class. Movants allege, as do all Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning Signature, or by omitting to state material facts necessary to make the statements they did make not misleading. Movants, as did all Class members, purchased Signature securities during the Class Period at prices artificially inflated by Defendants' misrepresentations or omissions and were damaged upon the disclosure of those misrepresentations and/or omissions. These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

In determining whether the adequacy of representation requirement of Rule 23(a)(4) is met, "(1) there should be no conflict between the interests of the class and the named plaintiff nor should there be collusion among the litigants; . . . (2) the parties' attorney must be qualified, experienced, and generally able to conduct the proposed litigation[;] . . . [and] [3] [t]he lead plaintiff should . . . have a sufficient interest in the outcome to ensure vigorous advocacy." *Id.*

Movants are adequate representatives for the Class. Here, Movants submitted signed Certifications declaring their commitment to protecting the interests of the Class. Smilow Decl.

8

Ex. C.  Further, demonstrating their adequacy, Movants submitted a Joint Declaration attesting to, *inter alia,* their background and investing experience, their experience working with proposed Co-Lead Counsel, their understanding of the responsibilities of a Lead Plaintiff pursuant to the PSLRA, their decision to seek appointment ss Co-Lead Plaintiffs, and the steps that Movants are prepared to take to prosecute this litigation on behalf of the Class.  Smilow Decl. Ex. D.  There is no antagonism between the interests of Movants and those of the Class, and their significant financial interest demonstrates that they have a sufficient interest in the outcome of this litigation that gives them an incentive to vigorously prosecute fraud claims on behalf of the Class.  Moreover, Movants have retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as these actions and submit their choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

### 4. Movants Will Fairly and Adequately Represent the Interests of the Class and Are Not Subject to Unique Defenses

The presumption in favor of appointing Movants as Co-Lead Plaintiffs may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

(aa)   will not fairly and adequately protect the interest of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The ability and desire of Movants to represent the Class fairly and adequately have been discussed above.  Movants are not aware of any unique defenses Defendants could raise that would render them inadequate to represent the Class.

### B. SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiffs to select and retain lead counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v); *Silverberg,* 2018 U.S. Dist. LEXIS 225563, at *36. The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movants have selected WeissLaw and GPM as Co-Lead Counsel for the Class. WeissLaw and GPM are premier firms, highly experienced in the areas of securities litigation and class action lawsuits, which have successfully prosecuted numerous such actions on behalf of investors over their 40+ year history, as detailed in the firms' resumes. Smilow Decl. Ex. E. As a result of their extensive experience in similar litigation, Movants' choice of counsel, WeissLaw and GPM, have the skill, knowledge, expertise, resources, and experience that will enable the firms to prosecute the Class's claims in this litigation effectively and expeditiously. The Court may be assured that by approving Movants' selection of WeissLaw and GPM as Co-Lead Counsel, the Class members will receive the best legal representation available. Thus, Movants respectfully urge the Court to appoint WeissLaw and GPM to serve as Co-Lead Counsel.

## IV. CONCLUSION

For the foregoing reasons, Movants respectfully request that the Court issue an Order: (1) (1) appointing Movants as Co-Lead Plaintiffs and (2) approving WeissLaw and GPM as Co-Lead Counsel for the Class.

Dated: May 15, 2023              **WEISS LAW**

                                 **By:** */s/ Mark D. Smilow*
                                 Joshua M. Rubin (JR-4982)
                                 Mark D. Smilow (MS-2809)
                                 305 Broadway, 7th Floor
                                 New York, NY 10007
                                 Telephone: 212/682-3025
                                 Facsimile: 212/682-3010

10

**GLANCY PRONGAY &
MURRAY LLP**
Brian Murray (BM-9954)
230 Park Avenue, Suite 35A
New York, NY 10019
Telephone: (212) 682-5340
Email: bmurray@glancylaw.com

**LAW OFFICES OF HOWARD
G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Counsel for Movants and
Proposed Co-Lead Counsel for
the Class*