UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTHEW SCHAEFFER, Individually and on behalf of all others similarly situated, | Case No. 1:23-cv-01921-FB-JRC |
| Plaintiff, | |
| v. | |
| SIGNATURE BANK, JOSEPH DEPAOLO, STEPHEN WYREMSKI, and ERIC HOWELL, | |
| Defendants. | |
| PIRTHI PAL SINGH, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:23-cv-02501-ENV-VMS |
| Plaintiff, | |
| v. | |
| SIGNATURE BANK, SCOTT A. SHAY, JOSEPH DEPAOLO, VITO SUSCA, MARK SIGONA, STEPHEN WYREMSKI, and ERIC HOWELL, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF SJUNDE AP-FONDEN FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL**

# TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT ...................................................................1

II.    FACTUAL BACKGROUND ....................................................................4

III.   ARGUMENT ...........................................................................................5

    A.    The Related Actions Should Be Consolidated ................................5

    B.    AP7 Is the Most Adequate Plaintiff .............................................6

        1.    AP7's Motion Is Timely ......................................................7

        2.    AP7 Has the Largest Financial Interest in the Relief Sought by the Class ...............................................................................7

        3.    AP7 Satisfies the Requirements of Rule 23 ..........................7

            a)    AP7 Is Typical ...........................................................8

            b)    AP7 Is Adequate .......................................................8

    C.    AP7's Selection of Lead Counsel Should Be Approved ...................11

IV.   CONCLUSION........................................................................................14

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Bhojwani v. Pistiolis*,
    Nos. 06 Civ. 13761(CM)(KNF), *et al.*,
    2007 WL 2197836 (S.D.N.Y. June 26, 2007) .......................................................................1

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)................................................................................................ 9-10

*Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*,
    586 F.3d 703 (9th Cir. 2009) ..................................................................................................11

*Kaplan v. Gelfond*,
    240 F.R.D. 88 (S.D.N.Y. 2007) ..........................................................................................5, 8

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
    No. C 18-02902 WHA,
    2021 WL 1540996 (N.D. Cal. Apr. 20, 2021) ......................................................................12

**Statutes**

15 U.S.C. § 78u-4(a) ........................................................................................... *passim*

**Other Authorities**

Fed. R. Civ. P. 23(a) .................................................................................................................8

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 .............................2, 9

Sjunde AP-Fonden ("AP7") respectfully submits this Memorandum of Law in support of its motion (the "Motion"), pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), for entry of an Order for: (1) consolidation of the above-captioned actions (the "Related Actions") pursuant to Rule 42(a) of the Federal Rules of Civil Procedure ("Rule 42(a)"); (2) appointment of AP7 as Lead Plaintiff; (3) approval of AP7's selection of Bernstein Litowitz Berger & Grossmann LLP ("Bernstein Litowitz") and Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") as Lead Counsel for the class; and (4) any such further relief as the Court may deem just and proper.

## I.     PRELIMINARY STATEMENT

The Related Actions are two related securities class actions brought under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), against Signature Bank ("Signature" or the "Company") and certain of its executive officers (collectively, "Defendants"). The Related Actions are brought on behalf of a proposed class of all persons or entities that purchased or otherwise acquired Signature securities between April 23, 2020, and March 12, 2023, inclusive (the "Class Period").[1]  As detailed below, the Related Actions involve common issues of law and fact and should be consolidated pursuant to Rule 42(a).  *See infra* Section III.A.

After consolidation, the PSLRA governs the selection of the lead plaintiff in class actions asserting claims under the federal securities laws.  Specifically, the PSLRA requires a court to appoint as lead plaintiff the movant who: (1) makes a timely motion under the PSLRA's sixty-day

---

[1]     For purposes of this Motion, AP7 has used the longest-pled class period in the Related Actions to calculate its financial interest and refers to the broadest set of claims.  *See, e.g.*, *Bhojwani v. Pistiolis*, Nos. 06 Civ. 13761(CM)(KNF), *et al.*, 2007 WL 2197836, at *3 (S.D.N.Y. June 26, 2007), *R. & R. partially adopted*, No. 06 CIV. 13761(CM)(KNF), 2007 WL 9228588 (S.D.N.Y. July 30, 2007) (applying more inclusive class period).

