UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTHEW SCHAEFFER, Individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>      v.<br><br>SIGNATURE BANK, JOSEPH DEPAOLO, STEPHEN WYREMSKI, and ERIC HOWELL,<br><br>      Defendants. | Case No. 1:23-cv-01921-FB-JRC<br><br>**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF WAYNE COUNTY EMPLOYEES' RETIREMENT SYSTEM AND PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI FOR CONSOLIDATION, APPOINTMENT AS CO-LEAD PLAINTIFFS, AND APPROVAL OF LEAD COUNSEL** |
| PIRTHI PAL SINGH, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>      v.<br><br>SIGNATURE BANK, SCOTT A. SHAY, JOSEPH DEPAOLO, VITO SUSCA, MARK SIGONA, STEPHEN WYREMSKI, and ERIC HOWELL,<br><br>      Defendants. | Case No.  1:23-cv-02501-ENV-VMS |

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ....................................................................................................... 3

ARGUMENT ............................................................................................................................. 9

I.      THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES .. 9

II.     THE RETIREMENT SYSTEMS SHOULD BE APPOINTED CO-LEAD PLAINTIFFS ................................................................................................................................. 10

      A.     The Retirement Systems Are Willing to Serve as Class Representatives ............ 11

      B.     The Retirement Systems Have the "Largest Financial Interest" in the Related Actions .......................................................................................................... 11

      C.     The Retirement Systems Otherwise Satisfy the Requirements of Rule 23 ........... 13

      D.     The Retirement Systems Will Fairly and Adequately Represent the Interests of the Class and Are Not Subject to Unique Defenses .................................................... 17

III.    CO-LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED ... 18

CONCLUSION ....................................................................................................................... 19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB),
    2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018).........................................................13

*Barnet v. Elan Corp., PLC*,
    236 F.R.D. 158 (S.D.N.Y. 2005) .......................................................................16

*Bassin v. Decode Genetics, Inc.*,
    230 F.R.D. 313 (S.D.N.Y. 2005) .......................................................................10

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
    252 F.R.D. 188 (S.D.N.Y. 2008) .........................................................................9

*Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN),
    2018 WL 3093965 (S.D.N.Y. June 21, 2018) ...................................................12

*Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS),
    2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018).....................................................14

*Foley v. Transocean Ltd.*,
    272 F.R.D. 126 (S.D.N.Y. 2011) .......................................................................14

*Glauser v. EVCI Career Colleges Holding Corp.*,
    236 F.R.D. 184 (S.D.N.Y. 2006) ...................................................................3, 15

*In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK) (PK),
    2017 WL 6403513 (E.D.N.Y. Dec. 15, 2017) ...................................................16

*In re Braskem S.A. Sec. Litig.*, 15 Civ. 5132 (PAE) *et al.*,
    2015 WL 5244735 (S.D.N.Y. Sept. 8, 2015).....................................................15

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001)..........................................................................12, 16

*In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER),
    2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ....................................................12, 18

*In re Doral Fin. Corp. Sec. Litig.*,
    414 F. Supp. 2d 398 (S.D.N.Y. 2006)................................................................15

*In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC),
    2009 WL 2259502 (S.D.N.Y. July 29, 2009) ...................................................9, 10

*In re Molson Coors Brewing Co. Sec. Litig.*,
  233 F.R.D. 147 (D. Del. 2005) .........................................................................18

*In re Olsten Corp. Sec. Litig.*,
  3 F. Supp. 2d 286 (E.D.N.Y. 1998) ..................................................................12

*In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS),
  2008 WL 2811358 (S.D.N.Y. July 7, 2008) ......................................................13

*In re Oxford Health Plans, Inc. Sec. Litig.*,
  182 F.R.D. 42 (S.D.N.Y. 1998) ........................................................................13

*In re Tronox, Inc. Sec. Litig.*,
  262 F.R.D. 338 (S.D.N.Y. 2009) .........................................................................9

*Janbay v. Canadian Solar, Inc.*,
  272 F.R.D. 113 (S.D.N.Y. 2010) ......................................................................14

