UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTHEW SCHAEFFER, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SIGNATURE BANK, JOSEPH DEPAOLO, STEPHEN WYREMSKI, and ERIC HOWELL,<br><br>Defendants. | Case No. 1:23-cv-01921-FB-JRC<br><br>**MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF WAYNE COUNTY EMPLOYEES' RETIREMENT SYSTEM AND PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI FOR CONSOLIDATION, APPOINTMENT AS CO-LEAD PLAINTIFFS, AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTION** |
| PIRTHI PAL SINGH, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SIGNATURE BANK, SCOTT A. SHAY, JOSEPH DEPAOLO, VITO SUSCA, MARK SIGONA, STEPHEN WYREMSKI, and ERIC HOWELL,<br><br>Defendants. | Case No. 1:23-cv-02501-ENV-VMS |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..... 1

ARGUMENT ..... 6

I. THE RETIREMENT SYSTEMS SHOULD BE APPOINTED CO-LEAD PLAINTIFFS ..... 6

A. The Retirement Systems Have the Largest Financial Interest of Any Eligible Lead Plaintiff Movant in the Relief Sought by the Class ..... 7

B. The Retirement Systems Satisfy the Requirements of Rule 23 ..... 8

II. THE COMPETING MOTION SHOULD BE DENIED BECAUSE AP7 IS INADEQUATE AND ATYPICAL UNDER RULE 23 AND SUBJECT TO UNIQUE DEFENSES ..... 11

A. AP7 Has Not Established Its Standing to Pursue Claims in This Litigation ..... 11

B. AP7's Unnecessary Representation by Two Large Law Firms Calls Its Adequacy Into Question ..... 19

C. AP7 Has Been Recently Called Out for Discovery Misconduct, Rendering It Subject to Unique Defenses ..... 21

D. AP7 Regularly Engages In "Short Selling" and Other Atypical Trading Patterns, Subjecting it to Unique Defenses ..... 22

CONCLUSION ..... 24

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*,
890 F.3d 445 (3d Cir. 2018)....................13

*Aude v. Kobe Steel, Ltd.*,
No. 17-CV-10085 (VSB), 2018 WL 1634872 (S.D.N.Y. Apr. 4, 2018)....................7, 8

*Bach et al v. Amedisys, Inc. et al*,
No. 3:10-cv-00395 (M.D. La.)....................9

*Baydale v. Am. Express Co.*,
2009 U.S. Dist. LEXIS 71668 (S.D.N.Y. Aug. 14, 2009)....................15, 16

*Brady v. Top Ships Inc.*,
324 F. Supp. 3d 335 (E.D.N.Y. 2018)....................10, 11

*Chahal v. Credit Suisse Grp. AG*,
No. 18-CV-2268 (AT) (SN), 2018 WL 3093965 (S.D.N.Y. June 21, 2018)....................1, 7

*Charles Larry Crews, Jr. v. Rivian Automotive, Inc. et al*,
No. 2:22-cv-01524 (C.D. Cal.)....................21

*Chauhan v. Intercept Pharmaceuticals*,
2021 WL 235890 (S.D.N.Y. Jan. 25, 2021)....................5, 19

*China Agritech, Inc. v. Resh*,
138 S. Ct. 1800 (2018)....................2

*City of Pontiac General Employees' Retirement System v. Lockheed Martin Corp.*,
844 F. Supp. 2d 498 (S.D.N.Y. 2012)....................19

*Constr. Workers Pension Trust Fund v. Navistar Int'l Corp.*,
No. 13 C 2111, 2013 U.S. Dist. LEXIS 106246 (N.D. Ill. July 30, 2013)....................4, 13

*Cushman v. Fortress Biotech, Inc.*,
20-CV-5767 (KAM), 2021 WL 7449182 (E.D.N.Y. Mar. 24, 2021)....................11

*CW Capital Asset Mgmt., LLC v. Chicago Properties, LLC*,
610 F.3d 497 (7th Cir. 2010)....................13

*Dookeran v. Xunlei Ltd.*,
No. 18-cv-467 (RJS), 2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018)....................8

*Foley Trasimene Acquisition Corp. II Securities Litigation*,
Docket No. 1:21-cv-10611 (S.D.N.Y.) ........16, 17

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011) ........2, 8

*Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*,
528 U.S. 167 (2000) ........14

*Greene v. Gerber Prods. Co.*,
262 F. Supp. 3d 38 (E.D.N.Y. 2017) ........14, 15

*Gross v. AT&T Inc.*,
2019 WL 7759222 (S.D.N.Y. June 24, 2019) ........8

*In re Allergan Generic Drug Pricing Sec. Litig.*,
No. 2:16-cv-09449-KSHCLW (D.N.J.) ........9

*In re Bally Total Fitness Sec. Litig.*,
Nos. 04 C 3530 et al., 2005 U.S. Dist. LEXIS 6243 (N.D. Ill. Mar. 15, 2005) ........4

*In re Bank of America Corp. Sec., Derivative and ERISA Litig.*,
No. 09-MD-2058, 2011 WL 3211472 (S.D.N.Y. 2011) ........12, 13

*In re Bank One Shareholders Class Actions*,
96 F. Supp. 2d 780 (N.D. Ill. 2000) ........23

*In re Cloudera, Inc. Securities Litigation*,
Docket No. 3:19-cv-03221 (N.D. Cal.) ........9

*In Re Coinbase Global, Inc., Securities Litigation*,
No. 2:22-cv-04915 (D.N.J.) ........21

*In re Critical Path, Inc. Sec. Litig.*,
156 F. Supp. 2d 1102 (N.D. Cal. 2001) ........22

*In re Enron Corp., Sec. Litig.*,
206 F.R.D. 427 (S.D. Tex. 2002) ........12, 18

*In re Groupo Televisa Sec. Litig.*,
2020 WL 3050550 (S.D.N.Y. June 8, 2020) ........23

*In re IMAX Sec. Litig.*,
272 F.R.D. 138 (S.D.N.Y. 2010) ........24

*In re JPMorgan Chase & Co. Sec. Litig.*,
No. 1:12-cv-03852-GBD (S.D.N.Y.) ........9

*In re Kraft Heinz Securities Litigation*,
No. 19-cv-1339 (JLA) (N.D. Ill.)....................9, 23

*In re Lucid Group, Inc. Securities Litigation*,
No. 3:22-cv-02094 (N.D. Cal.)....................21

*In re Luckin Coffee Inc. Securities Litigation*,
No. 20-cv-1293 (S.D.N.Y.)....................9

*In re Microstrategy Inc. Sec. Litig.*,
110 F. Supp. 2d 427 (E.D. Va. 2000)....................23

*In re Orion Sec. Litig.*,
No. 08 Civ. 1328 (RJS), 2008 WL 2811358 (S.D.N.Y. July 7, 2008)....................2, 8

*In re Paysafe Ltd.*,
2022 WL 1471122 (S.D.N.Y. May 10, 2022)....................10, 14, 18

*In re Petrobras Sec. Litig.*,
104 F. Supp. 3d 618 (S.D.N.Y. 2015)....................19, 20, 23

