| **BERNSTEIN LITOWITZ** | **KESSLER TOPAZ** |
|---|---|
| **BERGER & GROSSMANN LLP** | **MELTZER & CHECK LLP** |

July 24, 2023

**BY ECF**

Honorable Frederic Block
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

>Re: *Schaeffer v. Federal Deposit Insurance Corporation as Receiver for Signature Bank, et al.*, Case No. 1:23-cv-01921-FB-JRC ("*Schaeffer*")

Dear Judge Block:

We represent lead plaintiff movant Sjunde AP-Fonden ("AP7") in the above-captioned action (the "Action"). We write in opposition to the request by the Federal Deposit Insurance Corporation ("FDIC") as Receiver for Signature Bank ("FDIC-R") for leave to move to dismiss the putative class action complaint filed in *Schaeffer*. *See* ECF No. 42 (the "Letter" or "FDIC-R Ltr."). We respectfully submit that the Court deny the FDIC-R's request for leave.

As a threshold matter, the filing of any motion to dismiss prior to the appointment of a lead plaintiff, and that plaintiff's filing of a consolidated complaint, is premature. The Private Securities Litigation Reform Act of 1995 (the "PSLRA") requires the appointment of a lead plaintiff that is "empowered to control the management of the litigation ***as a whole***." *In re Bank of Am. Corp. Sec., Deriv. & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 2010 WL 1438980, at *2 (S.D.N.Y. Apr. 9, 2010); *see also Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82 n.13 (2d Cir. 2004) ("the main purpose of having a lead plaintiff" is "to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole").[1] The lead plaintiff decides what claims to assert, what defendants to name, and what legal theories to pursue. *See In re Facebook, Inc., IPO Sec. & Deriv. Litig.*, 343 F. Supp. 3d 394, 410 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020) ("It is axiomatic . . . that a lead plaintiff has the sole authority to determine what claims to pursue on behalf of the class."). All of these yet-to-be-made litigation decisions bear directly on the arguments set forth by the FDIC-R, and will determine whether any claims ultimately alleged on behalf of the class fall within the scope of the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), 12 U.S.C. § 1821.

Here, on May 15, 2023, AP7 and other putative class members filed motions for consolidation of related actions, appointment as lead plaintiff, and approval of lead counsel. *See Schaeffer*, ECF Nos. 5, 7, 8, 14, 17, and 19. Briefing on those motions was completed on June 6, 2023, and they are pending before Magistrate Judge Cho. The FDIC-R will not be prejudiced by

---

[1] Unless otherwise stated, all emphasis is added and all internal quotations and citations are omitted.

Honorable Frederic Block
July 24, 2023
Page 2

allowing the PSLRA-mandated lead plaintiff process to continue. To the contrary, the prompt appointment of a lead plaintiff, as the PSLRA requires, will provide the FDIC-R with a Court-appointed representative authorized to file an operative complaint on behalf of the putative class that can then be analyzed under FIRREA. Granting the relief the FDIC-R seeks—dismissal of a soon to be stale pleading, filed by an individual litigant who is not seeking to serve as the lead plaintiff—would waste judicial resources and frustrate the PSLRA's requirement that a lead plaintiff be appointed as soon as practicable to determine what claims to assert, and against whom. Appointment is even more critical now given the FDIC-R's misguided statements about its desire to absorb and then dismiss this Action (discussed further below). For these reasons, the FDIC-R's request should be denied, or, in the alternative, stayed pending the filing of a consolidated complaint by the Court-appointed lead plaintiff.

If the Court does consider the merits of the FDIC-R's premature request, it nonetheless should be denied for several reasons. *First*, the FDIC-R's jurisdictional arguments under of FIRREA, 12 U.S.C. § 1821(d)(13)(D), are moot. The FDIC-R argues that dismissal is warranted because Schaeffer's claims "seek[] damages from the assets of Signature, for which the FDIC-R has been appointed receiver," but he failed to exhaust the FDIC's "mandatory administrative claims process before filing suit." FDIC-R Ltr. at 2. However, we conferred with Schaeffer's counsel, who confirmed that the voluntary dismissal from this Action of the FDIC-R—who substituted for Signature Bank on June 29, 2023—is forthcoming. Because there will be no claims pending against the depository institution or the FDIC-R, FIRREA's jurisdictional bar is inapplicable. *See* 12 U.S.C. § 1821 (d)(5)(A)(i) (FIRREA procedures extend only to "any claim **against a depository institution**. . .").

Indeed, with respect to FIRREA's jurisdiction-stripping provision, the Second Circuit has directed that "[t]his provision is not an isolated edict, but is part of FIRREA's statutory scheme, which was intended to force **plaintiffs with claims against failed depository institutions** to exhaust administrative remedies before coming to federal court." *Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 921 (2d Cir. 2010) (rejecting argument that a plaintiff was required under FIRREA to exhaust claims brought against a third-party bank). The Second Circuit further "held that, as used in FIRREA's jurisdiction-stripping provision, the word 'claim' is a term-of-art and must be construed to mean 'only claims that could be brought under the administrative procedures of § 1821(d), not any claim at all involving the FDIC' or, by implication, the failed bank." *Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, 902 F. Supp. 2d 476, 501 (S.D.N.Y. 2012); *see also Am. Nat. Ins. Co. v. F.D.I.C.*, 642 F.3d 1137, 1142 (D.C. Cir. 2011) (holding suit against a third-party "for its own wrongdoing, not against the depository institution for which the FDIC is receiver (i.e., Washington Mutual) . . . is not a claim within the meaning of [FIRREA] and thus is not barred"). Also moot is the FDIC-R's argument that this Court lacks jurisdiction over Schaeffer's claims because they must be brought in the Southern District of New York. *See* FDIC-R Ltr. at 2-3. This argument again rests on the FDIC-R's assumption that claims asserted against Signature Bank fall within the scope of FIRREA. *See id.* Because the Action no longer asserts such claims, FIRREA's venue provisions, 12 U.S.C. § 1821(d)(6)(A)(ii), are inapplicable. Regardless, this is an argument for transfer, not dismissal.

