UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK


MATTHEW SCHAEFFER,              *    Case No. 23-CV-01921(FB)
                               *
          Plaintiff,           *    Brooklyn, New York
                               *    August 1, 2023
     v.                        *
                               *
SIGNATURE BANK, et al.,        *
                               *
          Defendants.          *
                               *
* * * * * * * * * * * * * * *   *

          TRANSCRIPT OF CIVIL CAUSE FOR MOTION HEARING
             BEFORE THE HONORABLE JAMES R. CHO
              UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Movants              JEREMY A. LIEBERMAN, ESQ.
 Wayne County ERS and        EMMA GILMORE, ESQ.
 Mississippi PERS:           Pomerantz, LLP
                             600 Third Avenue
                             New York, NY  10016


For the Movant               SHARAN NIRMUL, ESQ.
 Sjunde AP-Fonden:           NAUMON A. AMJED, ESQ.
                             Kessler Topaz Meltzer &
                              Check, LLP
                             280 King of Prussia Road
                             Radnor, PA  19087

                             JOHN RIZIO-HAMILTON, ESQ.
                             Bernstein Litowitz Berger &
                              Grossmann, LLP
                             1251 Avenue of the Americas
                              Suite 44th Floor
                             New York, NY  10020


Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, CT 06484 (203)929-9992**

```
APPEARANCES (Cont'd):

For the Receiver          RYAN KANE, ESQ.
 FDIC:                    Wollmuth Maher & Deutsch, LLP
                          500 Fifth Avenue
                          New York, NY  10110
```

```
1              (Proceedings commenced 9:10 a.m.)

2              THE CLERK:  Good morning.  Civil cause hearing for a

3     motion hearing in Schaeffer v. Signature Bank, et al, 23-CV-

4     1921.

5              State your appearance for the record starting with

6     the plaintiff.

7              MR. LIEBERMAN:  Good morning, Your Honor.  Jeremy

8     Lieberman from Pomerantz, LLP on behalf of Plaintiff Singh,

9     Wayne County Employees' Retirement System, and Mississippi

10    PERS.  With me is my partner, Emma Gilmore.  And I'll be

11    arguing matters relating to the FDIC's motion to dismiss and

12    she'll be arguing lead plaintiff motions.

13             MS. GILMORE:  Good morning, Your Honor.

14             THE COURT:  Okay.  Understood.  Thank you.

15             MR. NIRMUL:  Good morning, Your Honor.  Sharan

16    Nirmul of Kessler Topaz Meltzer & Check.  I'm joined by my

17    partner, Naumon Amjed.  Mr. Amjed has a pending motion for pro

18    hac vice.  With your permission, he's going to handle the

19    argument today.

20             THE COURT:  That's fine.  We'll be granting that

21    motion.

22             MR. AMJED:  Thank you, Your Honor.

23             MR. NIRMUL:  And I'm also joined by my colleague,

24    John Rizio-Hamilton from the law firm Bernstein Litowitz.

25             MR. RIZIO-HAMILTON:  Good morning, Your Honor.
```

4

1          THE COURT:  Okay.  Good morning.

2          MR. KANE:  Good morning, Your Honor.  Ryan Kane from

3    Wollmuth Maher & Deutsch, LLP.  I represent the FDIC as

4    receiver for Signature Bank.  I'd like to thank Your Honor for

5    inviting me to this conference.

6          THE COURT:  All right.  And thank you for being here

7    even though you're technically not a party anymore, so I

8    appreciate your being here.

9          The parties should assume I am familiar with all the

10   pleadings that have been filed in this case so far, so you can

11   assume I've reviewed the briefs as well.

12         I wanted this conference because I received the

13   FDIC's, obviously, their letter, and the parties', or the

14   movants' responses to that letter.  So there are essentially

15   two questions I have for all the parties today.

16         One, any new updates since any of the pleadings were

17   filed that the parties want to update the Court on?

18         And two, notwithstanding the fact that the FDIC is

19   no longer a party to this case, the issues raised in their

20   letter, and I've seen the responses, but does that preclude

21   this court from ruling on the pending motions to appoint lead

22   plaintiff and lead counsel.  I think that was the main concern

23   that I had at this time.

24         I think I can assume what the parties are going to

25   say, but I just want to make sure we're all on the same page

1          in that regard.

2                  All right.  So let me start with you, Mr. Kane.

3          I'll put you on the seat first, the hot seat first.

4                  Do you have a position as to whether the Court at

5          this time can rule on the pending motions to appoint counsel

6          and lead plaintiff?

7                  MR. KANE:  Your Honor, would you like me to stand?

8                  THE COURT:  No, you may remain seated.

9                  MR. KANE:  Thank you.  The microphone would have

10         been awkward standing.

11                 THE COURT:  That's fine.

12                 MR. KANE:  Yes, Your Honor.

13                 The FDIC's position in the letter that I submitted

14         to Judge Block is that this court currently does not have

15         subject matter jurisdiction for two reasons.  I'll just

16         briefly state them because I know you've read the letter.

17                 One is that the plaintiffs have not exhausted the

18         claims process, the administrative claims process, required by

19         the FDIC.  Until that process is exhausted by each plaintiff,

20         no court has jurisdiction.

21                 Secondly, even after the claims process is

22         exhausted, only two courts, only two federal courts, would

23         have jurisdiction.  That would be the district courts for the

24         District of Columbia and the district court for where the

25         FDIC, I'm sorry, where the Signature Bank's headquarters was,

1    and that would be Manhattan and, therefore, the Southern

2    District of New York.

3            The issue raised in plaintiff's response letters is

4    that that issue is moot.  The FDIC's position is that issue is

5    not moot because the claims that are required to be submitted

6    to the FDIC receiver process are not limited to claims against

7    Signature Bank.

8            The scope of the claims that need to be submitted to

9    the FDIC under its Section 821(d)(13)(D), which is cited in my

10   letter, is not limited to claims just against Signature Bank.

11   It requires all claims under two categories.

12           And the first category is any claim or action for

13   payment from or any action seeking determination of rights

14   with respect to the assets of any depository institution for

15   which the FDIC is receiver.

