**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

SJUNDE AP-FONDEN, Individually and on
behalf of all others similarly situated,

              Plaintiff,

    v.

JOSEPH J. DEPAOLO, ERIC HOWELL,
FRANK SANTORA, JOSEPH SEIBERT,
SCOTT A. SHAY, VITO SUSCA, STEPHEN
D. WYREMSKI, and KPMG LLP,

              Defendants.

Case No.: 23-cv-01921-FB-JRC

**MEMORANDUM OF LAW IN SUPPORT OF FEDERAL DEPOSIT INSURANCE**
**CORPORATION AS RECEIVER FOR SIGNATURE BANK'S MOTION TO DISMISS**

Ryan A. Kane
Adam M. Bialek
Maxwell G. Dillan
Nicole C. Rende
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Phone: (212) 382-3300
rkane@wmd-law.com
abialek@wmd-law.com
mdillan@wmd-law.com
nrende@wmd-law.com

*Attorneys for Federal Deposit Insurance*
*Corporation as Receiver for Signature Bank*

December 22, 2023

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................1

BACKGROUND .................................................................................................................3

    A.  The FDIC Is Appointed as Receiver for Signature After It Fails .................................3

    B.  The FIRREA Claims Process............................................................................4

    C.  Plaintiff Did Not Exhaust the FIRREA Claims Process .........................................4

    D.  Plaintiff's Federal Securities Law Claims Depend on Plaintiff's Status as Stockholder of the Bank and Proof that the Alleged Misconduct of the Defendants Depressed the Value of the Bank's Stock ............................................................................6

    E.  FDIC-R's Intervention ....................................................................................9

ARGUMENT ...................................................................................................................10

    I.   THE COURT SHOULD DISMISS THIS CASE FOR LACK OF SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFF FAILED TO EXHAUST THE FIRREA CLAIMS PROCESS ..........................................................................................10

        A.  FIRREA Requires a Claimant to Exhaust the FIRREA Claims Process Before Suing on Any Claims Relating to Any Act or Omission of Signature .................11

        B.  Plaintiff Has Not Exhausted the FIRREA Claims Process....................................14

    II.  AFTER EXHAUSTION OF THE FIRREA CLAIMS PROCESS, ONLY THE U.S. DISTRICT COURTS FOR THE DISTRICT OF COLUMBIA OR THE SOUTHERN DISTRICT OF NEW YORK MAY ASSERT SUBJECT MATTER JURISDICTION OVER ANY DISALLOWED CLAIMS...........................................................................16

    III.  PLAINTIFF LACKS PRUDENTIAL STANDING FOR ALL CLAIMS .......................17

        A.  Prudential Standing............................................................................17

        B.  Third Party Standing .........................................................................18

        C.  Plaintiff's Claims Belong to the FDIC-R under FIRREA's Succession Clause Because the FDIC-R Succeeded to All Claims at Issue .......................................19

CONCLUSION.................................................................................................................25

## TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Abad v. Advanta Nat'l Bank,*
    Case No. 10-CV-1174 (JG) (LB), 2011 WL 13323549 (E.D.N.Y. April 20, 2011) ..............12

*Aber-Shukofsky v. JPMorgan Chase & Co.,*
    755 F. Supp. 2d 441 (E.D.N.Y. 2010) ...................................................................12

*Am. Nat'l Ins. Co. v. FDIC,*
    642 F.3d 1137 (D.C. Cir. 2011)......................................................................13, 14

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.,*
    821 F.3d 352 (2d Cir. 2016) ..........................................................................18, 19

*Am. W. Bank Members v. Utah,*
    Case No. 16-CV-326, 2023 WL 4108352 (D. Utah June 21, 2023)................................19, 23

*APWU v. Potter,*
    343 F.3d 619 (2d Cir. 2003) ..................................................................................15

*Avery v. FDIC,*
    113 F. Supp. 3d 116 (D.D.C. 2015) .........................................................................15

*Bank of N.Y. v. First, Millennium, Inc.,*
    607 F.3d 905 (2d Cir. 2010) .............................................................................14, 17

*Bennett v. Spear,*
    520 U.S. 154 (1997) .....................................................................................17, 18

*Bloom v. FDIC,*
    738 F.3d 58 (2d Cir. 2013) ................................................................................2, 15

*Caires v. FDIC,*
    Case No. 16-cv-02651 (JGK), 2017 WL 1393735 (S.D.N.Y. 2017) ......................................17

*Carlyle Towers Condo. Ass'n,* Inc. *v. FDIC,*
    170 F.3d 301 (2d Cir. 1999) .......................................................................12, 14, 15

*Carter v. HealthPort Techs., LLC,*
    822 F.3d 47 (2d Cir. 2016) ...................................................................................10

*Cassese v. Wash. Mut., Inc.,*
    711 F. Supp. 2d 261 (E.D.N.Y. 2010) .........................................................2, 15, 16

*Circle Indus., Div. of Nastasi-White, Inc. v. City Fed. Sav. Bank,*
    749 F. Supp. 447 (E.D.N.Y. 1990) ..........................................................................13

*Culbertson v. Berryhill,*
   139 S. Ct. 517 (2019)..................................................................................24

*Esther Sadowsky Testamentary Trust v. Syron,*
   Case No. 08-CV-5221 (BSJ) (JCF), 2009 WL 10697000 (S.D.N.Y. Jan. 28, 2009) .............20

*Farnik v. FDIC,*
   707 F.3d 717 (7th Cir. 2013) .....................................................................13

*Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.,*
   902 F. Supp. 2d 476 (S.D.N.Y. 2012) .........................................................13, 14

*Howard v. Haddad,*
   916 F.2d 167 (4th Cir. 1990) .....................................................................23

*Huggins v. FDIC,*
   Case No. 07-CV-5313 (RJD) (VPP), 2010 WL 3926263 (E.D.N.Y. 2010)......................13, 15

*IndyMac Bank, F.S.B. v. MacPherson,*
   672 F. Supp. 2d 313 (E.D.N.Y. 2010) ...........................................................12

*Katz v. Donna Karan Co. Store, L.L.C.,*
   872 F.3d 114 (2d Cir. 2017) ......................................................................10

*Khan v. United States,*
   548 F.3d 549 (7th Cir. 2008) .....................................................................20

*Knowles v. U.S. Coast Guard,*
   924 F. Supp. 593 (S.D.N.Y. 1996) ..............................................................18

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
   511 U.S. 375 (1994) ............................................................................10, 11

*Kowalski v. Tesmer,*
   543 U.S. 125 (2004) ...............................................................................19

*Lamar, Archer & Cofrin, LLP v. Appling,*
   138 S. Ct. 1752 (2018)............................................................................20

*Lamont v. Woods,*
   948 F.2d 825 (2d Cir. 1991) ......................................................................18

*LeBlanc v. Cleveland,*
   198 F.3d 353 (2d Cir. 1999) ......................................................................10

*Levin v. Miller,*
   763 F.3d 667 (7th Cir. 2014) .....................................................................25

*Maracich v. Spears*,
    570 U.S. 48, 60 (2013)................................................................24

*McCarty v. The Bank of New York Mellon*,
    669 F. App'x 6 (2d Cir. 2016) ...................................................18

*Naples v. Stefanelli*,
    972 F. Supp. 2d 373 (E.D.N.Y. 2013) ...............................10, 11

*Nat'l Union Fire Ins. Co. v. City Sav., F.S.B.*,
    28 F.3d 376 (3d Cir. 1994) .................................................11, 21

*Pareto v. FDIC*,
    139 F.3d 696 (9th Cir. 1998) ............................................20, 24

