UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

SJUNDE AP-FONDEN, Individually and on behalf of all others similarly situated,

                Plaintiff,

        v.

JOSEPH J. DEPAOLO, ERIC HOWELL, FRANK SANTORA, JOSEPH SEIBERT, SCOTT A. SHAY, VITO SUSCA, STEPHEN D. WYREMSKI, and KPMG LLP,

                Defendants.

Case No.: 23-cv-01921-FB-JRC

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
FEDERAL DEPOSIT INSURANCE CORPORATION
AS RECEIVER FOR SIGNATURE BANK'S MOTION TO DISMISS**

Ryan A. Kane
Adam M. Bialek
Maxwell G. Dillan
Nicole C. Rende
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Phone: (212) 382-3300
rkane@wmd-law.com
abialek@wmd-law.com
mdillan@wmd-law.com
nrende@wmd-law.com

*Attorneys for Federal Deposit Insurance Corporation as Receiver for Signature Bank*

March 1, 2024

**TABLE OF CONTENTS**

I. THE COURT LACKS SUBJECT MATTER JURISDICTION .......................................... 1

    A. Plaintiff Did Not Exhaust the FIRREA Claims Process *Before* Filing Suit ................... 1

    B. Plaintiff Cannot Exhaust the FIRREA Claims Process on Behalf of Putative Class Members ................................................................................................................ 3

    C. This Court Can Never Have Subject Matter Jurisdiction Over Disallowed Claims. ............................................................................................................................ 6

II. PLAINTIFF LACKS PRUDENTIAL STANDING FOR ALL CLAIMS .......................... 6

    A. There Is No Direct/Derivative Distinction in the Succession Clause ............................ 6

    B. Applying the Actual Test in the Succession Clause Results in the FDIC-R Succeeding to Plaintiff's Claims ..................................................................................... 9

    C. Plaintiff's Other Arguments Against Applicability of the Succession Clause Are Without Merit ........................................................................................................ 10

CONCLUSION ............................................................................................................................ 10

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Aaron v. Ill. Nat'l Ins*,
   2023 WL 7389034 (E.D. La. Nov. 8, 2023) ............................................................................8, 9

*Am. W. Bank Members v. Utah*,
   2023 WL 4108352 (D. Utah June 21, 2023) ..............................................................................9

*Benson v. JPMorgan Chase Bank, N.A.*,
   2010 WL 4010116 (N.D. Cal. Oct. 13, 2010) .......................................................................1, 5

*Brandow v. FDIC*,
   2008 WL 5378348 (N.D. Ohio Dec. 22, 2008) .....................................................................5, 6

*Cassese v. Wash. Mut., Inc.*,
   711 F. Supp. 2d 261 (E.D.N.Y. 2010) ..................................................................................3, 5

*Cassese v. Wash. Mut., Inc.*,
   743 F. Supp. 2d 148 (E.D.N.Y. 2010) .......................................................................................3

*Clark v. Busey*,
   959 F.2d 808 (9th Cir. 1992) .....................................................................................................6

*Collins v. Mnuchin*,
   938 F.3d 553 (5th Cir. 2019) .....................................................................................................8

*Collins v. Yellen*,
   141 S. Ct. 1761 (2021) ..........................................................................................................7, 8

*Davito v. AmTrust Bank*,
   743 F. Supp. 2d 114 (E.D.N.Y. 2010) ..................................................................................3, 5

*Dist. 65, UAW v. Harper & Row, Publishers, Inc.*,
   576 F. Supp. 1468 (S.D.N.Y. 1983) ..........................................................................................2

*Esther Sadowsky Testamentary Tr. on Behalf of Fed. Home Loan Mortg. Corp. v. Syron*,
   2009 WL 10697000 (S.D.N.Y. Jan. 28, 2009) .........................................................................8

*Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.*,
   902 F. Supp. 2d 476 (S.D.N.Y. 2012) .......................................................................................1

*Food Mktg. Inst. v. Argus Leader Media*,
   139 S.Ct. 2356 (2019) ...............................................................................................................7

*Freeman v. FDIC*,
　56 F.3d 1394 (D.C. Cir. 1995) ...................................................................................2, 5

*Holman v. Downey Sav. & Loan Ass'n*,
　2010 WL 11597286 (C.D. Cal. Apr. 21, 2010) ...........................................................3, 4

