UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SJUNDE AP-FONDEN, Individually and on
behalf of all others similarly situated,

                  *Plaintiff*,

      v.

JOSEPH DEPAOLO, ERIC HOWELL,
FRANK SANTORA, JOSEPH SEIBERT,
SCOTT SHAY, VITO SUSCA, STEPHEN
WYRMESKI, and KPMG INTERNATIONAL
LIMITED,

                  *Defendants*.

Civil Case No. 1:23-cv-01921-FB-JRC

 

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF DEFENDANT JOSEPH SEIBERT'S MOTION TO DISMISS
THE CONSOLIDATED COMPLAINT**

 

HARRIS ST. LAURENT & WECHSLER LLP
40 Wall Street, 53rd Floor
New York, NY 10005
T. (212) 397-3370
F. (212) 202-6206

*Attorneys for Defendant Joseph Seibert*

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................. 1

ARGUMENT ....................................................................................................................... 1

    A.  Plaintiff Fails to Show That Seibert's Single Challenged Statement Was Materially False or Misleading. ....................................................................................................... 1

        1.  Seibert's Statement Did Not Omit Any Necessary Information. ................................. 2

        2.  Seibert's Statement is a Non-Actionable Opinion. ....................................................... 4

    B.  The Complaint Does Not Allege Loss Causation .................................................... 6

    C.  The Complaint Does Not Plead Scienter. ............................................................... 6

    D.  Plaintiff Concedes That Seibert Is Not Subject to a Scheme Liability Claim. ..................... 9

CONCLUSION.................................................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Ark. Pub. Empl. Ret. Sys. v. Bristol-Myers Squibb Company*,
28 F.4th 343 (2d Cir. 2022) ........................................................................................ 7

*ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009)........................................................................................ 6

*In re Ambac Fin. Grp., Inc. Sec. Litig.*,
693 F. Supp. 2d 241 (S.D.N.Y. 2010)........................................................................ 8

*In re AT&T/DirecTV Now Sec. Litig.*,
480 F. Supp. 3d 507 (S.D.N.Y. 2020)........................................................................ 5

*In re Citigroup Sec. Litig.*,
2023 WL 2632258 (S.D.N.Y. Mar. 24, 2023) ........................................................... 5

*In re Eastman Kodak Co. Sec. Litig.*,
632 F. Supp. 3d 169 (W.D.N.Y. 2022) ...................................................................... 2

*In re Philip Morris Int'l Sec. Litig.*,
89 F.4th 408 (2d Cir. 2023) .................................................................................. 4, 5

*In re Sotheby's Holdings, Inc.*,
2000 WL 1234601 (S.D.N.Y. Aug. 31, 2000)........................................................... 7

*In re Wells Fargo & Co. Sec. Litig.*,
2021 WL 4482102 (S.D.N.Y. Sept. 30, 2021)........................................................... 4

*Jiajia Luo v. Sogou, Inc.*,
465 F. Supp. 3d 393 (S.D.N.Y. 2020)........................................................................ 3

*Lentell v. Merrill Lynch & Co.*,
396 F.3d 161 (2d Cir. 2005)........................................................................................ 6

*Local No. 38 Int'l Broth. Of Elec. Workers Pension Fund v. Am. Express Co.*,
724 F. Supp. 2d 447 (S.D.N.Y. 2010)........................................................................ 9

*Meyer v. Jinkosolar Holdings Co.*,
761 F.3d 245 (2d Cir. 2014)........................................................................................ 2

*Meyer v. Organogenesis Holdings Inc.*,
2024 WL 1346432 (E.D.N.Y. Mar. 29, 2024).......................................................... 3

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 175 (2015) ..................................................................................................... 6

*Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*,
  11 F.4th 90 (2d Cir. 2021) ........................................................................................ 2, 4

*SEC v. Rio Tinto plc*,
  41 F.4th 47 (2d Cir. 2022) ........................................................................................... 9

*Strougo v. Barclays PLC*,
  105 F. Supp. 3d 330 (S.D.N.Y. 2015) ......................................................................... 8

*Tongue v. Sanofi*,
  816 F.3d 199 (2d Cir. 2016) ......................................................................................... 5

