**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

SJUNDE AP-FONDEN,

        Plaintiff,

   v.

JOSEPH J. DEPAOLO et al.,

        Defendants.

No. 1:23-cv-1921-FB-JRC

**REPLY IN SUPPORT OF**
**KPMG LLP'S MOTION TO DISMISS**

Richard T. Marooney
Kevin J. O'Brien
**KING & SPALDING LLP**
1185 Avenue of the Americas
New York, New York 10036
Phone: (212) 556-2100
rmarooney@kslaw.com
kobrien@kslaw.com

Lisa Bugni
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, CA 94111
Phone: (415) 318-1200
lbugni@kslaw.com

*Counsel for Defendant KPMG LLP*

**<u>TABLE OF CONTENTS</u>**

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... ii

    A.     Plaintiff fails to plead an actionable false or misleading statement........................1

          1.     KPMG's financial-statement opinion was not false ....................................1

          2.     KPMG's internal-control-over-financial-reporting opinion
               was not false...........................................................................................4

    B.     Plaintiff fails to plead a strong inference of scienter ................................................6

    C.     The Complaint fails to allege how KPMG's opinions caused
          Plaintiff's loss ..........................................................................................9

CONCLUSION...........................................................................................................10

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*In re Advanced Battery Techs., Inc.*,
   781 F.3d 638 (2d Cir. 2015)........................................................................7

*In re AIG 2008 Sec. Litig.*,
   2013 WL 1787567 (S.D.N.Y. Apr. 26, 2013).........................................3

*In re Am. Bus. Fin. Servs., Inc.*,
   2008 WL 3405580 (E.D. Pa. Aug. 11, 2008) ............................................8

*Amorosa v. AOL Time Warner Inc.*,
   409 F. App'x 412 (2d Cir. 2011) ........................................................8, 9

*In re AOL Time Warner*
   381 F. Supp. 2d 192 (S.D.N.Y. 2004)......................................................8

*In re Bear Stearns Cos.*,
   763 F. Supp. 2d 423 (S.D.N.Y. 2011).................................................4, 8

*Chapman v. Mueller Water Prod., Inc.*,
   466 F. Supp. 3d 382 (S.D.N.Y. 2020).....................................................7

*Dobina v. Weatherford Int'l Ltd.*
   909 F. Supp. 2d 228 (S.D.N.Y. 2012).....................................................9

*In re E.S. Bankest, L.C.*,
   2010 WL 1417732 (Bankr. S.D. Fla. Apr. 6, 2010) ...............................9

*George v. China Auto. Sys., Inc.*,
   2012 WL 3205062 (S.D.N.Y. Aug. 8, 2012)............................................2

*Green v. Deutsche Bank AG*,
   2019 WL 4805804 (S.D.N.Y. Sept. 30, 2019).........................................6

*In re IMAX*
   587 F. Supp. 2d 471 (S.D.N.Y. 2008)......................................................8

*Lattanzio v. Deloitte & Touche LLP*,
   476 F.3d 147 (2d Cir. 2007)....................................................................10

*McIntire v. China MediaExpress Holdings, Inc.*
   927 F. Supp. 2d 105 (S.D.N.Y. 2013)......................................................7

*In re OSG Sec. Litig.*,
    2015 WL 3466094 (S.D.N.Y. May 29, 2015) ........................................................10

*In re Qiwi*
    2023 WL 7283619 (E.D.N.Y. Nov. 3, 2023)..............................................................6

*In re Royal Ahold N.V.*,
    351 F. Supp. 2d 334 (D. Md. 2004) ..........................................................................9

*SEPTA v. Orrstown Fin. Servs., Inc.*,
    2022 WL 3572474 (M.D. Pa. Aug. 18, 2022) ...........................................................9

*In re Wash Mut.*,
    694 F. Supp. 2d 1192 (W.D. Wash. 2009)................................................................4

*Wright v. Ernst & Young LLP*,
    152 F.3d 169 (2d Cir. 1998)......................................................................................2

**Other Authorities**

17 C.F.R. § 240.13a-15 .....................................................................................................5

68 Fed. Reg. 36,636 (June 18, 2003) ................................................................................5

KPMG's Motion to Dismiss ("Motion") shows that the Complaint fails to plead, in any way approaching the applicable heightened pleading standards, a Section 10(b) claim against an auditor: it does not allege a false statement (in the form of either KPMG's financial-statement opinions or KPMG's internal-control-over-financial-reporting opinions); it does not allege scienter (that KPMG had actual intent to aid in fraud); and it does not allege loss causation (that KPMG's audit opinions were the cause of investment losses). In a nearly 100-page Omnibus Memorandum in Opposition ("Opposition"), Plaintiff devotes scant attention to KPMG's Motion. Where it does, it falls far short of showing that a viable claim has been pleaded.[1] Instead, Plaintiff attempts to pivot to a new theory of liability and rehashes arguments that courts consistently have rejected. The claim against KPMG should be dismissed.

