UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SJUNDE AP-FONDEN, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>  vs.<br><br>JOSEPH J. DEPAOLO, ERIC HOWELL, FRANK SANTORA, JOSEPH SEIBERT, SCOTT A. SHAY, VITO SUSCA, STEPHEN D. WYREMSKI, and KPMG, LLP,<br><br>        Defendants. | No. 1:23-CV-01921-FB-JRC |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
STEPHEN WYREMSKI'S SUPPLEMENTAL MOTION TO
DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**

CROWELL & MORING LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Tel. (212) 223-4000

*Attorneys for Defendant Stephen Wyremski*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... ii

GLOSSARY ............................................................................................................................ iv

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ............................................................................................................................ 1

I.  PLAINTIFF FAILS TO STATE A CLAIM FOR THE SEVEN STATEMENTS ALLEGEDLY ATTRIBUTABLE TO WYREMSKI ........................................................ 1

    A.  Mr. Wyremski Is Not Liable for Statements Made by Others ................................. 2

    B.  Statements 1, 2, 3, 11, and 34 Were Not Misleading ............................................... 3

    C.  Statements Concerning Financial Reporting, Internal Controls and GAAP Compliance Were Not Misleading ........................................................................... 7

    D.  Several Statements Are Inactionable Puffery or Opinion ........................................ 8

II. PLAINTIFF FAILS TO ALLEGE SCIENTER AS TO MR. WYREMSKI ...................... 8

CONCLUSION ....................................................................................................................... 10

## **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*In re Ambac Fin. Grp., Inc. Sec. Litig.*,
   693 F. Supp. 2d 241 (S.D.N.Y. 2010).........................................................................................10

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
   493 F.3d 87 (2d Cir. 2007)............................................................................................................4

*Buhrke Fam. Revocable Tr. v. U.S. Bancorp*,
   2024 WL 1330047 (S.D.N.Y. Mar. 28, 2024) ..........................................................................2, 3

*In re CarLotz*,
   2024 WL 1348749 (S.D.N.Y. Mar. 29, 2024) .............................................................................10

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
   752 F.3d 173 (2d Cir. 2014)..........................................................................................................5

*In re Complete Mgmt. Sec. Litig.*,
   153 F. Supp. 2d 314 (S.D.N.Y. 2001)..........................................................................................9

*In re Cross Media Mktg. Corp. Sec. Litig.*,
   314 F. Supp. 2d 256 (S.D.N.Y. 2004)..........................................................................................9

*Das v. Rio Tinto PLC*,
   332 F. Supp. 3d 786 (S.D.N.Y. 2018)........................................................................................10

*ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
   553 F.3d 187 (2d Cir. 2009)..........................................................................................................7

*In re Eletrobas Sec. Litig.*,
   245 F. Supp. 3d 450 (S.D.N.Y. 2017)..........................................................................................8

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
   564 U.S. 135 (2011).....................................................................................................................2

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
   601 U.S. 257 (2024).....................................................................................................................6

*In re Merck & Co., Inc. Sec., Deriv., & ERISA Litig.*,
   2011 WL 3444199 (D.N.J. Aug. 8, 2011) ...................................................................................2

*In re MINISO Grp. Holding Ltd. Sec. Litig.*,
   2024 WL 759246 (S.D.N.Y. Feb. 23, 2024)................................................................................1

*Ong v. Chipotle Mexican Grill, Inc.*,
   294 F. Supp. 3d 199 (S.D.N.Y. 2018)..................................................................................4

*In re Pfizer Inc. Sec. Litig.*,
   2012 WL 983548 (S.D.N.Y. Mar. 22, 2012) ........................................................................2

*In re PXRE Grp., Ltd., Sec. Litig.*,
   600 F. Supp. 2d 510 (S.D.N.Y.) ...........................................................................................9

*Ret. Sys. v. EnergySolutions, Inc.*,
   814 F. Supp. 2d 395 (S.D.N.Y. 2011) ..................................................................................2

