UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SJUNDE AP-FONDEN, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>-against-<br><br>JOSEPH J. DEPAOLO, ERIC HOWELL, FRANK SANTORA, JOSEPH SEIBERT, SCOTT A. SHAY, VITO SUSCA, STEPHEN D. WYREMSKI, and KPMG LLP,<br><br>Defendants. | **Civil Action No. 1:23-cv-01921** |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT VITO SUSCA'S MOTION TO DISMISS**

> Daniel E. Reynolds
> Charles T. Spada
> LANKLER SIFFERT & WOHL LLP
> 1185 Avenue of the Americas
> New York, NY 10036
> (212) 921-8399
> dreynolds@lswlaw.com
> cspada@lswlaw.com
> *Attorneys for Defendant Vito Susca*

**TABLE OF CONTENTS**

INTRODUCTION ...........................................................................................................................1

I.  THE FAC FAILS TO STATE A CLAIM AGAINST MR. SUSCA UNDER SECTION 10(B) AND RULE 10B–5(B) ...............................................................................................1

    A.  The FAC fails to plead that Mr. Susca made an actionable false or misleading statement ............................................................................................................1

        1.  Plaintiff has not convincingly argued that Mr. Susca's statements were false when made.......................................................................................2

        2.  Contrary to Plaintiff's argument, statements concerning a bank's risk controls are not per se material ...................................................................3

        3.  Regulatory reports confirm that the opinion statements Mr. Susca made fairly aligned with the information in his possession at the time ................4

    B.  Plaintiff's attempt to buttress its insufficient scienter allegations also fails ............4

        1.  Regulatory reports relied on by Plaintiff do not establish that Mr. Susca acted recklessly .......................................................................................5

        2.  Ms. Susca's stock sales are not suspicious and thus do not support an inference of scienter ................................................................................6

II. THE FAC FAILS TO STATE A SCHEME LIABILITY CLAIM UNDER SECTION 10(B) AND RULES 10B–5(A) AND 10B–5(C). ...............................................................8

CONCLUSION..............................................................................................................................8

## **TABLE OF AUTHORITIES**

**Cases**                                                                               **Page(s)**

*Brown v. Twitter*,
    No. 19 Civ. 6328, 2021 WL 3887611 (S.D.N.Y. Aug. 31, 2021) ..............................................4

*Chapman v. Mueller Water Prods., Inc.*,
    466 F. Supp. 3d 382 (S.D.N.Y. 2020).......................................................................................7

*In re Bear Stearns Cos. Dec., Deriv. & ERISA Litig.*,
    763 F. Supp. 2d 423 (S.D.N.Y. 2011).......................................................................................7

*In re Citigroup Sec. Litig.*,
    No. 20 Civ. 9132, 2023 WL 2632258 (S.D.N.Y. March 24, 2023)......................................5, 6

*ECA, Loc. 134 IBEW Joint Pension Tr. Of Chicago v. JP Morgan Chase Co.*,
    553 F.3d 187 (2d Cir. 2009)..................................................................................................3, 4

*Tongue v. Sanofi*,
    816 F.3d 199 (2d Cir. 2016).....................................................................................................4

**Other Authorities**

Federal Rule of Civil Procedure Rule 12(b)(6)..................................................................................1

17 C.F.R. § 240.10b–5 ...................................................................................................................1, 8

## INTRODUCTION

Defendant Vito Susca submits this reply memorandum of law in further support of his motion to dismiss lead plaintiff Sjunde AP-Fonden's ("Plaintiff") corrected consolidated complaint (ECF No. 70) ("FAC") under Rule 12(b)(6) of the Federal Rules of Civil Procedure. As Mr. Susca showed in his opening brief, the claims against him fail because all of the alleged false statements relevant to Mr. Susca were made in regulatory filings submitted during the first four months of the class period between January and May of 2021. Plaintiff's opposition (Lead Plaintiff's Memorandum of Law in Opposition to Defendants' Motions to Dismiss the Consolidated Complaint ("Opp. Mem.")) fails to rebut the undisputed evidence that regulators had not, at that time, raised concerns that would render any of Mr. Susca's statements false or misleading or suggest that he acted with scienter in making them.

Mr. Susca also adopts and incorporates by reference in full the arguments advanced in the Reply in Support of Defendants Joseph J. DePaolo and Eric Howell's Motion to Dismiss the Consolidated Class Action Complaint ("Howell/DePaolo Reply") that Plaintiff has failed to allege a material misstatement, (Howell/DePaolo Reply at Section I); Plaintiff's scheme liability claim is inadequately pleaded, (*id.* at Section II); and Plaintiff's scienter allegations are insufficient (*id.* at Section III).

