# EXHIBIT A

2024 WL 4252038
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

CAMERON N. VERDI, Plaintiff,
v.
FEDERAL DEPOSIT INSURANCE
CORPORATION, et al., Defendants.

24 Civ. 791 (DEH) (RFT)
|
Filed 09/20/2024

**OPINION AND ORDER**

DALE E. HO United States District Judge

 **\*1** In this action, Plaintiff brings various claims against the Federal Deposit Insurance Company (the "FDIC"), in its capacity as receiver for Signature Bank ("Signature"). [1] In brief, Plaintiff alleges that Signature and its leadership made false or misleading statements on March 2 and March 9, 2023, immediately prior to Signature's collapse. Plaintiff, who was already a Signature shareholder, alleges that these statements induced him to purchase additional shares and that his investments cratered in value following Signature's collapse. Defendant FDIC moves to dismiss. [2] For the reasons given below, Defendant's motion is **GRANTED.**

**I. BACKGROUND**

The following facts are taken from the Complaint and assumed to be true solely for purposes of adjudicating Defendants' motion to dismiss. [3] Because Plaintiff proceeds *pro se*, his submissions are construed liberally to raise the strongest arguments that they suggest. [4]

On March 1, 2022, Plaintiff purchased shares in Signature on the NASDAQ. [5] In December 2022, Signature announced that it planned to reduce its exposure to cryptocurrency, due to losses of billions of dollars in crypto-related assets. [6] On March 2, 2023, Signature issued a press release announcing that its deposit balances had declined overall, "driven by the deliberate decline in digital asset client related deposits of $1.51 billion." [7] On March 9, 2023, Signature issued a further press release; in substance, Signature aimed to calm investors amid market turmoil by making various statements about the bank's purported stability, well-diversified positions, and high level of capital. [8]

However, Signature's March 2 and March 9 representations were false. They mischaracterized Signature's fundamental strength, omitting the fact that FDIC examiners had raised serious concerns about the health of the bank at least five years previously and that Signature's board was actively discussing problems with liquidity, deposit volatility, and corporate governance. [9]

On March 10, 2023, Plaintiff purchased additional shares of Signature, relying on its false representations. [10] Plaintiff's March 10 purchase of shares was made on margin, using the credit facility offered by the online stock trading platform TD Ameritrade, with an annualized interest rate of 7.60% to 10.85%. [11]

 **\*2** On March 12, 2023, the New York State Department of Financial Services took possession of Signature and appointed the FDIC as receiver. [12] Trading of Signature's stock halted the same day and remained halted for over two weeks, rendering it illiquid and essentially worthless. [13] As of March 10, 2023, Signature's stock traded at $70.00 USD/share; by March 28, 2023, it resumed trading at $0.14 USD/share. [14] Plaintiff remains a shareholder of Signature and continues to bear margin interest charges from his March 10, 2023 purchase of Signature stock. [15] As a result of the drop in Signature's stock price, Plaintiff was forced to sell other securities at a loss to reduce his margin balance. [16]

On November 14, 2023, Plaintiff filed this action in the United States District Court for the Central District of California. [17] On December 15, 2023, Defendant FDIC moved to dismiss. [18] An order issued on January 26, 2024, transferred the case to this District, on the basis that the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") limits the permissible venues for Plaintiff's claims to the District Court for the District of Columbia or the district court where the depository institution's principal place of business is located—which, in the case of Signature, is this District. [19] On February 16, 2024, Defendant renewed its motion to dismiss. [20]

**II. LEGAL STANDARDS**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' "[21] "In assessing the complaint, [a court] must construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiffs' favor."[22] However, the court must disregard any "conclusory allegations, such as 'formulaic recitations of the elements of a cause of action.' "[23] When reviewing *pro se* pleadings, a Court must interpret them to raise the "strongest arguments that they suggest."[24] In reviewing the submissions of a *pro se* party on a motion to dismiss, the Court may also incorporate any factual allegations made in Plaintiff's submission in opposition to the motion.[25]

**III. DISCUSSION**

Defendant's motion is **GRANTED** for the reasons given below. In brief, the FDIC owns Plaintiff's claims by operation of FIRREA as of the time it took Signature into receivership. Accordingly, Plaintiff lacks standing to sue, and his claims are dismissed.

