UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| SJUNDE AP-FONDEN, Individually and on behalf of all other similarly situated, <br><br> Plaintiff, <br><br> -against- <br><br> JOSEPH DEPAOLO, ERIC HOWELL, FRANK SANTORA, JOSEPH SEIBERT, SCOTT A. SHAY, VITO SUSCA, STEPHEN WYREMSKI, and KPMG LLP, <br><br> Defendants, <br><br> and FEDERAL DEPOSIT INSURANCE CORPORATION, In its capacity as Receiver for Signature Bank, <br><br> Intervenor. | **MEMORANDUM AND ORDER** <br> Case No. 23-CV-1921 |

*Appearances:*
*For the Lead Plaintiff:*
JOHN RIZIO-HAMILTON
JEREMY P. ROBINSON
JOHN J. ESMAY
ALEXANDER MCRAE NOBLE
JONATHAN G. D'ERRICO
Bernstein Litowitz Berger & Grossmann LLP
1251 Avenue of the Americas
New York, NY 10020


SHARAN NIRMUL
RICHARD A. RUSSO, JR. (*PRO HAC VICE*)

*For the Intervenor FDIC:*
RYAN A. KANE
ADAM M. BIALEK
MAXWELL G. DILLAN
NICOLE C. RENDE
Wollmuth Maher & Deutsch LLP
500 Fifth Ave, 12th Floor
New York, NY 10110

*For the Defendant Eric Howell:*
PETER L. SIMMONS
HARRISON D. POLANS

1

JOSHUA A. MATERESE (*PRO HAC VICE*)
NATHANIEL C. SIMON (*PRO HAC VICE*)
Kessler Topaz Meltzer Check, LLP
280 King of Prussia Road
Radnor, PA 19087

Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, NY 10004

*For the Defendant Joseph DePaolo:*
MICHAEL DOLUISIO
STUART T. STEINBERG
Dechert LLP
Circa Centre, 29 Arch Street
Philadelphia, PA 19104

*For the Defendant Joseph Seibert:*
JONATHAN HARRIS
JOSEPH GALLAGHER
Harris St. Laurent & Wechsler LLP
40 Wall Street, 53rd Floor
New York, NY 10005

*For the Defendant KPMG:*
RICHARD T. MAROONEY
KEVIN J. O'BRIEN
King & Spalding LLP
1185 Avenue of the Americas
New York, NY 10036

LISA BUGNI
King & Spalding LLP
50 California Street, Suite 3300
San Francisco, CA 94111

*For the Defendant Scott A. Shay:*
ALAN VINEGRAD
JONATHAN M. SPERLING
ABIGAIL KERTZMAN
GIOVANNI SCARCELLA
Covington & Burling LLP
620 Eighth Avenue

New York, NY 10018

*For the Defendant Stephen Wyremski:*
ANAND SITHIAN
DANIEL L. ZELENKO
MARA LIEBER
Crowell & Moring LLP
375 Ninth Avenue
New York, NY 10001

*For the Defendant Vito Susca:*
CHARLES T. SPADA
DANIEL E. REYNOLDS
Lankler Siffert & Wohl LLP
1185 Avenue of the Americas
New York, NY 10036

*For the Defendant Frank Santora:*
DAVID B. MASSEY
EMILY B. COOPER
Perkins Coie LLP
1155 Avenue of the Americas,
22nd Floor
New York, NY 10036

**BLOCK, Senior District Judge:**

Lead Plaintiff Sjunde AP-fonden ("AP7" or "Plaintiff") brings this securities fraud class action asserting claims under Section 10(b) of the Securities Exchange Act and Rule 10b-5(b) against KPMG, which was Signature Bank's ("Signature") auditor from 2001 to 2023, and seven former directors, senior executives, and officers (the "Officers") of Signature (collectively, "Defendants"). The consolidated complaint alleges that Defendants made misstatements about

Signature's health that attracted depositors and investors, inflating Signature's common stock and ultimately resulting in Signature's collapse and receivership.

After it had intervened, the Federal Deposit Insurance Corporation (the "FDIC"), the appointed receiver for Signature, moved to dismiss for lack of standing under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6). Defendants also filed individual motions to dismiss under 12(b)(6). The Court held oral argument on March 19, 2025. For the following reasons, the FDIC's motion is GRANTED and the case is dismissed.