1

deadline; (2) asserts the largest financial interest in the litigation; and (3) otherwise satisfies the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

AP7 respectfully submits that it is the presumptive "most adequate plaintiff" under the PSLRA and should be appointed as Lead Plaintiff.  AP7's Motion is timely and its losses of approximately $22,294,686 on a last-in, first-out ("LIFO") basis in connection with its transactions in Signature securities during the Class Period represent the largest known financial interest in the relief sought by the class.  *See* Declaration of Gerald H. Silk ("Silk Decl."), Exs. A-B.  In addition to asserting the largest financial interest, AP7 easily satisfies the relevant requirements of Rule 23 because its claims are typical of all members of the class and because it will fairly and adequately represent the class.

Moreover, as an institutional investor with approximately $95 billion in assets under management and substantial experience serving as a lead plaintiff in several high-profile securities class actions across the United States, AP7 is exactly the type of plaintiff that Congress envisioned would serve as lead plaintiff under the PSLRA.  Therefore, AP7's appointment would fulfill a critical legislative purpose.  *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (explaining that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions").  Indeed, AP7 has recovered hundreds of millions of dollars on behalf of injured investors as a lead plaintiff and class representative in securities class actions proceeding under the PSLRA in the last decade.  *See infra* Section III.B.3.b.

Further, as set forth in the Declaration of Richard Gröttheim (the "Gröttheim Declaration"), AP7 has already taken steps to advance this litigation consistent with the

responsibilities it would assume as Lead Plaintiff.  Among other things, the Gröttheim Declaration evidences:

- AP7's prior experience serving as a lead plaintiff and its understanding of the Lead Plaintiff's obligations to the class under the PSLRA;

- AP7's commitment to undertake the responsibilities of the Lead Plaintiff to guarantee the vigorous prosecution of this litigation;

- the basis for AP7's selection of Bernstein Litowitz and Kessler Topaz as proposed Lead Counsel, including AP7's oversight of Bernstein Litowitz and Kessler Topaz in other securities class actions and the firms' joint investigation of this litigation and other banking-related securities class actions (such as the pending litigation involving SVB Financial Group);[2] and

- specific steps taken by AP7 to ensure that Bernstein Litowitz and Kessler Topaz will litigate this action efficiently and without duplication of efforts, including negotiating a highly competitive retention agreement and instructing counsel to enter into a joint prosecution agreement outlining their respective responsibilities.

*See* Silk Decl., Ex. C.

Lastly, AP7 has retained experienced and competent counsel to represent the class.  As the "most adequate plaintiff" under the PSLRA, AP7's selection of Bernstein Litowitz and Kessler Topaz as Lead Counsel for the class should be approved.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) ("The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class.").  Indeed, Bernstein Litowitz and Kessler Topaz have an extensive history of

---

[2]     On May 12, 2023, AP7 filed a motion for appointment as lead plaintiff, with Bernstein Litowitz and Kessler Topaz as proposed lead counsel, in *Vanipenta v. SVB Financial Group*, No. 3:23-cv-01097-JD (N.D. Cal.).

jointly prosecuting complex actions under the PSLRA, and have jointly recovered more than $6 billion for investors.  Thus, the class can be assured of zealous representation if AP7's selection of Bernstein Litowitz and Kessler Topaz as Lead Counsel for the class is approved.