*Kaplan v. Gelfond*,
  240 F.R.D. 88 (S.D.N.Y. 2007) ........................................................................13

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
  311 F.R.D. 373 (S.D.N.Y. 2015) ......................................................................18

*Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715,
  1997 WL 461036 (N.D. Ill. Aug. 6, 1997) .......................................................12

*Louisiana Mun. Police Employees' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*,
  No. 2:11-CV-289, 2012 WL 12985571 (D. Vt. Apr. 27, 2012) .........................16

*Malcolm v. Nat'l Gypsum Co.*,
  995 F.2d 346 (2d Cir. 1993).................................................................................9

*Micholle v. Ophthotech Corp.*, 17-CV-210 (VSB) *et al.*,
  2018 U.S. Dist. LEXIS 41120 (S.D.N.Y. Mar. 13, 2018) ...............................3, 15

*Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN),
  2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017) ...................................................12

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
  229 F.R.D. 395 (S.D.N.Y. 2004) ......................................................................12

*W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, No. CIV.A. 13-6731,
  2014 WL 1395059 (E.D. Pa. Apr. 10, 2014) ....................................................16

*Weltz v. Lee*,
  199 F.R.D. 129 (S.D.N.Y. 2001) ......................................................................16

**<u>Statutes</u>**

15 U.S.C. § 78u-4 .................................................................................................. *passim*

Private Securities Litigation Reform Act of 1995 .............................................. *passim*

**<u>Rules</u>**

Fed. R. Civ. P. 23 ..............................................................................................2, 10, 13, 14

Fed. R. Civ. P. 42 ....................................................................................................1, 2, 9

Wayne County Employees' Retirement System ("Wayne County ERS") and Public Employees' Retirement System of Mississippi ("Mississippi PERS" and, collectively with Wayne County ERS, the "Retirement Systems") respectfully submit this memorandum of law in support of their motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and Federal Rule of Civil Procedure 42, for an Order: (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing the Retirement Systems as Co-Lead Plaintiffs on behalf of all persons or entities other than Defendants that purchased or otherwise acquired Signature Bank (the "Bank") securities between April 23, 2020 and March 12, 2023, inclusive (the "Class Period") (the "Class"); and (3) approving proposed Co-Lead Plaintiffs' selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.[1]

## PRELIMINARY STATEMENT

The complaints in the Related Actions allege that the above-captioned defendants ("Defendants") defrauded investors in violation of the Exchange Act.  Signature Bank investors, including the Retirement Systems, incurred significant losses following the disclosure of the alleged fraud, which caused Signature Bank's share price to fall sharply, damaging the Retirement Systems and other Signature Bank investors.

---

[1] The complaint in the first-filed of the Related Actions, styled *Schaeffer v. Signature Bank et al,* No. 1:23-cv-01921 (the "*Schaeffer* Action"), filed in this Court on March 14, 2023, alleges a class period extending from March 2, 2023 through March 12, 2023, inclusive. *See Schaeffer* Action, Dkt. No. 1 ¶ 1.  On March 31, 2023, the second-filed of the Related Actions, styled *Singh v. Signature Bank et al,* No. 1:23-cv-02501 (the "*Singh* Action") was filed in this Court, alleging substantially the same wrongdoing against overlapping defendants, and alleging a larger class period extending from April 23, 2020 through March 12, 2023, inclusive.  *See Singh* Action, Dkt. No. 1 ¶ 1.  Therefore, to avoid excluding any potential class members, this motion has adopted the larger class period alleged in the *Singh* Action.

Consolidation is appropriate under Rule 42(a) where actions involve common questions of law or fact. Here, the Related Actions are putative class actions alleging violations of the federal securities laws by the same group of defendants arising from the same alleged wrongful misconduct. As such, the Related Actions involve common questions of both law *and* fact, and consolidation is plainly warranted.