*In re SLM Corp. Sec. Litig.*,
258 F.R.D. 112 (S.D.N.Y. 2009)....................15

*In re Surebeam Corp. Secs. Litig.*,
No. 03 CV 1721 JM (POR), 2003 U.S. Dist. LEXIS 25022 (S.D. Cal. Jan. 5, 2004)....................12

*In Re Wells Fargo & Company Securities Litigation*,
No. 1:20-cv-04494 (S.D.N.Y.)....................9

*Isaacs v. Musk*,
2018 WL 6182753 (N.D. Cal. Nov. 27, 2018)....................23

*Janbay v. Canadian Solar, Inc.*,
272 F.R.D. 113 (S.D.N.Y. 2010)....................8

*Juliar v. Sunopta, Inc.*,
Nos. 08 Civ. 933(PAC), *et al.*, 2009 WL 1955237 (S.D.N.Y. Jan. 30, 2009)....................2, 8

*Kaplan v. Gelfond*,
240 F.R.D. 88 (S.D.N.Y. 2007)....................7, 8

*Koss v. Wackenhurt Corp.*,
2009 WL 928087 (S.D.N.Y. Mar. 30, 2009)....................6, 22

*Kraft Heinz Sec. Litig.*,
No. 19-cv-01339 (N.D. Ill.)....................22

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992)....................12, 14

*Lundy v. Ideanomics, Inc.*,
2020 WL 7389027 (S.D.N.Y. Dec. 16, 2020) ....................17

*Mahon v. Ticor Title Ins. Co.*,
683 F.3d 59 (2d Cir. 2012)....................15

*Marcus v. J.C. Penney Co.*,
2014 WL 11394911 (E.D. Tex. Feb. 28, 2014) ....................23

*Monk v. Johnson & Johnson*,
No. 3:10-cv-04841 (D.N.J.) ....................21

*Nurlybaev v. ZTO Express (Cayman) Inc.*,
No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017) ....................1, 7

*Pennsylvania Public School Employees' Retirement System v. Bank of America Corporation et al*,
Docket No. 1:11-cv-00733 (S.D.N.Y.) ....................9

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
275 F.R.D. 187 (S.D.N.Y. 2011) ....................4, 16

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
229 F.R.D. 395 (S.D.N.Y. 2004) ....................2, 7

*Plymouth County Retirement Association v. Array Technologies, Inc. et al*,
Docket No. 1:21-cv-04390 (S.D.N.Y.) ....................18

*Powers v. Ohio*,
499 U.S. 400 (1991)....................14

*Public Employees' Retirement Association of Colorado et al v. CitiGroup Inc. et al*,
Docket No. 1:08-cv-00135 (S.D.N.Y.) ....................9

*Reimer v. Ambac Financial Group, Inc.*,
Nos. 08 Civ. 411(NRB) *et al.*, 2008 WL 2073931 (S.D.N.Y. May 9, 2008) ....................3, 8

*Rocco v. Nam Tai Elecs., Inc.*,
245 F.R.D. 131 (S.D.N.Y. 2007) ....................22

*Ryan v. FIGS, Inc.*,
Docket No. 2:22-cv-07939 (C.D. Cal.)....................9

*Schaffer v. Horizon Pharma Plc.*,
2016 WL 3566238 (S.D.N.Y. June 27, 2016) ............................................................12, 17

*Sjunde AP-Fonden v. General Electric Co.*,
No. 17-cv-8457 (S.D.N.Y.)..........................................................................................21

*Sjunde Ap-Fonden v. Goldman Sachs Group, Inc.*,
No. 18-cv-12084 (S.D.N.Y.).......................................................................20, 21, 22

*South Ferry LP No. 2 v. Killinger*,
271 F.R.D. 653 (W.D. Wash. 2011) ...........................................................................18

*Spokeo, Inc. v. Robins*,
136 S. Ct. 1540 (2016)..............................................................................................3, 12

*Steamfitters Loc. 449 Pension Fund v. Cent. Eur. Distribution Corp.*,
2012 WL 3638629 (D.N.J. Aug. 22, 2012) ................................................................17

*United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 v. Ocwen Financial Corporation et al*,
No. 9:14-cv-81057 (S.D. Fla.) .....................................................................................21

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
549 F.3d 100 (2d Cir. 2008).................................................................13, 14, 15, 16

*Weisz v. Calpine Corp.*,
2002 WL 32818827 (N.D. Cal. Aug. 19, 2002) .........................................................23

*West Palm Beach Pension Fund v. DFC Global Corp. et al.*,
Docket No. 2:13-cv-06731 (E.D. Pa.)..........................................................................9

**Statutes**

15 U.S.C. §78j(b) ...........................................................................................12, 20

15 U.S.C. § 78u-4 ....................................................................................... *passim*

Private Securities Litigation Reform Act of 1995 ............................................ *passim*

**Rules**

Fed. R. Civ. P. 23....................................................................................... *passim*

Fed. R. Civ. P. 42..........................................................................................1

Lead Plaintiff Movants the Retirement Systems[1] respectfully submit this Memorandum of Law in further support of their motion for consolidation, appointment as Lead Plaintiffs and approval of their selection of Pomerantz as Lead Counsel for the Class (Dkt. No. 17); and in opposition to the competing motion of Sjunde AP Fonden ("AP7") (Dkt. No. 14).[2]

## PRELIMINARY STATEMENT

The Related Actions are class action securities fraud lawsuits against Signature and certain of the Company's officers.[3] As with all federal class action securities fraud lawsuits, a Lead Plaintiff must be appointed. The PSLRA governs that process and, pursuant to the PSLRA, the Court should appoint as Lead Plaintiff the movant or group of movants with the greatest financial interest in the outcome of the action, ***and*** who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Here, those movants are the Retirement Systems, a small and cohesive group consisting of two sophisticated institutional investors with prior litigation experience, who together suffered over ***$4.01 million*** in losses in connection with their purchases of Signature securities as a result of the fraud alleged in the Related Actions—a far greater financial interest in this litigation than any competing movant eligible for appointment. *See, e.g.*, *Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN), 2018 WL 3093965, at *4 (S.D.N.Y. June 21, 2018); *Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769, at *1 (S.D.N.Y. Nov.

[1] All capitalized terms herein are defined in the Retirement Systems' moving brief, unless otherwise indicated. *See* Dkt. No. 17-2.

[2] Initially, four other movants also filed similar motions, but they have since filed notices of non-opposition or withdrew. Dkt. Nos. 23-26.

[3] Concurrently with seeking appointment as Lead Plaintiff, all of the foregoing movants also sought consolidation of the Related Actions pursuant to Fed. R. Civ. P. 42(a). None of the movants appears to dispute that consolidation is warranted.

13, 2017); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 404-05 (S.D.N.Y. 2004).

The only remaining competing movant, AP7, has alleged a larger investment loss than the Retirement Systems. For the reasons discussed below, however, AP7 fails to satisfy the adequacy and typicality requirements of Rule 23 ***and*** "is subject to unique defenses that render [it] incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb). Accordingly, AP7 is disqualified from consideration as Lead Plaintiff.