Honorable Frederic Block
July 24, 2023
Page 3

*Second*, the FDIC-R argues that Schaeffer's direct claims (or those to be asserted by the lead plaintiff) under the Exchange Act for violations of the federal securities laws against certain former Signature Bank officers belong to the FDIC-R. *See* FDIC-R Ltr. at 3. This assertion is wrong as a matter of law. The FDIC-R has no authority under FIRREA, Second Circuit case law, or the U.S. Constitution to usurp such claims. FIRREA provides only that, as receiver, the FDIC shall succeed to "all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution ***with respect to the institution and the assets of the institution***[.]" 12 U.S.C. § 1821(d)(2)(A)(i). This section "transfers to the FDIC only stockholders' claims with respect to . . . the assets of the institution—in other words, those that investors . . . would pursue ***derivatively*** on behalf of the failed bank." *Levin v. Miller*, 763 F.3d 667, 672 (7th Cir. 2014). Because of this limitation, courts "read § 1821(d)(2)(A)(i) as allocating claims between the FDIC and the failed bank's shareholders rather than transferring to the FDIC ***every investor's claims of every description***." *Id.* Courts thus routinely distinguish between derivative claims and direct claims in determining which shareholder (or, as here, former shareholder) claims the FDIC assumes when a bank fails, and hold that the FDIC assumes only derivative claims of current shareholders. *See, e.g.*, *Barnes v. Harris*, 783 F.3d 1185, 1193 (10th Cir. 2015) (concluding that, under FIRREA, the FDIC owned shareholders' derivative claims but not shareholders' direct claims); *Lubin v. Skow*, 382 F. App'x 866, 870-71 (11th Cir. 2010) (same); *In re Sunrise Sec. Litig.*, 916 F.2d 874, 889 (3d Cir. 1990) (same). Indeed, *Pareto v. F.D.I.C.*, which the FDIC-R cites, applied this critical distinction between direct and derivative claims, noted that plaintiff "did [not] allege he was fraudulently induced to buy or sell stock" (which is exactly what this Action concerns), and held that "[p]laintiff did not have standing to assert [his] ***derivative*** action against the FDIC and the former directors of the bank." 139 F.3d 696, 700-01 (9th Cir. 1998).

As the Seventh Circuit in *Levin* observed, "[n]o federal court has read [FIRREA]" to "transfer to the FDIC all claims held by any stockholder of a failed bank." 763 F.3d at 672. Where, as here, a shareholder alleges that defendants made false representations that induced him to pay artificially inflated prices for his stock, *see* ECF No. 1 at ¶¶ 39-53, "[t]here is no compensable injury to the corporation" and, consequently, the claims are direct—not derivative—and the class retains the ability to litigate them, notwithstanding the FDIC receivership. *Howard v. Haddad*, 916 F.2d 167, 169-70 (4th Cir. 1990); *see also Morrone ex rel. Arotech Corp. v. Erlich*, 2011 WL 1322085, at *5 (E.D.N.Y. Mar. 31, 2011) (holding that where misstatements allegedly artificially inflated a company's stock, "any injury due to these omissions accrued to shareholders individually at the time of purchase.").

Significantly, the FDIC-R does not cite any case where the FDIC has succeeded to shareholders' direct claims under the federal securities laws. This is because courts have consistently held that investors retain the ability to pursue such claims even after a failed bank enters receivership under FIRREA. *See, e.g.*, *Howard*, 916 F.2d at 169-70 (holding that federal securities fraud claims are direct claims not barred by FIRREA); *Hayes v. Gross*, 982 F.2d 104, 109-10 (3d Cir. 1992) (same); *Abrahamson v. W. Sav. & Loan Ass'n*, 1994 WL 374294, at *7 (D. Ariz. Jan. 24, 1994) (same). *Zucker v. Rodriguez*, 919 F.3d 649 (1st Cir. 2019), is inapposite—it was not a case "alleging fraud or one to enforce the securities laws," but rather claims for negligence and breach of fiduciary duty. *Id.* at 660 (recognizing policy considerations, including

Honorable Frederic Block
July 24, 2023
Page 4

maintaining private parties' incentive to bring securities fraud claims). The district court held those claims belonged to the FDIC, but cautioned that its ruling was "a limited one" that "applies only to claims like those before [the court]," "do[es] not establish any broader principles," and that "future claims by holding companies and other shareholders of banks in FDIC receivership will need to be evaluated on their own terms." *Id.* at 656.

For the foregoing reasons, AP7 respectfully requests that the Court deny the FDIC-R's request.

Respectfully Submitted,

_____
John Rizio-Hamilton
**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Tel: (212) 554-1400
Facsimile: (212) 554-1444
johnr@blbglaw.com

_____
Sharan Nirmul
**KESSLER TOPAZ MELTZER & CHECK LLP**
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
snirmul@ktmc.com

*Co-Counsel for AP7*