16           And secondly, any claim relating to act or omission

17   of such institution with the FDIC as receiver.

18           Neither of those provisions are limited to a claim

19   directly against Signature Bank, so the dismissal of Signature

20   Bank does not moot that issue.  And the current claims against

21   the individual defendants would fall within both of those

22   buckets.

23           Taking the first one, for example, any claim or

24   action for payment from or seeking determination of rights

25   with respect to the assets of the receivership, it is

7

1    certainly possible that to the extent the plaintiffs prevail

2    in their claims against the individual defendants, which are

3    directors and officers of Signature Bank, it could implicate

4    the directors' and officers' insurance liability which is an

5    asset of FDIC.  And there's case law confirming that.

6         I can give the Court one cite.  That's *National*

7    *Union Fire Insurance Company vs City Savings Bank*, 28 F.3d.

8    376, pin cite 38485.  That's a Third Circuit case, Your Honor,

9    from 1994.  And it holds insurance policies, which a bank has

10   purchased under which it is an insured, fall neatly within

11   FIRREA'S definition of assets for purposes of 1821(d)(13)(D),

12   which is the provision I just explained to Your Honor.

13        And secondly, under the second prong, which includes

14   any claim relating to any act or omission of such institution

15   or the FDIC receiver, that likewise is not limited to claims

16   directly against Signature Bank.

17        As we read, as FDIC as receiver reads, the Schaeffer

18   complaint certainly implicates concerning Signature Bank

19   before it entered receivership.

20        So with respect to subject matter jurisdiction,

21   which as Your Honor surely knows is a threshold issue for this

22   court to make any determinations, that is an issue that is --

23   that is still an issue for this court even though Signature

24   Bank has been dismissed.

25        And the second issue in my letter, Your Honor, was a

1    real party in interest issue.  And that is are these claims

2    that plaintiffs are attempting to assert, do they belong to

3    the stockholders or do they now belong to the receivership?

4         And FDIC's position is that they belong to the

5    receivership.  And the relevant provision for that, Your

6    Honor, which is also cited in my letter to Judge Block, is 12

7    U.S.C. 1821(d)(2)(A)(I), and that language states, and I'll

8    quote the relevant part, "The corporation which is the FDIC as

9    conservator or receiver, and by operation of law succeeds to"

10   -- and this is Roman numeral I -- "all rights, title, powers

11   and privileges of the insured depository institution and of

12   any stockholder, member, account holder, depositor, officer,

13   director of such institution with respect to the institution

14   assets of the institution."

15        Again, that's not limited to claims against

16   Signature Bank.  It applies to claims by stockholders or

17   shareholders, which Schaeffer and the plaintiffs purport to

18   be, and it is broad.  It relates to any claims with respect to

19   institutions and assets of institution, which is Signature

20   Bank.

21        And our reading of the Schaeffer complaint is that

22   clearly relates to the assets of Signature Bank and Signature

23   Bank itself.

24        I think the most relevant case is the one I cited in

25   my letter, Your Honor.  That's *Zucker vs. Rodriguez*, which is

9

1    a First Circuit case from 2019, that's 19 F.3d. 649660.  I

2    think it's a very important case and it deals directly with

3    this issue as to who owns claims brought by stockholders and

4    interprets 12 U.S.C. 821(d)(2)(A)(I), and holds that the plain

5    language of that statute means that FDIC as receiver steps

6    into and becomes the owner and real party of interest with

7    respect to claims such as those brought in this action.

8              So, in sum, Your Honor, we received plaintiffs'

9    letters, which indicate that our issues are moot, that are

10   presented in my letter and FDIC disagrees with that position.

11             And to circle back to your question, Your Honor, the

12   FDIC as receiver's position is that the issues in the letter I

13   sent to Judge Block do create an issue that this court does

14   not have subject matter jurisdiction at this time.

15             THE COURT:  You don't represent the individual

16   defendants though.

17             MR. RYAN:  No, Your Honor.  I do not represent the

18   individual defendants.  I've had no contact with them.

19             THE COURT:  Do you have any sense as to who might

20   represent them at some point in time if this case goes

21   forward?

22             MR. RYAN:  I do not have that information.

23             THE COURT:  Okay.

24             MR. RYAN:  The FDIC as receiver may have that

25   information, I just do not.  I'm not privy to it.

1          THE COURT:  Understood.

2          Are you arguing, well, if you can say this or not,

3     but, would there be any conflict for your firm to represent

4     the individuals as well as the bank?

5          MR. RYAN:  I don't know if there would be a

6     conflict, but there's no plan for my firm to represent

7     individual defendants.  And I don't think we would.  I'm

8     almost certain we would not take on that representation.

9          THE COURT:  Okay.  What I did notice from your

10    letter was you don't cite any Second Circuit cases in terms of

11    whether the claims of the individual defendants are now those

12    claims of the FDIC as receiver, right?

13         Is it your view that that issue is at least

14    unsettled in the Second Circuit or has that issue been

15    decided?

16         MR. RYAN:  I think we can submit -- I don't know if

17    there's a Second Circuit Court of Appeals cases, but our case

18    is within the Southern District, which I'm happy to supplement

19    if Your Honor would be interested in those, which deal

20    generally with the 12 U.S.C. 1821(d)(2)(A)(I).  I do not think

21    they are as specifically on point as *Zucker* is though.

22         There's not a case in the Second Circuit to my

23    knowledge that is following *Zucker,* which is a 2019 case.

24         THE COURT:  Right.  I think that the --

25         MR. RYAN:  There's not too many cases that

1        specifically deal with this issue.

2                    THE COURT:  Right.  No.  I understand.  Okay.

3                    One argument that the movants are raising is that

4        this issue is premature.

5                    And I know when it comes to subject matter

6        jurisdiction it's never, it's always ripe for the Court to

7        decide.

8                    But their argument is that this motion, if ever

9        filed, assuming you are a party to this case, and you're not

10       at this time, would be premature, that their motion to appoint

11       plaintiff lead counsel is separate and apart from that issue

12       that you're raising.

13                   And, look, these individual defendants haven't filed

14       an appearance yet either.