*Rajamin v. Deutsche Bank Nat. Tr. Co.*,
    757 F.3d 79 (2d Cir. 2014) ......................................................18

*Resol. Tr. Corp. v. Elman*,
    949 F.2d 624 (2d Cir. 1991) ..............................................12, 13

*Stamm v. Paul*,
    121 F.3d 635 (11th Cir. 1997) .................................................11

*Tandon v. Captain's Cove Marina of Bridgeport, Inc.*,
    752 F.3d 239 (2d Cir. 2014) ....................................................10

*Tenet v. Doe*,
    544 U.S. 1 (2005) .....................................................................18

*United States v. Suarez*,
    791 F.3d 363 (2d Cir. 2015) ....................................................18

*United States v. Transocean Deepwater Drilling, Inc.*,
    767 F.3d 485 (5th Cir. 2014) .................................................. 24

*Verdi v. Fed. Deposit Ins. Corp.*,
    Case No. 23-cv-01206-JVS (KES), 2023 WL 6388225 (C.D. Cal. Sept. 28, 2023)........ *passim*

*Warth v. Seldin*,
    422 U.S. 490 (1975) ................................................................18

*Whelan v. Abell*,
    953 F.2d 663 (D.C. Cir. 1992)..................................................19

*Zucker v. Rodriguez*,
    919 F.3d 649 (1st Cir. 2019) ............................................ *passim*

iv

**Statutes**

12 U.S.C. § 1821.................................................................................................. *passim*

28 U.S.C. § 1631 ........................................................................................................17

**Rules**

Fed. R. Civ. P. 12 ................................................................................................. *passim*

Fed. R. Civ. P. 17 .....................................................................................................19

Pursuant to the Court's December 5, 2023 Order [ECF No. 74] permitting the Federal Deposit Insurance Corporation ("FDIC") as the Receiver for Signature Bank ("FDIC-R") to intervene for purpose of filing a motion to dismiss the Corrected Consolidated Complaint (ECF No. 70) (the "Complaint"), FDIC-R submits this Memorandum of Law in support of its Motion to Dismiss this case under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure ("Rule" or "Rules"), and the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"), codified as amended in the Federal Deposit Insurance Act, 12 U.S.C. § 1821(d), on the grounds that (a) the Court lacks subject matter jurisdiction over Plaintiff Sjunde AP-Fonden's ("Plaintiff" or "Lead Plaintiff") claims as well as any putative class members claims for failure to exhaust the mandatory claims process under FIRREA ("FIRREA claims process"); (b) the Court also lacks subject matter jurisdiction under the jurisdictional forum limitation of 12 U.S.C. § 1821(d)(6)(A); and (c) Plaintiff lacks prudential standing because the FDIC-R owns the claims asserted by Plaintiff and therefore Plaintiff fails to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

On March 12, 2023, Signature Bank ("Signature" or "Bank") was closed, and the FDIC was appointed as Receiver for the Bank. This Court lacks subject matter jurisdiction over Plaintiff's claims for two reasons.

*First*, Congress created the FIRREA claims process as a comprehensive and mandatory process to efficiently resolve claims involving FDIC receiverships. *Id.* §§ 1821(d)(13)(D), 1821(d)(6)(A). To ensure that claimants do not circumvent that claims process, FIRREA provides, in pertinent part, that no court shall have jurisdiction over (1) "any claim or action for payment from, or any action . . . with respect to, the assets of [the failed] depository institution" or (2) "any claim relating to any act or omission of such institution"—unless the claimant has first exhausted

the FIRREA claims process. *Id*. § 1821(d)(13)(D). Plaintiff's claims (as well as any putative class members' claims) fall within the scope of § 1821(d)(13)(D) because its claims are based on the acts or omissions of Signature committed by the Bank's directors, officers and accountants. Plaintiff recognized this as it filed a claim, but Plaintiff failed to exhaust the FIRREA claims process before suing in this Court. The individual claim that Plaintiff submitted in the FIRREA claims process is pending review and the claims period will not expire until January 16, 2024.

Plaintiff likewise recognized the need for putative class members to file their own claims as it attempted to submit a single "class claim" in the FIRREA claims process. However, such a "class claim" is not permitted as each potential class member must file its own individual claim and exhaust the FIRREA claims process. *Cassese v. Wash. Mut., Inc.*, 711 F. Supp. 2d 261, 270 (E.D.N.Y. 2010), *appeal dismissed by Bloom v. FDIC*, 738 F.3d 58 (2d Cir. 2013). For putative class members that failed to file claims by the claims bar date (July 17, 2023), they generally can never exhaust the FIRREA claims process and *no* court can ever obtain subject matter jurisdiction over their claims. Moreover, the failure to exhaust the FIRREA claims process was a ground for the recent dismissal of another Signature stockholder's lawsuit asserting similar claims against the Bank's directors and officers. *See Verdi v. Fed. Deposit Ins. Corp.*, Case No. 23-cv-01206-JVS (KES), 2023 WL 6388225, at *6 (C.D. Cal. Sept. 28, 2023) (holding the court "lack[ed] subject-matter jurisdiction over the claims asserted" because stockholder "filed [his] suit before exhausting his administrative remedies under § 1821.").

*Second*, even had Plaintiff properly exhausted the FIRREA claims process before commencing this action (which it did not), this Court would still lack jurisdiction because, under FIRREA's "subject to suit" clause, actions based on disallowed claims must be filed in either the federal district court for the District of Columbia or the federal district court where Signature had

its principal place of business, the district court for the Southern District of New York. 12 U.S.C. § 1821(d)(6)(A).

Additionally, Plaintiff lacks prudential standing because it asserts claims that it does not own. When the FDIC was appointed as Receiver for the Bank, it succeeded by operation of law to "all rights, titles, powers, and privileges" of the Bank and any Bank stockholder with respect to the Bank and the assets of the Bank. *Id*. § 1821(d)(2)(A)(i) ("Succession Clause"). Plaintiff's securities law claims depend entirely on their status as Bank stockholders, and they concern the Bank and the assets of the Bank. The claims therefore belong to the FDIC-R, not Plaintiff, under the Succession Clause, and, as we shall demonstrate below, Plaintiff lacks prudential standing because it does not own the claims it asserts. Accordingly, Plaintiff's claims are not ones upon which relief can be granted.

For all of these reasons, this action should be dismissed for lack of subject matter jurisdiction and lack of prudential standing.

## BACKGROUND

### A. The FDIC Is Appointed as Receiver for Signature After It Fails.

On March 12, 2023, the New York State Department of Financial Services closed Signature and appointed the FDIC as Receiver for Signature. *See* Declaration of Donald G. Grieser, dated August 30, 2023 ("Grieser Decl.") ¶ 3; Ex. A.[1] Upon its appointment, the FDIC succeeded by operation of law to "all rights, titles, powers, and privileges of" Signature, "and of any stockholder . . . with respect to [Signature] and the assets of [Signature]," and became vested with the power to resolve outstanding claims with respect to Signature in receivership. 12 U.S.C. §§ 1821(d)(2)(A)(i), 1821(d)(3).

---

[1] "Exhibit" or "Ex." herein refers to the Exhibits to the Grieser Decl.