*Howard v. Haddad*,
　916 F.2d 167 (4th Cir. 1990) ..........................................................................................8

*In re Beach First Nat. Bancshares, Inc.*,
　702 F.3d 772 (4th Cir. 2012) ..........................................................................................8

*In re Cmty. Bank of N. Va. Mortg. Lending Pracs. Litig.*,
　954 F. Supp. 2d 360 (W.D. Pa. 2013) ..........................................................................3, 4

*In re Cylink Sec. Litig.*,
　178 F. Supp. 2d 1077 (N.D. Cal. 2001) ..........................................................................2

*In re Sunrise Sec. Litig.*,
　916 F.2d 874 (3d Cir. 1990) ............................................................................................8

*In re Vivendi Universal, S.A. Sec. Litig.*,
　765 F. Supp. 2d 512 (S.D.N.Y. 2011) .............................................................................2

*Levin v. Miller*,
　763 F.3d 667 (7th Cir. 2014) ..........................................................................................7

*Lubin v. Skow*,
　382 F. App'x 866 (11th Cir. 2010) ..................................................................................8

*Michels v. RTC*,
　1994 WL 242162 (D. Minn. Apr. 13, 1994) ................................................................3, 4

*Miller v. FDIC*,
　738 F.3d 836 (7th Cir. 2013) ..........................................................................................6

*Morales v. Trans World Airlines, Inc.*,
　504 U.S. 374 (1992) ........................................................................................................1

*Naskar v. United States*,
　82 Fed. Cl. 319 (2008) ....................................................................................................6

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav., F.S.B.*,
　28 F.3d 376 (3d Cir. 1994) .............................................................................................9

*Off. & Pro. Emps. Int'l Union Loc. 2 v. FDIC*,
 962 F.2d 63 (D.C. Cir. 1992) .................................................................................................4

*Pareto v. FDIC*,
 139 F.3d 696 (9th Cir. 1998) .................................................................................................8

*RTC v. Elman*,
 949 F.2d 624 (2d Cir. 1991) ..................................................................................................3

*Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*,
 365 F.3d 353 (5th Cir. 2004) .................................................................................................2

*Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*,
 531 F.3d 190 (2d Cir. 2008)...................................................................................................2

*Verdi v. FDIC*,
 2023 WL 6388225 (C.D. Cal. Sept. 28, 2023) .......................................................................1

*Walker v. FDIC*,
 2009 WL 5216980 (D.N.J. Dec. 29, 2009) ............................................................................5

*Zucker v. Rodriguez*,
 919 F.3d 649 (1st Cir. 2019) ......................................................................................... passim

**Statutes**

12 U.S.C. § 1821(d) ...................................................................................................... passim

**Rules**

Fed. R. Civ. P. 12..................................................................................................................4, 10

## I. THE COURT LACKS SUBJECT MATTER JURISDICTION

### A. Plaintiff Did Not Exhaust the FIRREA Claims Process *Before* Filing Suit

Plaintiff indisputably filed suit before exhausting the FIRREA claims process. Plaintiff's arguments for why the Court may nevertheless exercise jurisdiction all fail.

Plaintiff incorrectly argues that the exhaustion requirement only applies to claims against the failed bank. Opp. 14-17.[1] The plain text of Section 1821(d)(13)(D)(ii) does not support any such limitation as it requires exhaustion of "any claim relating to any act or omission of the [failed bank]"—it is not limited to claims against the failed bank.[2] Plaintiff does not dispute that another federal court so held in dismissing another Signature stockholder's similar claims against Signature's directors and officers. *See Verdi v. FDIC*, 2023 WL 6388225, at *6 (C.D. Cal. Sept. 28, 2023) ("Where the claims relate to an act or omission of an institution under the receivership of the FDIC, the court lacks jurisdiction prior to administrative exhaustion—*no matter the defendant*." (emphasis added)); *see also Fed. Hous. Fin. Agency v. JPMorgan Chase & Co.,* 902 F. Supp. 2d 476, 502 (S.D.N.Y. 2012) ("Where a claim is *functionally*, albeit not *formally*, against a depository institution for which the FDIC is receiver, it is a 'claim' within the meaning of FIRREA's administrative claims process." (emphasis in original)). Such a result is required by the breadth of the term "relating to": "the phrase 'relating to' has a deliberately broad and sweeping meaning when used by Congress in a statute." *Benson v. JPMorgan Chase Bank, N.A.*, 2010 WL 4010116, at *8 (N.D. Cal. Oct. 13, 2010) (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383-84 (1992)).