**INTRODUCTION**

The fundamental flaw in Plaintiff's claims against Defendant Joseph Seibert is that his single allegedly fraudulent statement, comparing the price of Bitcoin with Signature's deposit growth and noting continued onboarding of clients, ***was accurate***. Plaintiff's brief ("Opp. Br.") never contends otherwise. Instead, it abandons any challenge to the truth of Seibert's words in favor of a baseless "omission" theory: Seibert should be held liable for not volunteering that the Bank lacked "tools" or "models" to verify his opinion, or that the new clients were risky. But there was no reason for Seibert to address either topic. He did not speak about them; his conclusion did not rely on them; he was not part of risk management; and the data on which he based his opinion was public, allowing anyone to test Seibert's conclusion using no more than an internet connection and a sheet of graph paper.

Beyond this, Plaintiff's brief does not answer the argument that Seibert's one statement is non-actionable opinion; does not even attempt to establish loss causation as to Seibert; fails to allege scienter against Seibert other than through an improper and legally deficient burden-shifting argument that "Seibert must have known"; and fails entirely to allege scheme liability against him.

The Complaint against Seibert should be dismissed with prejudice.

**ARGUMENT**

A.     **Plaintiff Fails to Show That Seibert's Single Challenged Statement Was Materially False or Misleading.**

The context of Seibert's single alleged misstatement bears repeating. On March 11, 2022, Seibert responded to an analyst's request that he "characterize"—in other words, give his opinion on—"the growth of the [crypto banking] industry over the last year," CC ¶ 285, as follows:

> So some institutions are choosing to do custody, which I think helps adoption, and some are actually purely investing in certain digital assets. So we continue to see growth. ***Again the price of Bitcoin doesn't have anything to do with our growth one way or the other.***

1

> ***But we're just adding more clients, more prospects that we deem a
> fit for our ecosystem.*** And we're also continuing to say Signet is
> going to be that payment mechanism that they need to communicate
> with each other 24/7 for years to come.

CC ¶ 286 (emphasis in Complaint).[1] Plaintiff does not dispute that this statement is ***true***. *See* Opp.

Br. at 25. Instead, Plaintiff's brief scrapes together an omission-based theory of liability that

collapses under its own weight.

      1.      <u>Seibert's Statement Did Not Omit Any Necessary Information.</u>

It is axiomatic that when one chooses to speak, one must "tell the whole truth." *Meyer v.

Jinkosolar Holdings Co.*, 761 F.3d 245, 250 (2d Cir. 2014). However, making a statement about a

topic "[does] not trigger a generalized duty requiring defendants to disclose the entire corpus of

their knowledge regarding that topic." *In re Eastman Kodak Co. Sec. Litig.*, 632 F. Supp. 3d 169,

188 (W.D.N.Y. 2022) (citing *Plumber & Steamfitters Loc. 773 Pension Fund v. Danske Bank A/S*,

11 F.4th 90, 98, 103 n.4 (2d Cir. 2021)). The obligation to speak only extends to information that

is "sufficiently connected to the existing disclosures that the omission of the [claimed misconduct]

rendered those disclosures misleading." *Eastman Kodak*, 632 F. Supp. 3d at 188 (internal quotation

marks and citation omitted).

Plaintiff's brief impermissibly groups Seibert's single statement with separate statements

made by Howell and DePaolo that address deposits and the price of Bitcoin, one of which includes

a reference to "modeling tools." Opp. Br. at 25-26. Plaintiff then claims that all of these statements

were misleading because they omitted alleged regulatory findings that the Bank lacked "the

---

[1] This is the only statement alleged against Seibert. Plaintiff concedes Seibert's position on group
pleading from pages 7-10 of his moving brief ("Moving Br.") by confirming that the Complaint
"attributes each [alleged] misstatement to the responsible speakers and/or signatories of SEC
filings." Opp. Br. at 52.

requisite tools to assess and mitigate the impact of cryptocurrency volatility on the Bank's deposits." *Id.* at 26.

First, Seibert joins Howell and DePaolo's arguments that these statements are not actionable, and that Plaintiff's brief misrepresents the FDIC's actual findings about "tools," *i.e.,* that Signature had them and was improving them. *See* Reply in Support of DePaolo and Howell's Motion to Dismiss Consolidated Class Action Complaint (the "Joint Brief"), at 5-6.