A.    **Plaintiff fails to plead an actionable false or misleading statement**

1.    ***KPMG's financial-statement opinion was not false***

The Complaint alleges, in the section titled "KPMG's Materially False or Misleading Statements and Omissions of Material Fact," that KPMG's opinions on the Bank's financial statements were false because the financial statements failed to include a note disclosing the concentration of the Bank's uninsured deposits:

> 386.    The statement set forth in ¶385 [KPMG's opinion on the financial statements] was materially false or misleading . . . because SBNY's financial statements were not issued in conformity with GAAP ***because SBNY's financial statements did not disclose the Bank's concentration in large, uninsured deposits*** . . . .

Compl. ¶ 386 (emphasis added) (regarding 2020 audit); *accord id.* ¶ 391 (2021); *id.* ¶ 396 (2022). In its Motion, KPMG shows that this assertion fails for two reasons: (1) the Bank did disclose its

---

[1] Presumably through oversight, the Opposition, unlike the Complaint, lumps KPMG into its catchall definition of "Defendants." *Compare* Opp. at xvi *with* Compl. ¶ 38. But the only portions of the Opposition that pertain to KPMG are those that explicitly say so. *See* Opp. §§ II, IV, at 95.

"concentration in large, uninsured deposits" in its Forms 10-K; and (2) the GAAP provision on which Plaintiff relies, ASC 275, expressly does not apply to bank deposit concentrations.

The Opposition does not (because it cannot) seriously contend otherwise. Instead, Plaintiff pivots to a new, unpleaded theory: the financial statements should have included a note disclosing that some amount of the Bank's deposits was held by a certain number of customers for the 2020 and 2021 fiscal years.[2] Opp. at 80. Nowhere does the Complaint allege that KPMG's audit opinions are false because of these "customer concentrations."[3] For that reason alone, the new theory must be disregarded and the pleaded claim dismissed. *See, e.g.*, *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) ("[A] party is not entitled to amend its complaint through statements made in motion papers." (citing *IIT v. Cornfeld*, 619 F.2d 909, 914 n.6 (2d Cir. 1980))); *George v. China Auto. Sys., Inc.*, 2012 WL 3205062, at *14 (S.D.N.Y. Aug. 8, 2012) ("[A] plaintiff cannot amend a complaint with new allegations contained in an opposition to a motion to dismiss." (citing *In re Livent, Inc.*, 151 F. Supp. 2d 371, 432 (S.D.N.Y. 2001))).

Plaintiff's newly invented theory also fails for the same reason the pleaded uninsured deposit theory fails: ASC 275 does not pertain to bank deposit concentrations, regardless of whether the alleged concentration is of deposits based on insurance or deposits based on customers: "Concentrations of financial instruments [i.e., bank deposits] . . . are not addressed in this Subtopic [ASC 275]." ASC 275-10-50-19 [Ex. G].[4] Plaintiff contends "KPMG's argument

---

[2] For 2022, Plaintiff says SBNY's 10-K made a "belated acknowledgement" of concentrations that "confirms" a disclosure obligation. Opp. at 82. That 10-K describes a *business* strategy for the Bank's customer base that in no way pertains to a financial-statement disclosure. *See* Ex. D at 8.

[3] The Opposition cites only ¶¶ 95, 109, and 110 for the new theory. Opp. at 80. While those paragraphs reference the specified deposit holder concentrations, they do so only in the context of alleging certain directors' recklessness; they do not mention either the Bank's financial statements or KPMG's audit opinions, let alone articulate a theory of falsity of the audit opinions.