*S. Cherry St., LLC v. Hennessee Grp., LLC*,
   573 F.3d 98 (2d Cir. 2009) ...................................................................................................9

*In re Sanofi Sec. Litig.*,
   87 F. Supp. 3d 510 (S.D.N.Y. 2015) ....................................................................................6

*In re Stillwater Cap. Partners Inc. Litig.*,
   853 F. Supp. 2d 441 (S.D.N.Y. 2012) ..................................................................................2

*In re Synchrony Fin. Sec. Litig.*,
   988 F.3d 157 (2d Cir. 2021)........................................................................................3, 4, 8

*Tongue v. Sanofi*,
   816 F.3d 199 (2d Cir. 2016) .................................................................................................3

*In re UBS AG Sec. Litig.*,
   2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012) .....................................................................2

*In re Vivendi Universal, S.A.*,
   381 F. Supp. 2d 158 (S.D.N.Y. 2003)...............................................................................5, 6

*In re Vivendi, S.A. Sec. Litig.*,
   838 F.3d 223 (2d Cir. 2016) ...............................................................................................10

*Xu v. Gridsum Holding Inc.*,
   624 F. Supp. 3d 352 (S.D.N.Y. 2022) ..................................................................................2

**GLOSSARY**

| Term/Reference | Description |
|---|---|
| "Complaint" or "Compl." | Lead Plaintiff's Corrected Consolidated Complaint, Dkt. No. 70, dated December 1, 2023 |
| "Ex." | Exhibits attached to the Declaration of Peter L. Simmons, dated February 13, 2024 |
| "FEs" | Purported former employees of Signature Bank who are allegedly confidential witnesses, as set forth in the Complaint |
| "FHLB" | Federal Home Loan Bank of New York |
| "Joint Br." or "Joint Brief" | Memorandum of Law in Support of Certain Individual Defendants' Motion to Dismiss the Consolidated Class Action Complaint, filed by Defendants Joseph DePaolo and Eric Howell, dated February 13, 2024 |
| "Joint Reply" | Reply in Support of Defendants Joseph J. DePaolo and Eric Howell's Motion to Dismiss the Consolidated Class Action Complaint, dated May 24, 2024 |
| "KPMG Br." | Memorandum of Law in Support of KPMG LLP's Motion to Dismiss, dated February 13, 2024 |
| "Opp." | Lead Plaintiff's Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss the Consolidated Complaint, dated April 19, 2024 |
| "Pl.'s Ex." | Exhibit attached to the Declaration of John Rizio-Hamilton, dated April 19, 2024 |
| "Regulators" | The Federal Deposit Insurance Corporation and the New York State Department of Financial Services |
| "Shay Reply" | Reply Memorandum of Law in Further Support of Scott A. Shay's Motion to Dismiss the Complaint. |
| "Signature" or the "Bank" | Signature Bank |
| "Statement" | A statement listed on Exhibit 1, "Lead Plaintiff's Chart of the Individual Defendants' and KPMG's Misstatements," attached to the Declaration of John Rizio-Hamilton, dated April 19, 2024 |
| "Wyremski Brief" or "Wyremski Br." | Memorandum of Law in Support of Stephen Wyremski's Supplemental Motion to Dismiss the Consolidated Class Action Complaint, dated February 13, 2024 |

iv

**PRELIMINARY STATEMENT**

Plaintiff's 499-paragraph Complaint boils down to seven statements that Plaintiff attributes to Mr. Wyremski and alleges were false and misleading. But Plaintiff focuses on a myriad pre-Class Period events—before Mr. Wyremski became CFO—and ignores that Regulators gave Signature a Composite rating of "2," meaning its risk management practices were satisfactory and the Bank presented "no material supervisory concerns," and that Regulators had separately recognized improvements in Signature's liquidity practices. The seven challenged Statements—one of which is not attributable to Mr. Wyremski—were generalized, not misleading, and certainly not made with any scienter or recklessness. In addition, several Statements were properly cautioned forward looking statements, puffery, or opinion. Plaintiff does not meet its heightened pleading burden for alleged misstatements or scheme liability and the Court should dismiss claims against Mr. Wyremski with prejudice.[1]