## ARGUMENT

I. **THE FAC FAILS TO STATE A CLAIM AGAINST MR. SUSCA UNDER SECTION 10(b) AND RULE 10b–5(b)**

   A. **The FAC fails to plead that Mr. Susca made an actionable false or misleading statement**

1

Plaintiff attributes to Mr. Susca six statements made in four regulatory filings he signed in his capacity as CFO.[1]  Notwithstanding Plaintiff's arguments to the contrary, none are actionable under the securities laws.

### 1. Plaintiff has not convincingly argued that Mr. Susca's statements were false when made

First, as plead, none of these statements is actionably false as to Mr. Susca, (*see* Memorandum of Law in Support of Defendant Vito Susca's Motion to Dismiss ("Susca Mem.") at 6–7), and Plaintiff fails to convincingly argue otherwise.  In arguing that statements in January and April 2021 characterizing the "relatively low risk profile of the Bank's balance sheet," (FAC ¶¶ 205, 225 (Plaintiff's Statement 1)), were false, Plaintiff relies on regulatory findings from examination cycles that post-date the filings containing these statements and thus shed no light on whether these statements were false when made.  (*See* Opp. Mem. at 20 (referencing findings from the 2021 examination cycle).)  Plaintiff also mischaracterizes Mr. Susca's argument as relying entirely on SBNY's satisfactory composite CAMELS score as a "talisman" and ignoring the findings from regulators' targeted liquidity risk management reviews.  (*Id.* at 21.)  Plaintiff raises the same strawman argument with respect to the falsity of the other statements made in regulatory filings signed by Mr. Susca—statements that concerned the bank's internal risk controls, stress testing protocols, and liquidity management policies.  (*Id.* at 30–31 (regarding the statements reflected at FAC ¶¶ 208, 210, 237–238 (Plaintiff's Statements 2, 3, and 11)).)  But Mr. Susca's

---

[1] Contrary to Plaintiff's assertion, (*see* Opp. Mem. at 51), Mr. Susca has not argued that he is not the maker of the statements recounted at FAC ¶¶ 205 and 225.  He instead argued that he is not the maker of "any of the alleged false statements in the FAC *aside from those contained in the four regulatory filings he signed*," a set which includes the statements reflected in FAC ¶¶ 205 and 225. (Memorandum of Law in Support of Defendant Vito Susca's Motion to Dismiss at 8–9 (emphasis added).)  Plaintiff apparently agrees.  (*See* Rizio-Hamilton Decl. Ex. 1 (identifying Mr. Susca as the maker of only the statements found at FAC ¶¶ 205, 208, 210, 212, 225, 238, and 350).)

2

argument does not rest entirely upon the bank's composite CAMELS score.  Instead, as Mr. Susca demonstrated in his opening brief, the 2019 and 2020 examination cycles are the only regulatory cycles even arguably relevant to these alleged misstatements, and regulators concluded during those cycles that "the Board and senior management appropriately identified, measured, monitored, and controlled the risks of the institution's activities," (Susca Mem. at 3–4 (quoting NYDFS Rep. at 19)), and noted with approval the actions that management had taken to better identify, monitor, and control liquidity risk, (*see id.*). (*See also* NYDFS Rep. at 18, 21.)  These actions included "improv[ing] . . . the funding plan for the most severe stress test scenario" such that it was consistent enough with the SBNY board's low risk appetite that regulators felt comfortable closing a related MRBA.  (NYDFS Rep. at 18, 21.)

Finally, the statements concerning internal controls over financial reporting and compliance with GAAP, (FAC ¶¶ 212, 237, 350 (Plaintiff's Statements 4 and 38)), are not actionably false for the reasons identified in Mr. DePaolo and Mr. Howell's opening brief ("Howell/DePaolo Mem.") and the Howell/DePaolo Reply.  Plaintiff has pled no facts showing that SBNY's internal control system over financial reporting failed to provide "reasonable assurance" that the bank's financial statements complied with GAAP, Plaintiff's theory of falsity is incorrect because GAAP does not require disclosure of concentration of large bank deposits, and, in any event, SBNY repeatedly disclosed its concentration of large, uninsured deposits.  (*See* Howell/DePaolo Mem. at 39–41; Howell/DePaolo Reply at 10–11, 19 n.7.)