Plaintiff brings six claims: fraudulent concealment, constructive fraud, conspiracy to defraud, breach of fiduciary duty, breach of duty of loyalty, and aiding and abetting breach of fiduciary duty.[26] In substance, these claims—which Plaintiff characterizes as garden variety state tort claims[27]—allege that: (1) Defendants made statements on March 2 and March 9, 2023, that induced Plaintiff to purchase Signature stock on March 10;[28] and (2) that making these statements violated duties owed to Plaintiff or otherwise harmed Plaintiff in his capacity as an existing Signature shareholder.[29] For both sets of allegations, Plaintiff alleges that he suffered damages because his investment in Signature lost value, due to the decline in stock price.[30]

 **\*3** On March 12, 2023, the FDIC was appointed receiver over Signature.[31] Under the succession provision of FIRREA (the "Succession Clause"), the FDIC, in its capacity as conservator and receiver of a bank, "succeed[s] to ... all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor ... of such institution with respect to the institution and the assets of the institution."[32]

The key question here is whether the Succession Clause applies to Plaintiff's claims. The parties do not identify, and the Court has not found in its research, any binding authority in the Second Circuit on the scope of the Succession Clause as relevant here. Accordingly, the Court surveys authority from outside this Circuit. As explained below, there is an apparent Circuit split on whether the Succession Clause applies to and extinguishes only a shareholder's derivative claims brought on behalf of a corporation (and therefore does not implicate direct claims brought by shareholders against the corporation). If so (as Plaintiff argues), Plaintiff's claims against Signature—which he characterizes as direct rather than derivative—would survive.[33] If, on the other hand, the Succession Clause applies to and extinguishes at least some direct claims (as the FDIC argues), then the FDIC may succeed to Plaintiff's claims—which would deprive Plaintiff of standing and warrant dismissal.

The majority of cases considering this question have held or assumed that the Succession Clause applies only to derivative claims, but the most recent decisions have not. Specifically, the Fourth,[34] Seventh,[35] and Eleventh[36] Circuits have held that the Succession Clause applies only to derivative claims, and not to direct claims. The Ninth[37] and Tenth[38] Circuits have similarly employed the direct-derivative distinction to evaluate whether the FDIC has succeeded to certain claims; while these cases do not expressly hold that the Succession Clause applies only to derivative claims, they can be fairly read as assuming that the Succession Clause is limited in that manner. More recently, however, other courts including the First Circuit[39] and district courts in the Eastern District of Louisiana[40] and the District of Utah[41] have held that the Succession Clause is not limited only to derivative claims, but rather applies to and extinguishes at least some direct claims.

**A. The Scope of the Succession Clause**

 **\*4** Perhaps the most in-depth discussion in a case applying the direct-derivative distinction to the Succession Clause comes from *Levin v. Miller*, where the Seventh Circuit explained its understanding that the Clause

> transfers to the FDIC only stockholders' claims "with respect to ... the assets of the institution"—in other words, those that investors (but for [the Succession Clause]) would pursue derivatively on behalf of the failed bank. This is why we have read [the Clause] as allocating claims between the FDIC and the failed bank's shareholders rather than

transferring to the FDIC every investor's claims of every description. [42]

*Levin* went on to note that no federal court (up until that point) had read the Succession Clause as extending beyond derivative claims; and it closed its analysis by briefly suggesting that any such interpretation would "pose the question whether [shareholders whose direct claims would be allocated to the FDIC] would be entitled to compensation for a taking," and stating that it is therefore appropriate to read the Clause as limited only to derivative claims because doing so "avoids the need to tackle that [Constitutional] question." [43]

But as the First Circuit observed in *Zucker v. Rodriguez*, "[t]he most basic problem for [that] interpretation is that the direct-derivative distinction appears nowhere in the language of [the Succession Clause]. [44] Under the text of the Succession Clause, the FDIC succeeds to a claim if two conditions are met: (1) the claim asserts the rights "of any stockholder, member, accountholder, depositor, officer, or director"; and (2) the rights asserted are "with respect to the institution and the assets of the institution." [45] Those are the only two conditions that must be satisfied for a claim to fall within the ambit of the Clause. While a derivative claim brought by a shareholder on behalf of a corporation can clearly satisfy those two conditions, it is also possible that at least some direct claims brought by a shareholder against the corporation can as well.