## I.   Background

Magistrate Judge James Cho recounted the procedural background in his August 10, 2023, Memorandum and Order consolidating the case[1] and appointing Sjunde AP-fonden[2] as Lead Plaintiff. *See Schaeffer v. Depaolo*, No. 23-CV-1921, 2023 WL 5153481, at *1–2 (E.D.N.Y. Aug. 10, 2023). The following facts are from the amended complaint. *See* Am. Compl., ECF No. 70.

---

[1] Matthew Schaeffer originally brought this case individually and on behalf of all others similarly situated. *Schaeffer v. Depaolo*, No. 23-CV-1921, 2023 WL 5153481, at *1 (E.D.N.Y. Aug. 10, 2023). Pirthi Pal Singh brought a similar but separate class action a few weeks later. *Id.* (citing *Singh v. Signature Bank, et al.*, No. 23-CV-2501 (E.D.N.Y. Mar. 31, 2023)). Magistrate Judge Cho consolidated these two cases and appointed AP7, also known as Sjunde AP-fonden, as Lead Plaintiff.

[2] "Lead Plaintiff AP7 is a Swedish public pension fund, established under law as a Swedish governmental agency, with approximately $100 billion in assets under management." Am. Compl. at ¶ 30, ECF No. 70.

The case "arises out of the string of bank failures in March 2023 and, in particular, the collapse of Signature Bank." *Schaeffer*, 2023 WL 5153481 at *1. Throughout the start of March 2023, Signature reassured the public that it did not face the same problems that plagued other failing crypto-friendly banks. Am. Compl. at ¶ 169. But on March 10, 2023, depositors withdrew over 20% of Signature's total deposits. *Id.* at ¶ 171. Regulators intervened to keep Signature afloat but "this proved impossible because, as [Signature's] management knew, [Signature's] risk and liquidity management systems were either non-existent or woefully deficient." *Id.* at ¶ 173. "On March 12, 2023, the New York Department of Financial Services ('DFS') took possession of Signature Bank, and trading in the bank's shares was halted—essentially rendering those shares valueless." *Schaeffer*, 2023 WL 5153481 at *1. DFS immediately appointed the FDIC as receiver. Am. Compl. at ¶ 22. "When trading resumed on March 28, 2023, the stock was trading under a dollar, and closed at $0.13. This amounted to a 99.81% drop and erased billions of dollars in shareholder value." *Id.* at ¶ 25.

Plaintiff alleges that shareholders acquired Signature common stock between January 21, 2021, and March 12, 2023, in reliance on Defendants' misstatements about Signature's health.[3] Specifically, Plaintiff alleges that the Officers made

---

[3] Plaintiff detailed these alleged misstatements by the Officers in its omnibus memorandum of law opposing this motion to dismiss. *See* Pl.'s Omnibus Mem. at 31–32, ECF No. 125-77.

5

public misrepresentations about Signature's liquidity and risk management that encouraged uninsured deposits of digital assets and inflated the stock's price. Plaintiff also alleges the Officers lied to and ignored warnings by regulators to implement adequate liquidity risk management. And, Plaintiff alleges, KPMG either intentionally misrepresented or recklessly disregarded Signature's financial position in producing audits that incorrectly assured its health.

## II.   Legal Standards

"The question of standing encompasses both [Article III] constitutional and prudential considerations." *Lerman v. Bd. Of Elections in City of New York*, 232 F.3d 135, 143 (2d Cir. 2000). While Article III limits courts to resolving active cases and controversies, "the prudential standing rule [additionally] bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves." *Rajamin v. Deutsche Bank Nat'l Trust Co.*, 757 F.3d 79, 86 (2d Cir. 2014) (cleaned up). Both constitutional and prudential standing, in this circuit, implicate federal jurisdiction, which courts must ensure "is not extended beyond its proper limits." *Wight v. BankAmerica Corp.*, 219 F.3d 79, 90 (2d Cir. 2000) (citing *Thompson v. Cnty. of Franklin*, 15 F.3d 245, 248 (2d Cir. 1994)); *see In re Sofer*, 613 F. App'x 92, 92 (2d Cir. 2015) (summary order) ("Prudential

---

Plaintiff also provided a chart detailing the Officers' and KPMG's alleged misstatements. *See* ECF No. 125-79.

standing remains a jurisdictional requirement in our Circuit." (citing *Thompson*, 15 F.3d at 248)). As such, prudential standing is a threshold issue. *Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat. Ass'n*, 747 F.3d 44, 48 (2d Cir. 2014).