## II.    FACTUAL BACKGROUND

Before its collapse in March 2023, Signature was a full-service commercial bank.  The Related Actions allege that Defendants misrepresented and/or failed to disclose that: (1) Signature had failed to acknowledge the inherent volatility of digital-asset (*i.e.*, cryptocurrency)-related deposits, which Signature heavily relied on; (2) Signature held a substantial number of deposits exceeding the $250,000 threshold for deposits insured by the Federal Deposit Insurance Corporation ("FDIC"); (3) accordingly, the Company had overstated the stability and/or sustainability of its deposit base; (4) the degree of the Company's concentration in the cryptocurrency industry significantly undermined the health of its balance sheet; (5) as a result, the Company was exceptionally vulnerable to a bank run and/or a liquidity crisis; (6) the foregoing placed the Company at a heightened risk of failure and/or regulatory takeover; and (7) as a result, Defendants' public statements were materially false and/or misleading at all relevant times.

As alleged in the Related Actions, on March 10, 2023, Silicon Valley Bank—another regional bank that, like Signature Bank, was particularly exposed to deposits exceeding FDIC limits—was closed by regulators following a bank run.  A run on Signature Bank then ensued, with customers withdrawing more than $10 billion that same day.  In response, on March 12, 2023, regulatory entities announced that Signature Bank had been closed by its state chartering authority and that the FDIC had been appointed receiver of the bank.  That same day, Nasdaq halted trading in Company shares, rendering Signature's shares illiquid and essentially worthless.

III.   **ARGUMENT**

A.   **The Related Actions Should Be Consolidated**

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under [the Exchange Act] has been filed," courts shall not appoint a lead plaintiff "until after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii).

Here, there are at least two related securities class actions asserting claims under the federal securities laws on behalf of investors:

| <u>Case Caption</u> | <u>Date Filed</u> | <u>Claims/Class Period</u> |
|---|---|---|
| *Schaeffer v. Signature Bank, et al.*, No. 1:23-cv-01921-FB-JRC | March 14, 2023 | Sections 10(b) and 20(a) of the Exchange Act; March 2, 2023, through March 12, 2023 |
| *Singh v. Signature Bank, et al.*, No. 1:23-cv-02501-ENV-VMS | March 31, 2023 | Sections 10(b) and 20(a) of the Exchange Act; April 23, 2020, through March 12, 2023 |

Consolidation is appropriate under Rule 42(a) where the actions "involve . . . common question[s] of law or fact." Fed. R. Civ. P. 42(a). Here, the Related Actions assert claims under the Exchange Act against overlapping defendants, across overlapping class periods, and concerning the same conduct. Accordingly, consolidation is appropriate. *See Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007) ("Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation.") (citation omitted).

### B.      AP7 Is the Most Adequate Plaintiff

The PSLRA establishes the procedure for selecting a lead plaintiff in a class action lawsuit asserting claims under the federal securities laws.  *See* 15 U.S.C. § 78u-4(a)(1)-(3)(B)(i).

First, a plaintiff who files the initial action must publish a notice to the class within twenty days of filing the action informing class members of: (1) the pendency of the action; (2) the claims asserted therein; (3) the purported class period; and (4) the right to move the court to be appointed as lead plaintiff within sixty days of the publication of the notice.  *See id*. § 78u-4(a)(3)(A)(i). Within sixty days after publication of the notice, any member of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action.  *See id*. § 78u-4(a)(3)(A)-(B).

Second, the PSLRA provides that within ninety days after publication of the notice, the court shall consider any motion made by a class member and shall appoint as lead plaintiff the member of the class that the court determines to be most capable of adequately representing the interests of class members.  *See id*. § 78u-4(a)(3)(B)(i).  In determining the "most adequate plaintiff," the PSLRA provides that the court shall adopt a presumption that the most adequate plaintiff in any private action arising under the PSLRA is the movant that:

>       (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
>       (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
>       (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

*Id*. § 78u-4(a)(3)(B)(iii)(I).