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant or group of movants that possesses the largest financial interest in the outcome of the Related Actions and that satisfies the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). During the Class Period, the Retirement Systems collectively purchased 30,905 shares of Signature Bank stock, expended $5,616,054 on their purchases of Signature Bank stock, retained 24,958 of their shares of Signature Bank stock, and, as a result of the disclosures revealing the misrepresentations and/or omissions during the Class Period, incurred losses of approximately $4,751,424 as calculated on a first-in, first-out basis ("FIFO"), or $4,018,442 as calculated on a last-in, first-out basis ("LIFO"), in connection with their purchases of Signature Bank stock. *See* Declaration of Emma Gilmore in Support of Motion ("Gilmore Decl."), Exhibit ("Ex.") A. Accordingly, the Retirement Systems believe that they have the largest financial interest in the relief sought in the Related Actions.

Beyond their considerable financial interest, the Retirement Systems also meet the applicable requirements of Rule 23 because their claims are typical of absent Class members and because they will fairly and adequately represent the interests of the Class. As sophisticated institutional investors, the Retirement Systems are paradigmatic lead plaintiffs under the PSLRA, and their appointment would advance the legislative purpose of "increasing the role of institutional investors in class actions" in order to "benefit shareholders and assist courts by improving the

quality of representation in securities class actions."  H.R. Conf. Rep. No. 104-369, at *34 (1995), *reprinted in* U.S.C.C.A.N. 730, 733.  For this reason, courts in the Second Circuit strongly prefer appointment of institutional investors to lead complex securities class actions.  *See, e.g.*, *Glauser v. EVCI Career Colleges Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) ("[T]he PSLRA was passed, at least in part, to increase the likelihood that institutional investors would serve as lead plaintiffs in actions such as this one.") (quoting *In re Veeco Instruments, Inc.*, 233 F.R.D. 330, 332-33 (S.D.N.Y. 2005)); *Micholle v. Ophthotech Corp.*, 17-CV-210 (VSB) *et al.*, 2018 U.S. Dist. LEXIS 41120, at *17 (S.D.N.Y. Mar. 13, 2018) ("[C]ourts have a preference for appointing institutional investors as lead plaintiffs.").

To fulfill their obligations as Co-Lead Plaintiffs and vigorously prosecute the Related Actions on behalf of the Class, the Retirement Systems have selected Pomerantz as Lead Counsel for the Class.  Pomerantz is a nationally-recognized securities class action firm that has recovered billions of dollars on behalf of investors, as detailed in its firm resume, and is well qualified to serve as Lead Counsel in the Related Actions.

Accordingly, the Retirement Systems respectfully request that the Court enter an order consolidating the Related Actions, appointing them as Co-Lead Plaintiffs for the Class, and approving their selection of Pomerantz as Lead Counsel for the Class.

## STATEMENT OF FACTS

As alleged in the complaints in the Related Actions, Signature Bank was co-founded in 2001 by Defendants Scott A. Shay ("Shay") and Joseph DePaolo ("DePaolo"), along with John Tamberlane, the Executive Vice Chairman of the Bank's Board of Directors.  The Bank relied on a network of private client banking teams and offered commercial banking products and services, with veteran bankers acting as a single point of contact for all client needs.  As it established itself,

Signature Bank cultivated a reputation of working with wealthy clients, including privately owned businesses, law offices, and real estate buyers.

As it expanded, Signature Bank began moving away from what had previously been a conservative banking model and adopting a less risk-averse posture with respect to its banking activities. Signature Bank executives aggressively lobbied for the rollback of several provisions of the Dodd-Frank Wall Street Reform and Consumer Protection Act, 12 U.S.C. § 53 ("Dodd-Frank"), a law enacted in 2010 following the 2007-2008 credit crisis, with the goal of "promot[ing] the financial stability of the United States by improving accountability and transparency in the financial system[.]" In 2018, Defendant Shay argued that it was "ridiculous and unacceptable" that Dodd-Frank's safeguards applied both to large banks and to small-to-midsize banks like Signature Bank. In May 2018, President Donald Trump signed a partial repeal of Dodd-Frank into law, which raised many of the asset-size thresholds for enhanced regulations from $50 billion to $250 billion, while giving the Federal Reserve ("Fed") leeway to reimpose regulations for institutions between $100 billion and $250 billion. At the time, Signature Bank had over $45 billion in assets. In opposing the rollback, Senator Elizabeth Warren warned that the repeal had "set the stage for another financial crash."