In addition to their significant financial interest, the Retirement Systems also satisfy the typicality and adequacy requirements of Rule 23. The Retirement Systems, like all members of the Class, purchased Signature securities at prices artificially inflated by Defendants' misrepresentations or omissions, and were damaged upon the disclosure of the alleged corrective disclosures. These shared claims, which are based on the same legal theory, and arise from the same events and course of conduct as the Class claims, satisfy the typicality requirement of Rule 23. *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 7, 2008). The Retirement Systems are also adequate Class representatives under Rule 23. Their significant financial interest in this litigation ensures that they will vigorously pursue recovery on behalf of the Class. *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011).

Comprised of only two sophisticated institutional investors, both of which incurred significant losses in connection with the alleged fraud, the Retirement Systems comprise exactly the type of investor group that the PSLRA expressly permits and courts routinely appoint to serve as lead plaintiffs in securities class actions. *China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1807 n.3 (2018) ("District courts often permit aggregation of plaintiffs into plaintiff groups"). *See also Juliar v. Sunopta, Inc.*, Nos. 08 Civ. 933(PAC), *et al.*, 2009 WL 1955237, at *2 (S.D.N.Y. Jan. 30,

2009) (appointing lead plaintiff movant group consisting of "two institutional investors, each with significant losses"); *Reimer v. Ambac Financial Group, Inc.*, Nos. 08 Civ. 411(NRB) *et al.*, 2008 WL 2073931, at *3 (S.D.N.Y. May 9, 2008) (appointing lead plaintiff movant group of three institutional investors).

The Retirement Systems have further demonstrated their adequacy by submitting a detailed Joint Declaration, attesting to, *inter alia*, their backgrounds, their understanding of this litigation generally and the significance of their motion specifically, their understanding of the responsibilities of lead plaintiffs appointed pursuant to the PSLRA, and their readiness to shoulder these responsibilities, including by overseeing the efforts of counsel. *See generally* Dkt. No. 34-4. Accordingly, the Retirement Systems are highly qualified to serve as class representatives and to supervise Pomerantz, their chosen counsel, to prosecute this action vigorously on behalf of Signature investors.

By contrast, AP7 is inadequate and/or atypical under Rule 23, as well as subject to disqualifying unique defenses. *First*, AP7 has not demonstrated that it even possesses Article III standing to pursue claims in this litigation. It is axiomatic that the standing doctrine, as derived from Article III of the United States Constitution, requires a plaintiff "to establish injury in fact" by "show[ing] that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Here, from AP7's submissions, it purports to be acting on behalf of ***another entity***, the AP7 Equity Fund. *See* Dkt. 16-1. But unless AP7 has obtained an assignment from the beneficial owner(s) of the Signature Bank securities at issue or one of the narrow exceptions to the injury-in-fact requirement of Article III applies, AP7 may not simply act on behalf of ***another*** injured party

as it asserts. AP7 has not submitted an assignment and it has failed to demonstrate that any exception to the injury-in-fact requirement applies.

The PSLRA precludes the appointment of a lead plaintiff that "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb); *see also In re Bally Total Fitness Sec. Litig.*, Nos. 04 C 3530 et al., 2005 U.S. Dist. LEXIS 6243, at *19 (N.D. Ill. Mar. 15, 2005) ("The PSLRA . . . provides that we ask simply whether [a movant] is likely to be 'subject to' the unique defense . . . ; we do not have to determine that the defense is likely to succeed."). Accordingly, because the questions with respect to AP7's standing could subject this entire class action to dismissal, the PSLRA mandates that the Court recognize the potential prejudice to the class arising from these unresolved questions and deny AP7's motion. *See, e.g.*, *Constr. Workers Pension Trust Fund v. Navistar Int'l Corp.*, No. 13 C 2111, 2013 U.S. Dist. LEXIS 106246, at *15 (N.D. Ill. July 30, 2013) (lead plaintiff movant "an inadequate lead plaintiff" because it "***may*** face a motion to dismiss based on a lack of standing") (emphasis added). Indeed, a court in the Southern District of New York has previously denied AP7's motion to be lead plaintiff because it, like here, failed to demonstrate standing. *Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 191 (S.D.N.Y. 2011) ("arguments could be raised regarding AP7's third party standing, which subjects it to a unique defense and may prejudice the class.").[4]

*Second*, AP7 is also inadequate because it has failed to demonstrate that it will be managing this litigation. Ensuring the ***Plaintiff*** is driving the litigation was one of Congress's goals in

---

[4] In *Bank of Am. Corp.*, the court rejected a group of funds, including AP7, with collective losses of over $20 million, appointing a movant with losses of roughly $9.8 million. *Id.* at 190, 192.

enacting the PSLRA, and courts routinely deny lead plaintiff motions where such concerns exist. For example, in *Chauhan v. Intercept Pharmaceuticals*, 2021 WL 235890, at *5 (S.D.N.Y. Jan. 25, 2021), the district court refused to appoint a lead plaintiff movant who "propose[d] two different law firms" and "provide[d] no cogent explanation for why[,]" finding that "their conduct to date belies the notion that they would take an active role in the litigation supervising counsel." This Court should apply the same logic here and reject AP7's application to represent the class. AP7 is represented by two large law firms—Bernstein Litowitz Berger & Grossmann LLP ("BLBG") and Kessler Topaz Meltzer & Check LLP ("KTMC")—and asks the court to designate ***both*** firms as Co-Lead Counsel in this litigation. It is unclear why a single investor, or for that matter the Class, requires the combined resources of two firms to represent ***just one movant*** in this litigation. Such an arrangement here risks incurring duplication of work, expenses and costs to the detriment of the Class. Indeed, KTMC has represented its client AP7 in prior securities fraud class action litigation without the need for ***an additional large law firm***, demonstrating that it is perfectly capable of providing representation without the support of another firm. AP7's proposed leadership structure thus raises valid questions as to whether AP7 or its counsel is directing this litigation.

In stark contrast, demonstrating its control over the litigation, the Retirement Systems have retained just one law firm, Pomerantz, who stands ready to provide excellent and efficient representation as sole-lead counsel.

*Third*, just recently the CEO of AP7 has confessed under oath that it has "actively" and "intentionally" deleted investment manager reports reflecting AP7's securities transactions while knowing that it had an affirmative obligation to retain such critical evidence. Such "disregard or

inability to comply with discovery requests" warrants rejecting AP7 as the leader of the class. *Koss v. Wackenhurt Corp.*, 2009 WL 928087, at *7 (S.D.N.Y. Mar. 30, 2009).

*Fourth*, AP7's CEO recently testified under oath that AP7 regularly engages in the short-selling of securities, subjecting the manager to the unique defense that the alleged misstatements were not a factor in its transaction decisions. Moreover, discovery in another recent case uncovered that AP7's representations about how it conducted its investments transactions were "false." For example, contrary to AP7's earlier representations that AP7's trades were done simply to mimic various indexes, discovery revealed that, in reality, AP7's investment managers "set up bespoke indices" in which they bought or sold securities on AP7's behalf.