15                   MR. RYAN:  Mm-hmm.

16                   THE COURT:  Right?  I'm assuming they're been

17       served, but I'm not sure either.  So, okay, I understand.

18                   MR. RYAN:  If I can just add, Your Honor?

19                   THE COURT:  Sure.

20                   MR. RYAN:  Our plan is to file a motion to intervene

21       in order to raise the issues in our motion to dismiss.

22                   The FDIC is routinely permitted permission to

23       intervene in cases like this and I'd hope there would be no

24       opposition to it.  But if there is, the FDIC will be filing a

25       motion to intervene so that it can raise the issues that are

1    set forth in my letter.

2           Our intention obviously was to raise them in the

3    motion to dismiss, but on the response date to the letters,

4    Your Honor knows the plaintiffs voluntarily dismissed

5    Signature Bank.  FDIC is receiver for Signature Bank.

6           THE COURT:  Understood.  I guess they found your

7    letter compelling.

8           MR. RYAN:  Once in a while I guess someone finds my

9    letter compelling.

10          THE COURT:  Or they're trying to avoid the Court

11   having to decide that issue as well.

12          MR. RYAN:  I would like to think it was my letter

13   was compelling, but it may be the latter issue, Your Honor.

14          THE COURT:  Okay.

15          MR. RYAN:  And that's why we're planning to move to

16   intervene to make sure this issue, which I believe is an

17   important issue because it affects the FDIC's, as receiver,

18   administration of the Signature Bank receivership, and making

19   sure everything is done according to FDIC regulations as to

20   how claims are reviewed as part of the receivership, how they

21   are determined, and the priority of such claims.

22          So that's why the FDIC is being proactive and trying

23   to assert these issues now to Your Honor and why it plans to

24   move to intervene as opposed to just waiting for these other

25   issues to be resolved.

1          THE COURT:  I understand.

2          And, look, not having seen the motion to intervene

3     yet, I guess the question for you is, if the Court does rule

4     on the pending motion to appoint counsel and lead plaintiff,

5     how is the FDIC prejudiced in any way?

6          In other words, can all these arguments be raised

7     after the Court has decided that issue, that motion?

8          MR. RYAN:  It's a good question, Your Honor.

9          You know, I don't think of any -- I can't think of

10    any great prejudice to the FDIC if the Court, you know,

11    believes it has subject matter jurisdiction and can make that

12    ruling while we file our motion to intervene and raise those

13    issues.

14         You know, there could be costs that are incurred,

15    which could create, you know, costs that, you know, the

16    defendants tried to obtain from the D&O insurance for

17    insurance fees.  That's a possibility.

18         But, you know, I can't tell Your Honor there's going

19    to be, you know, tremendous prejudice.

20         I think it's more whether the Court has -- currently

21    has subject matter jurisdiction and has authority to make

22    those decisions as opposed to, you know, some great prejudice

23    to the FDIC that I can articulate right now.

24         THE COURT:  Understood.

25         So thinking down the road here, and I appreciate you

14

1    answering all these questions, even though, again, you're not

2    a party to this action at this time, if they exhaust, which I

3    assume they're going to try to do now, once they're exhausted,

4    would a case like this be appropriate for a federal court to

5    decide?

6              MR. RYAN:  There would still be -- Your Honor,

7    that's a good question.

8              I don't know.  I don't believe all the plaintiffs

9    have submitted claims to date.  I haven't had -- haven't

10   looked at all the records that are up to date, because there's

11   a lot of claims.  But assuming all the plaintiffs do exhaust

12   and then the claim is denied, so if we assume both those

13   things happen --

14             THE COURT:  Right.

15             MR. RYAN:  -- and then the issue is do the

16   plaintiffs actually own the claims, so there still would be a

17   real party of interest.

18             But if we also assume, you know, that claims are

19   exhausted, the FDIC as receiver denies them --

20             THE COURT:  Right.

21             MR. RYAN:  -- plaintiffs are correct that they're

22   the real part of interest, FDIC is wrong, that they're a real

23   party of interest, and then after all those -- we assume all

24   that happens, the claim -- the case would have to be filed in

25   the Southern District of New York or the District of Columbia.

1          Of course we still have the real party of interest

2    issue.

3          FDIC's view is there is only one plaintiff and

4    that's the FDIC, or theoretical plan.

5          THE COURT:  Is it safe to assume that if the claims

6    are exhausted and a determination is made to deny the claims

7    that the FDIC would be pursuing an action like this?  Do you

8    have any sense?

9          MR. RYAN:  Well, there's -- I can't reveal all the

10   details, Your Honor, but --

11         THE COURT:  I understand.

12         MR. RYAN:  -- the FDIC, as a matter of practice when

13   a bank fails and there's a receivership, there will be an

14   investigation by the FDIC into potential claims that the

15   receivership can bring against any party.  That can include

16   directors and officers, third parties.  It can include anyone,

17   which sort of implicates, you know, the issue of who actually

18   is a real party of interest.  Because FDIC, you know, during

19   the investigation, you know, could identify claims or breaches

20   by individual defendants in this case or any party.

21         THE COURT:  All right.  I think my lat question for

22   you at this point, if you can answer it, your view is that

23   this case should be, along with the companion case, should be

24   dismissed outright, correct?

25         MR. RYAN:  That's right, Your Honor, for the reasons

1   set forth in my letter.

2           THE COURT:  Okay.  And you would not entertain a

3   stay of these two actions, would you?

4           MR. RYAN:  I would have to consult with my client,

5   the FDIC as receiver, as to whether they would agree to a

6   stay.  I don't know what their position would be at this

7   point.

8           THE COURT:  Okay.

9           MR. RYAN:  But that's something I certainly, if

10  that's where the Court comes out, that's something I certainly

11  can quickly find out, the FDIC's position on, and inform the

12  Court and the parties.

13          THE COURT:  Okay.  All right.  Let me turn to the

14  actual movants now then.

15          Why don't I hear from you, Ms. Gilmore, Mr.

16  Lieberman, first then.  Who wants to --

17          MR. LIEBERMAN:  Sure.

18          THE COURT:  Which of you wants to go first, go

19  ahead.