## B. The FIRREA Claims Process.

The FIRREA claims process applies to "(i) any claim or action . . . seeking a determination of rights with respect to, the assets of [Signature] . . . ; or (ii) any claim relating to any act or omission of [Signature]." *Id*. § 1821(d)(13)(D). Under section 1821(d)(3), the FDIC was required to publish notice that Signature's creditors must file claims with the receiver by a claims bar date not less than 90 days after publication of such notice. *Id*. § 1821(d)(3)(B)(i). The FDIC was also required to mail a similar notice to creditors appearing on Signature's books. *Id*. § 1821(d)(3)(C)(i). After a claim is filed, the FDIC-R has 180 days to determine whether to allow or disallow the claim. *Id*. § 1821(d)(5)(A)(i). The FDIC-R is required to allow any claim received on or before the claims bar date which is proved to the satisfaction of the FDIC-R. *Id*. § 1821(d)(5)(B). If the FDIC-R disallows the claim, or the 180-day period expires without action by the FDIC-R, the claimant then has 60 days to sue for a *de novo* judicial determination of the claim (or to continue any pre-receivership litigation). *Id*. § 1821(d)(6)(A).

As part of the FIRREA claims process, the FDIC-R established July 17, 2023 as the "Claims Bar Date," *i.e.*, the deadline for filing any administrative claims. Grieser Decl. ¶ 5. The FDIC-R prepared a Publication Notice to Creditors and Depositors of Signature advising that administrative claims must be submitted to the FDIC-R by the Claims Bar Date. *Id*. ¶ 6. That Publication Notice was published on March 30, 2023, May 1, 2023, and June 1, 2023, in the Wall Street Journal, New York Times, Los Angeles Times, San Francisco Chronicle, Charlotte Observer, Raleigh News & Observer, and Reno Gazette. *Id*.; Ex. B.

## C. Plaintiff Did Not Exhaust the FIRREA Claims Process.

The FDIC-R sent a "Notice to Discovered Claimant to Present Proof of Claim," which advised of the requirement to file any claims by the Claims Bar Date, to every plaintiff that has appeared in this action, including, on June 1, 2023, to the Lead Plaintiff. *See* Grieser Decl. ¶¶ 7-8;

Exs. C-D.  On July 17, 2023, Plaintiff filed an administrative claim with the FDIC-R. Grieser Decl. ¶ 9. The FDIC-R has made no determination regarding Plaintiff's administrative claim as it is pending review. *Id*. The 180-day statutory claims determination period for Plaintiff's claim began to run on July 17, 2023, the date of its submission, and will expire on January 16, 2024. *Id*.; 12 U.S.C. § 1821(d)(5)(A).

In addition, on July 17, 2023, counsel acting on behalf of "Sjunde AP-Fonden on behalf of a Putative Class" submitted a claim purportedly on behalf of a putative class of damaged investors. Grieser Decl. ¶ 10. As stated in the Notices to Discovered Claimants, including the Notice sent to Plaintiff: "Note to Class Claimants: By law, the Receiver will not accept a claim filed on behalf of a proposed class of individuals or entities or a class of individuals or entities certified by a court. EACH individual or entity must file a separate claim with the Receiver." *Id.* ¶ 10; Exs. C-D (emphasis in original). Accordingly, on August 28, 2023, the FDIC-Receiver sent a Notice of Unaccepted Claim to "Sjunde AP-Fonden on behalf of a Putative Class" in care of counsel. Grieser Decl. ¶ 10; Ex. E.

This action was prematurely commenced before exhaustion of the FIRREA claims process. Specifically, on March 14, 2023, prior to exhausting the FIRREA claims process, this action was commenced by Matthew Schaeffer. ECF No. 1.[2] On May 15, 2023, Lead Plaintiff, before exhausting the FIRREA claims process, filed a motion to consolidate the cases and appoint lead plaintiff and counsel. ECF No. 14.  On August 10, 2023, the Court consolidated the cases and appointed Plaintiff as lead plaintiff. ECF No. 51. On November 20, 2023, Lead Plaintiff filed an amended consolidated complaint (ECF No. 66), and on December 1, 2023, Lead Plaintiff filed the

---

[2] Schaeffer did not submit an administrative claim by the Claims Bar Date. Grieser Decl. ¶ 9.

current Complaint, both of which were filed before exhausting the FIRREA claims process, i.e. the January 16, 2024, claim determination deadline.

The Complaint asserts causes of action for violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5 against former officers of Signature, Joseph J. DePaolo (who was also a director), Eric Howell, Frank Santora, Joseph Seibert, Vito Susca, Stephen Wyremski, former director Scott A. Shay (the "Individual Defendants"), and KPMG LLP ("KPMG," and together with the Individual Defendants, the "Defendants").

**D. Plaintiff's Federal Securities Law Claims Depend on Plaintiff's Status as Stockholder of the Bank and Proof that the Alleged Misconduct of the Defendants Depressed the Value of the Bank's Stock.**

Plaintiff, as a stockholder of Signature, asserts federal securities claims based on alleged false and misleading statements in the Bank's SEC filings, financial statements and press releases about Signature's business and financial condition (Complaint ¶¶ 485-499) against Individual Defendants and KPMG.

Plaintiff's claims relate to—indeed, depend on—alleged misconduct and mismanagement at the Bank by the Individual Defendants in their roles as directors and officers of the Bank and related misconduct by KPMG in its role as the Bank's auditor. For example, according to Plaintiff, the Defendants ignored "critical problems and deficiencies in the Bank's risk profile and liquidity risk management controls," "massively expanded the Bank's liquidity risks by taking on billions of dollars in uninsured and volatile deposits from the cryptocurrency industry," and "[a]ll the while, Defendants failed to implement the essential controls to analyze, model and mitigate these risks." Complaint ¶ 2. Plaintiff's damages against the Defendants rely on a reduction in the value of Signature's assets and stock, amounting to a "99.81% drop [that] erased billions of dollars in shareholder value." *Id*. ¶ 25. According to Plaintiff, among other things, the Individual Defendants:

- "[C]ompletely failed to implement an adequate liquidity risk management framework at

the Bank," *id*. ¶ 13;

- Failed to implement a "well-documented and thoroughly tested liquidity contingency plan" and suffered a "lack of preparedness for an unanticipated liquidity event," *id*. ¶ 23;

- Allowed significant liquidity contingency planning deficiencies originally discovered in 2019 to remain outstanding and unresolved, *id.* ¶ 17;

- Permitted Signature to experience "tremendous deposit growth, more than doubling the Bank's size," that "relied largely on uninsured deposits to fuel deposit growth," resulting in "rapid and uncontrolled growth [that] quickly outpaced its already-deficient risk infrastructure," *id*. ¶¶ 63-64;

- Allowed Signature to hold over $97 billion in uninsured deposits, roughly 92% of Signature's deposits, all the while the "Bank had no systems or controls in place to identify and mitigate the risks that these uninsured deposits posed to the Bank's liquidity and financial condition," *id*. ¶ 66;

- Allowed Signature to increase its deposit concentration in a small number of large depositors – four depositors comprised 14% of Signatures total assets, *id*. ¶¶ 65, 67;

- Fueled large volatile concentration of deposits and lending relationships in the digital assets marketplace without adequate risk management and controls, or awareness of "potential damage it could inflict on more traditional depositor customers," *id*. ¶¶ 65, 157;

- Permitted Signature to become a "Crypto-Friendly" "Deposit Machine" by branching out to the digital asset world regardless of other big banks avoiding cryptocurrency, *id*. ¶¶ 54-61;

- "[S]ignificantly increased [Signature's] exposure to its new Fund Banking capital call lines of credit," that "created additional risks, including concerns over the Bank's ability to pledge these loans as collateral at the Federal Reserve discount window," *id*. ¶¶ 73-74;

- "[T]he Bank shockingly did not have in place a sufficient plan to address, much less the ability to withstand, numerous liquidity stress events," *id*. ¶ 84; and

- "Defendants' pursuit of untrammeled and irresponsible [deposit] growth . . . allowed them to line their pockets with millions of dollars of bonus payments." *id*. ¶ 123.