Further, Plaintiff's claims relate to the acts and omissions by the Bank's directors and

---

[1] "Mot." or "Motion" refers to the Memorandum of Law in Support of the FDIC-R's Motion to Dismiss; "Opp." refers to Plaintiff's Opposition to the Motion; and capitalized terms shall have the same meaning as in the Motion.

[2] Claim process exhaustion is also required by Section 1821(d)(13)(D)(i) because Plaintiff's claim ultimately seeks payment from the assets of Signature for which the FDIC has been appointed receiver.

1

officers made in furtherance of the business of the Bank, which constitute acts or omissions of the Bank. *See Dist. 65, UAW v. Harper & Row, Publishers, Inc.*, 576 F. Supp. 1468, 1483 (S.D.N.Y. 1983) ("A corporation is liable for the acts of its officers and directors committed in furtherance of the business of the corporation and in the scope of their employment."). Courts have held in the context of federal securities claims that a company is vicariously liable for the misrepresentations of its officers and directors. *See, e.g.*, *Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*, 531 F.3d 190, 195 (2d Cir. 2008) (company can be liable for securities fraud where "an agent of the corporation committed a culpable act with the requisite scienter, and that the act (and accompanying mental state) are attributable to" the entity); *Southland Sec. Corp. v. INSpire Ins. Sols., Inc.*, 365 F.3d 353, 365-66 (5th Cir. 2004) (corporation is liable for false or misleading statements in "SEC filings, reports and releases issued in its name" as long as the statements were made with scienter); *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 543 (S.D.N.Y. 2011) ("When the defendant is a corporate entity, the law imputes the state of mind of the employees or agents who made the statement(s) to the corporation."), *aff'd sub nom.*, 838 F.3d 223 (2d Cir. 2016); *In re Cylink Sec. Litig.*, 178 F. Supp. 2d 1077, 1088 (N.D. Cal. 2001) ("A corporate entity can be vicariously liable under section 10(b) for the fraud of its officers.").

Plaintiff's citation to other provisions of FIRREA and the FDIC-R's notices pursuant to those provisions do not alter the plain language of Section 1821(d)(13)(D). Courts have rejected similar attempts to rewrite Section 1821(d)(13)(D) by referring to other FIRREA provisions. *See, e.g.*, *Freeman v. FDIC*, 56 F.3d 1394, 1400-01 (D.C. Cir. 1995) (rejecting the argument that Section 1821(d)(13)(D) only requires exhaustion by "creditors" because the notice provisions of FIRREA only require notice to creditors). The cases relied upon by Plaintiff to limit the scope of claims subject to exhaustion are inapposite for the reasons set forth in the FDIC-R's Motion. *See*

2

Mot. 14 n.4. *Cassese v. Wash. Mut., Inc.* likewise is inapposite for similar reasons because it involved claims against the former parent company of a failed bank and therefore did not relate to acts or omissions of the failed bank. 743 F. Supp. 2d 148 (E.D.N.Y. 2010).

Plaintiff's argument that the Court has jurisdiction because its claim has been disallowed *after* it filed its action is wrong. Opp. 20-22. FIRREA provides for judicial review of a disallowed claim in only two circumstances: (1) a claimant may "file suit on such a claim" *after* disallowance; or (2) a claimant may "continue an action *commenced before the appointment of the receiver*" after disallowance. 12 U.S.C. § 1821(d)(6)(A) (emphasis added). Neither option provides a court jurisdiction over post-appointment actions, like Plaintiff's action, filed *before* the FDIC-R has disallowed the claim. Indeed, Second Circuit precedent makes clear that a court lacks subject matter jurisdiction unless a claimant files suit *after* exhaustion of the FIRREA claims process. *See RTC v. Elman*, 949 F.2d 624, 627 (2d Cir. 1991) ("[T]he statute means just what it says, and, accordingly . . . a claimant must first present its case . . . under the administrative procedure erected by FIRREA *before* seeking relief in the federal courts."). Exhausting the claims process is not a technicality; it is a prerequisite to a court's jurisdiction.