Beyond this, Seibert's statement did not address "modeling tools" or any effort to "assess any mitigate the impact of cryptocurrency volatility." Nor is Seibert alleged to have relied on or required "modeling tools" in making his statement (which simply compares two publicly known variables.). Nor does Plaintiff explain why "modeling tools" are "sufficiently connected" to Seibert's conclusion to require disclosure or discussion, given that the conclusion is testable by any investor. *See Jiajia Luo v. Sogou, Inc.*, 465 F. Supp. 3d 393, 407 (S.D.N.Y. 2020) ("[R]evealing one fact about a subject does not trigger a duty to reveal all facts on the subject."); *Meyer v. Organogenesis Holdings Inc.*, 2024 WL 1346432, at *15 (E.D.N.Y. Mar. 29, 2024) (dismissing securities fraud claims where statements about marketing strategies and the importance of Medicare reimbursement to the company's business were not alleged to be false, and did not directly implicate a purported underlying Medicare marketing scheme in a way that would create a duty to disclose that purported scheme).

Plaintiff also obscures the context of Seibert's statement. Seibert spoke on March 11, 2022, *more than a year* after the last statement Howell is alleged to have made regarding "tools," *see* CC ¶¶ 214, 221, and 8 months after the last statement identified in the Complaint addressing the price of Bitcoin and deposit growth.  *Id.* ¶¶ 249-50. Plaintiff's brief omits the dates of these

3

statements (Opp. Br. at 24-27) to suggest that they should be read as a unified whole. They should not.

Finally, Seibert's statement that the Bank was onboarding clients deemed a "fit" for its "ecosystem" omits nothing. Neither Seibert's statement nor the context in which it was made suggests he was speaking about *how* clients were deemed a "fit" or whether they presented any risk. At most, Seibert's statement shows that the Bank made decisions about whether any given client was a good "fit," which all banks do. This is too attenuated a link to allegedly concealed information to be actionable. *See Plumber & Steamfitters Loc. 773 Pension Fund*, 11 F.4th at 103 n.4 ("[T]he Funds' omission-based theory is strained because the connection between the topic Danske chose to discuss (a new anonymous reporting system) and the allegedly omitted information ([a whistleblower's] allegations) is fairly attenuated.").

2.      Seibert's Statement is a Non-Actionable Opinion.

Next, Plaintiff claims that Seibert's statement of opinion was actually one of fact, reflexively citing to *Omnicare* without any explanation or analysis. Opp. Br. at 44. Context and plain language demonstrate otherwise.

*First*, the question that prompted Seibert's statement asked how he would "***characterize*** the growth of the industry over the last year," CC ¶ 285 (emphasis added)—in other words, Seibert was asked for his opinion and gave it. *See In re Philip Morris Int'l Sec. Litig.*, 89 F.4th 408, 418 (2d Cir. 2023) (rejecting argument that opinion statements must begin with "we think" or "we believe"); *see In re Wells Fargo & Co. Sec. Litig.,* 2021 WL 4482102, at *19 (S.D.N.Y. Sept. 30, 2021) ("In light of the specific framing of the reporter's question and Mr. Shrewsberry's vague—but accurate—response, Mr. Shrewsberry's failure to disclose that Wells Fargo had already received a rejection as a part of that long process is not actionable."). There is no allegation that

Seibert did not believe his opinion when he presented it. *See In re Citigroup Sec. Litig.*, 2023 WL 2632258, at \*18 (S.D.N.Y. Mar. 24, 2023).

*Second*, on its face, Seibert's statement compares two publicly known facts and draws a conclusion about their relationship/correlation. This makes it an "inherently subjective" matter of opinion that is not actionable. *See Philip Morris Int'l Sec. Litig.*, 89 F.4th at 419-20 (reasoning that conclusions drawn from testing regimens "cannot properly be characterized as a statement of fact"); *In re AT&T/DirecTV Now Sec. Litig.*, 480 F. Supp. 3d 507, 539 (S.D.N.Y. 2020) (finding omission from SEC filing immaterial and non-actionable because the alleged problem "was covered by at least four popular news outlets" at the relevant time). Indeed, Seibert's observation is no different from that of an expert witness called to opine on whether two datasets correlate or show evidence of causation.