[4] ASC 275-10-50-19 notes that "these other [excluded] concentrations may be required to be

rests on a flawed reading" of ASC 275-10-50-19 because ASC 275-10-50-18 provides that disclosure of "concentrations" is required under certain circumstances. Opp. at 81. But that ignores the plain language of ASC 275-10-50-19, and Plaintiff offers no alternative construction. ASC 275-10-50-19 unambiguously provides exactly what KPMG explains in its Motion—that the ASC 275 Subtopic does not apply to financial instruments (i.e., bank deposits). This is fatal to Plaintiff's claim. *See In re AIG 2008 Sec. Litig.*, 2013 WL 1787567, at *5 (S.D.N.Y. Apr. 26, 2013) ("[Plaintiffs] have not presented the Court with any authority supporting their assertion that courts should accept as true a complaint's interpretation of financial regulations or auditing standards as opposed to purely factual contentions, and the Court's own research has disclosed none. It is beyond question that legal conclusions need not be accepted as true in evaluating the sufficiency of a complaint; *interpretations of accounting principles—which, like laws, define and govern the conduct of aspects of human endeavor—are properly treated in the same way*." (emphasis added)).

Plaintiff's new theory also fails because the Opposition (to say nothing of the Complaint) does not show how ASC 275 was violated. The GAAP language Plaintiff quotes pertains to disclosure of concentrations in transactions "with a particular customer." Opp. at 79 (quoting ASC 275-10-50-18.a). Plaintiff does not allege facts about any "particular customer." Nor does Plaintiff allege facts about a "group concentration," which the standard defines as encompassing "counterparties or items that have similar economic characteristics." *See* ASC 275-10-50-18. Instead, Plaintiff cherry-picks random deposit concentration percentages associated with random numbers of unidentified depositors (e.g., 196 unidentified customers having 55% of deposits; 60 unidentified customers having 40% of deposits). Opp. at 80. Plaintiff does not say how or why those selected combinations trigger any of the four categories of concentrations of

disclosed pursuant to other Topics," but Plaintiff does not allege a violation of any other Topic.

ASC 275-10-50-18.[5]

The two cases Plaintiff cites on this point do not save the Complaint from dismissal. *See* Opp. at 79-80 (citing *In re Bear Stearns Cos.*, 763 F. Supp. 2d 423, 511-12 (S.D.N.Y. 2011); *In re Wash Mut.*, 694 F. Supp. 2d 1192, 1224 (W.D. Wash. 2009)). *Bear Stearns* is not an ASC 275 case on disclosure of customer concentration. Rather, the case addressed the alleged intentional overstatement of the fair value of Bear Stearns' financial instruments reported on its balance sheet. *Id.* at 512-14. Those financial instruments were mortgage securities, including risky subprime mortgages. *Id.* Unlike the Complaint here, the *Bear Sterns* plaintiff alleged detailed facts showing that the auditor failed to properly measure the fair value of those mortgage securities, which allowed Bear Stearns to overstate the value on the balance sheet and manipulate the revenue line item on its income statement. *Id.* at 514. Plaintiff's other case, *Washington Mutual*, was a non-fraud Section 11 claim not subject to heightened pleading standards that, in any event, did not address an alleged failure to disclose a customer concentration. *See* 694 F. Supp. 2d at 1221.

### 2.    *KPMG's internal-control-over-financial-reporting opinion was not false*

As shown in the Motion, Plaintiff fails to plead that KPMG's internal-control-over-financial-reporting opinions were false because: (1) auditors do not opine on "risk management," the sole focus of the Complaint; and (2) the Complaint fails to articulate in any way, let alone with particularity, a specific material weakness in the Bank's internal control *over financial reporting*. The Opposition attempts to elide these issues by reiterating generic principles (but not tying the principles to any alleged facts) and confounding internal-control-over-financial-reporting audits

---

[5] Nor does Plaintiff explain how it was "reasonably possible" that concentrations "could cause the severe impact" "in the near term," as required by ASC 275-10-50-16.c. On the contrary, GAAP recognizes that a bank run is an "extremely remote disaster scenario," ASC 320-10-25-10, and therefore does not rise to "reasonably possible" for purposes of applying ASC 275.

with internal controls over risk management.