**ARGUMENT**

**I.   PLAINTIFF FAILS TO STATE A CLAIM FOR THE SEVEN STATEMENTS ALLEGEDLY ATTRIBUTABLE TO WYREMSKI**

Plaintiff attributes seven statements on securities filings to Mr. Wyremski—Statements 1-4, 11, 34, 38. *See* Pl.'s Ex. 1; *see* Opp. at 52 ("the Complaint . . . attributes each misstatement to the responsible speakers and/or signatories of SEC filings"). Contrary to Plaintiff's argument, (Opp. at 17), a defendant's silence regarding discussions with regulators is "not misleading absent a duty to disclose," and "[d]isclosure of an item of information is not required, however, simply because it may be relevant or of interest to a reasonable investor." *In re MINISO Grp. Holding Ltd. Sec. Litig.*, 2024 WL 759246, at *10 (S.D.N.Y. Feb. 23, 2024) (internal citations and

---

[1] Mr. Wyremski incorporates and joins in all of the arguments raised in the Joint Reply filed by Defendants Joseph DePaolo and Eric Howell.

quotations omitted). "To be actionably misleading, there must be a 'sufficiently close nexus' between the statement and the allegedly omitted information." *Buhrke Fam. Revocable Tr. v. U.S. Bancorp*, 2024 WL 1330047, at *11 (S.D.N.Y. Mar. 28, 2024). Plaintiff fails to establish such a nexus or that Mr. Wyremski's statements were misleading "half-truths." Opp. at 17-18.

### A. Mr. Wyremski Is Not Liable for Statements Made by Others

Plaintiff pleads no facts demonstrating how Mr. Wyremski may be liable for statements Plaintiff admits were "made" by others.[2] *See* Pl.'s Ex. 1 (attributing only 7 of 44 Statements to Mr. Wyremski); *see also* Wyremski Br. 4-5.[3] But Statement 34 on its face was not made by Mr. Wyremski, and the press release containing this Statement refers to a "Brian Wyremski"—not Stephen Wyremski.[4] *See* Ex. JJJ at 6, 7-8. Plaintiff fails to plead facts that merely signing a Form 8-K cover page, without more, renders Mr. Wyremski the "maker" of Statement 34. *See Xu v. Gridsum Holding Inc.*, 624 F. Supp. 3d 352, 363 (S.D.N.Y. 2022) (Co-CFO who "signed the Form 6-K—the cover page—attached to the press release does not mean [co-CFO] is the 'maker' of the press release" when co-CFO did not sign the press release); *cf. City of Roseville Emps.' Ret. Sys. v. EnergySolutions, Inc.*, 814 F. Supp. 2d 395, 417 (S.D.N.Y. 2011) (addressing signatory of "registration statements," not press release attached to Form 8-K).

---

[2] Plaintiff admits that Mr. Wyremski was not the "maker" of 37 Statements and the cases it cites are distinguishable. *See* Pl.'s Ex. 1; *In re Stillwater Cap. Partners Inc. Litig.*, 853 F. Supp. 2d 441, 460 (S.D.N.Y. 2012) (statements could be implicitly attributed to officers of company "with no operations and only a few employees") (internal quotation omitted); *In re Merck & Co., Inc. Sec., Deriv., & ERISA Litig.*, 2011 WL 3444199, at *25 (D.N.J. Aug. 8, 2011) (concluding statements attributable to defendant who made them); *compare In re Pfizer Inc. Sec. Litig.*, 2012 WL 983548, at *4 (S.D.N.Y. Mar. 22, 2012) (post-*Janus* decision discussing imposing liability for statements not attributed to officers) *with In re UBS AG Sec. Litig.*, 2012 WL 4471265, at *10 (S.D.N.Y. Sept. 28, 2012) ("individual defendants still must have actually 'made' the statements" under *Janus* standard to be held liable).
[3] Plaintiff argues that Mr. Wyremski is the "maker" of Statements 28-30 and 34, (Opp. at 51), but Plaintiff's own chart makes clear that Mr. Wyremski was not the "maker" of Statements 28-30, *see* Pl.'s Ex. 1. For these three Statements, Mr. Wyremski cannot be liable. *See Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142-43 (2011) (only the "maker" of the alleged misstatement can be liable under Rule 10b-5(b)).
[4] Brian Wyremski is not a defendant in this action, and was Signature's Senior Vice President and Director of Investor Relations and Corporate Development. Ex. JJJ at 6; Compl. ¶ 293.