>2. **Contrary to Plaintiff's argument, statements concerning a bank's risk controls are not per se material**

The alleged misstatements recounted at FAC ¶¶ 205, 208, 210, 212, 225, and 237 (Plaintiff's Statements 1, 2, 3, and 4), are immaterial puffery.  In arguing to the contrary, (*see* Opp. Mem. at 39–41), Plaintiff makes the same mistake as the plaintiffs in *ECA, Loc. 134 IBEW Joint*

3

*Pension Tr. of Chicago v. JP Morgan Chase Co.*: "Plaintiff[] conflate[s] the importance of" the subject of the statements "with the materiality of a bank's statements" on that subject. 553 F.3d 187, 206 (2d Cir. 2009). "While a bank's [risk profile and internal controls are] undeniably important, that does not render a particular statement by a bank regarding [these subjects] per se material." *Id.*

### 3. Regulatory reports confirm that the opinion statements Mr. Susca made fairly aligned with the information in his possession at the time

Plaintiff fails to meaningfully address Mr. Susca's argument that the statements reflected at FAC ¶¶ 205, 208, 210, 212, 225, and 237 (Plaintiff's Statements 1, 2, 3, and 4) are non-actionable opinions. (*See* Susca Mem. at 7–8.) As an initial matter, Plaintiff does not respond to Mr. Susca's argument, also advanced by other individual defendants, (*see* Howell/DePaolo Mem. at 32), that FAC ¶¶ 210, 212, and 237 (Plaintiff's Statements 3 and 4) are non-actionable opinions and can therefore be deemed to have abandoned the issue. *See Brown v. Twitter*, No. 19 Civ. 6328, 2021 WL 3887611, at *4 (S.D.N.Y. Aug. 31, 2021). In any event, it remains the case that none of these opinion statements are actionably false or misleading because, at the time Mr. Susca made them in 2021, they "fairly aligned with the information in [Mr. Susca's] possession." *Tongue v. Sanofi*, 816 F.3d 199, 212 (2d Cir. 2016) (internal quotation marks omitted). As explained in Mr. Susca's opening brief, (Susca Mem. at 1–5, 8), none of the opinion statements he is charged with making are actionably false or misleading in light of regulators' repeat findings during that time that management was adequately identifying, measuring, monitoring, and controlling the risks of the institution's activities, (*see* NYDFS Rep. at 19, 22), and regulators' recognition that management was taking appropriate steps to address the concerns previously identified, (*see id.* at 19, 21).

### B. Plaintiff's attempt to buttress its insufficient scienter allegations also fails

4

### 1. Regulatory reports relied on by Plaintiff do not establish that Mr. Susca acted recklessly

Plaintiff argues that the FAC "alleges a strong inference of scienter based on the Regulators' findings conveyed to Defendants through multiple meetings, letters and written reports before and during the Class Period." (Opp. Mem. at 56.) Tasked with "alleg[ing] facts showing that (i) *specific* contradictory information was available to [Mr. Susca] (ii) *at the same time* [he] made [his] misleading statements," *In re Citigroup Sec. Litig.*, No. 20 Civ. 9132, 2023 WL 2632258 at *22 (S.D.N.Y. March 24, 2023) (internal quotation marks omitted), Plaintiff falls far short.

First, Plaintiff ignores that, although the 2019 regulatory examination cycle had concluded by October 2020 and the 2020 cycle was underway by January 2020, "the relevant regulatory findings of the 2020 examination cycle were not communicated to SBNY until after Mr. Susca had made his final allegedly false statement in a filing in May 2021." (Susca Mem. at 4.) Plaintiff does not and cannot explain how the information communicated during the 2019 examination cycle specifically contradicted Mr. Susca's statements concerning risk management and internal controls in early 2021 and further fails to reconcile its argument with the regulators' ultimate finding at the conclusion of the 2019 and 2020 cycles that "the Board and senior management appropriately identified, measured, monitored, and controlled the risks of the institution's activities." (NYDFS Rep. at 19, 22.)

Plaintiff's other recklessness arguments also fail. (*See* Opp. Mem. at 60–70.) First, Mr. Susca is not alleged to have taken part in alleged efforts to mislead regulators in the days leading up to SBNY's takeover. (*Id.* at 60–62.) Next, none of the allegations raised by FEs relate to Mr. Susca. (*Id.* at 62–64.) Further, the FAC does not allege that Mr. Susca ever served on the Risk Committee of the Board of Directors or served on the asset/liability management committee after

5

he left the CFO role in June of 2021. (*Id.* at 65–66, FAC ¶¶ 35, 405–09.) Plaintiff's GAAP–related argument fails for the reasons set forth in the Howell/DePaolo Mem. and Howell/DePaolo Reply, which Mr. Susca adopts and incorporates by reference and which are equally applicable to him. (Howell/DePaolo Mem. at 53–54; Howell/DePaolo Reply at 23.) Finally, Plaintiff's remaining alternative arguments, (Opp. Mem. at 64–65, 66–68), fail to independently establish scienter, as "Plaintiff[] must do more than allege that [Mr. Susca] had or should have had knowledge of certain facts contrary to [his] public statements simply by virtue of [his] high-level position[]" and "the core operations theory at most constitutes supplemental support for alleging scienter," but "[s]upplemental support cannot serve to independently establish scienter or bolster an inference of scienter where Plaintiff[] ha[s] not adequately alleged an independently sufficient basis." *In re Citigroup Sec. Litig.*, 2023 WL 2632258 at *22 (internal quotation marks omitted).