The Seventh Circuit's contrary analysis of the text amounts to the single conclusory assertion that the phrase, "claims 'with respect to ... the assets of the institution' " means, "in other words, those that investors ... would pursue derivatively." [46] But the ordinary meaning of the phrase "with respect to" simply means "regarding" or "concerning." [47] Thus, the ordinary meaning of the longer phrase, "rights ... with respect to ... the institution and the assets of the institution," is not as arcane as *Levin* suggests; it simply means any rights "regarding" an institution and its assets. Such rights are not limited only to those that may be asserted derivatively on behalf of the institution itself. "Courts must avoid reading into statutes concepts or exceptions absent from the text, so we cannot assume, without a textual basis, that Congress intended to place such a limitation on the FDIC's power." [48]

**\*5** It is true that, up until the Seventh Circuit's decision in *Levin*, no court had held the Succession Clause extends beyond derivative claims. However, the First Circuit noted in *Zucker* that these cases tended simply to assume that the Succession Clause employed a direct-derivative distinction without explaining a purported textual basis for it. [49] And since then, district courts confronting this question have agreed with *Zucker*'s textual analysis. [50]

Although this Court bases its interpretation on the clarity of the Succession Clause's text alone, it notes that it agrees with the First Circuit that this plain language reading of the Clause as extending beyond derivative suits appears to comport with FIRREA's statutory structure and purpose of protecting depositors. [51] And finally, although Plaintiff does not raise a constitutional Takings Clause issue, given that *Levin* briefly referenced the possibility that merely "pos[ing] the question" would constitute a reason for reading an extra-textual limitation into the Succession Clause, [52] the Court notes that it finds the First Circuit's dismissal of this objection persuasive. As the First Circuit noted, the Takings Clause requires compensation "only for deprivations of vested property rights," which do "not vest until a final, unreviewable judgment has been obtained"—which is obviously not the case with respect to any claims that have yet to be adjudicated. [53]

**\*6** In sum, the Court holds that the text of the Succession Clause does not explicitly require categorizing claims as derivative or direct, and at the very least, does not explicitly foreclose the possibility that at least some direct claims are covered by the Clause. Moreover, the structure and purpose of FIRREA also counsel in favor of an expansive reading. [54] Accordingly, the Court holds that a claim, derivative or not, is covered by the Succession Clause if it satisfied the two conditions set forth in its text—that is, the claim asserts a "right of a stockholder" and that right is "with respect to the institution and the assets of the institution." [55]

### B. Application

Plaintiff's claims—both the claims he pleaded and any potential claims arising out of the facts he alleges [56]—assert in substance that he was harmed by his March 2022 and March 2023 investments in Signature stock, incurring damages because "Defendants' wrongful acts and omissions[ ] result[ed] in the precipitous decline in the market value of the Company's common shares." [57] In particular, Plaintiff's theory of damages for his investments both before and after the alleged misrepresentations depend on the drop

in value of his shares of Signature stock. Therefore, any claims Plaintiff may have against Signature are rights in his capacity as "a stockholder." And his claims are "with respect to the institution and the assets of the institution," because they concern Signature's failure after it made alleged misrepresentations about its health (including about its assets), and because any claim for damages necessarily is a claim on Signature's assets. [58]

Plaintiff argues that his claims do not assert an injury to Signature itself or to its assets, [59] but the Succession Clause requires only that the right asserted be "with respect to" the institution and its assets, not that it arise from an injury "to" the institution and its assets. As explained above, the "with respect to" requirement is met here. Accordingly, the FDIC succeeded to Plaintiff's claims. [60]

Because the FDIC succeeded to Plaintiff's claims, Plaintiff lacks standing to assert them. "The so-called third-party standing bar ... prevents litigants from asserting the rights or legal interests of others simply to obtain relief from injury to themselves." [61] Here, Plaintiff cannot assert claims held by the FDIC on its behalf, meaning he lacks standing to sue. Accordingly, his claims are dismissed.