"In reviewing a 12(b)(1) motion to dismiss, the court 'must accept as true all material factual allegations in the complaint, but the court is not to draw inferences from the complaint favorable to [the party asserting jurisdiction].'" *Tiraco v. New York State Bd. of Elections*, 963 F. Supp. 2d 184, 190 (E.D.N.Y. 2013) (quoting *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004)). "Where jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (cleaned up). "In that case, the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* (cleaned up). "However, the plaintiffs are entitled to rely on the allegations in the Pleading if the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016).

### III.   Discussion

The FDIC asserts that Plaintiff does not have standing because, among other reasons, the FDIC owns Plaintiff's claims pursuant to the succession provision (the

7

"Succession Clause") of the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"). *See* 12 U.S.C. § 1821(d)(2)(A). The Court agrees.

Under the Succession Clause, the FDIC, as conservator or receiver of a bank, "succeed[s] to . . . all rights, titles, powers, and privileges of the insured depository institution, and of any stockholder, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution." 12 U.S.C. § 1821(d)(2)(A). Thus, only the FDIC can bring claims that it succeeded to pursuant to the Succession Clause. *See Pareto v. F.D.I.C.*, 139 F.3d 696, 700 (9th Cir. 1998) (explaining that application of Succession Clause transfers to FDIC "a shareholder's right, power, or privilege to demand corporate action or to sue directors or others when action is not forthcoming").

There exists a circuit split over how to apply the Succession Clause. The split concerns whether to apply the Clause according to its plain text or by differentiating between direct and derivative claims. In a recent decision, Judge Dale E. Ho of the Southern District of New York explained the bases for the split and did not find Second Circuit authority resolving it. *Verdi v. Fed. Deposit Ins. Corp.*, No. 24-CV-791, 2024 WL 4252038, at *3 (S.D.N.Y. Sept. 20, 2024). The plaintiff in *Verdi* brought claims against the FDIC, in its capacity as receiver for Signature, alleging "that Signature and its leadership made false or misleading

8

statements . . . immediately prior to Signature's collapse" which "induced him to purchase additional shares[.]" *Id.* at \*1. Soon after, following Signature's collapse, "his investments cratered in value." *Id.*

For guidance on how to resolve the split, Judge Ho surveyed "authority from outside this Circuit." *Id.* According to Judge Ho, "the Fourth, Seventh, and Eleventh Circuits have held that the Succession Clause applies only to derivative claims, and not to direct claims." *Id.* (citing cases). The Ninth and Tenth Circuits have taken a softer stance in also holding that the Succession Clause applies to shareholders' derivative claims, without foreclosing its possible application to direct claims. *See Pareto*, 1319 F.3d at 700; *Barnes v. Harris*, 783 F.3d 1185, 1193 (10th Cir. 2015). However, the First Circuit recently held that the Succession Clause does not distinguish between direct and derivative claims. *See Zucker v. Rodriguez*, 919 F.3d 649, 656–58 (1st Cir. 2019). Instead, the First Circuit explained that the Succession Clause only covers claims that fall within the text of § 1821(d)(2)(A)—claims with respect to the institution and its assets.[4] *See id.*

---

[4] Judge Ho cites various district court decisions that endorse and adopt *Zucker*'s interpretation of the Succession Clause. *See Am. W. Bank Members v. Utah*, No. 16-CV-326, 2023 WL 4108352, at \*6 (D. Utah June 21, 2023), *aff'd*, No. 23-4091, 2024 WL 3812451 (10th Cir. Aug. 14, 2024) ("The court finds the reasoning of the First Circuit in *Zucker* with respect to the scope of FIRREA's succession clause persuasive."); *Aaron v. Ill. Nat'l Ins. Co.*, No. 19-CV-10341, 2023 WL 7389034, at \*4 (E.D. La. Nov. 8, 2023) ("The text strongly suggests that the FDIC should succeed to claims that are in name against the Holding Company, but are actually aimed at the assets of the bank.").