Here, AP7 is the "most adequate plaintiff" because it: (1) filed a timely motion for appointment as Lead Plaintiff; (2) possesses the "largest financial interest in the relief sought by

the class"; and (3) "otherwise satisfies the requirements of Rule 23" for purposes of this Motion. *Id.*

### 1.    AP7's Motion Is Timely

The PSLRA allows any member of the class to move for appointment as lead plaintiff within sixty days of the publication of notice that the first action has been filed.  *See id*. § 78u-4(a)(3)(A)(i)(II).  Here, in connection with the filing of the first-filed action, *Schaeffer v. Signature Bank, et al.*, No. 1:23-cv-01921-FB-JRC (S.D.N.Y.), notice was published in *Accesswire* on March 14, 2023, alerting investors to the pendency of the action and informing them of the May 15, 2023 deadline to seek appointment as Lead Plaintiff.  *See* Silk Decl., Ex. D.  Therefore, AP7's Motion is timely.

### 2.    AP7 Has the Largest Financial Interest in the Relief Sought by the Class

The PSLRA presumes that the movant asserting the largest financial interest in the relief sought by the class and who otherwise satisfies the requirements of Rule 23 is the most adequate plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).  Here, AP7 suffered losses of approximately $22,294,686 on a LIFO basis in connection with its Class Period transactions in Signature securities.  *See* Silk Decl., Exs. A-B.  To the best of AP7's knowledge, there are no other lead plaintiff movants asserting a larger financial interest in this litigation.  Accordingly, AP7 has the largest financial interest of any qualified movant seeking Lead Plaintiff status and is the presumptive "most adequate plaintiff."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### 3.    AP7 Satisfies the Requirements of Rule 23

In addition to possessing the largest financial interest in the relief sought by the class, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure" in order to trigger the presumption of adequacy.  *Id*. § 78u-4(a)(3)(B)(iii)(I)(cc).

Rule 23(a) provides that a party may serve as a class representative if:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  At the lead plaintiff selection stage, "only a preliminary showing of typicality and adequacy [under Rule 23] is required." *Kaplan*, 240 F.R.D. at 94 (citation omitted).

### a)      AP7 Is Typical

Rule 23's typicality requirement is satisfied when the presumptive lead plaintiff's "claims arise from the same conduct from which the other class members' claims and injuries arise." *Id.* (citation omitted).  AP7 satisfies the typicality requirement because, just like all other class members, it seeks recovery for the losses on its investments in Signature securities that it incurred as a result of Defendants' misrepresentations and omissions.  Thus, AP7's claims arise from the same conduct as those of the other class members and it satisfies Rule 23's typicality requirement.

### b)      AP7 Is Adequate

The adequacy element of Rule 23 requires that the Lead Plaintiff "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  In evaluating a movant's adequacy, courts consider whether: "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Kaplan*, 240 F.R.D. at 94 (citations omitted).

AP7 satisfies the adequacy requirement because its interest in vigorously pursuing claims against Defendants—given its substantial financial loss—is aligned with the interests of the members of the class who were similarly harmed as a result of Defendants' false and/or misleading statements.  There is no potential conflict between AP7's interests and those of the other members of the class, and AP7 is fully committed to vigorously pursuing claims on behalf of the class.

Moreover, the Gröttheim Declaration provides concrete evidence of AP7's adequacy and ability to zealously represent the interests of the class.  Specifically, the Gröttheim Declaration demonstrates that, based on AP7's prior experience serving as a lead plaintiff, AP7 fully understands the Lead Plaintiff's responsibilities and obligations to the class under the PSLRA—including acting as a fiduciary for all class members, staying informed about the litigation, participating in court proceedings, depositions, settlement mediations, and hearings as needed, and reviewing and authorizing the filing of important litigation documents—and is willing and able to undertake these responsibilities to ensure the vigorous prosecution of this litigation.  *See* Silk Decl., Ex. C, ¶¶ 3-4, 8, 13-14.  Indeed, as a sophisticated institutional investor with approximately $95 billion in assets under management, AP7 is the prototypical investor Congress sought to encourage to lead securities class actions.  *See* H.R. Conf. Rep. No. 104-369, at 34, *reprinted in* 1995 U.S.C.C.A.N. at 733 ("[I]ncreasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."); *In re Cendant Corp. Litig.*, 264 F.3d 201, 273 (3d Cir. 2001) ("the purpose of the [PSLRA] was to encourage institutional investors to serve as lead plaintiff") (citations omitted).