By 2018, Signature Bank was also taking significant cash deposits from the growing cryptocurrency industry. Gemini Trust Company, LLC, a privately-owned cryptocurrency exchange launched in 2014 by Cameron and Tyler Winklevoss, Coinbase Global Inc., another major cryptocurrency exchange, and Circle Internet Financial Ltd., the issuer of the USDC stablecoin, all became Signature Bank clients.

Signature Bank publicly embraced the cryptocurrency industry and touted its role in the Bank's future. On a 2018 conference call, Defendant DePaolo, Signature Bank's Chief Executive

Officer, told investors and analysts that "[t]he opportunity is significant, if you're dealing with the right clients," and "[b]lockchain technology is the future[.] [. . .] You don't want to be caught short, ***because in five years a number of banks will not be around because of blockchain technology***."

Yet by 2018, the cryptocurrency industry had already proven itself to be incredibly volatile. Between 2011 and 2018, the price of Bitcoin, the world's largest cryptocurrency by market capitalization and the bellwether of the cryptocurrency market, experienced at least five major price crashes: (1) in June 2011, falling 99%; (2) in August 2012, falling 56%; (3) in April 2013, falling 83%; (4) in December 2013, falling 50% (in a period of just 24 hours); and (5) in December 2018, falling 84%. More recently, in the second quarter of 2022, the price of Bitcoin dropped 56.27% to its lowest value in over a decade. By the end of the quarter on June 30, 2022, Bitcoin's price fell from approximately $45,000 at the start of the quarter to slightly above $19,000.

Notwithstanding the volatility of cryptocurrency, Signature Bank consistently assured investors of the soundness of its crypto-related deposits and downplayed any risks associated with its lopsided exposure to the cryptocurrency industry, claiming that the Bank was carefully managing its balance sheet and bolstering its compliance department. On an April 2021 conference call, Defendant DePaolo stated that the Bank's deposits were "sticky"—that is, likely to be renewed or rolled over by the customer as part of the Bank's funding, including under conditions of stress, and thus beneficial to Signature Bank's balance sheet. Ultimately, by late 2022, ***digital-asset clients represented more than one fifth of Signature Bank's deposit base***.

In November 2022, the cryptocurrency exchange FTX collapsed among allegations of fraud and mishandled customer funds, resulting in a wide-ranging disruption of the cryptocurrency markets. FTX's collapse purportedly prompted Signature Bank to begin working to reduce, to some degree, the Bank's relationship with the cryptocurrency industry. On December 6, 2022,

*Bloomberg* reported that "Signature Bank plans to continue providing banking services to cryptocurrency firms even as it seeks to remove $8 billion to $10 billion of deposits from its balance sheet," but quoted Defendant Eric Howell, Signature Bank's President and Chief Operating Officer, as stating, in relevant part, that "[w]e're not exiting the space. We don't know who the winners and losers are going to be. We don't particularly care," and "[w]e're going to be involved [in the cryptocurrency industry] but we're going to be involved in a much more thoughtful way moving forward."

Then, on March 8, 2023, Silvergate Bank ("Silvergate") announced that it would voluntarily wind down its operations.  Although Silvergate cited losses suffered in its loan portfolio—a consequence of the Fed's aggressive interest rate hikes and ensuing decline in the value of U.S. Treasury securities—the collapse of FTX, a major customer, had significantly undermined Silvergate's financial stability, as had Silvergate's lopsided exposure to the volatile cryptocurrency industry more generally.  As *Bloomberg* succinctly reported on March 10, 2023, "Silvergate's demise was the result of a straightforward bet on cryptocurrencies, particularly large deposits and other business from crypto exchanges. FTX was one of the bank's largest customers."

Just two days later, on March 10, 2023, following a bank run, Silicon Valley Bank ("SVB") was seized by the California Department of Protection and Innovation and placed under the receivership of the Federal Deposit Insurance Corporation ("FDIC").  Whereas Silvergate was known for its relationship with the cryptocurrency industry, SVB was known for servicing the needs of the tech industry.