*Each* of these four factors is sufficient to disqualify AP7 from serving as lead plaintiff. AP7's deficiencies stand in clear contrast to the unquestioned position of the Retirement Funds, (i) domestic institutional investors with clear title to the securities they purchased and sold in Signature Bank, (ii) who selected a single law firm able and willing to represent the funds effectively and efficiently, (iii) with no history of deleting transactional records despite an affirmative obligation to retain them, (iv) no evidence of an opportunistic investment strategy aimed to extract profits from overvalued securities, and no evidence of obfuscating the nature of their transactions.

## ARGUMENT

### I. THE RETIREMENT SYSTEMS SHOULD BE APPOINTED CO-LEAD PLAINTIFFS

The PSLRA creates a strong presumption that the lead plaintiff is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The movant that has the largest financial interest must make a *prima facie* showing of adequacy and typicality under

Rule 23. *Aude v. Kobe Steel, Ltd.*, No. 17-CV-10085 (VSB), 2018 WL 1634872, at *3 (S.D.N.Y. Apr. 4, 2018); *Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007). Once this presumption is triggered, it may be rebutted upon proof that the presumptive lead plaintiff will not fairly represent the interests of the Class. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II) (emphasis added). Here, the most adequate class representatives are the Retirement Systems.

### A. The Retirement Systems Have the Largest Financial Interest of Any Eligible Lead Plaintiff Movant in the Relief Sought by the Class

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). While the PSLRA itself does not provide any guidance concerning the method of calculating which plaintiff has the "largest financial interest," courts in this Judicial District and the Second Circuit recognize that the amount of financial loss is the most significant factor to be considered. *See, e.g.*, *Chahal*, 2018 WL 3093965, at *4; *Nurlybaev*, 2017 WL 5256769, at *; *Pirelli Armstrong Tire*, 229 F.R.D. at 404-05.

No movant eligible for appointment as Lead Plaintiff in this litigation has a larger financial interest in the litigation than the Retirement Systems. The Retirement Systems suffered aggregate losses of nearly ***$4.02 million*** in connection with their Class Period purchases of Signature securities. As discussed in detail below, AP7, the only movant alleging a greater financial interest than the Retirement Systems, is ineligible for consideration because its failure to demonstrate its standing to pursue fraud claims against the Defendants in this litigation subjects it to a disqualifying unique defense, while its unexplained representation by two law firms calls into question its adequacy to meaningfully supervise the prosecution of this litigation. AP7 is also subject to unique defenses regarding its opportunistic investment strategies and discovery gamesmanship.

### B. The Retirement Systems Satisfy the Requirements of Rule 23

In addition to possessing the largest financial interest in the relief sought by the Class, the Retirement Systems have also made the requisite *prima facie* showing that they satisfy the typicality and adequacy requirements of Rule 23. *See Aude*, 2018 U.S. Dist. LEXIS 57591, at *8; *Kaplan*, 240 F.R.D. at 94. The Retirement Systems satisfy the typicality requirement of Rule 23(a)(3) because their claims against Signature and the other Defendants are based on the same legal theory and arise from the same events and course of conduct as the Class's claims. *See, e.g.*, *Orion*, 2008 WL 2811358, at *5; *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 113, 120 (S.D.N.Y. 2010). Moreover, the Retirement Systems satisfy the adequacy requirement of Rule 23(a)(4) because their significant financial interest gives them a "sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley*, 272 F.R.D. at 131; *see also Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS), 2018 WL 1779348, at *2 (S.D.N.Y. Apr. 12, 2018) (same). Further demonstrating their adequacy, the Retirement Systems have submitted a detailed Joint Declaration, in which MPERS and WCERS attest to, *inter alia*, their reasons for choosing to seek appointment as Co-Lead Plaintiffs, their understanding of the significance of their motion, their understanding of the responsibilities of lead plaintiffs appointed pursuant to the PSLRA, and their readiness to undertake those responsibilities on behalf of the Class, including by supervising Pomerantz, their chosen counsel in this action. *See generally* Dkt. No. 17-7.

Furthermore, as a small and cohesive partnership of two sophisticated institutional investors with prior securities litigation experience, the Retirement Systems constitute exactly the kind of group that courts routinely appoint as lead plaintiffs. *See, e.g.*, *Juliar*, 2009 WL 1955237, at *2 (appointing lead plaintiff movant group consisting of "two institutional investors, each with significant losses"); *Reimer*, 2008 WL 2073931, at *3 (appointing lead plaintiff movant group of three institutional investors); *Gross v. AT&T Inc.*, 2019 WL 7759222, at *2 (S.D.N.Y. June 24,

2019) (appointing lead plaintiff movant group of institutional investors). Nor can AP7 credibly dispute the propriety of appointing groups of investors to serve as Lead Plaintiffs, given that both AP7 ***and*** its counsel in this litigation have repeatedly advocated for the appointment of movant groups as co-lead plaintiffs in prior actions, frequently together. *See*, *e.g.*, *In re Kraft Heinz Securities Litigation*, No. 19-cv-1339 (JLA) (N.D. Ill.) (Dkt. No. 59) (AP7, represented by BLBG and KTMC, seeking appointment as a co-lead plaintiff alongside another movant); *In re Luckin Coffee Inc. Securities Litigation*, No. 20-cv-1293 (S.D.N.Y.) (Dkt. No. 98) (same); *In re Allergan Generic Drug Pricing Sec. Litig.*, No. 2:16-cv-09449-KSHCLW (D.N.J.) (Dkt. No. 10-1) (same); *In re JPMorgan Chase & Co. Sec. Litig.*, No. 1:12-cv-03852-GBD (S.D.N.Y.) (Dkt. No. 14) (AP7, represented by BLBG, KTMC and a third firm, seeking appointment as a co-lead plaintiff alongside ***five*** other movants); *see also In Re Wells Fargo & Company Securities Litigation*, No. 1:20-cv-04494 (S.D.N.Y.) (Dkt. No. 59) (MSPERS appointed lead plaintiff as part of a group of institutional investors with BLBG and Cohen Milstein appointed co-lead counsel); *Bach et al v. Amedisys, Inc. et al*, No. 3:10-cv-00395 (M.D. La.) (Dkt. No. 59) (MSPERS and Puerto Rico Teachers' Retirement System appointed lead plaintiffs and BLBG and Wolf Popper appointed as co-lead counsel).[5]

Just recently, KTMC successfully advocated for appointing as co-lead plaintiffs ***two unrelated individual investors with no prior relationship*** who "attest[ed] that prior to seeking appointment as Lead Plaintiff they participated in a joint conference call to formalize their

[5] *See also Public Employees' Retirement Association of Colorado et al v. CitiGroup Inc. et al*, Docket No. 1:08-cv-00135 (S.D.N.Y.) (Dkt. No. 22); *Pennsylvania Public School Employees' Retirement System v. Bank of America Corporation et al*, Docket No. 1:11-cv-00733 (S.D.N.Y.) (Dkt. No. 27); *In re Cloudera, Inc. Securities Litigation*, Docket No. 3:19-cv-03221 (N.D. Cal.) (Dkt. No. 76); *West Palm Beach Pension Fund v. DFC Global Corp. et al.*, Docket No. 2:13-cv-06731 (E.D. Pa.) (Dkt. No. 13); *Ryan v. FIGS, Inc.*, Docket No. 2:22-cv-07939 (C.D. Cal.) (Dkt. No. 34).

commitment to jointly prosecuting this litigation and their duties if selected as lead plaintiff. They agree to make decisions jointly, taking into consideration legal advice from KT[MC]. They state that they are confident in their ability to reach joint decisions regarding litigation matters." *In re Paysafe Ltd.*, 2022 WL 1471122, at *5 (S.D.N.Y. May 10, 2022) (appointing the unrelated individual investors and observing that "the majority of courts, including those in this District, have permitted unrelated investors to join together as a group seeking lead-plaintiff status . . . " (citations omitted).