20          MR. LIEBERMAN:  Your Honor, with respect to the

21  subject matter jurisdiction, we first believe this issue is

22  not ripe.  We currently don't have even a party arguing with

23  respect to the subject matter jurisdiction.  That would be

24  subject to a motion to dismiss.

25          So right now we have currently lead plaintiff

1    motions which have a deadline where there's a legislative

2    mandate to rule on those motions.  And we have some non-party

3    who's, quote/unquote, "Threatening" as it were or stating his

4    intent to make a motion to intervene.

5         So there's nothing procedurally that stops the Court

6    from ruling on the lead plaintiff motions.  Once those lead

7    plaintiff motions are ruled upon, there will be one party who

8    can then address those motions and brief them.

9         We would actually suggest that an amended complaint

10   be filed because that amended complaint will determine whether

11   or not this is indeed a suit related to an asset of the failed

12   depository or whether it relates to the subject matter that

13   falls within the purview of FIRREA.

14        So I think the threshold issue is is we have right

15   now PSLRA pending motions, and we have someone who might, may

16   or may not intervene.  He might -- you know, their client

17   might decide tomorrow not to intervene.  There's simply

18   nothing pending in front of the Court.

19        The Court should rule on these lead plaintiff

20   motions, make a determination, we suggest, then we think an

21   amended complaint should be filed.  That amended complaint

22   will frame the entire analysis for the Court with respect to

23   whether or not these claims fall within FIRREA statute.

24        We would submit there's nothing in the relevant case

25   law that permits the Y powers that the FDIC is claiming in

1    this matter.

2         You have -- you have the *Bank of New York vs. First*

3    *Millennium* which dealt with a direct claims by a -- against a

4    non-bank where that holding company was accused of herding the

5    bank's assets and those claims were deemed by the Second

6    Circuit to fall not within the subject matter of jurisdiction

7    of FIRREA and not within the purview of the FDIC's remit.

8         And so the Court, on all fours, the Second Circuit

9    authority, saying these claims simply -- direct claims do not

10   apply with respect -- particularly with respect to third

11   parties, do not trigger the subject matter jurisdiction issues

12   that FIRREA raises.  So that's one.

13        Two, I find that the FDIC's reference to the

14   *Rodriguez* cases is quite interesting.

15        First of all, that is an outlier.  Most cases do

16   make a distinction between direct and derivative claims,

17   particularly here where we don't even have -- it's not a

18   direct versus derivative versus the bank or receiver, we don't

19   even have a party here.  The corporation is no longer involved

20   in the case.

21        And so you have direct versus derivative issue

22   raised in *Levin vs. Miller* where that -- that really

23   encompasses the view of most circuit courts in this nation.

24        And then you have the outlier where you say --

25   *Rodriguez* says, well, the statute doesn't make this

1   distinction between direct versus derivative.  But *Rodriguez*

2   makes an important admission.  And it says that we are not

3   ruling, the Court specifically says they're not determining

4   this action is not one alleging fraud or one to enforce

5   securities laws and so the future claims by other shareholders

6   or banks in FDIC receivership will need to be evaluated in

7   their own terms.

8        And this is the first time on record that the FDIC

9   has come out in any case that we're aware of, Your Honor, and

10  said that shareholder claims in a securities fraud class

11  action, particularly against individual defendants, are

12  subsumed by the FDIC's power.  This is the first time that the

13  FDIC has made that position in our record in all the decades

14  in its existence.

15       And so those are great powers that the FDIC is

16  asserting for the first time in this courthouse.

17       We think the lead plaintiff should be appointed.  We

18  think an amended complaint should be filed.  And at that point

19  the FDIC can seek to make a motion to dismiss on subject

20  matter jurisdiction, other defendants can come in and make a

21  motion to dismiss on any other issue, and the Court could

22  determine that on a full record.  That's simply not what we

23  have here, Your Honor.

24       And so that really is -- frames in our view the

25  arguments.

20

1          You simply don't have a case on record where the --

2     a court has found that a securities class action on behalf of

3     direct plaintiffs, a class of investors, is subsumed by

4     FIRREA.

5          And very importantly the case law is clear that the

6     only subject matter jurisdiction is only subsumed when the

7     claims could have been handled in the administrative process

8     in the claim process.

9          And the FDIC said nothing in it's notice, nothing

10    about securities fraud class actions, particularly securities

11    fraud class actions against the individual defendants.

12         And so there's nothing in the notice that said if

13    you are a class member who has a securities fraud claim you

14    must now -- against any defendant related to Signature Bank,

15    you must file your claim form by this deadline.

16         If I'm mistaken, I'd love for the FDIC to correct me

17    on the record.  But there's nothing of the sort because the

18    FDIC, I don't think, ever took the position that a securities

19    class action was subsumed.

20         In the *Levin vs. Miller* case, actually the Court

21    noted that there the FDIC took the position that direct claims

22    were not subsumed FIRREA and were not included.  And so all of

23    a sudden this is a reversal in the FDIC's position.

24         There are currently claims which our adversaries on

25    lead plaintiff motion are involved with against First Republic

1    Bank, which our firm is involved with as well, as well as *SCV*,

2    and the FDIC has not taken this position that they somehow

3    have the right to all securities class action claims.  And so

4    we have an unprecedented power grab in our view by the FDIC.

5         In no way do we think it should be ruled upon on

6    this record.

7         We think it needs to be ruled upon on a record where

8    we have a lead plaintiff appointed pursuant to PSLRA who can

9    file an amended complaint and only then could the Court

10   determine whether the claims in that amended complaint are

11   impacted by the -- by FERREA and its dictates.

12        THE COURT:  Notwithstanding the fact that we still

13   have the individual defense in this case?

14        MR. LIEBERMAN:  Yes.

15        THE COURT:  And I'm certainly not advocating for a

16   stay.  Because if the Court doesn't have jurisdiction, we can

17   impose a stay theoretically.

18        In light of their view that these claims need to be

19   exhausted, would you consider a stay until those claims have

20   been exhausted?