Plaintiff alleges that the combination of "[Signature] management's lack of a well-documented and thoroughly tested liquidity contingency plan and its lack of preparedness for an

unanticipated liquidity event" and its "exposure to a high concentration of uninsured digital asset deposits" "were the root cause of the bank's failure" and collapse. *Id.* ¶¶ 23, 71, 356.

Critically, Plaintiff's claims against the Individual Defendants all depend on misconduct at, and mismanagement of, *the Bank*. According to Plaintiff, the Individual Defendants failed to provide complete and accurate information to the stockholders in statements by the *Bank* about the effect of the Bank's poor internal controls and the Individual Defendants' mismanagement of the Bank. *E.g.*, *id.* ¶¶ 2, 4-5, 54-76, 91-120, 417-421. Or to put it another way, the Individual Defendants failed to protect the stockholders against the loss of its investments in the Bank by failing to "properly manage [the] risks." *E.g., id.* ¶¶ 2, 4-5, 54-76, 91-120, 356, 417-421. The misstatements Plaintiff says the Individual Defendants made to the public and the stockholders similarly concern alleged misconduct at the Bank—statements about "the Bank's Liquidity, Deposits, Depositors, and Risk Management Practice"—all of which Plaintiff says caused the Bank's financial condition to appear stronger than it actually was. *Id.* ¶¶ 124-137. Plaintiff alleges that the misstatements were contained in Signature's Form 8-K's, 10-K's, 10-Q's, earning calls and press releases—all of which are the *Bank's* statements, meaning the claims are related to, concerning or on behalf of the Bank. *Id.* ¶¶ 205-348. Plaintiff maintains that several Individual Defendants "had motive to chase deposit growth at all costs" (*Id.* ¶ 121) and "by pursuing unrestrained deposit growth at all costs, Defendants DePaolo, Shay, and Howell [] reap[ed] millions, achieving almost the entirety of their dual compensation packages." *Id.* ¶ 123.

Plaintiff further contends that KPMG issued misleading unqualified opinions on Signature's financial statements by recklessly auditing the financial statements of the Bank, making the claims against KPMG also related to or concerning the Bank. *Id.* ¶¶ 360-361. Plaintiff alleges that "KPMG knew or was reckless to disregard the material risks facing [Signature] and

the Bank's many related deficiencies." *Id*. ¶ 361. Plaintiff contends that KPMG negligently audited the Bank and its assets by failing to: (i) "account for, or reveal, the serious and adverse facts facing the Bank's control environment"; (ii) "identify the Bank's GAAP violation with respect to failing to disclose depositor concentrations"; (iii) consider "the significant control deficiencies with respect to [Signature's] management of material risks"; and (iv) take into account that "Defendants, along with [Signature's] Board and other senior management, pursued rapid, unrestrained growth without developing and maintaining adequate risk management practices and controls appropriate for the size, complexity and risk profile of the institution." *Id*. ¶¶ 360-361, 363, 367, 373, 374. According to Plaintiff, a properly conducted audit would have timely disclosed material misstatements relating to the Bank's assets, depositor concentrations, and material weaknesses in Signature's internal controls regarding liquidity. *Id*. ¶¶ 359-367, 374-378.

Plaintiff's asserted damages similarly depend on an alleged reduction in the value of Signature's common stock. Plaintiff asserts that the Defendants' misconduct "artificially inflated the price of the [Bank's] common stock and/or maintained artificial inflation in [Signature's] stock price, and the subsequent significant decline in the value of the [Bank's] common stock." *Id*. ¶ 453. Because Signature suffered all these alleged losses in the first instance, FDIC-R is the only party that can bring the claims asserted in this case.

**E.  FDIC-R's Intervention.**

On December 5, 2023, the FDIC-R was permitted to intervene in the action to file a motion to dismiss. ECF No. 74.[3] FDIC-R now moves to dismiss the Complaint in its entirety.

---

[3] On September 1, 2023, FDIC-R served its original motions to intervene and to dismiss on Plaintiff. FDIC-R and Plaintiff initially proposed a briefing schedule for FDIC-R's motions to intervene and to dismiss. However, Plaintiff decided not to oppose the motion to intervene, and

## ARGUMENT

**I.   THE COURT SHOULD DISMISS THIS CASE FOR LACK OF SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFF FAILED TO EXHAUST THE FIRREA CLAIMS PROCESS.**

A plaintiff always bears the burden of establishing subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377-78 (1994); *Naples v. Stefanelli*, 972 F. Supp. 2d 373, 386 (E.D.N.Y. 2013). The court presumes a lack of subject matter jurisdiction until the plaintiff proves otherwise. *Kokkonen*, 511 U.S. at 377-78. Unless a plaintiff establishes that the court has subject matter jurisdiction, upon motion, the court must dismiss the complaint. *Id*.

A motion challenging a court's subject matter jurisdiction can be either "facial" and limited to the allegations of the complaint, or "factual" and require the court to look beyond the pleadings. *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56-7 (2d Cir. 2016); *Katz v. Donna Karan Co. Store, L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017). "Where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Tandon v. Captain's Cove Marina of Bridgeport, Inc*., 752 F.3d 239, 243 (2d Cir. 2014); *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003); *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999).

Once the moving party presents evidence supporting dismissal, the opposing party must "come forward with evidence of their own to controvert that presented by the defendant," or may instead "rely on the allegations in the[ir] [p]leading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing." *Katz*, 872 F.3d at 119 (alteration in original); *Carter*, 822 F.3d at 57; *Kokkonen*,

---

FDIC-R and Plaintiff jointly submitted a proposed order permitting FDIC-R to intervene, which the Court so-ordered on December 5, 2023. ECF No. 74.

511 U.S. at 377. If the opposing party fails to meet this burden, the action must be dismissed for lack of subject matter jurisdiction. *See Kokkonen*, 511 U.S. at 377; *Naples*, 972 F. Supp. 2d at 386.

A plaintiff must exhaust the FIRREA claims process before filing a complaint in district court (1) seeking payment from, or a determination of rights with respect to, the failed bank's assets or Receiver's assets; or (2) relating to any act or omission of the failed bank or the Receiver. *See* 12 U.S.C. §§ 1821(d)(3)-(13). Plaintiff did not satisfy this requirement here as it commenced this action before exhausting the FIRREA claims process. Plaintiff's administrative claim is still pending review by the FDIC-R and the 180-day statutory claims determination period will not expire until January 16, 2024. *See* Grieser Decl. ¶ 9. Additionally, Plaintiff's attempt to submit a "class claim" in the FIRREA claims process was ineffective. And for the putative class members that failed to submit a claim before the Claims Bar Date, they never even started the FIRREA claims process and, thus, cannot, in general, exhaust it now because the Claims Bar Date has passed. As a result, the Court should dismiss this action for lack of subject matter jurisdiction.

### A. FIRREA Requires a Claimant to Exhaust the FIRREA Claims Process Before Suing on Any Claims Relating to Any Act or Omission of Signature.

"In enacting FIRREA, Congress anticipated that, as a receiver for failed lending entities, the [FDIC] would face numerous claims from various parties." *Stamm v. Paul*, 121 F.3d 635, 639 (11th Cir. 1997). Thus, "[o]ne of the important goals of FIRREA is to enable the receiver to efficiently determine creditors' claims and preserve assets of the failed institution without being burdened by complex and costly litigation." *Nat'l Union Fire Ins. Co. v. City Sav., F.S.B.*, 28 F.3d 376, 388 (3d Cir. 1994). To that end, FIRREA established the FIRREA claims process codified at 12 U.S.C. §§ 1821(d)(3)-(13), as discussed above. *See supra* at 1, 4.