### B. Plaintiff Cannot Exhaust the FIRREA Claims Process on Behalf of Putative Class Members

Plaintiff cites no case permitting a named plaintiff to exhaust claims for putative class members. Courts throughout the country, including in this District, hold the opposite. *See, e.g.*, *Cassese v. Wash. Mut., Inc.*, 711 F. Supp. 2d 261, 270 (E.D.N.Y. 2010) (collecting cases); *Davito v. AmTrust Bank*, 743 F. Supp. 2d 114, 117 (E.D.N.Y. 2010); *In re Cmty. Bank of N. Va. Mortg. Lending Pracs. Litig.*, 954 F. Supp. 2d 360, 379 (W.D. Pa. 2013); *Holman v. Downey Sav. & Loan Ass'n*, 2010 WL 11597286, at *8 (C.D. Cal. Apr. 21, 2010); *Michels v. RTC*, 1994 WL 242162, at *2 (D. Minn. Apr. 13, 1994).

Plaintiff's argument that the PSLRA grants it authority to exhaust class claims under FIRREA is wrong. Opp. 21-23. Nothing in the PSLRA suggests that Congress intended to allow a class plaintiff to file an administrative claim on behalf of putative class members. Indeed, Plaintiff admits that "the PSLRA does not contain an express provision governing this situation." Opp. 22. Plaintiff cites no case stating that the Court can grant Plaintiff such authority when the legislature did not do so. Plaintiff's cited cases merely outline the powers that a class plaintiff has under the PSLRA to conduct litigation, but they have no application to the FIRREA claims process. Nor does *Off. & Pro. Emps. Int'l Union Loc. 2 v. FDIC* support Plaintiff's position as it held only that a union could file an administrative claim for collective bargaining benefits on behalf of the union members. 962 F.2d 63, 64, 66-67 (D.C. Cir. 1992). Courts have declined to extend *Local 2* to permit class claims under FIRREA. *See, e.g.*, *Holman*, 2010 WL 11597286, at *8 ("[T]he case that Plaintiffs cite in support of their contention that class claims are permissible under FIRREA . . . *Local 2* . . . does not help them. . . . In the absence of more persuasive authority, the Court finds that it does not have subject matter jurisdiction over the putative class claims filed by Plaintiffs."); *Michels*, 1994 WL 242162, at *2 n.10 (distinguishing *Local 2*).

Plaintiff is also wrong that dismissal of the class claim is premature for at least three reasons. *First*, the FDIC-R need not prove the lack of subject matter jurisdiction over the class claims—proving jurisdiction is Plaintiff's burden, which it failed to meet. Mot. 10. *Second*, because this is an issue of subject matter jurisdiction, no discovery is necessary. As the cases cited above recognize, class claims are properly dismissed pursuant to Rule 12(b)(1) when the individual class members failed to exhaust the FIRREA claims process. *In re Cmty. Bank*, 954 F. Supp. 2d at 379; *Holman*, 2010 WL 11597286, at *8; *Michels*, 1994 WL 242162, at *2. *Third*, Plaintiff is incorrect that the FDIC-R must provide additional notice of the claims bar date to unnamed

4

putative class members. The FDIC-R must only mail individual, written notice of the claims bar date to "any creditor shown on the institution's books." 12 U.S.C. § 1821(d)(3)(C). All other unknown, potential creditors may be notified by publication. 12 U.S.C. § 1821(d)(3)(B); *Benson*, 2010 WL 4010116, at *7 ("All that FIRREA requires for 'unknown claimants' is that the FDIC 'promptly publish a notice to the depository institution's creditors to present their claims.'"). Courts have held that class members are not entitled to individual notice from the FDIC. *See, e.g.*, *Brandow v. FDIC*, 2008 WL 5378348, at *1-2 (N.D. Ohio Dec. 22, 2008) ("FDIC provided notice in compliance with the statute" when publication of the claims bar date was made even when "plaintiffs argue[d] that all class members are 'known on the institution's books' [once the class was certified] and that all are entitled to mailed, individual, written notice of the claims bar date"); *Cassese*, 711 F. Supp. 2d at 271 ("[U]nnamed class members are not entitled to individual mailed notice from the FDIC."); *Davito*, 743 F. Supp. 2d at 117 ("[P]utative class members are not 'known' creditors that must receive an individual mailed notice under FIRREA.").