Plaintiff's attempts to distinguish *Philip Morris* fail. It argues that even if Seibert's statement was opinion, it falls outside of *Philip Morris* because it "lacked any supporting analysis" due to Signature's failure to "sufficiently conduc[t] any specific analysis of its deposit base, adverse market liquidity events, or the correlation between deposits and the price of Bitcoin," which "ultimately led to the collapse of the Bank." Opp. Br. at 45.

But all that *Philip Morris* requires to insulate a speaker from liability is that the opinion they express not be "objectively irrational or unreasonable" when made. *See* 89 F.4th at 422. Fundamentally, Seibert's opinion was reasonable because it was correct, a reality that Plaintiff does not and cannot deny. *See Tongue v. Sanofi*, 816 F.3d 199, 214 (2d Cir. 2016) (dismissing securities fraud claim where "[n]owhere in the complaints do Plaintiffs even allege that the Defendants' interpretation of the data was irrational or unreasonable, and such an allegation would have little merit anyway"). The chart appearing on page 13 of Seibert's moving brief visually

5

demonstrates that his opinion was both rational and reasonable. Any investor could test Seibert's conclusion for themselves using no more than the historical price of Bitcoin (public, available anywhere), data on Signature's deposit growth (public, in Signature's SEC filings), and a piece of graph paper. And even if Seibert's opinion (like any opinion) turned out to be wrong in the future, that would not make his statement actionable. *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 186 (2015).

Thus, Plaintiff has failed to plead that Seibert's statement was materially false or misleading.

**B.     The Complaint Does Not Allege Loss Causation**

Seibert argued in his moving brief that his one statement did not cause any of Plaintiff's losses. Moving Br. at 17. Plaintiff's opposition brief does not even attempt to establish loss causation with respect to Seibert. Plaintiff does not refer to Seibert's statement, or to any facts alleged regarding Seibert, in its loss causation analysis. Opp. Br. at 91-95. The Complaint thus pleads no basis to conclude that Seibert's opinion comparing the price of Bitcoin and deposit growth, or his observation that the Bank continues to onboard clients who "fit" its "ecosystem," caused Plaintiff's losses. *See Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005) (requiring pleading that "the subject of the fraudulent statement or omission was the cause of the actual loss suffered") (internal quotation marks and citation omitted).

**C.     The Complaint Does Not Plead Scienter.**

As set forth in Seibert's moving brief, none of the Complaint's catch-all theories of scienter satisfy the PSLRA's strict pleading requirements as to Seibert. *See* Moving Br. at 16; *ECA, Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009). The Complaint does not plausibly allege that Seibert had "motive and opportunity" to commit fraud, or present "strong circumstantial evidence of [Seibert's] conscious misbehavior or

6

recklessness" that reflects "highly unreasonable behavior or [behavior that] evinces an extreme departure from the standards of ordinary care." *Ark. Pub. Empl. Ret. Sys. v. Bristol-Myers Squibb Company*, 28 F.4th 343, 355 (2d Cir. 2022).

Plaintiff's brief relies instead on the thinnest of arguments: that Seibert "either knew or was recklessly indifferent to the fact that [Signature] lacked the models and analytical tools to support his claim" because the Bank's regulators concluded no such models existed. Opp. Br. at 71. Plaintiff then urges the Court to infer that Seibert, "as a member of [Bank] management," was aware of this conclusion by virtue of "his specific position" leading the Bank's Digital Asset Group. *Id*.

This argument and inference have no basis in fact or law. The Complaint pleads no facts demonstrating that Seibert was a member of Bank "management" or that he had any policy-making role at the Bank. Moving Br. at 3. Nor does it allege Seibert was a member of the Bank's board or any of its committees. CC ¶¶ 37, 116, 406, 408. Seibert was the leader of a private client group without executive authority, which is insufficient to support an inference that he was aware of wrongdoing. *See In re Sotheby's Holdings, Inc.*, 2000 WL 1234601, at *7 (S.D.N.Y. Aug. 31, 2000) ("It is well established that boilerplate allegations that defendants knew or should have known of fraudulent conduct based solely on their board membership or executive positions are insufficient to plead scienter.").