Plaintiff does not dispute, or even acknowledge, the auditing standards and regulations that explicitly provide that an auditor's audit report on internal control opines solely on the financial reporting element of the COSO Framework and does not encompass "enterprise risk management and corporate governance." *See* SEC Final Rule, 68 Fed. Reg. 36,636, 36,639 (June 18, 2003); *see also* AS 2201.03 [Ex. E]; 17 C.F.R. § 240.13a-15(f). Instead, Plaintiff asserts that KPMG's "argument," which is a direct quotation of SEC regulations and PCAOB-promulgated auditing standards, was "rejected" in a speech by the SEC's Chief Accountant Paul Munter. Opp. at 85 (citing Munter, *The Importance of a Comprehensive Risk Assessment*). Plaintiff mischaracterizes both KPMG's argument and Mr. Munter's speech. The Motion explains, correctly, that an auditor does not opine on "risk management" or any controls other than internal control over financial reporting—not that the latter issues could never have any relevance to the auditor's work. Mr. Munter—in a speech that expressly cautions that it "is not a rule, regulation, or statement of the Commission" and "has no legal force or effect"—says nothing inconsistent. *See* Munter, *supra*, n.1 (acknowledging that "enterprise-wide governance and controls" are "not directly related to financial reporting" and advising simply that auditors should "apply *objective* judgment when evaluating" those issues).

Ignoring the regulations, and mischaracterizing KPMG's position, the Opposition just recites provisions of certain audit standards, including: the need to evaluate "entity-level controls" during the internal-control-over-financial-reporting audit as provided by AS 2201; and the need to identify and assess risks of material misstatement in the financial statements during the financial-statement audit as provided by AS 2110. Opp. at 83. Plaintiff juxtaposes those standards with the Complaint's "risk management" allegations to assert that "KPMG's ICFR conclusions lacked a

reasonable basis." *Id.* at 84. But just like the Complaint, the Opposition fails to specify any audit procedures KPMG failed to perform or draw any specific connection between risk management issues and a material weakness in financial reporting—or, in the words of Mr. Munter, **how** the risk management issues "ha[d] an impact on management's ICFR conclusions due to their impact on the risk assessment and monitoring components of ICFR." Plaintiff simply assumes an audit deficiency. But to state a Section 10(b) claim based on the alleged falsity of an internal-control-over-financial-reporting opinion, "courts have consistently required plaintiffs to allege specific facts concerning the purportedly deficient internal controls, including how they were deficient, when and why." *In re Qiwi plc*, 2023 WL 7283619, at *12 (E.D.N.Y. Nov. 3, 2023) (quoting *ERS v. Embraer S.A.*, 2018 WL 1725574, at *9-10 (S.D.N.Y. Mar. 30, 2018)); *see also, e.g., Green v. Deutsche Bank AG*, 2019 WL 4805804, at *3 (S.D.N.Y. Sept. 30, 2019) (dismissing claim where plaintiff "never explains which, if any, [financial] reports the alleged deficiencies actually could have affected" and whose allegations "seem to pertain more directly to internal risk management than financial reporting").

Plaintiff asks the Court to ignore these authorities on the singular ground that the Complaint also asserts a purported GAAP violation. Opp. at 85 n.19. But as discussed above, no GAAP violation has been alleged. Even if one had, no authority excuses a plaintiff from its pleading burden on an internal-control-over-financial-reporting claim merely because the plaintiff also asserts a financial-statement claim based on an alleged GAAP violation. Indeed, *Qiwi* specifically rejects a similar argument, holding that a separate alleged disclosure violation did "not fill the gap" because the plaintiff still was required, but failed, to identify the "particular deficiencies" in the company's internal control over financial reporting. 2023 WL 7283619, at *12.

### B.   Plaintiff fails to plead a strong inference of scienter

KPMG's Motion shows how none of the Complaint's attempts to satisfy the "especially

demanding" standard for alleging scienter is viable. Plaintiff must plead specific facts that "approximate an actual intent to aid in the fraud," and the Complaint comes nowhere close to doing so. *See In re Advanced Battery Techs., Inc.*, 781 F.3d 638, 644 (2d Cir. 2015). In its Opposition (at 86-87), Plaintiff argues that regulatory reports to which KPMG had access were "red flags" of fraud that, coupled with the alleged GAAP violation regarding deposit concentrations, are sufficient to show scienter. Plaintiff is wrong for several reasons.

*First*, Plaintiff cannot and does not attempt to allege a link between any regulatory finding and an alleged deficiency in internal control over financial reporting. Again, the regulatory reports address generalized "risk management" and "liquidity management" issues and ***not*** internal control over financial reporting. *See* Mot. at 8-9. *See generally* FDIC Report [Ex. A].