### B. Statements 1, 2, 3, 11, and 34 Were Not Misleading

Plaintiff challenges Statements 1 and 34 because Signature "did not have a low risk profile," (Opp. at 20), and for Statements 2, 3, and 11, Plaintiff doubles down on Regulator discussions pertaining to liquidity and the pre-Class Period downgrade of Signature's liquidity component to a "3." Opp. at 29-30. However, when these Statements are read in the context in which they were made, without selective quotations, it is clear they are not materially misleading.[5] As to Statement 1, Plaintiff omits the immediately preceding text and figures, which relates to the Bank's "Tier 1" capital ratios, which has nothing to do with liquidity. *See, e.g.*, Ex. II at 7; Wyremski Br. at 6-7. Indeed, Plaintiff simply overlooks the "context and manner of presentation" of Statement 1. *See Buhrke Fam. Revocable Tr.*, 2024 WL 1330047, at *11 (dismissing claims, stating "the subject matter of the alleged statement must relate closely enough to the allegedly omitted information"); *see also In re Synchrony Fin. Sec. Litig.*, 988 F.3d 157, 170-71 (2d Cir. 2021) (rejecting statement as misleading and stating "the proper inquiry requires an examination of defendants' representations, taken together and in context").[6]

Plaintiff's focus on Regulators downgrading the liquidity component of the Bank to a "3" in 2019—prior to Mr. Wyremski becoming CFO—misses the forest for the trees. Opp. at 21. Liquidity is just one element of the CAMELS composite score (Joint Br. at 18-19), and the Bank's composite rating of "2" until March 10, 2023 meant that Regulators viewed Signature as "fundamentally sound," "stable and … capable of withstanding business fluctuations," and that there were "no material supervisory concerns." *See* Ex. EE at 50; Ex. A at 17. Plaintiff cannot

---

[5] Mr. Wyremski cannot be liable for Statement 34. *See supra* at I.A; Wyremski Br. at 6 n.6.

[6] Plaintiff's claim that Statement 1 is misleading because of purported Regulators' views that Signature was "overexposed to risks from a high concentration of depositors in the crypto space," (Opp. 45), similarly fails. Plaintiff acknowledges this Statement "contain[s] some subjective elements," (*id.*) and further, the Regulators' views (1) do not contradict Statement 1 about Signature's capital ratios, and (2) do not demonstrate that Mr. Wyremski did not hold the "belief [he] professed" about Signature's "low risk profile" as it relates to "capital ratios." *See Tongue v. Sanofi*, 816 F.3d 199, 210 (2d Cir. 2016); Wyremski Br. at 6-7.

3

"cherry pick certain public statements for [its] complaint and divorce them from the universe of disclosed information to plausibly allege fraud." *In re Synchrony Fin. Sec. Litig.*, 988 F.3d at 171. This is especially so when the Complaint relies on materials stating how Regulators concluded for year-end 2021, Signature's "liquidity risk profile improved significantly given a large increase in on-balance sheet liquidity" and that the "liquidity posture looked better than in prior years." Ex B. at 33; *see ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007).