        **2.**    **Ms. Susca's stock sales are not suspicious and thus do not support an inference of scienter**

Nothing in Plaintiff's opposition supports the allegation that four of Mr. Susca's stock sales—on March 23, 2021, April 6, 2021, April 23, 2021, and March 23, 2022—were suspicious. (FAC ¶ 439.) (*See also* Declaration of Daniel E. Reynolds in Further Support of Vito Susca's Motion to Dismiss dated May 24, 2024 ("Reynolds Decl.") Ex. H, Ex. I, Ex. J, Ex. K.) As demonstrated in Mr. Susca's opening brief, these sales do not support an inference of scienter. (Susca Mem. at 9–10 (adopting and incorporating by reference Howell/DePaolo Mem. at Section II.A.–II.A.2(c)).)

As an initial matter, Plaintiff admits that the March 23, 2021, and March 23, 2022, sales relate to annual vesting of performance-based stock awards. (FAC ¶ 441.) (*See also* Reynolds Decl. Ex. H, Ex. K.) Courts frequently find that sales tied predetermined events like the vesting of stock awards and taxes related to the same are not indicative of a motive to defraud. *See*

6

*Chapman v. Mueller Water Prods., Inc.*, 466 F. Supp. 3d 382, 411 (S.D.N.Y. 2020) (collecting cases). Plaintiff does not engage with the individual defendants' additional argument that these sales are in line with previous sales, and that "the sale of shares received through performance-based awards was typical for these Individual Defendants." (Howell/DePaolo Mem. at 44.) Plaintiff makes much of the allegation that the March 2022 sale occurred approximately two months before the first alleged corrective disclosure in May of 2022. (Opp. Mem. at 77–78.) But this sale was simply part of a longstanding practice of sales executed in conjunction with annual vesting events that occurred every March from 2014 through 2022. (Reynolds Decl. Ex. A, Ex. B, Ex. C, Ex. D, Ex. E, Ex. F, Ex. G, Ex. H, Ex. K.) As previously argued, the remaining sales occurred more than a year prior to this alleged corrective disclosure, substantially undermining any inference of scienter. (Howell/DePaolo Mem. at 45.)

Further, in response to the allegation that Mr. Susca's stock sales during March and April of 2021 were suspicious because they were made shortly after SBNY issued financial statements, (*see* FAC ¶ 442), the individual defendants argued that such sales by insiders shortly after earnings releases are "appropriate and commonplace," (*see* Howell/DePaolo Mem. at 44–45 (quoting *In re Bear Stearns Cos. Dec., Deriv. & ERISA Litig.*, 763 F. Supp. 2d 423, 500 (S.D.N.Y. 2011))). Plaintiff responds that such sales are appropriate and commonplace "only 'in the absence of *other* allegations suggesting motive.'" (Opp. Mem. at 77 (quoting *Chapman*, 466 F. Supp. 3d at 412).) Yet the FAC contains no other allegations of motive as to Mr. Susca. According to Plaintiff, the FAC's other allegations of motive relate to the "LTI compensation plan" under which some of the individual defendants received compensation. (*See* Opp. Mem. at 73–74.) However, the FAC does not allege that Mr. Susca was compensated under the LTI plan, (*see* FAC ¶¶ 121–23, 422–25), and thus there are no other allegations of motive as to Mr. Susca.

7

## II. THE FAC FAILS TO STATE A SCHEME LIABILITY CLAIM UNDER SECTION 10(b) AND RULES 10b–5(a) AND 10b–5(c).

Count II of the FAC must also be dismissed against Mr. Susca for failure to state a claim. As explained in the Howell/DePaolo Reply at Section II, Plaintiff has failed to muster a convincing response to the individual defendants' argument that the FAC fails to plead any deceptive act beyond the alleged misstatements and further fails to plead reliance.

## CONCLUSION

For the foregoing reasons, Mr. Susca respectfully requests that the Court dismiss the FAC in its entirety against him.

Dated: May 24, 2024
New York, New York

/s/ Daniel E. Reynolds
Daniel E. Reynolds
Charles T. Spada
LANKLER SIFFERT & WOHL LLP
1185 Avenue of the Americas
New York, NY 10036
(212) 921-8399
dreynolds@lswlaw.com
cspada@lswlaw.com
*Attorneys for Defendant Vito Susca*

8