\* \* \*

**\*7** It is hereby **ORDERED** that Defendant's motion to dismiss is **GRANTED**.

The Clerk of Court is respectfully directed to close the motion at ECF No. 35.

SO ORDERED.

**All Citations**

Slip Copy, 2024 WL 4252038

---

**Footnotes**

1    *See* Compl. ¶¶ 1 n.1, 14-16, ECF No. 1. Plaintiff also brought claims against three individuals who were senior executives at Signature Bank and ten John Doe Defendants (collectively, the "Individual Defendants"). *See id.* ¶ 19. On April 3, 2024, Plaintiff filed a notice of voluntary dismissal with respect to his claims against the Individual Defendants. *See* ECF No. 42.

2    *See* ECF No. 35.

3    *See Cornelio v. Connecticut*, 32 F.4th 160, 168 (2d Cir. 2022). In all quotations from cases, citations, footnotes, brackets, ellipses, and emphases are omitted unless otherwise indicated. All references to Rules are to the Federal Rules of Civil Procedure.

4    *See* *Saeli v. Chautauqua Cnty.*, 36 F.4th 445, 457 (2d Cir. 2022).

5    *See* Compl. ¶ 25.

6    *Id.* ¶ 26.

7    *Id.* ¶ 29.

8    *Id.* ¶¶ 31-34.

9    *Id.* ¶ 40.

10    *Id.* ¶ 35.

11  *Id.* ¶¶ 36-39.

12  *Id.* ¶¶ 1 n.1, 41.

13  *Id.* ¶ 46.

14  *Id.* ¶¶ 132, 134.

15  *Id.* ¶¶ 136, 138.

16  *Id.* ¶ 137.

17  *See generally id.*

18  *See* ECF No. 11.

19  *See* ECF No. 21, at 7-8 (discussing 12 U.S.C. § 1821(d)(6)(A)).

20  *See* ECF No. 35.

21  *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

22  *Id.* at 106-07.

23  *Id.* at 107 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

24  *Triestman v. Fed. Bureau of Prisons*, 470. F.3d 471, 474 (2d Cir. 2006).

25  *See Walker v. Schult*, 717 F.3d 119, 122 n.1 (2d Cir. 2013) ("A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion.").

26  *See* Compl. ¶¶ 141-201. Because Plaintiff proceeds *pro se*, the Court has independently reviewed the Complaint for other claims that may be asserted on the facts Plaintiff alleges. *See Dingle v. Zon*, 189 F. App'x 8, 10 (2d Cir. 2006) ("Because the complaint could support a claim under RLUIPA—despite that the face of the complaint alleges only specific, constitutional violations—the district court has an obligation to consider the claim .... Factual allegations alone are what matters [in the context of a *pro se* litigant]."); *accord Peters v. Ulster Cnty. Sheriff's Dep't*, No. 23 Civ. 210, 2023 WL 4873315, at *1 (2d Cir. July 27, 2023) (similar). The Court determines that for purposes of Defendant's motion, all claims that are or may be asserted are subject to the same analysis and that Plaintiff lacks standing to assert such claims for the reasons stated in this Opinion.

27  *See, e.g.*, Pl.'s Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") 6, ECF No. 39.

28  *See, e.g.*, Compl. ¶ 145 ("Defendants knowingly and intentionally withheld information that was solely within their knowledge and which is material, and would have been material, to the decision by Plaintiff to purchase SBNY stock."); ¶ 147 ("By creating buyers for the SBNY stock, the price of the security remain artificially inflated."); ¶ 149 ("As a direct result of Defendants' false representations and omissions, Plaintiff purchased SBNY stock in March 2022 and March 2023."); ¶ 176 ("Defendants intended the general investing public, residents of California, including Plaintiff, would rely on their misrepresentations and omitted material facts to be true.").