9

AP7, like the plaintiff in *Verdi*, argues that the FDIC did not succeed to its claims because the Succession Clause only extinguishes "a shareholder's derivative claims brought on behalf of a corporation (and therefore does not implicate direct claims brought by shareholders against the corporation)." *Verdi*, 2024 WL 4252038 at *3. The Court, like Judge Ho, disagrees. In resolving the circuit split, Judge Ho, agreeing with the First Circuit's decision in *Zucker*, did not base his decision on whether to prescind between direct or derivative claims. *Id.* at *6 (citing 919 F.3d at 658). He held "that the text of the Succession Clause does not explicitly require categorizing claims as derivative or direct[.]" *Id*. He noted, however, that "at the very least, [it] does not explicitly foreclose the possibility that at least some direct claims are covered by the Clause." *Id.* Rather than reading some extratextual distinction into the statute, Judge Ho applied its plain text.

The Court agrees with Judge Ho's thoughtful and thorough analysis of the Succession Clause and adopts his holding regarding its scope. The Succession Clause's applicability does not hinge on some distinction between direct and derivative claims, but on the statutory text in § 1821(d)(2)(A). Thus, the Succession Clause covers claims that satisfy "the two conditions set forth in its text—that is, the claim asserts a 'right of a shareholder' and that right is 'with respect to the institution and the assets of the institution.'" *Id.* (quoting *Am. W. Bank Members*, 2023 WL 4108352 at *5–6).

10

The direct-derivative extratextual test and the "with respect to" statutory test largely overlap but have some gaps. The Succession Clause does not necessarily cover direct claims under the former, but some direct claims might be "with respect to the institution" and its assets under the latter. Take, for example, a case where a bank's officer, ahead of its inevitable collapse, privately misrepresents its solvency to induce some shareholders to buy preferred shares. The harm here is direct because it only affected the discrete shareholders targeted by the private misrepresentations. But that direct claim would still be "with respect to" the bank and its assets because the misrepresentations intertwine with the bank's financial condition and the state of its assets. By contrast, some direct claims are not "with respect to" the bank and its assets. Consider a case brought by shareholders against an officer who induced investment by privately misrepresenting another officer's health. *See* Oral Arg. Tr. at 26:07–15. There, the officer did not misrepresent the bank's deteriorating financial condition or its assets. And some direct cases clearly fall outside the Succession Clause, like one involving a personal dispute between a shareholder and an officer.

At oral argument, Plaintiff asserted that Judge Ho misinterpreted *Zucker* and that the proper test must focus on whether the harm to Plaintiff was distinct from harm to Signature and its assets. Oral Arg. Tr. at 13:05–17:12. Under such inquiry, Plaintiff insists, plaintiffs could bring claims that allege a harm distinct from one

11

suffered by Signature and its assets. But that mischaracterizes *Zucker*. The *Zucker* court merely meant that the direct-derivative test, which emphasizes harm, and the statutory test can overlap. *See* 919 F.3d at 658 (explaining that cases applying direct-derivative test "are consistent with" court's holding under statutory test). The Court has already acknowledged such. And while a harm inquiry does not itself contradict *Zucker*, giving it dispositive weight does. *Cf. Aaron*, 2023 WL 7389034 at *4 ("While *Zucker* rejects an express distinction between direct and derivative claims, it does not reject a 'source of the harm' inquiry."). That is because the statutory test applies wherever the at-issue claims are "with respect to the institution and" its assets. *See* 12 U.S.C. § 1821(d)(2)(A). Deeming this harm inquiry dispositive would effectively reincarnate the direct-derivative interpretation of the Succession Clause. Thus, the Court remains persuaded that Judge Ho properly interpreted *Zucker*.