AP7 has also proved its adequacy through its selection of Bernstein Litowitz and Kessler Topaz as Lead Counsel for the class.  *See Cendant*, 264 F.3d at 265 ("[O]ne of the best ways for a court to ensure that [the lead plaintiff] will fairly and adequately represent the interests of the class

is to inquire whether the movant has demonstrated a willingness and ability to select competent class counsel . . . .") (citation omitted).  As set forth in the Gröttheim Declaration, *see* Silk Decl., Ex. C, ¶ 10, AP7 has substantial experience overseeing actions prosecuted by Bernstein Litowitz and Kessler Topaz under the PSLRA, and has recovered hundreds of millions of dollars for investors.  *See In re Kraft Heinz Sec. Litig.*, No. 1:19-cv-01339-JLA (N.D. Ill.) ($450 million recovery preliminarily approved with Bernstein Litowitz and Kessler Topaz as lead counsel); *In re Luckin Coffee Inc. Sec. Litig.*, No. 1:20-cv-01293-JPC (S.D.N.Y.) ($175 million recovery with Bernstein Litowitz and Kessler Topaz as lead counsel); *In re JPMorgan Chase & Co. Sec. Litig.*, No. 1:12-cv-03852-GBD (S.D.N.Y.) ($150 million recovery with Bernstein Litowitz and Kessler Topaz as lead counsel); *In re Allergan Generic Drug Pricing Sec. Litig.*, No. 2:16-cv-09449-KSH-CLW (D.N.J.) ($130 million recovery with Bernstein Litowitz and Kessler Topaz as lead counsel); *United Union of Roofers, Waterproofers & Allied Workers Loc. Union No. 8 v. Ocwen Fin. Corp.*, No. 9:14-cv-81057-WPD (S.D. Fla.) ($56 million recovery with Kessler Topaz as lead counsel); *La. Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-cv-00289-WKS (D. Vt.) ($36.5 million recovery with Bernstein Litowitz and Kessler Topaz as lead counsel); *Monk v. Johnson & Johnson*, No. 3:10-cv-04841-FLW-DEA (D.N.J.) ($23 million recovery with Kessler Topaz as lead counsel).  Critically, Bernstein Litowitz and Kessler Topaz have been jointly investigating claims against Signature and other regional banks, and have already taken steps to advance the interest of the class, including retaining investment banking experts to assist in the prosecution of the class's claims.  Silk Decl. Ex. C, ¶¶ 10-11.

In addition, AP7 has directed Bernstein Litowitz and Kessler Topaz to enter into a joint prosecution agreement that outlines their respective responsibilities, and ensures there will be no duplication of effort and that the claims of the class are prosecuted vigorously yet efficiently, and

which can be provided to the Court *in camera.*  *Id.*, ¶ 12.  Further, while AP7 appreciates that any attorneys' fees in this litigation will be set by the Court, AP7 takes very seriously its obligations to the class and has executed a highly competitive retainer agreement that limits the fees counsel may request, consistent with fees awarded in this District in other actions under the PSLRA.  *Id.*, ¶ 13.  Through these and other measures, AP7 has sought to ensure that the class will receive the best possible representation.

### C.      AP7's Selection of Lead Counsel Should Be Approved

The PSLRA vests authority in the lead plaintiff to select and retain counsel for the class, subject to the Court's approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  Courts should not disturb the lead plaintiff's choice of counsel unless it is necessary to protect the interests of the class.  *See Cohen v. U.S. Dist. Ct. for N. Dist. of Cal.*, 586 F.3d 703, 712 (9th Cir. 2009) ("if the lead plaintiff has made a reasonable choice of counsel, the district court should generally defer to that choice") (citations omitted).  Here, AP7 has selected and retained Bernstein Litowitz and Kessler Topaz to serve as Lead Counsel for the class.  AP7's selection of counsel should be approved.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).