Taken together, the collapses of Silvergate and SVB, both of which were smaller banks with excessive concentration in specific industries, highlighted the specific risks associated with banks with similar concentration and liquidity profiles—*i.e.*, like Signature, given its own

concentration in the cryptocurrency industry.  Accordingly, in response to the two bank failures, on March 9, 2023, Signature Bank issued a press release to reiterate the supposed strength of the Bank's financial position, citing its "well-diversified financial position and limited digital-asset related deposit balances in the wake of industry developments."

Yet Signature Bank's reassurances proved insufficient.  On March 10, 2023, given the Bank's close association with the cryptocurrency industry, Signature Bank customers withdrew **_more than $10 billion_** in deposits.

On March 12, 2023, the New York Department of Financial Services ("DFS") announced that, in order to protect depositors and pursuant to Section 606 of the New York Banking Law, DFS had taken possession of Signature Bank.  DFS further stated that it was "in close contact with all regulated entities in light of market events, monitoring market trends, and collaborating closely with other state and federal regulators to protect consumers, ensure the health of the entities we regulate, and preserve the stability of the global financial system."

In a Joint Statement issued that same day (the "Joint Statement"), Federal Reserve Chair Jerome Powell, Treasury Secretary Janet Yellen, and FDIC Chair Martin Gruenberg, followed up on DFS's announcement.  The Joint Statement announced, in relevant part, that the foregoing individuals were "announcing a [] systemic risk exception for Signature Bank [. . .] which was closed today by its state chartering authority. All depositors of this institution will be made whole. As with the resolution of Silicon Valley Bank, no losses will be borne by the taxpayer" and that "[s]hareholders and certain unsecured debtholders will not be protected. Senior management has also been removed. Any losses to the Deposit Insurance Fund to support uninsured depositors will be recovered by a special assessment on banks, as required by law."

Also on March 12, 2023, trading in the Bank's shares was halted, essentially rendering the Bank's shares illiquid—and, given the Bank's failure, valueless.

On March 20, 2023, Flagstar Bank, N.A. ("Flagstar"), the wholly owned subsidiary of New York Community Bancorp Inc., acquired $12.9 billion of Signature Bank's loans and assumed $38.4 billion in deposits.  Flagstar also acquired all of Signature Bank's branches, which are now operated under the Flagstar name.

Finally, on March 28, 2023, Signature Bank's common and preferred stock were delisted from trading on the NASDAQ Exchange.

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Bank's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Signature Bank had failed to acknowledge the inherent volatility of digital-asset (*i.e.*, cryptocurrency) related deposits; (ii) accordingly, the Bank had overstated the stability and/or sustainability of its deposit base; (iii) the degree of Signature Bank's concentration in the cryptocurrency industry significantly undermined the health of its balance sheet; (iv) as a result of the foregoing, Signature Bank was exceptionally vulnerable to a bank run and/or a liquidity crisis; (v) the foregoing placed Signature Bank at a heightened risk of failure and/or regulatory takeover; and (vi) as a result, Defendants' public statements were materially false and/or misleading at all relevant times.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Bank's securities, the Retirement Systems and other Class members have suffered significant losses and damages.

## ARGUMENT

### I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation of related cases is appropriate where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay, and overlap in adjudication: "If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay."  Fed. R. Civ. P. 42(a); *see also Manual for Complex Litigation (Third)* § 20.123 (1995).

Consolidation is appropriate when the actions before the court involve common questions of law *or* fact.  *See* Fed. R. Civ. P. 42(a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same). Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation.  *See In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 WL 2259502, at *1-*3 (S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

The Related Actions clearly involve common questions of law *and* fact.  Each action was brought against the Bank, as well as certain officers and directors of the Bank, in connection with violations of the federal securities laws.  Accordingly, the Related Actions allege substantially the same wrongdoing—namely, that Defendants issued materially false and misleading statements and

omissions that artificially inflated the price of the Bank's securities and subsequently damaged the Class when the Bank's share price crashed as the truth emerged. Consolidation of the Related Actions is therefore appropriate. *See Bassin v. Decode Genetics, Inc.*, 230 F.R.D. 313, 315 (S.D.N.Y. 2005) (consolidation of securities class actions is particularly appropriate in the context of securities class actions where the complaints are based on the same statements and the defendants will not be prejudiced); *In re GE*, 2009 WL 2259502, at *2 ("Consolidation promotes judicial convenience and avoids unnecessary costs to the parties.").