None of the concerns that sometimes lead courts to deny motions by investor groups are present here. Comprised of only two institutional investors—MSPERS and WCERS—the Retirement Systems constitute a small enough group to function cohesively. *See, e.g.*, *Brady v. Top Ships Inc.*, 324 F. Supp. 3d 335, 347 (E.D.N.Y. 2018) (appointing three-member investor group as lead plaintiff, finding that its "small size strengthens the Court's confidence in the group's ability to serve as lead plaintiff"). Indeed, MSPERS and WCERS have already demonstrated their cohesiveness and commitment to jointly prosecuting this litigation, having participated in a joint conference call with one another and their proposed counsel (Pomerantz), "wherein [they] discussed the merits of this action, the status of the proceedings, the responsibilities of lead plaintiffs appointed pursuant to the PSLRA, the Retirement Systems' ability to work together and to jointly fill the lead plaintiff role, and efforts to facilitate future communications at collaboration." Dkt. No. 17-7 ¶ 5. Courts routinely find such showings demonstrate a group's adequacy to serve as Lead Plaintiff. *See, e.g.*, *Top Ships*, 324 F. Supp. 3d at 347 (finding joint declaration to "demonstrate [a movant group's] members' commitment to overseeing the work of their selected counsel").

Additionally, MSPERS and WCERS are both sophisticated institutional investors with prior securities litigation experience. They were not passively assembled into a group by their counsel, but rather, as they have attested in their Joint Declaration, they "each separately assessed the merits of this litigation and of seeking appointment as Lead Plaintiff" before affirmatively opting to work together and seek appointment jointly as Co-Lead Plaintiffs. *Id. See Cushman v. Fortress Biotech, Inc.*, 20-CV-5767 (KAM), 2021 WL 7449182, at *6 (E.D.N.Y. Mar. 24, 2021) (appointing group of unrelated investors who demonstrated cohesiveness, while acknowledging that "courts disfavor lead plaintiffs assembled by lawyers"). Likewise, both of the Retirement Systems possess the requisite experience and sophistication to actively oversee the efforts of their counsel in this litigation and have attested to their preparedness to do so. *See id.* ¶¶ 6-7.

Finally, the Retirement Systems have further demonstrated their adequacy by selecting Pomerantz—highly capable and experienced counsel in prosecuting securities cases and managing complex litigation efficiently, as its firm resume reflects—to serve as Lead Counsel for the Class. *See* Dkt. No. 17-8.

## II. THE COMPETING MOTION SHOULD BE DENIED BECAUSE AP7 IS INADEQUATE AND ATYPICAL UNDER RULE 23 AND SUBJECT TO UNIQUE DEFENSES

### A. AP7 Has Not Established Its Standing to Pursue Claims in This Litigation

Although AP7 has alleged a significant loss in connection with Signature's alleged fraud, AP7 cannot trigger the "most adequate plaintiff" presumption because serious questions exist with respect to its standing to pursue claims in this litigation, which disqualify it from appointment as Lead Plaintiff pursuant to the PSLRA. The PSLRA precludes appointment of a Lead Plaintiff who "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb). "The PSLRA . . . provides that we ask simply whether [a movant] is likely to be 'subject to' the unique defense . . . ; we do not have to determine

that the defense is likely to succeed." *In re Bally Total Fitness Sec. Litig.*, 2005 U.S. Dist. LEXIS 6243, at *19; *See also In re Surebeam Corp. Secs. Litig.*, No. 03 CV 1721 JM (POR), 2003 U.S. Dist. LEXIS 25022, at *22 (S.D. Cal. Jan. 5, 2004) (denying lead plaintiff motion upon "find[ing] that there is at least a potential that [movant] will be subject to unique defenses and will not fairly and adequately protect the interests of the class."); *Schaffer v. Horizon Pharma Plc.*, 2016 WL 3566238, at *3 (S.D.N.Y. June 27, 2016) ("'proof' of a non-speculative risk that the movant will not be adequate" sufficient to "rebut the presumption in favor of the movant with the greatest financial loss"); *In re Enron Corp., Sec. Litig.*, 206 F.R.D. 427, 456 (S.D. Tex. 2002) (denying motion for lead plaintiff appointment due to "information [that] raises more than the mere specter of . . . unique defenses").

AP7 has not established that it is the owner of the Signature securities listed on its Certification, and thus has not established that it has satisfied the injury-in-fact requirement necessary to establish Article III standing. "[S]tanding requires that the plaintiff 'personally has suffered some actual or threatened injury.'" *Spokeo, Inc.*, 136 S. Ct. at 1548 (quoting *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472 (1982). "[T]he injury must affect the plaintiff in a personal and individual way." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 n. 1 (1992). In a securities fraud action under Section 10(b) of the Exchange Act, the injury-in-fact requirement is satisfied when the plaintiff was a beneficial owner of the securities at issue, and engaged in a purchase or sale, during the relevant period during which misconduct allegedly occurred. *See, e.g.*, *In re Bank of America Corp. Sec., Derivative and ERISA Litig.*, No. 09-MD-2058, 2011 WL 3211472, at *12 (S.D.N.Y. 2011).

Here, the Declaration submitted by AP7's Chief Executive Officer Richard Gröttheim (the "Gröttheim Declaration") indicates that AP7 is a Swedish asset manager. *See* Dkt. No. 16-3 ¶ 2.

Asset managers provide management services with respect to assets, such as securities, the beneficial owners of which are often other investors, ***not*** the asset manager. Here, nothing in AP7's motion papers establishes that AP7 is, in fact, the beneficial owner of the Signature securities listed on its Certification. Whether AP7 is the owner of any ***fund*** that invested in Signature securities is separate and distinct from the question of whether AP7 is the owner of the ***assets*** of those funds—namely, the Signature securities at issue in this litigation. Indeed, given the Gröttheim Declaration expressly refers to AP7's management of "assets ***on behalf of more than five million members***[,]" (*id.*) (emphasis added), it appears that AP7 is ***not*** the beneficial owner of the securities on which it claims to have incurred investment losses.

Nor has AP7 submitted assignments authorizing it to pursue claims on behalf of any other funds or persons. When an investment company, investment advisor, or asset manager brings suit in federal court under the U.S. securities laws, it has Article III standing to sue for injuries to customers who are the beneficial owners of the securities at issue only if the company has "legal title to, or a proprietary interest in, the claim." *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008). The Article III standing doctrine is not satisfied if the company has simply "a power of attorney from its clients to bring th[e] lawsuit," but is not itself "the beneficial owner[ ] of the underlying securities." *Id.* at 103. *See generally CW Capital Asset Mgmt., LLC v. Chicago Properties, LLC*, 610 F.3d 497, 501 (7th Cir. 2010) (distinguishing, for standing purposes, between "an assignee" and "a mere attorney"); *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 454 (3d Cir. 2018) (distinguishing an assignment of a claim from a power of attorney).