21        MR. LIEBERMAN:  No, Your Honor.  Because this is the

22   first, you know, case in our view in the history of FERREA

23   where we've heard that a securities fraud class action somehow

24   needs to be exhausted through the administrative remedies of

25   the FDIC.  There is nothing in the notice that told investors

22

1    if you're an investor, particularly a former investor -- he

2    essentially talks about a stockholder, doesn't talk about

3    former shareholders, because if you represent a significant

4    amount of former shareholders -- and nothing in the notice

5    said if you're a former shareholder or current shareholder and

6    you have individual claims or you have claims against the

7    individual defendants, in order to -- you need to now make

8    your claim right now in this administrative process, and there

9    is nothing in the notice.

10          The FDIC talked about duty investigation and perhaps

11    bringing claims, they haven't said any -- they have any intent

12    to bring securities fraud class action claims on behalf of

13    former shareholders because it would be the first time in the

14    history of the FDIC that ever occurred.

15          So all the case law, Your Honor, and all the

16    statutory provisions, and the FDIC's own actions, point to the

17    fact that it has no interest in these claims, has no real

18    intent to pursue these claims on behalf of the class, yet

19    somehow wants to usurp them for its own benefit.

20          THE COURT:  In light of the FDIC's position, are

21    those claims ever going to be exhausted then?  Or do you think

22    those claims won't be pursued necessarily from your clients?

23          MR. LIEBERMAN:  Your Honor, I have -- I have no

24    confidence.  And I have, based on precedent and the FDIC's

25    past actions in every other bankruptcy receivership, this

1    would be the first time ever that the FDIC would pursue on

2    behalf of current and former shareholders a securities fraud

3    class action against the -- against the individual defendants

4    or potentially against even the bank.  It's never happened

5    before.  So I don't think the FDIC has any plans to do so.

6    And we haven't heard the FDIC say they had plans to do so even

7    in this hearing.

8            THE COURT:  Okay.  Understood.

9            Ms. Gilmore, let me turn to you.  I've reviewed the

10   motion papers.  Anything you want to highlight for the Court

11   other than what's already in the papers?

12           MS. GILMORE:  For the lead plaintiff?

13           THE COURT:  Yeah.

14           MS. GILMORE:  (Indiscernible), I just want to make a

15   few points.

16           THE COURT:  Sure.  Go ahead.

17           MS. GILMORE:  It is AP7's burden here to establish

18   standing, which they have not satisfied by any means.  Their

19   third-party exception to the U.S. Constitutional standing is

20   very narrow.  We cite EDNY --

21           THE COURT:  Ms. Gilmore, why don't you pull the

22   microphone closer to you.

23           MS. GILMORE:  I'm sorry.

24           THE COURT:  I've heard enough from Mr. Lieberman, so

25   you can pull the microphone closer to you.

24

1          MR. GILMORE:  Fair Enough.

2          The Supreme Court has made it clear that it does not

3     look favorably upon third-party standing except in certain

4     circumstances.  We cite *Green vs. Garber*, EDNY 2017, quoting

5     *Kowalski vs. Tesla*, which is a Supreme Court case from 2004.

6          *Huff*, Your Honor, which is a Second Circuit binding

7     opinion, rejected the assertion of a prudential exception

8     based on investment manager standing because the investment

9     advisor client relationship is not the type of close

10    relationship courts have recognized as creating a prudential

11    exception to the third-party standing rules.

12         The risk that AP7 here is later found to lack

13    standing at class certification on summary judgment or on

14    appeal is particularly troubling here because standing issues,

15    as the counsel for AP7 has argued in other cases, may be

16    raised by a party or by a court at any time, at each stage of

17    the litigation, even after trial and after entry of the

18    judgment.  And this is a quote from *Carter vs HealthPort*, 822

19    F.3d. 47, page 56, Second Circuit 2016.

20         So the failure here by AP7 to demonstrate standing

21    is very serious and severely prejudices a class by exposing

22    absent class members to statute of limitation and statute of

23    repose concerns.

24         AP7 in this case has presented zero evidence that it

25    has satisfied the very narrow prudential exception to the U.S.

1    Constitutional standing requirement.

2              The only purported, and I can't even call it

3    evidence, it offers is a self-serving statement by AP7's CEO

4    which is made in a footnote to his declaration.  And I think

5    that it's at docket number 61, footnote 1, that is certainly

6    not sufficient under *Huff* to establish standing.

7              In fact, the declaration that AP7's counsel has

8    submitted after (indiscernible) to show that it is entitled to

9    the very narrow standing exception in *Green Mountain*

10   demonstrates that it probably doesn't have standing here.

11             And I wanted to quote from the declaration.  It says

12   the lawyers there who purportedly think -- say that they were

13   -- their lawyers, who are knowledgeable in Swedish law, say

14   AP7 is acting -- I'm sorry, this is -- Swedish law concerning

15   the funds and AP7 in this respect is inspired by the common

16   law trust and trustee concept.  But importantly, in that case,

17   the experts hedge their statements by stating it's just their

18   view and that certain concepts of the Investment Funds Act of

19   the Swedish law were to be reflected, not that they are

20   reflected, but they were to be reflected in the regime.

21             And they state, however, as we do not hold ourselves

22   to be familiar with all aspects of the trust and trustee

23   concept, we express no opinion on what, if any, current

24   features of the Investment Funds Act regime correspond to that

25   concept.

1          So in this case, the only evidence again that AP7's

2     counsel purports to have to establish a relationship akin to a

3     trust or trustee one is AP7's CEO own self-serving

4     declaration.

5          That CEO is not a lawyer, let alone a lawyer that is

6     an expert on trust or on trustee law, so we don't think that

7     declaration has much weight here.

8          There is also -- there were also important

9     allegations that have been made recently in the *Goldman*

10    litigation against *AP7*, who has been alleged to have been

11    engaged in the discovery misconduct which subjects AP7 to any

12    defenses, and I wanted to give Your Honor just a few examples.

13         So defendants in *Goldman* objected to AP7's ability

14    to lead a class of investors because AP7 was said to engage in

15    conduct casting doubt on AP7's credibility and adequacy to

16    serve as a class representative.