To ensure claimants do not bypass the FIRREA claims process, Congress also included a jurisdictional bar in FIRREA. Section 1821(d)(13)(D) bars the jurisdiction of all courts over all

receivership claims unless jurisdiction is otherwise authorized in section 1821(d). Section 1821(d)(13)(D) provides:

> (D) Limitation on judicial review. Except as otherwise provided in this subsection, *no court shall have jurisdiction* over—
>
>> (i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver, including assets which the [FDIC] may acquire from itself as such receiver; or
>>
>> (ii) any claim relating to any act or omission of such institution or the [FDIC] as receiver.

12 U.S.C. § 1821(d)(13)(D) (emphasis added).

"The phrase 'except as otherwise provided in this subsection' refers to a provision that allows jurisdiction after the [FIRREA] administrative claims process has been completed." *Aber-Shukofsky v. JPMorgan Chase & Co.*, 755 F. Supp. 2d 441, 445, n.3, 446 (E.D.N.Y. 2010) ("Given FIRREA's clear language, the Second Circuit has consistently held that courts lack subject matter jurisdiction to hear a claim against a failed bank taken into receivership by the FDIC unless the plaintiff has exhausted the administrative claims process."). Thus, all courts lack subject matter jurisdiction over unexhausted claims that fall within either subsection of section 1821(d)(13)(D), and they should be dismissed. *Abad v. Advanta Nat'l Bank*, Case No. 10-CV-1174 (JG)(LB), 2011 WL 13323549, at *3 (E.D.N.Y. April 20, 2011) (quoting *IndyMac Bank, F.S.B. v. MacPherson*, 672 F. Supp. 2d 313, 317 (E.D.N.Y. 2010) ("Absent exhaustion of these claims with the FDIC, the FIRREA 'strips the Court of subject matter jurisdiction to hear claims against the FDIC.'")).

Courts in this Circuit have consistently held that a claimant must first exhaust the FIRREA claims process before seeking judicial review of any claim within the scope of section 1821(d)(13)(D). *Carlyle Towers Condo. Ass'n, Inc. v. FDIC*, 170 F.3d 301, 307 (2d Cir. 1999) (FIRREA requires that "all claims must be presented to the FDIC."); *Resol. Tr. Corp. v. Elman*, 949 F.2d 624, 627 (2d Cir. 1991) ("[T]he statute means just what it says, and, accordingly . . . a

claimant must first present its case . . . under the administrative procedure erected by FIRREA before seeking relief in the federal courts."); *Huggins v. FDIC*, Case No. 07 CV 5313 (RJD) (VPP), 2010 WL 3926263, at *3 (E.D.N.Y. 2010) ("joining the majority of courts that have concluded that a federal court cannot pass on the merits of pre-receivership claims where the plaintiff has not exhausted his remedies under the FDIC's claims resolution process."); *Circle Indus., Div. of Nastasi-White, Inc. v. City Fed. Sav. Bank*, 749 F. Supp. 447, 455 (E.D.N.Y. 1990) ("In enacting FIRREA, Congress intended litigants . . . to first submit their claims against failed savings and loan institutions to the RTC or FDIC before commencing an action in the district court.").

The FIRREA claims process is not limited to claims against the failed bank, and "the substance of a claim rather than its form" matters. *Farnik v. FDIC*, 707 F.3d 717, 722 (7th Cir. 2013). "The fact that [stockholder] alleges causes of action against Defendants other than FDIC-R does not avoid the exhaustion requirement either." *Verdi*, 2023 WL 6388225, at *5. "[L]itigants cannot avoid FIRREA's administrative requirements through strategic pleading." *Farnik*, 707 F.3d at 723 (citation and internal quotation marks omitted); *Verdi*, 2023 WL 6388225, at *5 (same). "Where a claim is <u>functionally</u>, albeit not <u>formally</u>, against a depository institution for which the FDIC is receiver, it is a 'claim' within the meaning of FIRREA's administrative claims process." *Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*, 902 F. Supp. 2d 476, 502 (S.D.N.Y. 2012) (emphasis in original) (quoting *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1144 (D.C. Cir. 2011)). A stockholder's "characterization of his claims as derivative or direct do not take his claims out from under the exhaustion requirement." *Verdi*, 2023 WL 6388225, at *5.

Here, Plaintiff acknowledged the need to file a claim in the FIRREA claims process by doing so on July 17, 2023. Plaintiff similarly recognized the need for each class member to file a claim by attempting, albeit improperly as explained below, to file a claim on behalf of all putative

class members. Indeed, Plaintiff (and any class members) were required to file individual claims in the FIRREA claims process because the substance of Plaintiff's claims relate to acts or omissions of Signature, placing the claims within the scope of section 1821(d)(13)(D). Plaintiff's claims are based on the alleged acts and omissions of the Defendants in their role as directors and officers and auditors of Signature, including the failure to provide complete and truthful information relating to Signature's business, operations, and prospects in the *Bank's* SEC filings, financial statements and press releases. *See supra* at 6-9. Thus, the claims plainly relate to acts or omissions of the Bank. Accordingly, Plaintiff was required to exhaust the FIRREA claims process as a jurisdictional prerequisite to judicial review of their claims here just as a California federal court recently held regarding another Signature stockholder's claims. *Verdi*, 2023 WL 6388225.[4]

**B.  Plaintiff Has Not Exhausted the FIRREA Claims Process.**

The Court lacks subject matter jurisdiction over this action because Plaintiff prematurely filed this complaint before it had exhausted the FIRREA claims process for its claims. *See, e.g.*, *Carlyle Towers Condo. Ass'n, Inc. v. FDIC, supra* and cases cited on pp. 12-13. As explained above, Plaintiff's administrative claim is still pending administrative review by the FDIC-R. If a

---

[4] Before the FDIC-R was voluntarily dismissed from this action, FDIC-R filed a pre-motion to dismiss letter, to which Plaintiff submitted a response. ECF Nos. 42, 44. The cases cited in Plaintiff's pre-motion response letter that the claim process is not applicable are inapposite because they involve claims *by* the FDIC or against *purchasers* of a failed bank's assets, not claims against directors, officers and accountants of a failed bank. *See Bank of N.Y. v. First, Millennium, Inc.*, 607 F.3d 905, 920 (2d Cir. 2010) (interpleader case which was "a claim *by* the FDIC to the trust corpus") (emphasis in original); *Fed. Hous. Fin. Agency*, 902 F. Supp. 2d at 502 ("FIRREA's claims procedure includes no provision for impleading the purchaser of a failed bank's assets and liabilities[,]" so the claims could not be brought under the FIRREA claims process, making FIRREA's exhaustion requirement inapplicable); *Am. Nat'l Ins. Co.*, 642 F.3d at 1144 (claims were against JPMorgan: "we read the complaint to allege that JPMC alone committed the wrongdoing for which appellants sue"). They also are off point because here Plaintiff did file a claim (although few, if any class members did); the issue, instead, is that Plaintiff failed to exhaust the FIRREA claims process before the commencement of this action.

claimant "files a proof of claim before the claims bar date, the FDIC must either allow or disallow the claim and notify the creditor of its determination within 180 days." *Huggins*, 2010 WL 3926263, at *1 (citing 12 U.S.C. § 1821(d)(5)(A)(i)). The determination period for Plaintiff's claim began to run on July 17, 2023, the date of Plaintiff's submission, and will not expire until January 16, 2024. Grieser Decl. ¶ 9.