In any event, the FDIC-R's provision of notice to claimant is not a prerequisite to a claimant's compliance with FIRREA's mandatory claims process. *Freeman*, 56 F.3d at 1402 ("Even if [Plaintiffs] never received the required [FIRREA] notice . . . they were still obliged to exhaust their administrative remedies as a condition of obtaining access to the district court" and "by failing to do so, deprived the court of jurisdiction"); *Walker v. FDIC*, 2009 WL 5216980, at *2, *9 (D.N.J. Dec. 29, 2009) ("[T]he FDIC's obligation to give notice to claimants [is not] a prerequisite to a claimant's compliance with FIRREA's mandatory claims process," and thus the "failure to file a timely claim and therefore, exhaust the administrative claims review process is fatal to Plaintiffs' claims against WaMu"). Here, the FDIC-R published the required notice in the New York Times. S*ee* Greiser Decl. Ex. B. The publication notice sufficed to place creditors,

5

including unnamed class members, on notice and obligated compliance with FIRREA's exhaustion requirement. *Brandow*, 2008 WL 5378348, at *2.

### C. This Court Can Never Have Subject Matter Jurisdiction Over Disallowed Claims.

The FDIC-R established that Plaintiff filed suit in the wrong court and this Court can never have subject matter jurisdiction. Mot. 16-17. Plaintiff's only response is that its claims are not subject to the FIRREA claims process, Opp. 25, but that position is wrong for the above reasons.

Plaintiff's request for transfer to a court with jurisdiction also should be rejected as Plaintiff fails to demonstrate why transfer is in the interest of justice, especially since Plaintiff is a sophisticated party represented by counsel that was informed it filed in the wrong court in the FDIC-R's pre-motion letter. ECF No. 17. Additionally, transferring the case would constitute an impermissible equitable tolling of the 60-day deadline to bring this action in a court with jurisdiction after disallowance. *See* 12 U.S.C. § 1821(d)(6)(A). FIRREA's 60-day filing deadline is jurisdictional and is not subject to equitable tolling. *Miller v. FDIC*, 738 F.3d 836, 846 (7th Cir. 2013) (refusing to toll 60-day period because "§ 1821(d)(6)(A)'s 60-day time limit for seeking . . . judicial review of disallowed claims is jurisdictional"). More importantly, the interest of justice would not be served by transferring a case where Lead Plaintiff and putative class plaintiffs have failed to exhaust the administrative claims process and thus, the transferee court would not have subject matter jurisdiction over the transferred claims. *See Clark v. Busey*, 959 F.2d 808, 812 (9th Cir. 1992) ("Transfer is improper where the transferee court lacks jurisdiction and thus could not have originally heard the suit."); *Naskar v. United States*, 82 Fed. Cl. 319, 321-22 (2008) (declining to transfer because action "could not have been brought in the transferee court.").

## II. PLAINTIFF LACKS PRUDENTIAL STANDING FOR ALL CLAIMS

### A. There Is No Direct/Derivative Distinction in the Succession Clause

Plaintiff asks the Court to find that it owns its claims based on a direct versus derivative

6

claims distinction that appears nowhere in the text of FIRREA. *Zucker v. Rodriguez*, 919 F.3d 649, 656-57 (1st Cir. 2019) ("[T]he direct-derivative distinction appears nowhere in the language of § 1821(d)(2)(A)"). Plaintiff responds that the statute does not mention direct claims, Opp. 5, but this proves the point. The statute mentions neither direct nor derivative claims because it makes no distinction between the two types of claims. As the First Circuit held in *Zucker*: "In the end, there is *no ambiguity* in Congress's choice not to limit the claims to which the FDIC succeeds to derivative claims." 919 F.3d at 658 (emphasis added). Because the examination of §1821(d)(2)(A) yields a clear answer that it is not limited to derivative claims, the analysis should begin and end with the statute. *Food Mktg. Inst. v. Argus Leader Media*, 139 S.Ct. 2356, 2364 (2019).