Likewise, there is no factual allegation Seibert received copies of the regulators' reports containing the conclusions Plaintiff alleges he omitted from his statement. Moving Br. at 16. Plaintiff's only response is to claim that Seibert provided "no factual support" for the contention that he did not receive these reports. Opp. Br. at 71. But it is not Seibert's job to establish facts on

7

a motion to dismiss; it is Plaintiff's job to plead particularized ones that demonstrate scienter, which it has not done.[2] Plaintiff cannot shift its burden of proof to Defendant.

Plaintiff cites two cases to support its argument that Seibert's knowledge of the contents of regulatory reports can be inferred, but both are at odds with the facts alleged in the Complaint. *Strougo v. Barclays PLC*, 105 F. Supp. 3d 330 (S.D.N.Y. 2015), dealt with alleged fraudulent statements made by Barclays executives about their "dark pools." The court found that plaintiff had adequately pled scienter against Barclay's former Head of Equities Electronic Trading, who was the "source of many of the allegedly false allegations" about how dark pools operated, was the "driving force" behind the dark pool business, and who "held himself out" as "intimately knowledgeable" about the topics he was alleged to have lied about. *Id.* at 351. Seibert, however, is not alleged to have been a "driving force" in any fraud; is not alleged to have made more than one actionable statement; and is never alleged to have held himself out, even once, as "intimately knowledgeable" about the Bank's use of models or tools for risk management.

Likewise, in *In re Ambac Fin. Grp., Inc. Sec. Litig.*, 693 F. Supp. 2d 241 (S.D.N.Y. 2010), the court declined plaintiffs' invitation to codify what factual "suppositions" could support a strong inference of scienter that a senior executive knew his statements about CDO portfolios were false. *Id.* at 268. Instead, that court concluded plaintiffs had "sufficiently pleaded . . . awareness of facts contradicting [the defendant's] statements about the performance of Ambac's CDO portfolio." *Id.* Here, Plaintiff does not plead that Seibert was actually aware of the facts it claims he concealed. Nor does it follow that Seibert can be inferred to have knowledge of "models" or "tools" related

---

[2] As noted above, Plaintiff mischaracterizes the FDIC's position regarding "modeling tools." Thus, even if Seibert had received the reports—which Plaintiff does not plead he did—those reports are consistent with Seibert's statement. *See* Joint Brief at 5-6.

to risk management simply because he was the head of a private client group who is not alleged to have any risk management function. *See Local No. 38 Int'l Broth. Of Elec. Workers Pension Fund v. Am. Express Co.*, 724 F. Supp. 2d 447, 462 (S.D.N.Y. 2010) ("assertions that certain information was the 'sort of measurement' or 'would have been' reviewed by the Individual Defendants are too speculative to give rise to a strong inference of scienter"); *id.* (observing that to ground liability in knowledge of specific reports, a plaintiff should be able to "recount specific meetings at which the Individual Defendants actually received contradictory information").

Thus, the Complaint fails to plead that Seibert acted with scienter.

**D.     Plaintiff Concedes That Seibert Is Not Subject to a Scheme Liability Claim.**

When pressed by Defendants to explain its broadly-pled scheme liability theory, Plaintiff essentially conceded that certain Defendants, including Seibert, did not take part in any alleged scheme. Opp. Br. at 90. To establish scheme liability under Rule 10b-5 subsections (a) and (c), Plaintiff must identify specific actions taken by each alleged participant beyond merely making an allegedly false or misleading statement. *SEC v. Rio Tinto plc*, 41 F.4th 47, 53-55 (2d Cir. 2022). Plaintiff pleads no such action against Seibert and his name does not appear in that section of Plaintiff's brief. Opp. Br. at 90. Accordingly, Plaintiff's scheme liability claim must be dismissed as against him.

## **CONCLUSION**

For the reasons set forth above and in Seibert's moving brief, the Complaint should be dismissed as against Seibert. Given that none of the Complaint's shortcomings can be addressed by amendment, this dismissal should be with prejudice.

DATED:    May 24, 2024
New York, NY

Respectfully submitted:

*/s/ Joseph Gallagher*
Jonathan Harris
Joseph Gallagher
HARRIS ST. LAURENT & WECHSLER LLP
40 Wall Street, 53rd Floor
New York, NY 10005
T: (212) 397-3370
E: jon@hs-law.com
E: jgallagher@hs-law.com

*Attorneys for Defendant Joseph Seibert*

10