*Second*, as the court held in *McIntire v. China MediaExpress Holdings, Inc.*, which the Opposition ignores, "[t]o constitute 'red flags' sufficient to establish scienter, a plaintiff's allegations must be closer to 'smoking guns' than mere warning signs." 927 F. Supp. 2d 105, 131 (S.D.N.Y. 2013). The regulatory reports are not even close to "smoking guns" because they concluded the bank was fundamentally sound. FDIC Report at 17.[6]

*Third*, Plaintiff's attempt to couple the regulatory reports with an alleged GAAP violation relating to deposit concentrations fails. As an initial matter, there is no adequately alleged GAAP violation or internal-control-over-financial-reporting deficiency. Further, as shown in the cases Plaintiff cites, Plaintiff must allege specific facts connecting the alleged "red flags" to material

---

[6] Plaintiff argues that KPMG "impermissibly asks the Court to weigh evidence at the motion to dismiss stage." Opp. at 89. Not so. KPMG is simply asking the Court to consider the entirety of any document cited in the Complaint. *See Chapman v. Mueller Water Prod., Inc.*, 466 F. Supp. 3d 382, 391 n.3 (S.D.N.Y. 2020) (citing *San Leandro EMG PSP v. Philip Morris Cos.*, 75 F.3d 801, 808-09 (2d Cir. 1996)) ("Plaintiffs cannot cherry-pick facts from an article upon which they rely and ignore others that contradict their allegations.").

misstatements in the financial statements. In *In re AOL Time Warner*, the plaintiff alleged that the auditor ignored the fact that "material amounts of advertising revenue came in at the end of each quarter," which allowed AOL to hit its advertising revenue targets, and the auditor "ignored several of [AOL's] complex barter transactions" that generated gains despite being transfers of like amounts. 381 F. Supp. 2d 192, 240 (S.D.N.Y. 2004). Similarly, in *In re IMAX*, plaintiffs adequately pleaded (1) GAAP violations, (2) the auditor's access to internal reports with information about the products that were the source of the overstated financials, and (3) the auditor's active participation in the company's review of its revenue recognition policies and practices. *See* 587 F. Supp. 2d 471, 484 (S.D.N.Y. 2008). The allegations here do not come anywhere close to approximating the detailed, specific allegations in *AOL* or *IMAX*.

Plaintiff argues that *Bear Stearns* is "instructive" (Opp. at 88)—and indeed it is, but for the purpose of illustrating the vast distinction between the allegations in that case versus here. The red flags at issue in *Bear Stearns* were multitudinous and incredibly detailed—primarily relating to a failure "to perform targeted procedures to assess the internal controls over financial reporting of the fair value of" its most valuable asset, a financial interest in mortgage securities, coupled with active regulatory investigations of misstatements. *See* 763 F. Supp. 2d at 512-20. No allegations of financial-statement errors or deficiencies concerning internal control over financial reporting exist here.[7]

*Finally*, Plaintiff argues that alleged "conflicts of interest with SBNY's key personnel,"

---

[7] Plaintiff cites *In re Am. Bus. Fin. Servs., Inc.*, 2008 WL 3405580 (E.D. Pa. Aug. 11, 2008), to argue that regulatory reports can show scienter. But in that case, in addition to pointing to "strong comment letters from the SEC," the plaintiff alleged a litany of financial-statement red flags, including a large percentage of gains based on estimates of fair value of assets, management's insistence on a material decrease in the discount rate of certain assets, and misallocation of operating cash to segregated escrow accounts. No such allegations exist here.

and the former KPMG engagement leader specifically, establish KPMG's scienter. Opp. at 89. Plaintiff is wrong because, ignoring *Dobina v. Weatherford Int'l Ltd.*, the Opposition does not and cannot allege facts showing either how any "conflicts" existed (hiring alone does not create a "conflict") or how any unspecified "conflicts" give rise to a strong inference of scienter (hiring alone does not show a motive to commit fraud). *See* 909 F. Supp. 2d 228, 254 (S.D.N.Y. 2012). Indeed, even an alleged violation of auditor independence is insufficient to show scienter. *E.g.*, *In re Royal Ahold N.V.*, 351 F. Supp. 2d 334, 391 (D. Md. 2004).[8]