Statement 2 concerns Signature internal controls "that help to mitigate the risks that affect our business," and policies and procedures "that further help mitigate risk and regulatory requirements," and how Signature "believe[s] that our risk management processes will help keep our risks to a manageable level." The Bank's expressions of what these controls, policies, and procedures were expected do, as well as Mr. Wyremski's "belie[f]" about these procedures are undoubtedly forward-looking statements under the PSLRA, accompanied by meaningful cautionary language, puffery, or opinion. Wyremski Br. at 6, 9-10. The text surrounding Statement 2 does not mention liquidity at all, but broadly discusses how Signature manages certain types of risk, and includes an express disclaimer that "[n]o system of internal control or policies and procedures will ever totally eliminate risk." *See* Ex. F at 12; Ex. C at 11. Plaintiff does not allege the Bank lacked the internal controls as described by Signature or the purpose of such controls. Ex. A at 53; *see Ong v. Chipotle Mexican Grill, Inc.*, 294 F. Supp. 3d 199, 232 (S.D.N.Y. 2018) ("[A]llegations do not conflict with Defendants' statements regarding the … programs and procedures that Chipotle had in place, but merely quibble with Chipotle's execution of those programs and procedures."); *see also* Shay Reply at I.A (discussing Statement 2).

As to Statement 3, Plaintiff ignores that: (1) this Statement related only to "capital" stress testing—not liquidity stress testing, (Ex. D at 26-27; Ex. F at 26); (2) Signature was not required

4

to stress test capital (*id.*); and (3) Signature would only stress test capital on a "situational and idiosyncratic basis." *Id.*; Wyremski Br. at 12; Joint Br. at 26-28. Nowhere in Statement 3 does Signature discuss ongoing liquidity stress testing. Plaintiff ignores the end of the sentence accompanying Statement 3, which explicitly states as to capital: "Signature Bank will no longer be required to file and report annual company-run stress tests until the revised minimum asset threshold is reached." Ex. D at 27; Ex. F at 26. Nor did Regulators call Signature's improving liquidity plans "deficient," (Opp. at 32), and instead said that Signature's "contingency funding plan still required improvement." Ex. A at 53. Plaintiff's principal grievance is that Signature's idiosyncratic stress testing did not prepare it for the unprecedented contagion event that occurred, but this amounts to nothing more than "fraud by hindsight," which fails to state a claim in the Second Circuit. *See City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 188 n.68 (2d Cir. 2014). This is especially so when Regulators never faulted Signature for its capital management policies, but instead ascribed the "root cause" of Signature's closure to "liquidity management policies." Opp. at 94; *see also* Shay Reply at I.A. (discussing Statement 3).

Statement 11 describes what the Bank considered for its liquidity policies, who approved those policies, and who was on the asset/liability management committee. As relevant to Mr. Wyremski (who became CFO in July 2021), the Regulators acknowledged that in 2021, Signature implemented a "new Liquidity Model." Ex. EE at 21, 22, 27. Thus, Statement 11 was not false or misleading when made by Mr. Wyremski. *See* Opp. at 31. Moreover, Signature's liquidity improvements were recognized by the Regulators in 2022, when they "acknowledged that the Bank made progress in remediating the MRBA on liquidity." Ex. EE at 26. Moreover, both Statements 3 and 11 are forward-looking and accompanied by meaningful cautionary language. *See* Wyremski Br. at 8-9; Joint Br. at 33-34. Plaintiff's reliance on *In re Vivendi Universal, S.A.*,

5

381 F. Supp. 2d 158, 180-81 (S.D.N.Y. 2003) is misplaced. The *Vivendi* plaintiffs claimed statements about a company's financial results were false because they were allegedly contradicted by facts known to the defendants, 381 F. Supp. 2d at 182, a far cry from the generalized Statement 11 about what liquidity policies accounted for.