29  *See, e.g., id.* ¶ 156 ("The Individual Defendants act on Plaintiff's behalf for purposes of fiduciary duties ... to the Company and its shareholders, to include Plaintiff."); ¶¶ 185-186 ("Individual Defendants maintained a fiduciary relationship with Plaintiff as early as March 2022. Individual Defendants owed [various legal duties] to the Company and its shareholders, to include Plaintiff.").

30  *See id.* ¶ 140.

31  *Id.* ¶ 1 n.1.

32  12 U.S.C. § 1821(d)(2)(A).

33  The FDIC disputes this point, arguing that at least some of Plaintiff's claims are properly characterized "as derivative [claims] under applicable New York law." Defendant's Reply ("Def.'s Reply") 8-9, ECF No. 40. Ultimately, the Court does not reach this issue because it determines that the Succession Clause does not employ a direct-derivative distinction, and applies a different, text-based test regarding its applicability.

34  *See Vieira v. Anderson (In re Beach First Nat'l Bancshares, Inc.)*, 702 F.3d 772, 780-81 (4th Cir. 2012) (holding that the trustee of a bank holding company could pursue tort claims against subsidiary's directors, because the claims adequately pleaded direct harms to the holding company "unrelated to any defalcation at the Bank level," meaning they were not derivative claims, and therefore not transferred to the FDIC).

35  *Levin v. Miller*, 763 F.3d 667, 672 (7th Cir. 2014) (holding that "claims with respect to the assets of the institution" encompassed "only ... those that investors (but for [the Succession Clause]) would pursue derivatively on behalf of the failed bank.").

36  *Lubin v. Skow*, 382 F. App'x 866, 871 (11th Cir. 2010) ("[I]f the [plaintiff] can establish a direct harm ... that harm would be separate from the derivative harm. If the [plaintiff] were seeking to enforce such a claim, FIRREA would not be a bar to standing.").

37  *See Pareto v. FDIC*, 139 F.3d 696, 700-01 (9th Cir. 1998) ("Plainly, the section vests all rights and powers of a stockholder of the bank to bring a derivative action in the FDIC.").

38  *See Barnes v. Harris*, 783 F.3d 1185, 1193-95 (10th Cir. 2015) (holding that if a shareholder's claims are "based on harm derivative of injuries to the Bank," then they are covered by the Succession Clause); *see also id.* at 1189 (describing the gravamen of plaintiffs' claims).

39  *Zucker v. Rodriguez*, 919 F.3d 649, 656-58 (1st Cir. 2019).

40  *See Aaron v. Ill. Nat'l Ins. Co.*, No. 19 Civ. 10341, 2023 WL 7389034, at *4 (E.D. La. Nov. 8, 2023).

41  *See Am. W. Bank Members v. Utah*, No. 16 Civ. 326, 2023 WL 4108352, at *5-6 (D. Utah June 21, 2023).

42  763 F.3d at 672. Applying its understanding that the Succession Clause covers only derivative claims, *Levin* went on to hold that, because certain claims in that case were not derivative under relevant state law— i.e., claims brought by a holding company's shareholders alleging that a subsidiary bank's directors allowed the holding company to pay dividends when it should have been reserving capital, and that the subsidiary's directors induced the holding company to wastefully try to save the banks—they were not covered by the Succession Clause. *See id.* at 671-72.

43   *Id.* at 672.

44   919 F.3d at 657.

45   *Id.* at 656 (quoting 12 U.S.C. § 1821(d)(2)(A)). Applying that simple two-part text-based inquiry, the First Circuit held that the Succession Clause extends to include the claims alleged by the plaintiff, a former bank holding company, to recover its interest in a wholly-owned subsidiary bank, asserting negligence and breach of fiduciary duty on the part of the subsidiary's directors and officers. *Id.* at 657.

46   *Levin*, 763 F.3d at 672.

47   *See, e.g.*, Respect, Phrase P.5.a., Oxford English Dictionary (Sept. 2023), https://www.oed.com/dictionary/respect_n?tab=meaning_and_use#25666304 (defining "with respect" as "[w]ith reference or regard to something"); Respect, American Heritage Dictionary, https://ahdictionary.com/word/search.html?q=respect (defining "with/in respect to" as "[i]n reference or relation to; concerning"); Respect, Merriam-Webster.com Dictionary, https://www.merriam-webster.com/dictionary/respect (defining "with respect to" as "with reference to" or "in relation to").