FIRREA's purpose and structure counsel this outcome. "[T]he direct/derivative dichotomy could allow those who run the banks into the ground to take for themselves some of the modest sums available to reimburse the FDIC for a portion of the socialized losses they inflicted." *Levin v. Miller*, 763 F.3d 667, 674 (7th Cir. 2014) (cleaned up) (Hamilton, J., concurring). This dichotomy could also circumvent FIRREA's priority scheme for satisfying Signature's outstanding obligations. *See Zucker*, 919 F.3d at 658. The priority scheme provides that

12

"amounts realized" from liquidating a failed bank "shall be distributed" first to cover the FDIC's administrative expenses, then to "any deposit liability of the institution," next to "any other general or senior liability," then to subordinate obligations, and finally to shareholders or members. 12 U.S.C. § 1821(d)(11)(A). Erroneously reading in a direct-derivative distinction would usurp claims that the FDIC could recover from and then distribute proceeds pursuant to the priority scheme. It would thus enable direct claims to be paid from the very assets the FDIC has to satisfy the failed bank's obligations.

Lastly, Plaintiff cautions that interpreting the Succession Clause to cover some direct claims could effectuate an unlawful seizure under the Takings Clause of the Fifth Amendment. That is not so. "As the First Circuit noted [in *Zucker*], the Takings Clause requires compensation 'only for deprivations of vested property rights,' which do 'not vest until a final, unreviewable judgment has been obtained'—which is obviously not the case with respect to any claims that have yet to be adjudicated." *Verdi*, 2024 WL 4252038 at *3 (quoting *Zucker*, 919 F.3d at 659); *see Levin*, 763 F.3d at 674 (Hamilton, J., concurring) (explaining that interpreting Succession Clause to cover some direct claims "would surely withstand any challenge" under Takings Clause).

Plaintiff chiefly alleges that shareholders purchased Signature common stock in reliance on Defendants' misrepresentations. "In particular, Plaintiff's

13

theory of damages for [its] investments both before and after the alleged misrepresentations depend on the drop in value of [its] shares of Signature stock. Therefore, any claims Plaintiff may have against Signature are rights in [its] capacity as 'a stockholder.'" *Id.* at *6. These claims are also "with respect to the institution and the assets of the institution," 12 U.S.C. § 1821(d)(2)(A), because, as Judge Ho correctly observed, "they concern Signature's failure after it made alleged misrepresentations about its health (including about its assets)," *Verdi*, 2024 WL 4252038 at *6.

Plaintiff responds in its filings and at oral argument that the Court cannot cleanly adopt Judge Ho's reasoning since its claims are not against Signature but against its former officers and auditor, KPMG. *See* Oral Arg. Tr. at 9:05–10:09. As such, Plaintiff argues that its suit "does not seek to recover from the assets of Signature Bank." *Id.* at 9:22–25. But Signature's absence does not remove these claims from the Succession Clause's scope. Damages recovered, at least against the Officers, will be paid from Signature's director and officer insurance policies ("D&O insurance"), assets of the bank.[5] *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. City Sav., F.S.B.*, 28 F.3d 376, 384–85 (3d Cir. 1994), *as amended*

---

[5] The Court cannot overstate the importance of ascertaining its jurisdiction. It undermines judicial economy to waste court and party resources processing a case destined for dismissal. To that end, the Court requested and considered a copy of the D&O insurance. *See* ECF No. 141. No party objected. Plaintiff could have requested supplemental briefing on whether it was proper for the Court to consider the D&O insurance. Still, Plaintiff submitted supplemental authority relevant to the D&O insurance and acknowledged the Court's request in its filing.

14

(Aug. 29, 1994) (concluding that D&O insurance is an "asset" of bank regardless of whether bank "will ultimately be entitled to collect under the insurance policies").[6]

Nonetheless, Defendants' misstatements still relate to Signature and its assets. The Officers acted on behalf of Signature and KPMG made public assurances about Signature. Importantly, Defendants allegedly invoked these misstatements to justify evading risk management measures, endangering Signature and its assets—including those of depositors attracted to Signature by those same misstatements. *See Golldblatt v. Wells Fargo Advisors, LLC*, No. 3:10-CV-924, 2011 WL 446896, at *3 (D. Conn. Feb. 1, 2011) (applying similar succession clause in Federal Credit Union Act to depositors' claims because alleged harm impacted all depositors, "'creat[ing] a liability which is an asset of the bank, and [which] only the bank or its receiver may sue for its recovery'" (quoting *Adato v. Kagan*, 599 F.2d 1111, 1117 (2d Cir. 1979)). And the ultimate