Bernstein Litowitz is among the preeminent securities class action law firms in the country.  *See* Silk Decl., Ex. E (Bernstein Litowitz's Firm Résumé).  Bernstein Litowitz served as lead counsel in *In re WorldCom, Inc. Securities Litigation*, No. 02-cv-3288 (S.D.N.Y.), in which settlements totaling in excess of $6 billion—one of the largest recoveries in securities class action history—were obtained for the class.  More recently, Bernstein Litowitz obtained a $1.06 billion recovery (inclusive of attorneys' fees and litigation expenses) for the class in *In re Merck & Co., Inc. Securities, Derivative & "ERISA" Litigation*, 05-cv-1151 (D.N.J.).  Significant examples in which courts in this District have recognized Bernstein Litowitz as adequate and qualified class counsel in securities class actions include: *Plumbers' & Pipefitters' Local #562 Supplemental Plan*

11

& Trust v. J.P. Morgan Acceptance Corp. I, No. 08-cv-1713 (E.D.N.Y.) ($280 million recovery

for investors is the largest securities class action recovery in this District); *In re Symbol*

*Technologies, Inc. Securities Litigation*, No. 02-cv-1383 (E.D.N.Y.); *Louisiana Municipal Police*

*Employees' Retirement System v. Deloitte & Touche LLP*, No. 04-cv-621 (E.D.N.Y.) ($163 million

combined recovery for investors); and *In re Henry Schein, Inc. Securities Litigation*, No. 18-cv-

1428 (E.D.N.Y.) (recovering $35 million for investors).[3]

Similarly, Kessler Topaz specializes in prosecuting complex class action litigation and is

one of the leading law firms in its field. *See* Silk Decl., Ex. H (Kessler Topaz's Firm Profile). The

firm is actively engaged in complex litigation and has successfully prosecuted numerous securities

fraud class actions on behalf of injured investors, including: *In re Tyco International, Ltd.*

*Securities Litigation*, No. 02-md-1335 (PB) (D.N.H.) ($3.2 billion recovery); and *Luther v.*

*Countrywide Fin. Corp.*, No. 2:12-cv-05125 (MRP) (MANx) (C.D. Cal.) ($500 million recovery).

Additionally, Kessler Topaz is currently serving as lead or co-lead counsel in several high profile

securities class actions before courts in the Second Circuit, including: *Sjunde AP-Fonden v.*

---

[3]     AP7 brings to the Court's attention an order issued by a court in the United States District
Court for the Northern District of California in an unrelated action in which Bernstein Litowitz
served as lead counsel for the lead plaintiff in that case, SEB Investment Management AB, and as
class counsel for the certified class. *See SEB Inv. Mgmt. AB v. Symantec Corp.*, No. C 18-02902
WHA, 2021 WL 1540996, at *1 (N.D. Cal. Apr. 20, 2021) (Silk Decl., Ex. F). Counsel for an
unsuccessful lead plaintiff movant raised questions about Bernstein Litowitz's hiring of a former
employee of the lead plaintiff. Following discovery and extensive briefing, the court allowed
Bernstein Litowitz to continue as class counsel. *See id.* at *1-2. The court nevertheless ordered
Bernstein Litowitz to bring the order to the attention of the court when seeking appointment as
class counsel, and also to the decision-maker for the proposed lead plaintiff who selects class
counsel. *See id.* at *2. AP7 is aware of the order, and affirms its selection of Bernstein Litowitz
as proposed Lead Counsel with Kessler Topaz. Importantly, the *Symantec* court granted final
approval of a $70 million settlement achieved by SEB Investment Management AB and Bernstein
Litowitz. In addition, courts throughout the country have repeatedly appointed Bernstein Litowitz
as lead or class counsel in securities class actions after being apprised of the *Symantec* order. *See*
Silk Decl., Ex. G (collecting cases).