## II.   THE RETIREMENT SYSTEMS SHOULD BE APPOINTED CO-LEAD PLAINTIFFS

The Retirement Systems should be appointed Co-Lead Plaintiffs because, to their knowledge, they have the largest financial interest in the Related Actions and otherwise satisfy the requirements of Rule 23. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action and to do so by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i)-(ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice. Specifically, the Court "shall" appoint the presumptively "most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, the Retirement Systems satisfy all three of these criteria and thus are entitled to the presumption that they are the most adequate plaintiffs of the Class and, therefore, should be appointed Co-Lead Plaintiffs for the Class.

### A.      The Retirement Systems Are Willing to Serve as Class Representatives

On March 14, 2023, counsel for the plaintiff in the first-filed of the Related Actions caused a notice to be published over *Globe Newswire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA (the "Notice"), which announced that a securities class action had been filed against Defendants, and which advised investors in Signature Bank securities that they had until May 15, 2023—*i.e.*, 60 days from the date of the Notice's publication—to file a motion to be appointed as lead plaintiff. *See* Gilmore Decl., Ex. B.

The Retirement Systems have filed the instant motion pursuant to the Notice, and they have submitted Certifications, respectively signed by representatives duly authorized to bind Wayne County ERS and Mississippi PERS and enter into litigation on their behalf, attesting that the Retirement Systems are willing to serve as representatives for the Class, and to provide testimony at deposition and trial, if necessary.  *See id.*, Ex. C.  Wayne County ERS has submitted a certification signed on its behalf by Deputy Director Gerard Grysko, while Mississippi PERS has submitted a certification signed on its behalf by Tricia L. Beale, Special Assistant Attorney General in the Office of the Attorney General of the State of Mississippi.  *See id.*  Accordingly, the Retirement Systems satisfy the first requirement to serve as Co-Lead Plaintiffs of the Class.

### B.      The Retirement Systems Have the "Largest Financial Interest" in the Related Actions

The PSLRA requires a court to adopt a presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii).  To the best of their knowledge, the Retirement Systems

have the largest financial interest of any Signature Bank investor or investor group seeking to serve as Lead Plaintiff. For claims arising under federal securities laws, courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered. No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997). In accord with other courts nationwide,[2] these *Lax* factors have been adopted and routinely applied by courts in this judicial district. *See*, *e.g.*, *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998); *accord*, *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG) (RER), 2007 WL 680779, at *6-*8 (E.D.N.Y. Mar. 2, 2007).

During the Class Period, the Retirement Systems collectively: (1) purchased 30,905 shares of Signature Bank stock; (2) expended $5,616,054 on their purchases of Signature Bank stock; (3) retained 24,958 of their shares of Signature Bank stock; and (4) as a result of the disclosures of the fraud, incurred losses of approximately $4,751,424 as calculated on a FIFO basis, or $4,018,442 as calculated on a LIFO basis, in connection with their Class Period purchases of Signature Bank stock. *See* Gilmore Decl., Ex. A. To the extent that the Retirement Systems possess the largest financial interest in the outcome of this litigation, they are the presumptive "most adequate" plaintiffs. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

---

[2] *See*, *e.g.*, *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN), 2018 WL 3093965, at *4 (S.D.N.Y. June 21, 2018); *Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769, at *1 (S.D.N.Y. Nov. 13, 2017); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 404-05 (S.D.N.Y. 2004).

### C.     The Retirement Systems Otherwise Satisfy the Requirements of Rule 23

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In making its determination that a lead plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification. Instead, "[t]he parties moving for lead plaintiff are only required to make a prima facie showing that they meet [the requirements of] Rule 23." *Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB), 2018 WL 1634872, at *3 (S.D.N.Y. Apr. 4, 2018); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) ("[A]t this stage of the litigation, only a preliminary showing of typicality and adequacy is required.").  Moreover, "[t]ypicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA."  *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998); *see also Aude*, 2018 WL 1634872, at *3 ("[C]ourts need only consider the typicality and adequacy requirements.").  Here, the complaints in the Related Actions sufficiently plead Rule 23(a)(1) numerosity and Rule 23(a)(2) common questions in a manner common to all Class members, including the Retirement Systems.