Here, AP7 has submitted no such assignments. Even if AP7 were to submit such assignments now, it would be too late, as standing is assessed at the time the lawsuit is commenced.

*See Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 180 (2000); *Lujan*, 504 U.S. at 571 n. 4. Accordingly, AP7 was required to establish its standing at the time that it filed its motion and may not belatedly attempt to cure its failure to do so.

Having failed to demonstrate that it is the owner of the Signature securities listed on the Certification submitted with its motion papers, and apparently lacking any assignments from the beneficial owners of these securities, AP7 has failed to establish that it has Article III standing to bring securities fraud claims against the Defendants in this action. Accordingly, the risk that AP7 may be found to lack standing altogether, thus needlessly mandating the dismissal of the entire litigation to the obvious prejudice of the investor class, is clearly far more than mere speculation. In *In re Paysafe Limited*, 2022 WL 1471122, at *8, for example, the district court refused to appoint as lead plaintiff an institutional investor whose clients assigned claims to it, finding that movant's standing "could potentially be challenged if Defendants question the validity of the [movant's] assignments" and finding that "discovery on the validity of the assignments and [movant's] standing would be contrary to the interest of the class in pursuing efficient discovery toward a resolution of this matter." Here, AP7 has not even proffered an assignment, let alone a valid one.

A very narrow exception to the foregoing standing requirements exists, pursuant to which a litigant without an assignment may pursue claims on behalf of another injured party. *See, e.g.*, *Powers v. Ohio*, 499 U.S. 400, 410 (1991); *Huff*, 549 F.3d at 110. As courts in this District have explained, however, "the Supreme Court has made clear that it does 'not look favorably upon third-party standing' except in certain circumstances." *Greene v. Gerber Prods. Co.*, 262 F. Supp. 3d 38, 56-57 (E.D.N.Y. 2017) (quoting *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004)). Indeed, the Supreme Court tends to apply the narrow third-party standing exception to cases implicating

constitutional claims and "asserting public interests" rather than "asserting private interests." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 67 (2d Cir. 2012) ; *see also Greene*, 262 F. Supp. 3d at 56-57. No such claims or interests are asserted in this action.

In *Huff*, the Second Circuit held that "an investment manager to whom investor-clients had given power-of-attorney and authority over investment decisions lacked standing to file a security fraud claim on the clients' behalf." *See Greene*, 262 F. Supp. 3d at 56, citing *Huff*, 549 F.3d at 110. The Second Circuit in *Huff* considered and soundly rejected the argument that the prudential standing exception applied to an investment manager, finding that the relationship was not sufficiently close. *Id*. at 110. As an investment manager, AP7 lacks standing under *Huff* because it has not made any showing that it should be afforded the prudential standing exception. AP7 has not provided one iota of evidence showing a sufficiently close relationship with the entity that suffered the injury. AP7 cannot cure its defective standing at a later date. *See In re SLM Corp. Sec. Litig.*, 258 F.R.D. 112, 116 (S.D.N.Y. 2009).

Having failed to establish that it has Article III standing to pursue claims in this litigation, AP7 is clearly subject to unique defenses that render it incapable of serving as Lead Plaintiff. Applying *Huff*, at least two courts in this District have denied lead plaintiff motions filed by Swedish institutions—including AP7, in one case—finding that their failure to demonstrate that they possessed standing to bring securities fraud claims against the defendants precluded their appointment because it subjected them to unique defenses. In *Baydale v. Am. Express Co.*, 2009 U.S. Dist. LEXIS 71668 (S.D.N.Y. Aug. 14, 2009), the court denied the motion of Lansforsakringar Fondforvalting AB ("LFAB"), a Swedish money manager, for appointment as Lead Plaintiff in a PSLRA action, rejecting LFAB's argument that it qualified for the third-party standing exception. *Id*. at *7-8. There, LFAB submitted the opinion of a purported expert on

Swedish law claiming that LFAB has the sole authority to bring suit on behalf of its funds. *Id*. The court, however, found that even if it were to credit the opinion of that expert, "LFAB's status raises complex and novel issues of law which would require extensive factual and foreign legal analysis. Such a diversion would be a needless litigation sideshow. . . . ***[T]hat ancillary issue, now revealed, can be circumvented at this early stage by selecting another lead plaintiff***." *Id*. (emphases added).[6]

Similarly, in *Bank of Am. Corp.*, 275 F.R.D. at 191, the court denied AP7's motion for appointment as Lead Plaintiff, rejecting its third-party standing argument, finding its failure to demonstrate standing subjected it to a unique defense that could prejudice the class.

Importantly, just recently, AP7's counsel, KTMC, successfully ***opposed a proposed lead plaintiff motion of an asset manager like AP7 on standing grounds***. In *In Re Paysafe Limited f/k/a Foley Trasimene Acquisition Corp. II Sec. Litig.*, Docket No. 1:21-cv-10611 (S.D.N.Y.) ("*Paysafe*"), KTMC argued that the competing lead plaintiff, an "asset manager," "did not directly purchase any Paysafe securities and is subject to unique defenses surrounding its standing to assert claims in connection with the investments of 101 of its clients' accounts" under the Second Circuit's ruling in *Huff*. *Paysafe* Dkt. 49 at 8 (citing *Huff*, 549 F.3d 100). KTMC argued that factual and legal issues surrounding the standing of the competing movant in *Paysafe* "would undermine the prosecution of the entire class's claims because Campbell's boilerplate assignments (***even if corrected before its appointment***), could be deemed insufficient at a later stage of litigation—requiring the Court to reopen the lead plaintiff selection process and potentially exposing absent class members to statute of limitations and statute of repose concerns." *Paysafe*

[6] In *Baydale*, the court rejected LFAB, with losses over $14 million, and appointed a movant with losses just over $600,000. *Id*. at *2-3.

Dkt. 49 at 12 (emphasis added), citing *In re IMAX Sec. Litig.*, 272 F.R.D. 138, 155, 160 (S.D.N.Y. 2010) (denying class certification and reopening the lead plaintiff selection process because the previously appointed lead plaintiff was "at a minimum . . . subject to unique defenses"); *Lundy v. Ideanomics, Inc.*, 2020 WL 7389027, at *3 (S.D.N.Y. Dec. 16, 2020) ("[If Defendants are later successful in any opposition to class certification or [the movant] as the class representative as a result of [the movant's] unique defense, class members may be subject to statute of repose concerns.").