17         This objection was made in the class certification

18    context after defendants extracted testimony from AP7's CEO

19    who confessed that AP7 has actively and intentionally deleted

20    highly-relevant monthly transaction reports detailing the

21    security trades and other investment transactions undertaken

22    on behalf of AP7 even though the asset manager knew that it

23    had an affirmative obligation to preserve all those relevant

24    documents.

25         Defendants emphasized in that case that the

1    destruction of such critical transactions is particularly

2    troubling considering that over the 40-year class period AP7

3    was serving as lead plaintiff in at least seven other U.S.

4    Security class actions and was thus obligated to preserve the

5    documents including these monthly reports.

6            Importantly, these monthly reports did not -- did

7    not cover just securities in the *Goldman Sachs* case, but

8    monthly reports about AP7's investments altogether.

9            When defendants asked AP7 to facilitate obtaining

10   copies of deleted reports from third parties under AP7's

11   supervision and control AP7 simply refused.

12           Defendants in the Goldman Sachs litigation suspected

13   AP7 of shorting Goldman Sachs Securities given the CEO's

14   testimony that AP7's investment strategies regularly involves

15   short-selling of stocks.

16           Defendants in the *Goldman* case also learned that in

17   the *Aucoin* litigation which is the line of -- which a few

18   district courts relied on to find that AP7 had standing, that

19   in that litigation AP7 moved to appointment as lead plaintiff

20   but failed to disclose to the Court in that certification that

21   AP7 had bet against its fellow class members during the class

22   period shorting 60,100 shares of Aucoin common stock and

23   making almost half a million dollars in profits.

24           Your Honor, a litigant like AP7 here is seeking to

25   take advantage of the narrow standing requirements of the U.S.

1       Constitutional law should be expected and ought to comply with

2       the discovery obligations of the U.S. Securities Laws.

3              AP7 is also atypical and subject to any defense, not

4       only because of its discovery misconduct in the recent

5       litigation, but also because as its CEO recently testified, it

6       regularly engages in the short-selling of securities.

7              This strategy is not unique to AP7 investments in

8       Goldman Securities and applies across the board of all of AP7

9       investments.

10             In the recent *Kraft Heinz* litigation, moreover,

11      defendants alerted the district court that while plaintiffs

12      had represented that AP7 trades in the company were done

13      solely to mimic various indexes, discovery has revealed that

14      it's not the full picture and that the investment manager set

15      up (indiscernible) indices in which they bought or sold stock

16      on AP7's behalf.  And that despite the suggestion that AP7's

17      trading merely tracked existing indices in a way that involved

18      no discretion, that turned out to be false.

19             Whether or not AP7 can ultimately defeat this

20      argument is irrelevant at this stage.

21             Whether there is a list of potential that are

22      presumptively most adequate, lead plaintiff will be subject to

23      these unique defenses, disqualification is appropriate.

24             Your Honor, we believe there is no reason here to

25      prejudice the class when you have Wayne County and Mississippi

1    standing ready to represent the class in an efficient way, and

2    they are not handicapped by those unique defenses.

3            THE COURT:  All right.  Thank you, Ms. Gilmore.

4            Let me hear from AP7 on the two issues, the first

5    one being the subject matter of question, and then the motion

6    itself.

7            All right.  Go ahead.

8            MR. AMJED:  Good morning, Your Honor.

9            THE COURT:  Good morning.

10           MR. AMJED:  In terms of the FDIC's subject matter,

11   that's the question?

12           THE COURT:  Yeah.

13           MR. AMJED:  We agree with the comments made by Mr.

14   Lieberman and the need to have a lead plaintiff appointed

15   here.

16           The FDIC's entire argument, as confirmed today, is

17   based on the allegations of initial complaints filed by people

18   that have diminished financial interest, and I don't even

19   believe the plaintiff in this case, as counsel represented, is

20   represented by counsel here.

21           The lead plaintiff process under the PSLRA is

22   entitled to give the class a court-selected leader who can

23   make the decisions that the Court is questioning us about,

24   whether there's a stay that's necessary, what claims to

25   pursue, will we -- will the FDIC's upcoming motion to

1    intervene be accepted, all those decisions right now are being

2    made by a group of parties and a group of plaintiffs that are

3    not -- that have not been appointed lead plaintiff.

4          So the need to have the case organized under a lead

5    plaintiff who can make these decisions is consistent with the

6    PSLRA and Second Circuit authority in (indiscernible) which

7    empowers one lead plaintiff to make decisions for the class as

8    a whole.  Right now it's a complete free-for-all.

9          We understand the FDIC has conferred with certain

10   colleagues.  They haven't conferred with us.  The plaintiffs

11   are basically making their own positions.  And there's no

12   uniformity in the decisions that the -- that are being made on

13   behalf of the class.

14         The Court asked the FDIC about the prejudice that

15   they would face and my counsel represented that there wasn't

16   much.

17         On the flip-side to that, Your Honor, there's

18   significant prejudice to investors by having this sort of

19   free-fall approach, where they don't have a unified voice and

20   they don't have their claims being put forth in a pleading

21   that's being directed by a lead plaintiff who's making

22   decisions about who to sue, what claims to bring, what class

23   period to pursue.  All of those are within the jurisdiction of

24   a lead plaintiff.

25         In terms of whether or not the Court can even hear

1    the claims, the *First Millennium* opinion that my colleague

2    cited is right on point.

3           And the Second Circuit has clearly said once the --

4    once there are no claims against the FDIC or the depository

5    bank, then the jurisdictional or other procedural limits of

6    FIRREA drop out of the picture.

7           In terms of, you know, whether or not the claims are

8    direct or derivative, again, the Pomerantz firm articulated

9    that the relevant case law in *Levin,* which makes the

10   distinction between what claims are direct what claims are

11   derivative, and direct claims under Section 10(b) are within

12   -- are investors' claims to pursue.