Further, for any putative class members that failed to submit administrative claims by the Claims Bar Date, they have necessarily failed to exhaust the FIRREA claims process. *Avery v. FDIC*, 113 F. Supp. 3d 116, 119 (D.D.C. 2015) ("[I]t is uncontroverted that Plaintiff has never filed an administrative claim with the FDIC. Accordingly, the Court finds that it lacks subject matter jurisdiction over Plaintiff's claims."). And Plaintiff's purported "class claim" is ineffective because, as set forth in FDIC-R's Notices of Discovered Claims (*see* Grieser Decl. ¶ 10, Exs. C-D), each putative class member must individually satisfy FIRREA's exhaustion requirement. *Cassese v. Wash. Mut., Inc.*, 711 F. Supp. 2d 261, 270 (E.D.N.Y. 2010), *appeal dismissed by Bloom v. FDIC*, 738 F.3d 58 (2d Cir. 2013); *see also Carlyle Towers Condo. Ass'n, Inc.*, 170 F.3d at 307 (FIRREA requires that "*all* claims must be presented to the FDIC.") (emphasis added). In *Cassese*, named plaintiffs, like Plaintiff here, attempted to file a "class claim," but the court stated that "a class representative filing with the FDIC must have authority to act on behalf of the persons he claims to represent," and held that a "certified class plaintiff," let alone a putative class representative like Plaintiff, lacks power to file an administrative claim on behalf of other class members. 711 F. Supp. 2d at 269-270. Accordingly, the court held that "Rule 23 provide[d] the named plaintiffs no power to file an administrative 'class claim' with the FDIC, and that the administrative 'class claim' here did not exhaust the administrative remedies of the absent class members." *Id*. at 270.

In sum, unless and until Plaintiff and each individual claimant exhausts the FIRREA claims process, *no* court may assert subject matter jurisdiction over the claims. *See Verdi*, 2023 WL 6388225, at *6 ("Simply put, [the stockholder] filed this suit before exhausting his administrative remedies under § 1821. It is in precisely these circumstances that the statute states 'no court shall have jurisdiction.'") (citing 12 U.S.C. § 1821(d)(13)(D)).

## II.   AFTER EXHAUSTION OF THE FIRREA CLAIMS PROCESS, ONLY THE U.S. DISTRICT COURTS FOR THE DISTRICT OF COLUMBIA OR THE SOUTHERN DISTRICT OF NEW YORK MAY ASSERT SUBJECT MATTER JURISDICTION OVER ANY DISALLOWED CLAIMS.

This Court lacks jurisdiction for a second reason. Under FIRREA's "subject to suit" clause, only two federal courts could ever acquire subject matter jurisdiction over claims with respect to disallowed claims related to Signature: (1) the U.S. District Court for the District of Columbia; or (2) the U.S. District Court for the Southern District of New York, the district in which Signature's principal place of business was located. *See* Complaint ¶¶ 28, 40. (admitting Signature was a "New York state-chartered, full-service commercial bank" and "[Signature]'s principal executive offices were throughout the Class Period located in New York, New York."); Grieser Decl. ¶ 4. In short, even if Plaintiff had timely exhausted the FIRREA claims process and was entitled to seek *de novo* judicial review of its claims, it could only do so in those two courts with respect to Signature.

FIRREA limits the courts with jurisdiction to review disallowed receivership claims through two related provisions. As set forth above, section 1821(d)(13)(D) bars the jurisdiction of all courts over receivership claims unless jurisdiction is "otherwise provided" in section 1821(d). In turn, the only jurisdiction "otherwise provided" is in section 1821(d)(6)(A), which states that, after disallowance, a dissatisfied claimant:

> may . . . file suit on such claim (or continue an action commenced before the appointment of the receiver) in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such

court shall have jurisdiction to hear such claim).

12 U.S.C. § 1821(d)(6)(A). Consequently, if a Plaintiff's claim is disallowed, then a claimant may only sue "in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia." 12 U.S.C. § 1821(d)(6)(A)(ii); *see also Bank of N.Y.*, 607 F.3d at 920-21 (If the FDIC disallows a claim, "the claimant may request administrative review of the claim [or file suit on such claim] . . . in the district or territorial court of the United States for the district within which the depository institution's principal place of business is located or the United States District Court for the District of Columbia (and such court shall have jurisdiction to hear such claim)"); *Caires v. FDIC*, Case No. 16-cv-02651 (JGK), 2017 WL 1393735, at *5 (S.D.N.Y. 2017) (FIRREA limits post-exhaustion jurisdiction to the two courts specified by the statute).

Therefore, even if Plaintiff had exhausted the FIRREA claims process before filing this action (which it did not), it could only sue in the District of Columbia or the Southern District of New York. As a result, under sections 1821(d)(13)(D) and 1821(d)(6)(A), this Court does not have, nor could it ever acquire, subject matter jurisdiction over Plaintiff's claims or any putative class members' claims in this action. Finally, a transfer under 28 U.S.C. § 1631 would not be in the interest of justice under these circumstances, because 1) Plaintiff lacks prudential standing since it does not own the asserted claims, *see infra* § III; and 2) despite having previously been told months ago that it had filed in the wrong court in the FDIC-R's pre-motion letter (*see* ECF No. 42 at 2-3), Plaintiff continued to file amended complaints in this court without subject matter jurisdiction.

## III.   PLAINTIFF LACKS PRUDENTIAL STANDING FOR ALL CLAIMS.

### A.  Prudential Standing.

Prudential standing concerns "judicially self-imposed limits on the exercise of federal jurisdiction." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (citation omitted); *Am. Psychiatric Ass'n*

*v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016). "Even if a plaintiff satisfies the constitutional requirements of standing, a court may nevertheless deny standing for prudential reasons." *Knowles v. U.S. Coast Guard*, 924 F. Supp. 593, 599 (S.D.N.Y. 1996) (citations and internal quotations omitted); *see also Lamont v. Woods*, 948 F.2d 825, 829 (2d Cir. 1991) ("If [] constitutional minima are satisfied, a court may nevertheless deny standing for prudential reasons."). Prudential standing presents a threshold question of justiciability—i.e., is the plaintiff "entitled to have the court decide the merits of the dispute[?]" *Warth v. Seldin*, 422 U.S. 490, 498 (1975); *see also McCarty v. The Bank of New York Mellon*, 669 F. App'x 6, 7 (2d Cir. 2016) ("'[t]he question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues,' and it implicates both constitutional and prudential limits on the court's jurisdiction."). As such, the Supreme Court has recognized that prudential standing may be resolved even before addressing jurisdiction. *Tenet v. Doe*, 544 U.S. 1, 6 n. 4, (2005).

**B. Third Party Standing.**

One of the self-imposed limits on the exercise of federal jurisdiction is that a party may not rest its claims on the rights of third parties where it cannot assert a valid right to relief of its own. *Rajamin v. Deutsche Bank Nat. Tr. Co.*, 757 F.3d 79, 86 (2d Cir. 2014); *see also Am. Psychiatric Ass'n*, 821 F.3d at 358. In other words, "a plaintiff may ordinarily assert only his own legal rights, not those of third parties." *Am. Psychiatric Ass'n*, 821 F.3d at 358. Moreover, "[u]nlike constitutional standing, which focuses on whether a litigant sustained a cognizable injury-in-fact, 'the prudential standing rule . . . bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves.'" *United States v. Suarez*, 791 F.3d 363, 366 (2d Cir. 2015) (citations omitted). A plaintiff may be able to bring forth a claim based on the legal rights of a third party only when it satisfies the limited exception by showing that (1) the plaintiff

has a "close" relationship with the third party and (2) the third party is hindered from protecting his own interests. *Kowalski v. Tesmer*, 543 U.S. 125, 130 (2004) (citations omitted); *see also Am. Psychiatric Ass'n*, 821 F.3d at 358. As demonstrated below, Plaintiff fails to satisfy the third party standing exception, and Plaintiff lacks prudential standing.[5]

### C. Plaintiff's Claims Belong to the FDIC-R under FIRREA's Succession Clause Because the FDIC-R Succeeded to All Claims at Issue.