Plaintiff's assertion that "[e]xcept for inapposite outlier authority" courts unanimously hold that the Succession Clause only applies to derivative claims misstates the law. Opp. 7. To date, only two Court of Appeals cases have addressed whether the Succession Clause applies to direct claims. In addition to the First Circuit's persuasive analysis in *Zucker*, the only Court of Appeals case to address the issue is in the Seventh Circuit. In *Levin v. Miller*, a pre-*Zucker* case, the Seventh Circuit's decision did not actually decide the issue because the parties there did not dispute in that motion that § 1821(d)(2)(A) was "limited to derivative claims a stockholder might have." 763 F.3d 667, 673 (7th Cir. 2014) (Hamilton, J., concurring). In a concurring opinion, however, Judge Hamilton actually analyzed the issue and concluded the Succession Clause should "be interpreted, for sound policy reasons, more broadly to include a stockholder's *direct* claims that are based on harms resulting from dealings with the assets of the failed institution[.]" *Id*. (emphasis in original). In *Zucker*, the First Circuit relied on the *Levin* concurrence. *Zucker*, 919 F.3d at 657-58. And, *Zucker*, in turn, is consistent with *Collins v. Yellen,* in which the Supreme Court analyzed the similar succession clause in the Housing and Economic Recovery Act ("HERA") without adopting

7

a distinction between direct and derivative claims even though the court below did so. *Compare Collins v. Yellen*, 141 S. Ct. 1761, 1781 (2021) (not reading a direct versus derivative distinction into the HERA succession clause), *with Collins v. Mnuchin*, 938 F.3d 553, 573 (5th Cir. 2019) (reading a direct versus derivative distinction into the HERA succession clause).[3]

Plaintiff's other cases miss the mark. In some of Plaintiff's cases, the distinction between direct and derivative claims was irrelevant because the claims were derivative and the FDIC owned them regardless, *see Lubin v. Skow*, 382 F. App'x 866, 871 (11th Cir. 2010); *Pareto v. FDIC*, 139 F.3d 696, 701 (9th Cir. 1998), or the parties did not contest that the Succession Clause applied only to derivative claims. *See In re Beach First Nat. Bancshares, Inc.*, 702 F.3d 772, 777 (4th Cir. 2012). Other cases did not consider the direct/derivative dichotomy in the context of the Succession Clause, and instead considered different issues, such as whether permitting direct suits would violate an "absolute priority" rule or generally impair the statutory mandate under FIRREA to protect and maximize the assets of the failed institution. *See In re Sunrise Sec. Litig.*, 916 F.2d 874, 889 (3d Cir. 1990); *Howard v. Haddad*, 916 F.2d 167, 170 (4th Cir. 1990).[4] While *Aaron v. Ill. Nat'l Ins.* notes other courts applied a direct/derivative test, it nevertheless embraced the test in *Zucker* and found that the claims asserted against the officer defendants belonged to the FDIC-R because the harm was suffered by the failed bank. 2023 WL 7389034, at *4-5 (E.D. La. Nov. 8, 2023). However, the *Aaron* court then appears to have inexplicably abandoned that test and found that the plaintiff owned the claims against an accounting firm because the accounting firm was

---

[3] Plaintiff's attempts to distinguish the facts in *Zucker* ignore the fundamental similarities between the allegations in *Zucker* and Plaintiff's allegations here, *see* Mot. 20, and misses the critical point that the articulation of the Succession Clause test in *Zucker* is not limited to those facts or claims.

[4] Plaintiff's contention that *Syron* "appl[ied] the Succession Clause" to derivative claims, Opp. 8, is factually wrong because the decision involved HERA, and the decision is off point because the claims were in fact derivative, making any distinction between direct and derivative claims irrelevant. *Esther Sadowsky Testamentary Tr. on Behalf of Fed. Home Loan Mortg. Corp. v. Syron*, 2009 WL 10697000, at *2 (S.D.N.Y. Jan. 28, 2009).

8

engaged by the holding company and not the failed bank. *Id*. at *5-6. Here, there is no dispute that KPMG was engaged by Signature. *Aaron* thus does not change the outcome here.

In short, the Succession Clause test is dependent not on how a claim is characterized under state law, but instead on whether the claim is with respect to the bank and the assets of the bank.[5]

### B. Applying the Actual Test in the Succession Clause Results in the FDIC-R Succeeding to Plaintiff's Claims

The proper Succession Clause test thus is whether a stockholder's claims are "with respect to the [bank] and the assets of the [bank]." 12 U.S.C. § 1821(d)(2)(A)(i); *Zucker*, 919 F.3d at 656-57; *Am. W. Bank Members v. Utah*, 2023 WL 4108352, at *5-8 (D. Utah June 21, 2023). Here, Plaintiff's claims indisputably are a stockholder's claims, so the first step of the test is met.