**C.     The Complaint fails to allege how KPMG's opinions caused Plaintiff's loss**

KPMG's Motion shows that none of the alleged "corrective disclosures" discloses the falsity of, or even pertains to, KPMG's audit opinions. Mot. at 22. The Opposition does not dispute this but, in one paragraph, says only that it does not matter because KPMG's opinions "concerned" the alleged fraud and "concealed risks surrounding SBNY's financial statements and internal control framework." Opp. at 95. To the extent Plaintiff continues to press a "corrective disclosure" theory of loss causation—the only theory asserted in the Complaint (¶¶ 454-471 (alleging four corrective disclosures)) and the one that Plaintiff reiterates elsewhere in the Opposition (at 91-92 (arguing the "four corrective disclosures"))—the disconnect between the disclosures and the audit opinions is fatal: to show loss causation, a corrective disclosure must disclose the falsity of KPMG's audit opinions. *See Amorosa v. AOL Time Warner Inc.*, 409 F. App'x 412, 416 (2d Cir.

---

[8] Plaintiff's reliance on *SEPTA v. Orrstown Fin. Servs., Inc.*, 2022 WL 3572474, at *67-75, 75 n.36 (M.D. Pa. Aug. 18, 2022), is misplaced. There, the auditor, which worked for the bank and the bank's major clients *at the same time*, did not disclose the conflict, and affirmatively excluded transactions with those major clients from the bank's audit. And in *In re E.S. Bankest, L.C.*, 2010 WL 1417732, at *2 (Bankr. S.D. Fla. Apr. 6, 2010), an out-of-circuit bankruptcy case that has been called into question, "BDO had a financial interest in a Bankest client that created, in the words of Plaintiff's expert, 'a convoluted, intertwined, first class conflict of interest . . . one of the worst conflicts I've ever seen.'" The Complaint alleges nothing like this.

2011) (dismissing complaint because plaintiff "has not alleged any corrective disclosure regarding [auditor's] audit opinion, as none of the events identified as corrective disclosures . . . addresses AOL's accounting practices or in any way implicates [the] audit opinion" and plaintiff "therefore cannot establish that any misstatement or omission in [the] audit opinion was revealed to the market resulting in a diminution in the value of [the] securities").[9]

To the extent Plaintiff now contends it sufficiently alleged a "materialization of the risk" theory of loss causation, Plaintiff is also wrong. That theory requires Plaintiff to show that the "auditing reports [at issue] . . . concealed a particular risk," which then "came to light" and caused loss. *In re OSG Sec. Litig.*, 2015 WL 3466094, at *2 (S.D.N.Y. May 29, 2015) (citing *Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 157 (2d Cir. 2007)) (cleaned up). The only cognizable risks alleged as materializing are deposit withdrawals and the Bank's failure. Compl. ¶¶ 452-471. The Complaint therefore must allege a "sufficient connection between [KPMG]'s misstatements and the losses suffered as a result" of the deposit withdrawals and the Bank's failure. *Lattanzio*, 476 F.3d at 157. But Plaintiff has provided no theory "tying [these] general risk[s] to [KPMG's] audit reports." *OSG*, 2015 WL 3466094, at *4. Nor does Plaintiff cite any case holding a materialization of the risk loss causation theory adequately alleged when the alleged materialized risks are as general as a company failure. The Complaint fails to plead loss causation.

## CONCLUSION

The Court should dismiss with prejudice Plaintiff's Section 10(b) claim against KPMG.

---

[9] The Opposition tries to distinguish *Amarosa* on the curious ground that, there, the "correctives did not 'address AOL's accounting practices,' which was the subject of the alleged fraud." Opp. at 95. So too here. None of the alleged corrective disclosures addresses SBNY's accounting practices (as opposed to risk management issues) generally or KPMG's audits specifically.

Dated: May 24, 2024

Respectfully submitted,

*/s/ Richard T. Marooney*
Richard T. Marooney
Kevin J. O'Brien
**KING & SPALDING LLP**
1185 Avenue of the Americas
New York, New York 10036
Phone: (212) 556-2100
rmarooney@kslaw.com
kobrien@kslaw.com

Lisa Bugni
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, CA 94111
Phone: (415) 318-1200
lbugni@kslaw.com

*Counsel for Defendant KPMG LLP*