While Plaintiff complains that Signature repeated cautionary language in its filings and that there were over 50 disclosed risks, (Opp. at 50), these were detailed disclosures about potential risks. Plaintiff claims, without support, that the "the events warned of [in Signature's disclosures] have already materialized." *Id.* at 49. Plaintiff pleads no facts that, at the time of these disclosures: (1) volatility in the digital assets markets adversely affected Signature's deposits or liquidity; (2) Signature was unable to raise additional funding; (3) Signature was unable to borrow from the FHLB or had to find other sources of liquidity; or (4) that the soundness of other financial institutions adversely affected Signature. Opp. at 49. But these were the very specific potential risks that Signature warned its investors about. *See* Wyremski Br. at 9, Joint Br. at 33-34; *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 536 (S.D.N.Y. 2015) ("These statements conveyed substantive information about the risk that ultimately materialized. As such, they were meaningful cautionary language, not mere boilerplate."). Indeed, as the Regulators make clear, those risks did not materialize until the weekend of March 10, 2023; *see* Wyremski Br. at 9, Joint Br. at 33-34; *see also* Ex. EE at 31-35 (describing the events of March 10-12, 2023). Along with Signature's disclosures about a high percentage of uninsured deposits, the volume of digital asset-related customer deposits and the risks of reliance on the FHLB, Signature's liquidity risks were disclosed.[7] *See* Wyremski Br. at 11; Ex. D at 8.

---

[7] Plaintiff argues that Statements 2, 3, and 11 were misleading because Signature failed to disclose that four depositors comprised 14% of the Bank's total assets. *See* Opp. at 30. Yet these three Statements do not discuss depositors or the size of certain depositors. At best, Plaintiff's claims are about "pure omissions," which "are not actionable under Rule 10b–5(b)." *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 260 (2024).

6

### C. Statements Concerning Financial Reporting, Internal Controls and GAAP Compliance Were Not Misleading

As it relates to Statement 4 (concerning internal controls over financial reporting) and Statement 38 (concerning Signature's financial statements being prepared in accordance with GAAP and Signature following policies in accordance with GAAP), Plaintiff points to no rule under GAAP requiring Signature to disclose that four depositors comprised 14% of the Bank's total assets. *Compare* Opp. at 34-35 *with* Joint Br. at 41; KPMG Br. at 13-14 (discussing how GAAP does not require disclosure of a bank's customer deposits). Other than generalized arguments that certain Regulator views were not disclosed, Plaintiff pleads no facts explaining how Statement 38 was materially misleading. For example, Plaintiff fails to identify a single figure in Signature's financial statements that was wrong. Joint Br. at 53; Wyremski Br. at 10-12.

To the extent Plaintiff takes issue with statements made by individuals other than Mr. Wyremski, to which Statements 4 and 38 may relate, Mr. Wyremski has no duty to correct statements by others. Wyremski Br. at 5. Further, having disclosed in the Bank's Form 10-K its uninsured depositor concentration, percentage of deposits from digital asset clients, and associated risks of both, Plaintiff fails to plead with particularity how additional disclosures would "have materially altered the 'total mix' of information available to investors." *ECA, Loc. 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 202 (2d Cir. 2009) (internal citation omitted). This is particularly so when Regulators said the "bigger issue" for the Bank was "a high concentration of uninsured deposits" and perception as "a crypto bank." Ex. EE at 6-7.

Plaintiff's argument that Statement 4 was materially misleading because of Regulators' concerns regarding Signature's ***operational*** internal controls ignores that Statement 4 is about (1) "internal controls ***over financial reporting***," meaning "procedures that pertain to … accurately reflect[ed] transactions and … reasonable assurances that transactions are recorded" in accordance

7

with GAAP, and (2) the Company's "belie[f]" about the effectiveness of such controls. *See, e.g.*, Ex. D at 109 (emphasis added); Ex. F at 111; *see* Wyremski Br. at 10-12. The Regulators' views had nothing to do with the Bank's internal controls "over financial reporting," and Plaintiff pleads no facts that any Regulator took issue with such controls. Wyremski Br. at 10-12. *In re Eletrobas Sec. Litig.*, 245 F. Supp. 3d 450, 468-69 (S.D.N.Y. 2017), on which Plaintiff relies, supports Mr. Wyremski's argument because that defendant company admitted to "material weaknesses in the design of its internal controls related to financial reporting," and disclosed in annual reports "deficient controls 'with respect to accounting.'" 245 F. Supp. 3d at 458, 468.