48   *Zucker*, 919 F.3d at 657.

49   *See id.* at 657-58 (discussing, *inter alia,* *Barnes*, 783 F.3d 1185, and *In re Beach First Nat'l Bancshares, Inc.*, 702 F.3d 772, and noting that while both applied the direct-derivative distinction, they "both did so without considering whether, under the language of [the Succession Clause], the FDIC's ownership is limited to direct claims"); *cf.* *Levin*, 763 F.3d at 673 (Hamilton, J., concurring) ("It is not obvious to me that the language must be interpreted so narrowly, nor did the cases [applying the Succession Clause to derivative claims] confront this issue or require that result.").

50   *See Am. W. Bank Members*, 2023 WL 4108352, at *6 ("The court finds the reasoning of the First Circuit in Zucker with respect to the scope of FIRREA's succession clause persuasive. There is nothing in the plain language of Section 1821(d)(2)(A) that limits the scope of the statute's succession language to derivative claims exclusively. Accordingly, the court will apply the two-step analysis set forth in *Zucker*"); *Aaron*, 2023 WL 7389034, at *4 ("The text strongly suggests that the FDIC should succeed to claims that are in name against the Holding Company, but are actually aimed at the assets of the bank.").

51   *See Zucker*, 919 F.3d at 661 ("The long history of extensive federal involvement in the savings and loan industry reveals that the protection of depositors and the stability of thrift institutions are paramount among congressional concerns. A strong and solvent deposit insurance fund and an FDIC well-equipped to recover funds to address the needs of failed banks are essential to achieving those goals."). *Cf.* *Levin*, 763 F.3d 667, 674 (7th Cir. 2014) (Hamilton, J., concurring) (noting that, in some cases, "the direct/derivative dichotomy [is] being used in ways that could allow those who ran the banks into the ground to take for themselves some of the modest sums available to reimburse the FDIC for a portion of the socialized losses they inflicted."). Plaintiff references Congress' rejection of a proposal that would have expressly given the FDIC priority over competing claims asserted by shareholders in suits against a failed bank's officers and directors, *see* Pl.'s Opp'n 22, but *Zucker* rejected the identical argument, noting that "[t]he fact that Congress rejected a provision about one thing tells us little about what Congress intended in enacting a provision about something else." *Zucker*, 919 F.3d at 660.

52   *Levin*, 763 F.3d at 672.

| | |
|---|---|
| 53 | *Zucker*, 919 F.3d at 659. |
| 54 | *See id.* at 658. |
| 55 | *See Am. W. Bank Members*, 2023 WL 4108352, at *5-6 (summarizing *Zucker*). |
| 56 | *See Dingle*, 189 F. App'x at 10. |
| 57 | Compl. ¶ 140. |
| 58 | Plaintiff argues in his Opposition that he seeks recovery from officer Defendants in their individual capacities "without recourse to the assets of Signature," Pl.'s Opp'n 13, but he has voluntarily dismissed his claims against these Defendants. *See* ECF No. 42. With respect to Plaintiff' claims against Signature for the officer Defendants' behavior, the Complaint states that "[Signature] is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency." Compl. ¶ 53. These claims necessarily concern Signature's assets. And to the extent that any damages could be covered by Signature's D&O insurance policy, that too is an asset of the bank. *Cf.* *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav., F.S.B.*, 28 F.3d 376, 384-85 (3d Cir. 1994). |
| 59 | *See* Pl.'s Opp'n 24-25. |
| 60 | In light of the Court's construction of the Succession Clause as lacking a direct-derivative distinction, it does not address Defendant's alternative argument that Plaintiff's claims should be understood as derivative claims. *See* Def.'s Reply 8-9. |
| 61 | *N.Y. State Citizens' Coal. for Child. v. Poole*, 922 F.3d 69, 75 (2d Cir. 2019). |

---