---

[6] AP7 submitted as supplemental authority *In re SVB Financial Group*, 650 B.R. 790 (Bankr. S.D.N.Y. 2023) to argue that D&O policies that only cover the Officers, and not Signature ("Side A DIC policy"), are not Signature's assets. ECF No. 143. This bankruptcy case lifted a stay to allow officers to access proceeds from Side A DIC policies to cover their ongoing litigation costs. But in this context, the policy itself is an asset even if its "owner and named insured will ultimately be found not to be entitled to a particular recovery under the policy." *Nat'l Union Fire Ins. Co.*, 28 F.3d at 384. Even so, some of the D&O policies here also insure both Signature and the Officers, including the primary policy. *See* ECF No. 141 at 3–4, 9. Thus, recovery against the Officers would first exhaust the D&O policies before reaching the Side A DIC policies. *See Zucker*, 919 F.3d at 656 (applying Succession Clause where Plaintiff sought "to recover from assets, like insurance, that the FDIC also seeks in its own action related to the Bank's failure.").

harm to shareholders stemmed from a harm to Signature and its assets—unforeseen mass withdrawals and the lack of risk management measures. *See Zucker*, 919 F.3d at 656 (holding that claims "relate to" assets where they depend on "proving that malfeasance by [holding company's] directors depressed the Bank's assets").

Plaintiff's claims are thus "with respect to" Signature and its assets, and the FDIC succeeded to Plaintiff's claims. "Because the FDIC succeeded to Plaintiff's claims, Plaintiff lacks standing to assert them." *Verdi*, 2024 WL 4252038 at *6. "'The so-called third-party standing bar . . . prevents litigants from asserting the rights or legal interests of others simply to obtain relief from injury to themselves.'" *Id.* (quoting *N.Y. State Citizens' Coal for Child. v. Poole*, 922 F.3d 69, 75 (2d Cir. 2019)). That bar applies here to deprive Plaintiff of standing to assert the succeeded-to claims.

## IV. Practical Considerations

AP7 and other shareholders are not without recourse. The FDIC will distribute "amounts realized from the liquidation or other resolution of" Signature to satisfy any outstanding obligations to shareholders. 12 U.S.C. § 1821(d)(11). And the FDIC can pursue this case, adding spoils to the payout pot.

To be sure, this decision is not victimless. The many pension funds that invested in Signature stock have unexpectedly lost capital necessary to provide retirees with a dignified retirement. That is especially problematic as shareholders

16

are last to be compensated under FIRREA's priority scheme. *Id.* at § 1821(d)(11)(A)(v). But the Court will not—and cannot—disrupt Congress's rational and reasoned decision to compensate depositors over those lower in the priority scheme. *See Zucker*, 919 F.3d at 661 ("The long history of extensive federal involvement in the savings and loan industry reveals that the protection of depositors and the stability of thrift institutions are paramount among congressional concerns.").

## V.   Conclusion

Accordingly, the FDIC's motion is GRANTED and the case is dismissed.[7]

**SO ORDERED.**

                                                                               /S/ Frederic Block
                                                                               FREDERIC BLOCK
                                                                               Senior United States District Judge

Brooklyn, New York
March 21, 2025

---

[7] Given this disposition, the Court does not address Plaintiff's exhaustion and merits arguments. And the Court does not consider Plaintiff's belated unclean hands argument, first raised in its response to supplemental briefing. *See Azeez v. City of New York*, No. 16-CV-342, 2018 WL 4017580, at *6 (E.D.N.Y. Aug. 22, 2018), *aff'd*, 790 F. App'x 270 (2d Cir. 2019) ("Ordinarily, any issues not addressed in an opposition brief are deemed abandoned by the party opposing the motion."). Regardless, state law defenses assertable against a bank cannot be asserted against the FDIC because it also acts "on behalf of the depositors and creditors." *F.D.I.C. v. Abel*, No. 92-CV-9175, 1996 WL 520906, at *2 (S.D.N.Y. Sept. 12, 1996).