*Goldman Sachs Group, Inc.,* No. 18-cv-12084 (VSB) (S.D.N.Y.) (with AP7 serving as lead plaintiff); and *Sjunde AP-Fonden v. General Electric Co.*, No. 17-cv-8457 (JMF) (S.D.N.Y.) (with AP7 serving as lead plaintiff).  Kessler Topaz also obtained a rare jury verdict in investors' favor after a week-long trial in *In re Longtop Financial Technologies Ltd. Securities Litigation*, No. 11-cv-3658 (SAS) (S.D.N.Y.)—which at the time was one of just thirteen securities class actions to reach a verdict since enactment of the PSLRA in 1995 (based on post-enactment conduct).

Moreover, Bernstein Litowitz and Kessler Topaz have a history of successfully prosecuting securities fraud class actions together, including several cases against financial institutions arising from the subprime meltdown.  These joint prosecutions, which have resulted in recoveries collectively exceeding $6 billion, include, among others: *In re Bank of America Corp. Securities, Derivative, and Employee Retirement Income Security Act (ERISA) Litigation*, No. 09-md-2058 (S.D.N.Y.) ($2.425 billion recovery with Bernstein Litowitz and Kessler Topaz as lead counsel); *In re Wachovia Preferred Securities & Bond/Notes Litigation*, No. 09-cv-6351 (S.D.N.Y.) ($627 million recovery with Bernstein Litowitz and Kessler Topaz as lead counsel); *In re Lehman Bros. Equity/Debt Securities Litigation*, No. 08-cv-5523 (S.D.N.Y.) ($615 million recovery with Bernstein Litowitz and Kessler Topaz as lead counsel); *In re Kraft Heinz Securities Litigation*, No. 19-cv-1339 (JLA) (N.D. Ill.) ($450 million recovery preliminarily approved, with AP7 serving as a lead plaintiff, and Bernstein Litowitz and Kessler Topaz serving as lead counsel); *In re Luckin Coffee Inc. Securities Litigation*, No. 20-cv-1293 (S.D.N.Y.) ($175 million recovery, with AP7 serving as a lead plaintiff, and Bernstein Litowitz and Kessler Topaz serving as lead counsel); *In re JPMorgan Chase & Co. Securities Litigation*, No. 12-cv-3852 (S.D.N.Y.) ($150 million recovery, with AP7 serving as a lead plaintiff, and Bernstein Litowitz and Kessler Topaz serving as lead counsel); and *In re Allergan Generic Drug Pricing Securities Litigation,* No. 16-cv-9449

(D.N.J.) ($130 million recovery, with AP7 serving as a lead plaintiff, and Bernstein Litowitz and Kessler Topaz serving as co-lead counsel).

Thus, the Court may be assured that, in the event this Motion is granted, the class will receive the highest caliber of legal representation available.

## IV.    CONCLUSION

For the reasons stated herein, AP7 respectfully requests that the Court: (1) consolidate the Related Actions; (2) appoint AP7 as Lead Plaintiff; and (3) approve its selection of Bernstein Litowitz and Kessler Topaz as Lead Counsel for the class.

Dated: May 15, 2023                              Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER
    & GROSSMANN LLP**

*s/ Gerald H. Silk*
Gerald H. Silk
Avi Josefson
Scott R. Foglietta
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
jerry@blbglaw.com
avi@blbglaw.com
scott.foglietta@blbglaw.com

**KESSLER TOPAZ MELTZER
    & CHECK, LLP**
Naumon A. Amjed
Darren J. Check
Ryan T. Degnan
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
dcheck@ktmc.com
rdegnan@ktmc.com

*Counsel for AP7 and Proposed Lead Counsel
for the Class*

## <u>CERTIFICATE OF SERVICE</u>

I, Gerald H. Silk, hereby certify that on May 15, 2023, I authorized a true and correct copy

of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF

System, which will send notification of such public filing to all counsel registered to receive such

notice.

*s/ Gerald H. Silk*
Gerald H. Silk