The typicality requirement of Rule 23(a)(3) "is satisfied if 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'"  *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL

2811358, at *5 (S.D.N.Y. July 7, 2008) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).  "[T]he claims of the class representative need not be identical to those of all members of the class. '[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.'"  *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010) (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (2d Cir. 1992)).

The Retirement Systems' claims are typical of those of the Class.  The Retirement Systems allege, as do all Class members, that Defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts and/or by omitting to disclose material facts concerning Signature Bank.  The Retirement Systems, as did all Class members, purchased Signature Bank securities during the Class Period at prices alleged to have been artificially inflated by Defendants' misrepresentations or omissions, and were damaged upon the disclosure of those misrepresentations and/or omissions that drove Signature Bank's share price downward.  These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *see also Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS), 2018 WL 1779348, at *2 (S.D.N.Y. Apr. 12, 2018) (same).

The Retirement Systems are adequate representatives for the Class.  There is no antagonism between the interests of the Retirement Systems and those of the Class, and their losses demonstrate that they have a sufficient interest in the outcome of this litigation.  Moreover, the Retirement Systems have retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as the Related Actions and submit their choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

As noted above, the Retirement Systems are sophisticated institutional investors.  As such, their appointment would be consistent with the PSLRA's preference for the appointment of institutional investors as class representatives in securities class actions.  *See* H.R. Conf. Rep. No. 104-369, at 34 ("increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions").  Indeed, courts strongly prefer appointment of institutional investors to lead complex securities class actions.  *See*, *e.g.*, *Glauser*, 236 F.R.D. at 188 ("[T]he PSLRA was passed, at least in part, to increase the likelihood that institutional investors would serve as lead plaintiffs in actions such as this one.") (quoting *In re Veeco Instruments*, 233 F.R.D. at 332-33); *Ophthotech*, 2018 WL 1307285, at *6 ("[C]ourts have a preference for appointing institutional investors as lead plaintiffs."); *In re Braskem S.A. Sec. Litig.*, 15 Civ. 5132 (PAE) *et al.*, 2015 WL 5244735, at *5 (S.D.N.Y. Sept. 8, 2015) (appointing as lead plaintiff "an institutional investor, the type of investor Congress prefers as lead plaintiff"); *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 403 n. 8 (S.D.N.Y. 2006) (appointing as lead plaintiff a "large institutional investor . . . precisely the type of plaintiff envisioned under the PSLRA").

Consisting of likeminded institutional investors, the Retirement Systems constitute an appropriate group of the type expressly permitted by the PSLRA and routinely appointed to serve

as lead plaintiffs in PSLRA actions. *See*, *e.g.*, *In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513, at *4 (E.D.N.Y. Dec. 15, 2017); *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) ("recogniz[ing] that appointing a group of people as co-lead plaintiffs is allowable under the PSLRA" and finding group of seven was "presumptively the most adequate plaintiff"); *Barnet v. Elan Corp., PLC*, 236 F.R.D. 158, 162 (S.D.N.Y. 2005) (holding "there can be no doubt" the PSLRA permits appointment of groups and appointing group of six as lead plaintiffs); *Cendant*, 264 F.3d at 266 ("The PSLRA explicitly permits a 'group of persons' to serve as lead plaintiff." (citation omitted)).