KTMC also stressed that whether the standing attack on the asset manager was ***"ultimately successful is irrelevant to the question of whether to disqualify [the asset manager]***, as [its] mere ***susceptibility to this unique defense renders it inadequate for selection as Lead Plaintiff***." *Paysafe* Dkt. 49 at 10 (emphasis added), citing *Batter v. Hecla Mining Co.*, 2020 WL 1444934, at *7 (S.D.N.Y, Mar. 25, 2020) ("Where there is at least a ***potential*** that the presumptively most adequate lead plaintiff will be subject to unique defenses . . . disqualification is appropriate."); *Schaffer*, 2016 WL 3566238, at *3 ("[M]any courts have rejected appointments of lead plaintiffs based on ***potential*** risks."); *Steamfitters Loc. 449 Pension Fund v. Cent. Eur. Distribution Corp.*, 2012 WL 3638629, at *13 (D.N.J. Aug. 22, 2012) (underscoring that the standing issue "would require substantial attention at litigation, thus detracting from the class' best interests").[7] KTMC likewise successfully argued that "***even if th[e] [district court] held that the assignment was sufficient to cure the lack of standing, the Court of Appeals could hold otherwise***." (emphasis added). The same logic applies with equal force here, and even if some district court had found

[7] In *Steamfitters*, the court disqualified a movant with $13 million in losses and appointed a movant with roughly $1.1 million in losses. *Id*. at *2, 4, 13.

AP7 to have standing in some cases, "the Court of Appeals could hold otherwise." Indeed, ***AP7 cannot point to any binding opinion finding it to have standing—none exists***.

Ultimately, the *In re Paysafe Ltd.* court found that potential discovery related to the standing issue "would be contrary to the interest of the class in pursuing efficient discovery toward a resolution of this matter." 2022 WL 1471122, at *8, citing *Plymouth County Ret. Assoc. v. Array, Inc.*, 2021 WL 5051649 (S.D.N.Y. Nov. 1, 2021) (refusing to appoint as lead plaintiff an entity subject to standing challenges); *South Ferry LP No. 2 v. Killinger*, 271 F.R.D. 653, 659 (W.D. Wash. 2011) (investment advisor was an atypical and inadequate class representative, regardless of whether assignments cured its deficient standing, because its standing issues "could ultimately severely prejudice the class, either at the class certification stage or on some subsequent appeal") (citing *In re IMAX Sec. Litig*., 2009 WL 1905033, at *3 (S.D.N.Y. June 29, 2009).[8]

Here, the risk that AP7 may be found to lack standing at class certification, or later at trial or on appeal, thus needlessly mandating the dismissal of the entire litigation to the obvious prejudice of the investor class, is clearly far more than mere speculation. The Court should obviate the risk of "a needless litigation sideshow" simply to determine whether or not AP7 has standing. "In good conscience this Court cannot endanger this litigation by ignoring [these] issues." *Enron*, 206 F.R.D. at 456. The Class should not be saddled with a Lead Plaintiff subject to such lethal questions regarding its capacity to bring this lawsuit on its own behalf, let alone on behalf of the rest of the Class.

[8] In *Plymouth*, the court disqualified a movant with almost $5 million in losses and appointed a movant with roughly $1.5 million in losses. *Id*. at *3; *Plymouth County Retirement Association v. Array Technologies, Inc. et al*, Docket No. 1:21-cv-04390 (S.D.N.Y.) (Dkt. No. 83).

### B. AP7's Unnecessary Representation by Two Large Law Firms Calls Its Adequacy Into Question

Separate and apart from its standing issues, the unnecessary involvement of two law firms, BLBG and KTMC, on behalf of AP7 in this litigation raises disqualifying questions about AP7's adequacy. In enacting the PSLRA, Congress's goal, in part, was to ensure that investors, not lawyers, exercised control over securities class actions. *See also City of Pontiac General Employees' Retirement System v. Lockheed Martin Corp.*, 844 F. Supp. 2d 498, 503 (S.D.N.Y. 2012) ("Congress's aim in enacting the 'lead plaintiff' provisions [of the PSLRA was] to avoid lawyer-driven litigation."). Accordingly, courts generally decline to appoint movants represented by multiple law firms, finding that doing so raises precisely the types of issues that the PSLRA aimed to avoid. *See Chauhan*, 2021 WL 235890, at *5 (denying motion where lead plaintiff movant "propose[d] two different law firms" and "provide[d] no cogent explanation for why[,]" finding that "their conduct to date belies the notion that they would take an active role in the litigation supervising counsel").

Notwithstanding the various *pro forma* assurances in AP7's motion papers regarding BLBG and KTMC's ostensible preparedness to coordinate their efforts and work together efficiently without duplicating their efforts (*see, e.g.*, Dkt. No. 15 at 10, 13), AP7 has not explained ***why*** it needs to be represented by two large law firms in this matter, nor why the Class ***needs*** two law firms to serve as Co-Lead Counsel. Indeed, in *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 622 (S.D.N.Y. 2015), a case involving a much more expansive class action litigation than the one here, the district court flatly refused to appoint three proposed movants that would have been jointly represented by the same combination of BLBG and KTMC. In denying the lead plaintiff motions seeking appointment of the two large law firms, the district court underscored that the proposed lead plaintiff group SKAGEN-Danske failed to "adequately explain why it was applying

in its motion to be represented in this case not only by the Kessler Topaz firm but also by a second law firm, Bernstein, Litowitz, Berger & Grossmann, LLP, which did not have a previous attorney-client relationship with any of the members of the SKAGEN–Danske group, but did have an established relationship with Kessler Topaz." *Id*. at 622. AP7 has an established attorney-client relationship with KTMC, so it begs the question why it would allow a needless combination of two large firms? And did it sign a retainer with both firms? If so, why?[9]

AP7's brief notes four cases in which AP7 served as a Lead Plaintiff with both BLBG and KTMC as Co-Lead Counsel, as well as three other cases (*i.e.*, cases in which AP7 was not a Lead Plaintiff) in which BLBG and KTMC served as Co-Lead Counsel. Dkt. No. 15 at 13-14. Importantly, however, AP7's brief ***fails to mention that in all seven of those cases***, the involvement of both BLBG and KTMC as Lead Counsel in those actions reflected the involvement of ***multiple clients*** as Co-Lead Plaintiffs. Here, by contrast, a ***single*** client seeks the approval of ***two*** large firms as Co-Lead Counsel, without any explanation. This case is against a single, U.S.-based issuer (Signature) and certain of its former officers and/or directors (also U.S.-based, upon information and belief), alleging straightforward fraud claims arising under Section 10(b) of the Exchange Act. Nothing about the facts or claims in this litigation suggests that prosecuting this action will be so complex or onerous in any respect that the combined resources of two large law firms are necessary.

Indeed, KTMC has previously sought appointment as lead counsel for AP7 in securities fraud class actions without the help of other law firms, reflecting that it is entirely competent to provide such representation on its own. *See Sjunde Ap-Fonden v. Goldman Sachs Group, Inc.*, No.

[9] In *Petrobras*, the court rejected the SKAGEN–Danske group, with $222 million in losses, and appointed a movant (Pomerantz's client) with $84 million in losses. *Id*. at 621, 624.