13          There's the Fourth Circuit case in *Howard*.  And

14   there's also the Third Circuit case in *Hayes vs. Gross* which

15   we cite in our letter in opposition to the FDIC, which made

16   clear that claims under 10(b)(5), which are the -- which are

17   the claims being asserted in this case, are direct claims that

18   can be litigated by investors and do not get usurped by the

19   FDIC.

20          So not only is there no jurisdictional basis for the

21   FDIC to come in and say we want to take over this case, but

22   the PSLRA requires the Court to appoint a lead plaintiff so

23   that these decisions can be made by a court-sanctioned

24   authority.

25          THE COURT:  Okay.  Understood.

32

1          Do you guys want to be heard on your motion for

2     appointment of lead counsel for plaintiff or do you want to

3     rest on your papers?

4          MR. AMJED:  Yes.  Yes, Your Honor.

5          THE COURT:  Go ahead.

6          MR. AMJED:  Your Honor, AP7 is entitled to

7     appointment under the PSLRA, has the largest loss, is adequate

8     and typical.  It has a decade of experience as a lead

9     plaintiff.  It's been appointed 13 times by district courts

10    across the country, including four by the Southern District of

11    New York.  It's 11 for 11 in defeating motions to dismiss

12    where a court has decided the motion.  It's been certified as

13    a class representative six times.  And eight times it settled

14    cases for more than a billion dollars.

15         The process for appointing AP7 should be

16    straightforward.  It's presumptive status under the statute

17    cannot be easily cast aside by speculation and conjecture,

18    which is the only thing that Wayne and Mississippi are

19    offering.

20         In terms of standing, AP7 standing is a matter of --

21    it's settled.  As my colleague pointed out, there's evidence

22    in the record, which is the only evidence before the Court,

23    establishing that AP7 meets the well-recognized prudential

24    exception as articulated by *Huff*.

25         AP7 is obligated by law to protect the equity fund.

1          The equity fund is a pool of assets that has no

2    ability to act on its own.  And if AP7 can't protect the fund

3    than no one can.

4          This is precisely the two prongs of *Huff* that courts

5    have looked at throughout the country to appoint AP7 as lead

6    plaintiff.

7          In addition to the evidence before the Court,

8    there's five district courts that have independently looked at

9    AP7's standing and rejected the very argument that counsel is

10   making here.

11         The most recent opinion in *Coinbase* appointed AP7 as

12   the sole lead plaintiff.  It's a 2022 opinion from the

13   District of New Jersey, where the Court analyzed standing

14   under Huff, confirmed the close relationship between AP7 and

15   the equity fund, and confirmed the fund's inability to bring

16   suit in its own name.

17         The Court there dismissed standing arguments as

18   speculation that falls well short of the proof required by the

19   PSLRA.

20         *Coinbase*'s reasoning accords with four other federal

21   courts that have analyzed this issue.

22         In 2014 the *Aucoin* court appointed AP7 as the sole

23   lead plaintiff after analyzing *Huff*, it's standing, and the

24   relationship between the equity fund.

25         In 2018, Judge Furman from the Southern District of

1    New York appointed AP7 as the sole lead plaintiff in *G.E.*  And

2    before even entertaining oral arguments said I do conclude

3    that the prudential exception applies to AP7, standing is not

4    an issue.

5          In 2019, Judge Broderick from the Southern District

6    appointed AP7 as the sole lead plaintiff in *Goldman* and joined

7    Judge Furman's analysis in *G.E.*

8          My colleagues on the other side of the table know

9    the analysis in *Goldman* very well because many of the

10   arguments they're making before you they made before Judge

11   Broderick which she rejected.

12         One of those arguments they made is that AP7 should

13   have gotten an assignment of claims to pursue litigation.

14         Based on the briefing in *Goldman* and based on Judge

15   Broderick's acceptance of the prudential exception, they know

16   the equity fund can't act.  They know they have no factual

17   basis to make the claim, but they made it anyway before this

18   court.

19         In addition to those opinions, in 2020, Judge Liman

20   in the Southern District appointed AP7 as lead plaintiff in

21   the *Luckin* case and rejected standing arguments.

22         *Aucoin*, *Luckin*, *Goldman* and *Coinbase* specifically

23   considered the one case to go the other way, which is

24   *Pipefitters*.  The *Pipefitters* is a 2011 opinion from Judge

25   Pauley which did not address the issue.  He never engaged in

1    whether or not AP7 had standing.  He simply side-stepped it

2    and said I think there's a concern based on no evidence and he

3    rejected AP7.

4              That's not what the statute allows.

5              The statute specifically says if you want to reject

6    AP7 and unseat it as the presumptive lead plaintiff, you need

7    to present proof of inadequacy.  You can't just say I think

8    there's a concern and, therefore, AP7's status is rejected.

9              Not only do the cases that specifically address

10   AP7's standing reject Judge Pauley's analysis, but there's a

11   another opinion from the District of Delaware called

12   (indiscernible) where Judge Andrews looked at Judge Pauley's

13   prior opinion in *Baydale,* you which is the precursor to

14   *Pipefitters,* and said *Baydale* doesn't follow the approach

15   because Judge Pauley doesn't engage in the issue.  He just

16   side-stepped the matter and, therefore, I reject *Baydale*'s

17   analysis.

18             Not only do the movants' arguments -- not only are

19   they not support by law, they're not supported by any fact.

20             *Luckin* and *Goldman* both made the observation that

21   despite all of the concerns that competing movants have

22   against AP7's standing, they haven't identified a single case

23   where AP7 was rejected as a lead plaintiff.  And this

24   continues to be the matter.

25             As I said in my opening, AP7 has been serving in

36

1    many cases and has been certified as a lead plaintiff -- has

2    been certified as a class representative six times, and in no

3    case has defendant successfully rejected AP7's standing or

4    even raised the argument.

5            A couple of cases that, you know, my colleagues have

6    put in their briefing that are worth mentioning, aside from

7    *Pipefitters*, *Paysafe*, *AT&T*, and *Array*.

8            *Paysafe* I know very well.  That's a case I argued.

9            There the issue wasn't that the movant couldn't

10   necessarily establish standing.  The issue was that the

11   movant's entire financial interest was based on more than a

12   hundred assignments from individuals.  And there was not a

13   clear statement in that -- in those assignments that they were

14   not revocable.