Congress directed, as part of FIRREA's statutory scheme, that the FDIC as receiver succeeds not only to the assets of a failed institution (here Signature) but also to "all rights" of the institution's stockholders (here Plaintiff) with respect to the institution and its assets:

> The [FDIC] shall, as conservator or receiver, and by operation of law, succeed to—
>
> (i) *all rights, titles, powers, and privileges* of the insured depository institution, and *of any stockholder*, member, accountholder, depositor, officer, or director of such institution *with respect to the institution and the assets of the institution*; . . . .

12 U.S.C. § 1821(d)(2)(A)(i) (emphasis added).

Under this Succession Clause, the FDIC-R owns all the claims that Plaintiff has attempted to assert in this action because they relate to Signature and the assets of Signature. This result follows from a plain reading of section 1821(d)(2)(A)(i)'s phrase "with respect to" the bank, which broadly includes any rights of a stockholder "pertaining to," "concerning," or "relating to" a failed bank and its assets, regardless of whether those rights are "derivative" or "direct." *Zucker v.*

---

[5] Rule 17(a)(1) . . . essentially codifies" the portion of the prudential standing doctrine that "encompasses . . . the general prohibition on a litigant's raising another person's legal rights." *Am. W. Bank Members v. Utah*, Case No. 16-CV-326, 2023 WL 4108352, at *4 n.3 (D. Utah June 21, 2023) (citation and internal quotation marks omitted). Rule 17(a)(1) states that every action "must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). "A real-party-in-interest defense can be raised as a Rule 12(b)(6) motion . . . because the plaintiff is not the person who should be bringing the suit," and thus, "the plaintiff has 'fail[ed] to state a claim upon which relief can be granted.'" *Whelan v. Abell*, 953 F.2d 663, 672 (D.C. Cir. 1992) (alterations in original).

*Rodriguez*, 919 F.3d 649, 656-7 (1st Cir. 2019) (quoting *Khan v. United States*, 548 F.3d 549, 556 (7th Cir. 2008) and *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1760 (2018)); *see also Pareto v. FDIC*, 139 F.3d 696, 700 (9th Cir. 1998) ("Congress has transferred everything it could to the FDIC . . . ."); *Esther Sadowsky Testamentary Trust v. Syron*, Case No. 08-CV-5221 (BSJ) (JCF), 2009 WL 10697000, at *2-3 (S.D.N.Y. Jan. 28, 2009) (same). Thus, the FDIC-R is the owner of not only the Bank's assets but also "all rights" of the Bank's stockholders *with respect to the Bank and its assets*.

      *Zucker v. Rodriguez* is instructive here. In that case, the bankruptcy plan administrator for the holding company (the sole stockholder) of a failed bank contended that the holding company's directors and officers "fail[ed] to implement and maintain effective internal controls over financial reporting" and "fail[ed] to provide complete and accurate financial reports to the Holding Company's board." *Zucker*, 919 F.3d at 653. As stated *supra* at pp. 6-9, the Plaintiff here seeks to recover because of alleged misconduct and mismanagement at the Bank by the Individual Defendants in their roles as directors and officers of the Bank and related misconduct by KPMG in its role as the Bank's auditor that resulted in a "a 99.81% [stock] drop and erased billions of dollars in shareholder value" which culminated in "many losing the entire value of their investment in the Bank." Complaint ¶¶ 25, 40, 194, 470. These losses alleged by Plaintiff are remarkably similar to those alleged by the *Zucker* plaintiff, who sued for the holding company's loss of both "its interest in the Bank" and "its investment in the Bank." *Zucker*, 919 F.3d at 650, 653. And whereas the plaintiff in *Zucker* "s[ought] to recover from assets, like insurance," *id*. at 656, if there were a judgment in Plaintiff's favor on its claims here, Plaintiff's recovery would likely be paid from the same sources as those available to the FDIC-R for claims against directors and officers of the Bank, such as the proceeds of any applicable D&O insurance policies.

In these circumstances—and regardless of the *Zucker* plaintiff's attempt to plead around §
1821(d)(2)(A)(i)—the FDIC as receiver succeeded to all the administrator's claims. *Id.* at 653,
656; *cf. Verdi*, 2023 WL 6388225 at *5 ("Litigants cannot avoid FIRREA's administrative
requirements through strategic pleading."). Stripped of their artful pleading, the claims in *Zucker*,
like Plaintiff's claims here, necessarily required the plaintiff to prove that but for the Defendants'
malfeasance, "the assets of the Bank would have been much greater, and … would have inured to
the benefit of the Holding Company as the Bank's parent stockholder." *Id.* at 656. Because "the
claims depend[ed] on the Holding Company's proving that malfeasance by its directors depressed
the Bank's assets," the claims "relate[d] to or concern[ed] the assets of the Bank." *Id. Zucker*
emphasized that the *Zucker* plaintiff was seeking to recover from proceeds from any available
D&O insurance policies. The First Circuit held, "the Holding Company's competing right to that
coverage is a claim of a stockholder with respect to an asset of the Bank [within the meaning of]
§ 1821(d)(2)(A)(i)." *Id.* at 657. Here, a recovery by Plaintiff may grab the same sources of recovery
available to the FDIC-R for its potential claims, such as proceeds of limited and wasting director and
officer insurance policies, and therefore seek to evade Congress' carefully crafted priority scheme, by
seeking to deprive the Receivership of those crucial assets.[6]

Plaintiff's claims are similar to those rejected in *Zucker*. As explained, Plaintiff's claims

---

[6] While the insurance proceeds are not an "asset" of the bank, the policy itself has been recognized
as such an asset regardless of whether the bank could recover under it. *See Nat'l Union Fire Ins.
Co. of Pittsburgh, Pa. v. City Sav., F.S.B.*, 28 F.3d 376, 384–85 (3d Cir. 1994), as amended (Aug.
29, 1994) ("Whether City Savings will ultimately be entitled to collect under the insurance policies
is not relevant to the threshold question of whether the insurance policies issued to CityFed and its
subsidiaries are assets of the banks. An insurance policy is of value to the owner and named insured
of the policy, even though it is possible that the owner and named insured will ultimately be found
not to be entitled to a particular recovery under the policy. For all of the above reasons, we
conclude that the plain meaning of the term 'assets' contained in § 1821(d)(13)(D)(i) includes the
insurance policies issued by National Union and Gulf to CityFed and its subsidiaries.").

all depend on its status as a Bank stockholder; concern activities at the Bank; and require proof that the Defendants' misconduct diminished Bank assets. Plaintiff's liability theory against the Individual Defendants is that they mismanaged the Bank by, among other things, ignoring "critical problems and deficiencies in the Bank's risk profile and liquidity risk management controls," "massively expand[ing] the Bank's liquidity risks by taking on billions of dollars in uninsured and volatile deposits from the cryptocurrency industry," and "[a]ll the while, Defendants failed to implement the essential controls to analyze, model and mitigate these risks." Complaint ¶ 2. Plaintiff further claims that the combination of "[Signature] management's lack of a well-documented and thoroughly tested liquidity contingency plan and its lack of preparedness for an unanticipated liquidity event" and its "exposure to a high concentration of uninsured digital asset deposits" "were the root cause of the bank's failure" and collapse. *Id*. ¶¶ 23, 71, 356.