For the second step, Plaintiff ignores the FDIC-R's detailed showing that Plaintiff's claims are with respect to the Bank and the assets of the Bank. Mot. 6-9. Plaintiff instead baldly asserts that its claims are not with respect to the Bank and its assets because they are direct claims that seek recovery for the diminution in share value. Opp. 6. This is just another way of (incorrectly) saying all direct claims are automatically excluded from the Succession Clause. Regardless of the label Plaintiff applies to its claims, they require showing that but for Defendants' malfeasance, the assets of the Bank would have been much greater and inured to the benefit of stockholders such as Plaintiff, placing the claims within the Succession Clause. *Zucker*, 919 F.3d at 656.[6]

---

[5] Plaintiff's only response to FDIC-R's showing that failing to apply the Succession Clause would turn the priority scheme that pays stockholders last on its head, Mot. 24-25, is that it only seeks recovery from Individual Defendants and KPMG. Opp. 4. Plaintiff's position has no support in the statute or case law. The priority scheme broadly applies to "amounts realized from the liquidation or other resolution" of a failed bank without qualification, so it applies to amounts realized from claims against parties such as defendants here. 12 U.S.C. § 1821(d)(11)(A); Mot. 24-25.

[6] Plaintiff contends that the claims are not with respect to the assets of the Bank because the proceeds from D&O insurance are not a Bank asset. Opp. 12-14. FDIC-R did not contend the proceeds were assets of the Bank, but rather explained that insurance policies were such assets under *National Union.* Plaintiff's argument about who is insured under the policy was rejected by *Nation Union*, which stated: "Whether City Savings will ultimately be entitled to collect under the insurance policies is not relevant to the threshold question of whether the insurance policies issued to CityFed and its subsidiaries are assets of the banks." *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav., F.S.B.*, 28 F.3d 376, 384–85 (3d Cir. 1994), *as amended* (Aug. 29, 1994).

9

### C. Plaintiff's Other Arguments Against Applicability of the Succession Clause Are Without Merit

Plaintiff also argues that applying the Succession Clause to its claims will result in constitutional problems under the Takings Clause. Opp. 8-9. This exact argument was rejected by *Zucker*, not only because the canon of constitutional avoidance has no application absent ambiguity, but also because there was no constitutional problem: "There is no constitutional problem in any event. The Takings Clause requires the government to provide just compensation before taking private property for public use, but only for deprivations of vested property rights. And, for purposes of the Takings Clause, [i]t is well established that a party's property right in a cause of action does not vest until a final, unreviewable judgment has been obtained." *Zucker*, 919 F.3d at 659 (alteration in original) (citations and internal quotation marks omitted).

Plaintiff's reliance on Congress's rejection of a proposal to give the FDIC-R priority over shareholder claims was also rejected by *Zucker*. Opp. 9-10. The *Zucker* plaintiff, like Plaintiff here, asked the court "to infer that the . . . rejection of § 214(o)'s priority language means that Congress could not have intended to give the FDIC ownership of claims like his." *Zucker*, 919 F.3d at 660. But, as the First Circuit explained, "[i]nferences of this sort are notoriously unreliable and are to be avoided by courts. The fact that Congress rejected a provision about one thing tells us little about what Congress intended in enacting a provision about something else." *Id.*

## CONCLUSION

For the reasons set forth above and in the Motion, the FDIC-R respectfully requests that the Court dismiss this case with prejudice pursuant to Rules 12(b)(1) and 12(b)(6), and for such other and further relief as is just and appropriate.

10

**WOLLMUTH MAHER & DEUTSCH LLP**

By: /s/    Ryan A. Kane
      Ryan A. Kane
      Adam M. Bialek
      Maxwell G. Dillan
      Nicole C. Rende
      500 Fifth Avenue
      New York, New York 10110
      Phone: (212) 382-3300
      rkane@wmd-law.com
      abialek@wmd-law.com
      mdillan@wmd-law.com
      nrende@wmd-law.com

*Attorneys for Federal Deposit Insurance Corporation as Receiver for Signature Bank*