### D. Several Statements Are Inactionable Puffery or Opinion

Plaintiff attempts to craft Statements 1, 2, 3, 4, and 34 as statements of "fact" to avoid dismissal on puffery grounds. Opp. at 39-42. But such "[v]ague positive statements" on general subjects such as "a corporate entity's risk management strategy" "are precisely the type of puffery" that the Second Circuit has "consistently held to be inactionable." *In re Synchrony Fin. Sec. Litig.*, 988 F.3d at 170. Plaintiff points to Regulators' views about liquidity and concentration risks, (Opp. at 39), but completely ignores that these five Statements were generalized, non-specific, not addressing specific concerns, and were in no way designed to "distinguish the company in some fashion that is meaningful to the investing public." *See* Joint Br. at 24-29.[8] And as explained *supra* at n.7, and in the Joint Reply at I.B, Statements 1, 2, 4, 34, and 38 are also inactionable opinions.

## II. PLAINTIFF FAILS TO ALLEGE SCIENTER AS TO MR. WYREMSKI

Plaintiff's opposition does not argue motive and opportunity as to Mr. Wyremski, and the failure to plead "motive and opportunity to commit fraud," "certainly makes competing, non-fraudulent inferences more 'compelling' for purposes of the *Tellabs* analysis." *In re PXRE Grp.,*

---

[8] The cases on which Plaintiff relies do not involve generalized statements. *See* Joint Reply at n.2 (distinguishing cases).

*Ltd., Sec. Litig.*, 600 F. Supp. 2d 510, 529 n.21 (S.D.N.Y.). Plaintiff cannot establish scienter as to Mr. Wyremski "without citing to specific reckless actions or inactions" of Mr. Wyremski. *See In re Cross Media Mktg. Corp. Sec. Litig.*, 314 F. Supp. 2d 256, 263 (S.D.N.Y. 2004) (no scienter due to group pleading). Similarly, Plaintiff ignores that others' knowledge cannot "be imputed to Mr. Wyremski," (Wyremski Br. at 16), and Mr. Wyremski's scienter arguments about events that occurred before he became CFO. *Id.* at 15-16. Plaintiff's allegations about FEs and analyst questions do not relate to Mr. Wyremski, (Opp. at 62-65), and fall short of a strong inference of scienter.[9]

Plaintiff's remaining scienter argument as to Mr. Wyremski rests on Regulators' reports and non-denials by Mr. Wyremski. Opp. at 56. This flips the pleading standard on its head. On a motion to dismiss it is Plaintiff's burden to plead specific facts that Mr. Wyremski acted with a "reckless disregard for the truth," "*i.e.*, a state of mind *approximating actual intent*," as opposed to negligence. *S. Cherry St., LLC v. Hennessee Grp., LLC*, 573 F.3d 98, 109 (2d Cir. 2009) (emphasis in original); Wyremski Br. at 14. Nowhere in the Complaint does Plaintiff plead facts that any Regulator report contained information that contradicted a statement made by Mr. Wyremski.[10]

Plaintiff hinges the crux of its scienter claim on Mr. Wyremski's "access" to Regulators' reports, but Plaintiff's reliance on *In re CarLotz*, 2024 WL 1348749, at *16 (S.D.N.Y. Mar. 29, 2024) falls short. In *In re CarLotz*, the challenged statements were specific and detailed, not

---

[9] That Mr. Wyremski served on the Bank's asset/liability committee does not establish a strong inference of scienter when Plaintiff fails to plead facts that Mr. Wyremski ever received information or had access to information that contradicted any of the six Statements properly attributable to him. *Cf. In re Complete Mgmt. Sec. Litig.*, 153 F. Supp. 2d 314, 325 (S.D.N.Y. 2001) (finding scienter based on allegations of defendants' direct interactions with counterparty engaged fraudulent billing practices).