Here, demonstrating their fitness to serve jointly as Co-Lead Plaintiffs as well as their adequacy more generally, the Retirement Systems have submitted a Joint Declaration attesting to, *inter alia*, their backgrounds, their experience serving as Lead Plaintiffs in prior PSLRA actions, their understanding of the responsibilities of a lead plaintiff pursuant to the PSLRA, their decision to seek appointment jointly as Co-Lead Plaintiffs, and the steps that they are prepared to take to cooperatively prosecute this litigation on behalf of the Class. *See generally* Gilmore Decl., Ex. D. Courts routinely appoint investor groups as lead plaintiffs under such circumstances. *See*, *e.g.*, *Blue Apron*, 2017 WL 6403513, at *4 (appointing group of four unrelated investors that submitted declaration attesting "it is prepared to work cooperatively to serve the best interests of the class," and finding the group is not "so large as to be unwieldy and impracticable"); *W. Palm Beach Police Pension Fund v. DFC Glob. Corp.*, No. CIV.A. 13-6731, 2014 WL 1395059, at *7-9, *12 (E.D. Pa. Apr. 10, 2014) (appointing group and noting "declaration lay[ing] out the duties and obligations of" the group's members); *Louisiana Mun. Police Employees' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-CV-289, 2012 WL 12985571, at *3 (D. Vt. Apr. 27,

2012) (finding joint declaration "sufficient to assure the Court that the [lead] plaintiffs will effectively manage the litigation").

As part of the Retirement Systems' efforts to formalize the leadership of this action and to demonstrate their commitment to jointly prosecute the action, their representatives participated in a conference call to discuss, among other things: the strength of the claims against Defendants; a strategy for prosecuting these actions; the benefits that the Class would receive from the leadership of a coordinated group of institutional investors with prior experience serving as Lead Plaintiffs under the PSLRA; the shared desire of the Retirement Systems to achieve the best possible result for the Class; the interests in prosecuting the case in a collaborative, likeminded manner; and the actions that Wayne County ERS and Mississippi PERS will each take to continue to ensure that the Class's claims will be zealously and efficiently litigated. *Id.*

### D. The Retirement Systems Will Fairly and Adequately Represent the Interests of the Class and Are Not Subject to Unique Defenses

The presumption in favor of appointing the Retirement Systems as Co-Lead Plaintiffs may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

> (aa)    will not fairly and adequately protect the interests of the class; or
>
> (bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The Retirement Systems' ability and desire to fairly and adequately represent the Class have been discussed above.  The Retirement Systems are not aware of any unique defenses Defendants could raise that would render them inadequate to represent the Class.  Accordingly, the Retirement Systems should be appointed Co-Lead Plaintiffs for the Class.

## III.     CO-LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to Court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with Lead Plaintiff's choice if necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.") (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008))); *see also In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 151 (D. Del. 2005).

Here, the Retirement Systems have selected Pomerantz as Lead Counsel for the Class. Pomerantz is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume. *See* Gilmore Decl., Ex. E. Pomerantz recently secured a recovery of $3 billion on behalf of investors in the securities of Petróleo Brasileiro S.A. — Petrobras, the largest class action settlement in a decade and the largest settlement ever in a class action involving a foreign issuer. Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825 (E.D.N.Y.), in June 2010, and the $90 million settlement in *Klein v. Altria Group, Inc. et al*, No. 3:20-cv-00075 (E.D. Va.) in March 2022. *See* Gilmore Decl., Ex. E. As a result of Pomerantz's extensive experience in securities litigation and class actions involving issues similar to those raised in the Related Actions, Pomerantz has the skill and knowledge necessary to enable the effective and expeditious prosecution of the Related Actions. Thus, the Court may be assured that by approving the selection of Lead Counsel by the Retirement Systems, the members of the Class will receive the best legal representation available.

**CONCLUSION**

For the foregoing reasons, the Retirement Systems respectfully request that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing the Retirement Systems as Co-Lead Plaintiffs for the Class; and (3) approving proposed Co-Lead Plaintiffs' selection of Pomerantz as Lead Counsel for the Class.

Dated:  May 15, 2023                    Respectfully submitted,

POMERANTZ LLP

*/s/ Emma Gilmore*
Jeremy A. Lieberman
Emma Gilmore
J. Alexander Hood II
Thomas H. Przybylowski
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
egilmore@pomlaw.com
ahood@pomlaw.com
tprzybylowski@pomlaw.com

*Counsel for Wayne County Employees' Retirement System and Public Employees' Retirement System of Mississippi and Proposed Lead Counsel for the Class*