18-cv-12084 (S.D.N.Y.); *Sjunde AP-Fonden v. General Electric Co.*, No. 17-cv-8457 (S.D.N.Y.); *In Re Coinbase Global, Inc., Securities Litigation*, No. 2:22-cv-04915 (D.N.J.); *In re Lucid Group, Inc. Securities Litigation*, No. 3:22-cv-02094 (N.D. Cal.); *Monk v. Johnson & Johnson*, No. 3:10-cv-04841 (D.N.J.); *United Union of Roofers, Waterproofers & Allied Workers Local Union No. 8 v. Ocwen Financial Corporation et al*, No. 9:14-cv-81057 (S.D. Fla.); *Charles Larry Crews, Jr. v. Rivian Automotive, Inc. et al*, No. 2:22-cv-01524 (C.D. Cal.). The potential for duplicative services and the concomitant increase in expenses and costs is unnecessary, especially in cases where one law firm has the proven ability to adequately manage and litigate securities class actions.

AP7's proposed Co-Lead Counsel arrangement raises troubling questions as to whether AP7 would be supervising its counsel if the Court were to appoint AP7 as Lead Plaintiff and approve its selection of these two firms as Co-Lead Counsel. In contrast to this dual-law firm structure, the Retirement Systems has selected a single law firm to represent them. Pomerantz stands ready to litigate the case on behalf of the Signature Bank investors in an effective and efficient manner without the involvement of an additional large law firm. There is simply no need for two large firms to represent the defrauded investors.

### C. AP7 Has Been Recently Called Out for Discovery Misconduct, Rendering It Subject to Unique Defenses

Just recently, defendants in a securities class action litigation against Goldman Sachs objected to AP7's ability to lead a class of investors because AP7 engaged in conduct "***cast[ing] doubt on AP7's credibility and adequacy to serve as class representative***." *Goldman Sachs Group, Inc.*, No. 18-cv-12084, Dkt. No. 146 at 22-23 (emphasis added). Defendants pointed out that during the deposition of AP7's CEO, Richard Grottheim, Mr. Grottheim confessed that AP7 ***"actively" and "intentionally" deleted highly relevant monthly transaction reports*** detailing the securities trades and other investment transactions undertaken on behalf of AP7 even though the

asset manager knew it had an affirmative obligation to preserve all relevant documents. *Id*. at 22. And when Defendants asked AP7 to facilitate obtaining copies of the deleted reports from the third parties under AP7's supervision and control located in foreign countries, ***AP7 refused***.

Class representatives like AP7 are inadequate when they have "exhibited a disregard or inability to comply with discovery requests." *Koss v. Wackenhurt Corp.*, 2009 WL 928087, at *7 (S.D.N.Y. Mar. 30, 2009). For example, in *Rocco v. Nam Tai Elecs., Inc.*, 245 F.R.D. 131 (S.D.N.Y. 2007), the court refused to certify a class where defendants asserted that the lead plaintiff obstructed discovery because such conduct "***could impact [lead plaintiff's] credibility if this information were brought before the jury at trial***." *Id*. at 136-37 (emphasis added). Likewise, AP7's recent efforts to obstruct discovery demonstrate that it is not the most adequate plaintiff to represent the Class.

### D. AP7 Regularly Engages In "Short Selling" and Other Atypical Trading Patterns, Subjecting it to Unique Defenses

In the course of the Goldman Sachs securities litigation discussed above, Mr. Grottheim also testified under oath that ***AP7's investment strategy includes regular "short selling" of securities***. *Id*. at 23. ***This strategy is not unique to AP7's investment in Goldman securities, but applies across the board of AP7's investments***. *Id*. at Dkt. No. 149-1 at 50:2-9 (emphasis added). "Short sales raise the question of whether the seller was actually relying on the market price" of the securities at issue, so the "class is not served by its representative coming under such scrutiny." *In re Critical Path, Inc. Sec. Litig.*, 156 F. Supp. 2d 1102, 1009-10 (N.D. Cal. 2001).

Likewise, in *Kraft Heinz Sec. Litig.*, No. 19-cv-01339 (N.D. Ill. May 20, 2022), Dkt. No. 359, defendants alerted the district court that "while Plaintiffs had represented that AP7's trades in [the company] were done solely to mimic various indexes, ***discovery has revealed that is not the full picture, and the investment managers set up bespoke indices in which they bought or***

***sold KHC stock on AP7's behalf***." *Kraft Heinz* Dkt. No. 359 at 4-5, 29-32 (emphasis added). Defendants advised the court that "[d]espite the suggestion that AP7's trading merely tracked existing indices in a way that involved no discretion***, that turned out to be false***," as demonstrated by information obtained during the deposition of AP7's corporate representative. *Id*. at 30.

Accordingly, AP7's admittedly atypical trading patterns and the truth unearthed during discovery about AP7's investment practices provide "fodder for defendants to argue that [AP7] relied on its own valuation of [Signature Bank] securities, and not on their market price." *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d at 623; *see also Isaacs v. Musk*, 2018 WL 6182753, at *2 (N.D. Cal. Nov. 27, 2018) ("[T]he Court has concerns regarding the adequacy or typicality of [movant] because it is a short seller[.]"); *Marcus v. J.C. Penney Co.*, 2014 WL 11394911, at *7 (E.D. Tex. Feb. 28, 2014) (denying lead plaintiff motion by movant who engaged in short selling of securities at issue, finding "[s]uch a trading practice would be atypical of the class as profit accrues when the price of the security decreases."); *Weisz v. Calpine Corp.*, 2002 WL 32818827, at *8 (N.D. Cal. Aug. 19, 2002) (disqualifying from serving as lead plaintiff an investor who shorted the stock); *In re Bank One Shareholders Class Actions*, 96 F. Supp. 2d 780, 783-84 (N.D. Ill. 2000) (rejecting hedge fund bid for appointment as lead plaintiff because of trading pattern akin to short selling); *In re Microstrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 436-37 (E.D. Va. 2000) (rejecting movant because it has an atypical trading strategy). More recently, in *In re Groupo Televisa Sec. Litig.*, 2020 WL 3050550, at *7 (S.D.N.Y. June 8, 2020), the district court refused to certify a class of defrauded investors because it turned out that the lead plaintiff invested in other funds that shorted the stock, rendering it an improper class representative.

Appointing AP7 as lead plaintiff would subject the entire class to factual distinctions and mini-trials concerning unique defenses are "likely to threaten to become the focus of the litigation." *See In re IMAX Sec. Litig.*, 272 F.R.D. 138, 147.

There simply is no need to prejudice the Class and the Retirement Systems should be appointed Co-Lead Plaintiffs.

**CONCLUSION**

For the foregoing reasons, the Retirement Systems respectfully request that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing the Retirement Systems as Co-Lead Plaintiffs for the Class; and (3) approving proposed Co-Lead Plaintiffs' selection of Pomerantz as Lead Counsel for the Class.

Dated: May 30, 2023

Respectfully submitted,

POMERANTZ LLP

*/s/ Emma Gilmore*

Jeremy A. Lieberman
Emma Gilmore
J. Alexander Hood II
Thomas H. Przybylowski
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
egilmore@pomlaw.com
ahood@pomlaw.com
tprzybylowski@pomlaw.com

*Counsel for Wayne County Employees' Retirement System and Public Employees' Retirement System of Mississippi and Proposed Lead Counsel for the Class*