15           So in order to even answer that question, the movant

16   would have to do a 100-person survey to answer that -- to

17   answer that question.  Therefore, the Court rejected that

18   movant as a suitable lead plaintiff.

19           In *Gross vs. AT&T* and in *Array*, they both dealt with

20   assignment based standing.  Again, we don't have that issue

21   because the equity fund cannot act.  It has no employees.  It

22   has no legal personality to act.

23           *Gross* and *Array* were both specifically considered by

24   the *Coinbase* court and rejected as being distinguishable from

25   AP7's situation.

1          An interesting note about the -- about the *Array*

2     decision.  It's a 2021 opinion from Judge Marrero where he

3     rejected an Austrian manager based on assignment.  But a year

4     later, in *Bricklayer vs. New Oriental,* Judge Marrero appointed

5     as the sole lead plaintiff a German manager who claimed

6     standing under *Huff*'s prudential exception.  Because like AP7,

7     he's the only party able to act to protect its funds.

8          Another 2022 opinion from the Northern District of

9     Illinois, *DocuSign*, noted that courts routinely appoint --

10    routinely recognize the exception articulated in *Huff* when

11    faced with facts that are similar to the ones before the Court

12    there, which is a movant with a close relationship and the

13    fund unable to protect itself.

14          In a slight twist from the arguments they've raised

15    in other cases, my colleague argued that, well, AP7 is not --

16    is not a trust, and they -- the materials they put in don't

17    clearly say that it is -- it is a trust.

18          And I'm guessing that they're saying that because

19    *Huff* provides examples of where prudential exception is

20    triggered.  But *Huff* is a test.  It's not a list.  And the two

21    prongs of *Huff* are do you have a close relationship and is

22    there a barrier?

23          And the examples that *Huff* provides are just

24    illustrative of that.

25          For example, *Huff* does not say that biological

1    parents have the ability to represent their minor children,

2    but they clearly do.  And the citation that *Huff* uses is a

3    partial quote from the Second Circuit opinion in *Sprint* that

4    talks about trustees, administrators, and the quote ends, "And

5    so forth," meaning this is not an all encompassing list.  This

6    is examples of situations where the prudential exception

7    applies.

8              And all of the courts considering AP7's standing,

9    and all of the courts considering other European manager

10   standing under *Huff*, apply its test, not the list.

11             On the discovery point, Your Honor, the fact that

12   defendants made some arguments in *Goldman Sachs* and *AP*7 is

13   violating its discovery obligations.

14             Number one, I think the fact that *AP*7 is in

15   discovery completely undercuts the point that *AP*7 doesn't have

16   standing.

17             Number two, I reject the notion that AP7 doesn't

18   take it's discovery obligations faithfully.

19             It's been a fiduciary for over a decade.  And the

20   actual facts there are different than what defendants

21   represented.

22             The actual facts there were that AP7 did not retain

23   records before a litigation hold was implemented and they were

24   destroyed pursuant to its regular document retention policies.

25             Moreover, the *Coinbase* considered this exact

39

1    argument, based on the exact case law, based on the exact

2    case, and rejected it as conjecture.

3         Moreover, after the defendants raised their argument

4    in *Goldman Sachs*, AP7 was certified as a class representative

5    in the (indiscernible) case in 2023.

6         So the fact -- the arguments based on what

7    defendants say, Your Honor, has no basis in fact and is

8    completely inappropriate under the PSLRA to reject AP7.

9         The shorting argument is complete speculation.  AP7

10   did not short *Signature*.  I don't even understand how a

11   reference from another case could be implicated here.

12        And, moreover, in the *Aucoin* case where AP7 did

13   short, the Court did certify AP7 as the class representative.

14   So clearly it was not an issue for AP7 there.

15        Subject to any other questions Your Honor has, I

16   think that's the totality of my argument on AP7's standing.

17        THE COURT:  All right.  Thank you, Mr. Amjed.

18        Mr. Kane, I'll give you the last word.  You've heard

19   everything the movants have said so far.  Anything else you

20   want to add on your end?

21        MR. KANE:  Thank you again, Your Honor.

22        Just a couple of points.  One to just clarify the

23   prejudice point.  I was really focused on the financial

24   prejudice to the potential depletion of the D&O policies.

25        As for more broadly, there certainly would be

1    prejudice to the FDIC by allowing plaintiffs to circumvent the

2    receivership process and the claim submission process that all

3    other claimants need to go through.

4         And there also would be prejudice to the extent the

5    FDIC is correct that these are the FDIC as receiver's claims

6    to have other counsel and other plaintiffs attempt to assert

7    them.

8         So there is inherent prejudice.  I just wanted to

9    clarify.  I was really focused on the D&O policies when I --

10   when I answered that question.

11        With respect to the prejudice to plaintiffs, I heard

12   their main argument being that there could be a potential

13   free-for-all, there wouldn't be coordination.

14        I believe based on the letters they submitted in

15   response to my letter they do seem to be able to coordinate

16   efforts and respond.  If you look at both letters they

17   basically are making the same arguments.  And today they've

18   also been able to coordinate and respond to my points I made

19   to you in court today.

20        And lastly, I think the bottom line issue above and

21   beyond who has more prejudice is really does the Court have

22   subject matter jurisdiction?

23        And I'll reiterate the FDIC's position is that the

24   issues of subject matter jurisdiction should be a threshold

25   issue that should be decided by the Court in the first

1    instance.

2              Again, I thank Your Honor for inviting me today and

3    allowing me to speak.

4              THE COURT:  All right.  Understood.

5              The Court is mindful of the statutory deadline, so

6    I'll take the motions under advisement.  Thank you, everyone.

7    We are adjourned.

8              ALL COUNSEL:  Thank you.

9         (Proceedings adjourned at 10:01 a.m.)

10              I, CHRISTINE FIORE, court-approved transcriber

11   and certified electronic reporter and transcriber, certify

12   that the foregoing is a correct transcript from the official

13   electronic sound recording of the proceedings in the above-

14   entitled matter.

15

16             *Christine Fiore*

17   _____        August 6, 2023

18      Christine Fiore, CERT

19         Transcriber

20

21

22

23

24