Plaintiff's liability theory against KPMG is that KPMG failed to properly audit the Bank's assets, including failing to account for, among other things, serious and adverse facts facing the Bank's control environment, the Bank's GAAP violation with respect to failing to disclose depositor concentrations, and the Bank's pursuit of rapid, unrestrained growth without developing and maintaining adequate risk management practices and controls appropriate for the size, complexity and risk profile of the institution. *Id*. ¶¶ 7, 358-367, 373, 374-378. Plaintiff asserts as damages that it lost its investment in the Bank as the Bank's common stock experienced a "99.81% drop." *Supra* pp. 6, 20. These are the same reasons the First Circuit held that the plaintiff's claims related to the assets of the bank in *Zucker*. *See* 919 F.3d at 650-57 ("loss of its investment in the Bank"). Artful pleading aside, Plaintiff's claims against the Individual Defendants, and KPMG are for misconduct at and/or losses inflicted on *the Bank*, which misconduct and losses then harmed the Plaintiff because it was a stockholder of the Bank.

To the extent that Plaintiff asserts that the FDIC-R succeeds only to "derivative" and not "direct" stockholder claims, that argument is wrong and ignores the text, structure, history and purpose of FIRREA. "The most basic problem for [this] interpretation is that the direct-derivative distinction appears nowhere in the language of § 1821(d)(2)(A)." *Zucker*, 919 F.3d at 657. Pre-failure, derivative claims are rights of the bank and direct claims are rights of stockholders, but once a bank fails, the statute confers on the FDIC-R "all rights" of *both* "the [failed bank]" *and* "any stockholder" of the bank "with respect to the [bank] and the assets of the [bank]." 12 U.S.C. § 1821(d)(2)(A)(i). Both derivative and direct claims belong to the FDIC-R if they are "with respect to the [bank] [and] the assets of the [bank]." And whether that is so depends on the claims' relation to the bank and its assets—considered in light of FIRREA's purposes to have the FDIC maximize recovery for, and distribute assets to, all bank stakeholders according to a priority scheme prescribed by Congress—not the claims' categorization as "direct" or "derivative" under state law.[7]

This conclusion is compelled by § 1821(d)(2)(A)(i)'s plain language. As mentioned above, that statute confers on the FDIC-R "all" rights, powers, and privileges of "any stockholder" of a failed bank "with respect to" the institution and its assets, and "[w]ith respect to," meanwhile, is broad language meaning "pertaining to," "concerning," or "relating to" the Bank and its assets.

---

[7] The cases cited in Plaintiff's pre-motion response letter to support its contention that federal securities claims fall outside the scope of the Succession Clause fail to analyze the text, structure, history and purpose of FIRREA. Instead, the cases assumed the direct/derivative dichotomy applied without analyzing whether the Succession Clause required it. For example, in *Howard v. Haddad*, the court ruled that the FDIC did not succeed to the claims because they were not derivative. 916 F.2d 167, 169-170 (4th Cir. 1990). However, the court in applying the state law direct/derivative dichotomy failed to consider, let alone apply, critical language of the Succession Clause—namely, whether a stockholder's claims were "with respect to the [bank] [or] the assets of the [bank]." 12 U.S.C. § 1821(d)(2)(A)(i); *Zucker*, 919 F.3d 649 at 656-57; *Am. W. Bank Members*, 2023 WL 4108352, at *5-8.

*Zucker*, 919 F.3d at 656-57 (internal quotations omitted). Far beyond merely pertaining to, concerning, and relating to the Bank, Plaintiff's claims against the Individual Defendants and KPMG *hinge* on Defendants' conduct as directors, officers and accountants of the Bank and losses that Defendants caused the Bank, from which Plaintiff alleges the stockholders' damages then flowed. And because if there were a judgment in Plaintiff's favor on its claims, Plaintiff's recovery would likely be paid from the same sources as those available to the FDIC-R for claims against directors and officers of the Bank, Plaintiff is directly targeting sources of recovery that otherwise would be available to the Bank's Receivership.

That the FDIC-R owns the claims alleged in this case also follows from the structure and purpose of FIRREA, which confers on the FDIC-R alone the responsibility to collect bank assets and which mandates a priority scheme for distribution of such assets, which no private party may circumvent. *See Culbertson v. Berryhill*, 139 S. Ct. 517, 522 (2019) (examining "the structure of the statute and its other provisions" together with its plain language when interpreting a statute) (quoting *Maracich v. Spears*, 570 U.S. 48, 60 (2013)); *United States v. Transocean Deepwater Drilling, Inc.*, 767 F.3d 485, 496 (5th Cir. 2014) (considering, when interpreting a statute, "the full text of the statute, rather than one isolated clause, along with the statute's structure"). As *Zucker* explains, § 1821(d)(2)(A)(i)'s reservation for the receivership of claims with respect to banks and their assets is central to FIRREA's comprehensive statutory scheme for responding to bank crises. *See* 919 F.3d at 654-55, 658. That statutory scheme "helps assure the expeditious and orderly protection of all who are interested in the bank by placing the pursuit of its rights, protection of its assets, and payment of its liabilities firmly in the hands of a single, congressionally designated agency." *Pareto*, 139 F.3d at 700.

It would be fundamentally inconsistent with Congress's scheme of expeditious and orderly

protection of all stakeholders to pit the FDIC in competition against certain stakeholders for limited bank assets. In this way, §§ 1821(d)(2)(A)(i) and 1821(d)(11)(A) work together and should be read in tandem. Under § 1821(d)(2)(A)(i), Congress transferred to the FDIC as receiver all claims of stockholders of a failed bank with respect to the bank and the assets of the bank. Congress then mandated through § 1821(d)(11)(A)'s priority scheme that claims of stockholders are paid last. If permitted to proceed, Plaintiff's lawsuit, like the lawsuit in *Zucker*, "would allow former [stockholders] to turn this priority scheme on its head" by allowing a stockholder to be paid ahead of other claimants. 919 F.3d at 658; *see also Levin v. Miller*, 763 F.3d 667, 673 (7th Cir. 2014) (Hamilton, J., concurring) ("[A]llowing [the holding company] any prospect of recovery ahead of or on par with the FDIC turns the equities upside down."). *Zucker* recognizes that § 1821(d)(2)(A)(i) should not be read to defeat the priority scheme that Congress set or otherwise undermine Congress's determination to place these competing claims arising out of a bank failure into the hands of a single agency—the FDIC-R. *See* 919 F.3d at 658. This Court should not interfere with Congress's decision here., and, for the foregoing reasons, the FDIC-R respectfully requests the Court to grant its motion to dismiss because Plaintiff lacks prudential standing as it does not own the claims asserted in the Complaint.

## CONCLUSION

For these reasons, the FDIC-R respectfully requests that the Court dismiss with prejudice this case pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, and for such other and further relief as is just and appropriate.

**WOLLMUTH MAHER & DEUTSCH LLP**

By:  */s/ Ryan A. Kane*
    Ryan A. Kane
    Adam M. Bialek
    Maxwell G. Dillan
    Nicole C. Rende

500 Fifth Avenue
New York, New York 10110
Phone: (212) 382-3300
rkane@wmd-law.com
abialek@wmd-law.com
mdillan@wmd-law.com
nrende@wmd-law.com

*Attorneys for Federal Deposit
Insurance Corporation as Receiver for
Signature Bank*