[10] Plaintiff mischaracterizes Defendants' interactions with Regulators by claiming Defendants "lied" to Regulators. Opp. at 60. Rather, the Regulators found the Bank's data on its final weekend "unreliable," and "inconsistent," without ascribing any intent. *See* Ex. EE at 35. Nor can Defendants' interactions with Regulators, which occurred *after* the challenged Statements, retroactively create scienter for the seven Statements from months and years prior.

9

generalized or inactionable statements, and the *CarLotz* court explained how specific information at the company contradicted the specific factual statements. *See In re CarLotz*, 2024 WL 1348749, at *15 (finding two defendants knew or had access to information contradicting their statements about "reconditioning costs, sourcing partners, … business model, [and an] Item 101 violation."). As to Mr. Wyremski, Plaintiff fails to allege "[1] *specific* contradictory information was available to [him] [2] *at the same time* [he] made [his] misleading statements." *Das v. Rio Tinto PLC*, 332 F. Supp. 3d 786, 813 (S.D.N.Y. 2018) (emphasis in original) (internal citations and quotations omitted); *see also* Wyremski Br. at 14-15 (collecting cases); *cf. In re Ambac Fin. Grp., Inc. Sec. Litig.*, 693 F. Supp. 2d 241, 268 (S.D.N.Y. 2010) (disregarding "suppositions" of access to records when plaintiffs "sufficiently plead [CFO's] awareness of facts contradicting his statements").[11]

The failure to plead specific facts giving rise to a strong inference of scienter or conscious recklessness, combined with Plaintiff's failure to address arguments (1) about how Signature's banking regulator did not anticipate the speed of deposit flight, and (2) about statements and events occurring prior to Mr. Wyremski becoming CFO, *see* Wyremski Br. at 15-17, dooms all of Plaintiff's claims against Mr. Wyremski.

## CONCLUSION

For the foregoing reasons, and those set forth in the Wyremski Brief, the Joint Brief and Joint Reply, the Complaint should be dismissed with prejudice and leave to amend should be denied as Plaintiff cannot cure these deficiencies.

---

[11] Plaintiff fails to adequately allege scheme liability as to Mr. Wyremski. Wyremski Br. at 17-18. Plaintiff's argument of alleged "unaddressed" "deficiencies," "to boost" deposits (Opp. at 90 (citing Compl. ¶¶79, 408)) is in fact the same alleged deceptive acts upon which its false statement claims are based, and Plaintiff pleads no "specific acts" as to Mr. Wyremski. Wyremski Br. at 17-18. Nor does Plaintiff meaningfully respond to the argument that Plaintiff has not pled reliance. *See id.*; Joint Br. at 59. Similarly, Plaintiff fails to explain how any of Plaintiff's purported losses were "a result of" Mr. Wyremski's seven alleged Statements, when Regulators uniformly described the events at Signature as "unprecedented." *See* Wyremski Br. at 2-3, 18; *cf. In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 249-253 (2d Cir. 2016) (cited by Plaintiff, post-trial decision addressing "liquidity risks" related to specific statements about cash flows, debt, and EBITDA, as opposed to deposit liquidity at a bank and unprecedent flight of deposits).

Dated:  New York, New York
　　　　May 24, 2024

　　　　　　　　　　　　　　　　　　**CROWELL & MORING LLP**

　　　　　　　　　　　　　　　　　　By: /s/ Anand Sithian
　　　　　　　　　　　　　　　　　　　　Daniel L. Zelenko
　　　　　　　　　　　　　　　　　　　　Anand Sithian
　　　　　　　　　　　　　　　　　　　　Mara Lieber

　　　　　　　　　　　　　　　　　　Two Manhattan West
　　　　　　　　　　　　　　　　　　375 Ninth Avenue
　　　　　　　　　　　　　　　　　　New York, NY 10001
　　　　　　　　　　　　　　　　　　Telephone: 212-223-4000
　　　　　　　　　　　　　　　　　　dzelenko@crowell.com
　　　　　　　　　　　　　　　　　　asithian@crowell.com
　　　　　　　　　　　　　　　　　　mlieber@crowell.com

　　　　　　　　　　　　　　　　　　*Attorneys for Defendant Stephen Wyremski*